IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DAN McCALEB, Executive Editor of THE CENTER SQUARE,** | )<br>)<br>)<br>)<br>)<br>)<br>) |
| v. | ) Case No._____<br>)<br>) |
| **MICHELLE LONG, in her official capacity as DIRECTOR of TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS,** | )<br>)<br>)<br>)<br>)<br>) |
| **Defendant.** | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

The plaintiff, Dan McCaleb, Executive Editor of The Center Square ("McCaleb" or "Plaintiff"), by and through his undersigned attorneys, alleges:

**INTRODUCTION**

1. McCaleb is a veteran editor and has worked in journalism for more than 25 years, and he is currently Executive Editor of The Center Square. Most recently, McCaleb served as editorial director of Shaw Media and the top editor of the award winning Northwest Herald in suburban Chicago.[1]

---

[1] https://www.thecentersquare.com/users/profile/dan%20mccaleb/.

2. The Center Square was launched in May 2019 to fulfill the need for high-quality statehouse and statewide news across the United States.[2]

3. The Center Square's focus is state- and local-level government and economic reporting. As a result of this approach, its readers are better informed about the issues of state and local government and its cost to the citizens whose tax dollars fund governmental decisions.

4. The Center Square is staffed by editors and reporters with extensive professional journalism experience. It engages its readers with essential news, data, and analysis.

5. The Center Square distributes its journalism through three main channels at no cost to readers, including a newswire service to legacy publishers and broadcasters, its own website, and social media.

6. The Center Square is a project of the 501(c)(3) Franklin News Foundation, headquartered in Chicago.

7. The Center Square provides extensive news coverage throughout the United States, including the Southeast region and Tennessee.[3]

8. On or about June 6, 2022, McCaleb learned that Michelle Long, in her official capacity as Director of the Tennessee Administrative Office of the Courts ("TAOC"), had promulgated a new closure policy #3.04, preventing public and press

---

[2] https://www.thecentersquare.com/site/about/about.html.
[3] https://www.thecentersquare.com/tennessee/.

access to Tennessee Judicial Conference meetings. A copy of the closure policy is attached hereto as *Exhibit 1*.

9. This closure policy prevents McCaleb from assigning reporters he supervises to cover future Tennessee Judicial Conference meetings, either virtually or in person, including meetings beginning on June 15 in Middle Tennessee in Franklin and metropolitan Nashville.

10. Under the *Richmond Newspapers* two-part test, the First Amendment right of access of the public and press attaches to Tennessee Judicial Conference meetings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (Brennan, J. concurring in the judgment); *see also Detroit Free Press v. Ashcroft,* 303 F. 3d 681, 682-83, 705 (6th Cir. 2002).

11. TAOC's closure policy cannot overcome McCaleb's First Amendment right of access to assign reporters to report and cover future Tennessee Judicial Conference meetings, including upcoming meetings in Middle Tennessee. *Press-Enterprise Co. v. Superior Court* (*Press-Enter. I*), 464 U.S. 501, 510 (1984).

12. McCaleb seeks declaratory and injunctive relief to stop Director Long from enforcing TAOC's closure policy and ending policy #3.04's ongoing and continuing violation of his First Amendment right of access to assign reporters to report and cover future Tennessee Judicial Conference meetings, including upcoming meetings beginning on June 15 in Middle Tennessee. *See generally Ex Parte Young*, 209 U.S. 123 (1908).

3

## PARTIES AND JURISDICTION

13. McCaleb is Executive Editor of The Center Square. He is a resident of Illinois and citizen of the United States.

14. Defendant, Michelle Long, is being sued in her official capacity as Director of the Tennessee Administrative Office of the Courts, located at 511 Union Street, Suite 600, Nashville, Tennessee 37219. Director Long may be served with process by serving the Office of the Tennessee Attorney General and Reporter pursuant to Fed. R. Civ. P. 4(j)(2)(B) and Tenn. R. Civ. P. 4.04(6).

15. This case raises federal claims arising under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution; therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16. Plaintiff's claims for declaratory and injunctive relief are authorized in accordance with: 28 U.S.C. §§ 2201 and 2202; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the general legal and equitable powers of this Court.

17. Venue is appropriate under 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A. Tennessee Judicial Conference (1953-present)**

18. In 1953, the Tennessee General Assembly passed a law creating the Tennessee Judicial Conference, comprised of all judges of state courts of record.[4]

---

[4] https://www.tncourts.gov/history (last visited June 8, 2022).

Governor Frank G. Clement signed the bill into law, and state supreme court justice A.B. Neil was Tennessee Judicial Conference's first president. *Id.*; *see* Tenn. Code Ann. § 17-3-101.

19. Membership in the Tennessee Judicial Conference includes all active and retired state court judges whose salary is paid in whole or in part out of the state treasury. Tenn. Code Ann. § 17-3-101(a).

20. Membership also includes active and retired judges who are licensed attorneys at law of all probate courts in counties exceeding a certain population threshold. *See* Tenn. Code Ann. § 17-3-101(b).

21. The Tennessee Attorney General and Reporter is an ex officio member of the Tennessee Judicial Conference and acts as its legal advisor. Tenn. Code Ann. § 17-3-102.

22. Tennessee Judicial Conference members are required to meet annually "for the consideration of any and all matters pertaining to the discharge of the official duties and obligations of its several members, to the end that there shall be a more prompt and efficient administration of justice in the courts of [the] state." Tenn. Code Ann. § 17-3-104(a).

23. "It is the official duty of each member of the conference, with the exception of retired judges, to attend its annual meetings unless otherwise officially engaged or for other good and sufficient reasons." Tenn. Code Ann. § 17-3-105(a).

24. Moreover, "[i]t is the duty of the conference to give consideration to the enactment of laws and rules of procedure that in its judgment may be necessary to

5

the more effective suppression of crime and thus promote peace and good order in the state." Tenn. Code Ann. § 17-3-107.

25. To discharge these duties, "a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly." *Id*.

26. Members elect officers and appoint an executive committee at the annual meeting. Tenn. Code Ann. § 17-3-103(a); Tenn. Code Ann. § 17-3-103(b)(1). Members of the executive committee are reimbursed for their reasonable and necessary travel expenses incurred in attending meetings. Tenn. Code Ann. § 17-3-103(b)(5).

27. All members of the Tennessee Judicial Conference are entitled to be reimbursed for expenses in attending the annual meeting. Tenn. Code Ann. § 17-3-105(b).

28. Members "shall have full power and authority to prescribe rules of official conduct for all judges, the rules to be in compliance with the code of judicial ethics as promulgated by the American Bar Association but not otherwise." Tenn. Code Ann. § 17-3-106.

29. The Tennessee Judicial Conference is further required by statute to "set the time and place of each annual meeting." Tenn. Code Ann. § 17-3-104(b).

30. The statute is silent as to whether meetings are either open or closed to the public and press. *See generally* Tenn. Code Ann. §§ 17-3-101 through 17-3-107.

31. The statute does not reference continuing legal education classes for members during annual meetings. *See id*.

6

Case 3:22-cv-00439    Document 1    Filed 06/13/22    Page 6 of 15 PageID #: 6

32. The statute does reference the state supreme court's "policies and guidelines" on reimbursing members' expenses to attend meetings. *See* Tenn. Code Ann. § 17-3-103(b)(5); *see also* Tenn. Code Ann. § 17-3-105(b).

**B. TAOC closure policy #3.04 (Feb. 1, 2022)**

33. TAOC oversees the state court system. TAOC's mission is "to promote the effective and efficient administration of justice in the state of Tennessee."[5]

34. In December of 2021, TAOC promoted Long, a Deputy Director at the time, to be the new TAOC Director effective February 1, 2022.[6]

35. As the Director of TAOC, Long is "the chief administrative officer of the state court system." Tenn. Code Ann. § 16-3-803(a).

36. On February 1, 2022, her first day as TAOC Director, Long promulgated a new closure policy for TAOC-hosted "conferences." In addition to being attached to the complaint as *Exhibit 1*, this new closure policy approved by Director Long may be found on TAOC's website.[7]

37. The closure policy defines several terms:

A. "Conference" is a formal education-centered gathering of current or former members of the ***Tennessee Judicial Conference***, Tennessee General Sessions Judges Conference, Tennessee Conference of Juvenile and Family Court Judges, Tennessee Municipal Judges Conference, Tennessee State Court Clerks Association, or current appellate law clerks and staff attorneys who work in a full-time or part-time status.

---

[5] https://www.tncourts.gov/press/2021/12/15/supreme-court-names-long-next-aoc-director (last visited June 8, 2022).

[6] *See id.*

[7] https://www.tncourts.gov/sites/default/files/docs/administrative_policy_3.04_attendance_at_aoc_conferences_2-1-22_-_ml_initialed_0.pdf (last visited June 8, 2022).

B. "Conference Attendee" is any current or former justice, judge, senior judge, magistrate, court clerk, or current law clerk or staff attorney who works in a full-time or part-time status.

C. "Staff" is any person who works for the [T]AOC in a full-time or part-time status.

D. "Invited Speaker" is any person who is not otherwise considered a "Conference Attendee" or "Staff" and is invited to a[] [T]AOC conference to present on a specific subject matter or training session.

*Exhibit 1*, ¶ II, p. 1 (emphasis added).[8]

38. Under closure policy #3.04, "[c]onferences are not open meetings. Only conference attendees, invited speakers, and staff will be permitted to enter the physical conference spaces or receive virtual access links." *Id.* at ¶ V, p. 2.

39. The stated purpose of closure policy #3.04 is to "ensure the safety and security of conference attendees, staff, and invited speakers during [T]AOC conferences." *Id.* at ¶ III, p. 1. Under Article I, in bold, it states as follows:

> **The safety and security of conference attendees, staff, and invited speakers during conferences is of paramount importance. The Administrative Office of the Courts ([T]AOC) and the Tennessee Department of Safety and Homeland Security will implement appropriate security protocols for events taking place at each conference.**

*Id.* at ¶ I, p. 1.

---

[8] The closure policy applies to other conferences for judges created by the General Assembly through legislative action, such as the Tennessee General Sessions Judges Conference (Tenn. Code Ann. §17-3-201) and the Tennessee Municipal Judges Conference (Tenn. Code Ann. § 17-3-301). Like the Tennessee Judicial Conference statute, the statutes enacted by the General Assembly governing these other conferences for judges are also silent as to whether they are open or closed to the public. *See generally*, §§ 17-3-201, 17-3-301.

8

40. The policy mandates that "all conference attendees, invited speakers, and staff shall maintain the confidentiality of the dates, physical location, and/or link to virtual access, speaker documents, and other conference materials." *Id.* at ¶ VI, p. 2.

41. Closure policy #3.04 cites several authorities to justify its promulgation:

- Tenn. Const. art. VI §1
- Tenn. Code Ann. § 16-3-502
- Tenn. Code Ann. § 16-3-803
- Tenn. Code Ann. § 8-44-101
- *Dorrier v. Dark*, 537 S.W. 2d 888, 892 (Tenn. 1976)

*Id.* at ¶ I, p. 1.

42. Closure policy #3.04 cites several authorities to justify closure. Notably, closure policy #3.04 does not provide as legal support the actual Tennessee Judicial Conference statute itself, Tenn. Code Ann. § 17-3-101, et seq., which does not state meetings are closed to the public and press. Further, none of the cited statutes listed in the closure policy designate or impose confidentiality or closure requirements on Tennessee Judicial Conference meetings.

43. On February 1, 2022, the same day Long promulgated the closure policy, Governor Bill Lee presented the state fiscal year 2023 budget to the 112th General Assembly, which included an appropriation for "Judicial Conference." Total appropriation for Judicial Conference was $413,700, with $373,700 funded through state revenues and $40,000 funded through "other." This line-item appropriation stated, "The Judicial Conference provides continuing legal education and legal updates to judges."[9]

---

[9] *See* State of Tennessee Fiscal Year 2022-2023 Budget Document, Volume 1.pdf, p. B-240, 302.18.

# CLAIMS FOR RELIEF

## COUNT I - 42 U.S.C. § 1983
### (First Amendment right of access
### Tennessee Judicial Conference meetings)

44. Plaintiff realleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

45. Long, in her capacity as TAOC Director, acted under color of state law when she promulgated TAOC closure policy #3.04. Long's conduct in promulgating TAOC closure policy #3.04 deprived McCaleb of his rights secured under federal law. Specifically, Long's conduct in promulgating the closure policy deprived McCaleb of his First Amendment right of access to assign reporters to report on future Tennessee Judicial Conference meetings, either virtually or in person, including upcoming meetings beginning on June 15 in Middle Tennessee. *See Handy-Clay v. City of Memphis, Tenn.*, 695 F. 3d 531, 539 (6th Cir. 2012).

46. But for the closure policy, as the Executive Editor of The Center Square, McCaleb would make an editorial decision to assign reporters he supervises to report and cover future Tennessee Judicial Conference meetings, either virtually or in person, including upcoming meetings beginning on June 15 in Middle Tennessee.

47. Reporting and covering Tennessee Judicial Conference meetings would be keeping within The Center Square's focus on state- and local-level government.

48. Under the *Richmond Newspapers* two-part test, the First Amendment right of access attaches to Tennessee Judicial Conference meetings. *Richmond Newspapers,* 448 U.S. at 589.

49. The First Amendment right of access attaches under the "experience" prong to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700.

50. Meetings of the Judicial Conference of the United States provide the quintessential equivalent proceedings to Tennessee Judicial Conference meetings.

51. Federal Judicial Conference meetings are indistinguishable from Tennessee Judicial Conference meetings. Except federal Judicial Conference meetings have historically been open to the public and press for many years.

52. It is well-settled "that meetings of bench-bar committees established to recommend rules ordinarily [are] open to the public." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995); *see also* 28 U.S.C. § 2073(c)(1).

53. Members of the Tennessee Judicial Conference meet to discharge their official duties and consider rules, draft legislation, and then submit their recommendations to the General Assembly, just like members of the United States Judicial Conference in their open meetings when they consider rules and submit their recommendations to Congress.

54. Under the "logic" prong, the First Amendment right of access attaches to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700.

55. Open Tennessee Judicial Conference meetings would be positive because openness would promote public confidence in the judiciary and transparency in the state court rulemaking process. *Applications of Nat'l Broad. Co.*, 828 F. 2d 340, 347 (6th Cir. 1987)

11

56. Allowing the public and press to observe members at federal Judicial Conference meetings considering rules and making recommendations to Congress has played a significant and positive role in the rulemaking process regarding federal court policy. *See Swint*, 514 U.S. at 48.

57. TAOC's closure policy fails to overcome Plaintiff's First Amendment right of access. *See Detroit Free Press,* 303 F. 3d at 682-83, 705.

58. The closure policy fails to provide findings to assist a reviewing court to determine whether closure was proper and whether less restrictive alternatives exist. *See Press-Enterprise Company v. Superior Court* (*Press-Enter II*), 478 U.S. 1, 13 (1986).

59. Although attendees' safety and security are important, a generalized interest in "safety and security" is not a legally compelling interest that can overcome the First Amendment. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F. 2d 1165, 1179 (6th Cir. 1983).

60. The policy lacks tailoring because the blanket closure policy prevents the public and press from attending meetings virtually even though virtual attendance at Tennessee Judicial Conference meetings would pose no safety or security risk, much less a physical threat to attendees. *See Detroit Free Press,* 303 F.3d at 707.

61. Last July 6, 2021, the TAOC published an article on its website about the annual 2021 Tennessee Judicial Conference that had just concluded in June and provided the names of the newly elected officers for the Tennessee Judicial

Conference. This article further noted that the annual 2022 Tennessee Judicial Conference meetings "would be held in Middle Tennessee."[10]

62. Based on a publicly available letter dated December 30, 2021, from the Tennessee Judicial Conference president, there are two Tennessee Judicial Conference committees on pattern jury instructions: the TPI civil committee and TPI criminal committee.[11]

63. Based on a publicly available 2009 publication by the Davidson County Circuit Court Clerk's Office welcoming the new president of the Tennessee Judicial Conference, in 2009 the Tennessee Judicial Conference had approximately 20 committees.[12]

64. In this 2009 Davidson County Clerk's publication explaining its committee structure, the article noted the "Conference relies on a committee structure, comprised of approximately 20 committees, to carry out its mission of improving the judiciary and the practice of law. For example, the Legislative Committee reviews proposed legislation as it relates to the judiciary, and the Conference may even initiate legislation to address specific concerns." *Id.*

65. Based on a publicly available 2022 judges' schedule from the First Judicial District of Tennessee, there are at least three sessions of Tennessee

---

[10] https://www.tncourts.gov/press/2021/07/06/new-officers-named-tennessee-judicial-conference.
[11] https://archive.org/details/jury.letter.Tennessee.20211230/mode/1up.
[12] https://circuitclerk.nashville.gov/wp-content/uploads/rr2009_07.pdf/.

13

Judicial Conference meetings scheduled for 2022: (1) March 8-10; (2) June 15-17; and (3) October 25-27.[13]

66. Based on publicly available 2022 judges' calendars from the First Judicial District of Tennessee, June 15, 16, and 17 are blocked off judges' calendars and it states, "TJC Franklin."[14] The inference is that Tennessee Judicial Conference ("TJC") meetings will be on June 15, 16, and 17 in Franklin, Tennessee.

67. During the COVID-19 pandemic, TAOC adopted virtual hearings and has its own YouTube Channel where judicial proceedings remain publicly available.[15]

68. TAOC continues to utilize its virtual infrastructure in other court-related events including public meetings. For example, TAOC has a public notice on its website of an "ADR Commission" quarterly meeting in October, and the event is open to the public. Notably, it states the "meeting will be in-person and via Zoom."[16]

69. In its "history and milestones" March 13, 2020, entry, TAOC looks back on the pandemic challenges and proudly notes that "at no point are Tennessee courts closed for business."[17] Indeed, TAOC should be commended for its efforts.

70. Unfortunately for the public, McCaleb, and the press, Tennessee Judicial Conference meetings are closed for business because of TAOC closure policy #3.04.

---

[13] https://www.washingtoncountytn.org/DocumentCenter/View/1358/2022-Judges-Schedule-updated.
[14] https://www.washingtoncountytn.org/DocumentCenter/View/1245/2022-Judges-Calendar-PDF.
[15] https://www.youtube.com/user/TNCourts/featured.
[16] https://tncourts.gov/calendar/adr-commission/2022/10/18/adr-commission-quarterly-meeting.
[17] https://www.tncourts.gov/history.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a temporary restraining order and preliminary injunction, later to be made a permanent injunction, restraining and enjoining Director Long from enforcing TAOC closure policy #3.04;

B. Issue a temporary restraining order and preliminary injunction, later to be made a permanent injunction, ordering Director Long to provide him with both virtual and in-person access so he can assign reporters to report on future Tennessee Judicial Conference meetings including those beginning on June 15 in Middle Tennessee in Franklin and the metropolitan Nashville area;

C. Enter a judgement declaring that the First Amendment right of access attaches to Tennessee Judicial Conference meetings;

D. Award him costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Grant such further relief this Court deems just, proper, and equitable.

June 13, 2022    Respectfully submitted,

                          */s/ M. E. Buck Dougherty III*
                          M. E. Buck Dougherty III, TN BPR #022474
                          James McQuaid, *pro hac vice forthcoming*
                          LIBERTY JUSTICE CENTER
                          440 N. Wells Street, Suite 200
                          Chicago, Illinois 60654
                          312-637-2280-telephone
                          312-263-7702-facsimile
                          bdougherty@libertyjusticecenter.org
                          jmcquaid@libertyjusticecenter.org

                          Attorneys for Plaintiff, Dan McCaleb,
                          Executive Editor of The Center Square