IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **DAN McCALEB, Executive Editor**<br>**of THE CENTER SQUARE,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00439** |
| | ) | |
| | ) | **District Judge Richardson** |
| **MICHELLE LONG, in her** | ) | **Magistrate Judge Frensley** |
| **official capacity as DIRECTOR of** | ) | |
| **TENNESSEE ADMINISTRATIVE** | ) | |
| **OFFICE OF THE COURTS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Pending before this Court is a motion for temporary restraining order and preliminary injunction filed by the plaintiff, Dan McCaleb, Executive Editor of The Center Square ("McCaleb" or "Plaintiff"). In addition to seeking a preliminary injunction, McCaleb seeks a temporary restraining order pursuant to Fed. R. Civ. P. 65 and LR 65.01 to restrain and enjoin the Director of the Tennessee Administrative Office of the Courts ("TAOC") from enforcing a closure policy, policy #3.04, she promulgated on February 1, 2022.

1

This closure policy restricts public and press access to Tennessee Judicial Conference meetings convening this week beginning on June 15 in Middle Tennessee in Franklin and metropolitan Nashville. In support of his motion, Plaintiff relies upon the following: (1) Complaint ("Compl."); (2) Declaration of Dan McCaleb ("McCaleb Decl."); and (3) Memorandum of Law.

With respect only to Plaintiff's request for a temporary restraining order, the Court makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW:

1. McCaleb is a veteran editor and has worked in journalism for more than 25 years, and he is currently Executive Editor of The Center Square. Most recently, McCaleb served as editorial director of Shaw Media and the top editor of the award winning Northwest Herald in suburban Chicago.[1]

2. The Center Square was launched in May 2019 to fulfill the need for high-quality statehouse and statewide news across the United States.[2]

3. The Center Square's focus is state- and local-level government and economic reporting. As a result of this approach, its readers are better informed about the issues of state and local government and its cost to the citizens whose tax dollars fund governmental decisions. McCaleb Decl. ¶6.

4. The Center Square provides extensive news coverage throughout the United States, including the Southeast region and Tennessee.[3] McCaleb Decl. ¶10.

---

[1] https://www.thecentersquare.com/users/profile/dan%20mccaleb/.
[2] https://www.thecentersquare.com/site/about/about.html.
[3] https://www.thecentersquare.com/tennessee/.

2

5. On or about June 6, 2022, McCaleb learned that Michelle Long, in her official capacity as Director of the TAOC had promulgated a new closure policy #3.04, preventing public and press access to Tennessee Judicial Conference meetings. A copy of the closure policy is attached to the Compl. as *Exhibit 1*. McCaleb Decl. ¶15.

6. This closure policy prevents McCaleb from assigning reporters he supervises to cover future Tennessee Judicial Conference meetings, either virtually or in person, including meetings beginning on June 15 in Middle Tennessee in Franklin and metropolitan Nashville. McCaleb Decl. ¶16.

7. But for the closure policy, as the Executive Editor of The Center Square, McCaleb would make an editorial decision to assign reporters he supervises to report and cover future Tennessee Judicial Conference meetings, either virtually or in person, including upcoming meetings beginning on June 15 in Franklin and Nashville. McCaleb Decl. ¶17.

8. As part of McCaleb's duties as Executive Editor, he assigns reporters to cover newsworthy events in Tennessee that he thinks would be keeping within The Center Square's focus on state- and local-level government. McCaleb Decl. ¶11.

9. As Executive Editor, McCaleb thinks reporting and covering Tennessee Judicial Conference meetings would be keeping within The Center Square's focus and would engage its readers with essential news, data, and analysis on the state court rulemaking process in Tennessee state courts. McCaleb Decl. ¶12.

10. As Executive Editor, McCaleb thinks this because Tennessee Judicial Conference members are required to meet annually to discharge their official duties and deliberate on state court policy and rules, draft legislation, and then submit their recommendations to the General Assembly. McCaleb Decl. ¶13.

11. McCaleb seeks declaratory and injunctive relief to stop Director Long from enforcing TAOC's closure policy and ending policy #3.04's ongoing and continuing violation of his First Amendment right of access that prevents public and press access to future Tennessee Judicial Conference meetings, including upcoming meetings beginning on June 15 in Middle Tennessee in Franklin and metropolitan Nashville. McCaleb Decl. ¶27.

12. McCaleb is requesting relief ordering Director Long to provide him with both virtual and in-person access so that he may assign reporters he supervises as Executive Editor of The Center Square to report on future Tennessee Judicial Conference meetings, either virtually or in person, including upcoming meetings beginning on June 15 in Middle Tennessee in Franklin and metropolitan Nashville. McCaleb Decl. ¶28.

13. Under the *Richmond Newspapers* two-part test, the First Amendment right of access of the public and press attaches to Tennessee Judicial Conference meetings. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 589 (1980) (Brennan, J. concurring in the judgment); *see also Detroit Free Press v. Ashcroft,* 303 F. 3d 681, 682-83, 705 (6th Cir. 2002).

4

14. The First Amendment right of access attaches under the "experience" prong to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700.

15. Meetings of the Judicial Conference of the United States provide the quintessential equivalent proceedings to Tennessee Judicial Conference meetings.

16. Federal Judicial Conference meetings are indistinguishable from Tennessee Judicial Conference meetings. Except federal Judicial Conference meetings have historically been open to the public and press for many years.

17. It is well-settled "that meetings of bench-bar committees established to recommend rules ordinarily [are] open to the public." *Swint v. Chambers County Comm'n,* 514 U.S. 35, 48 (1995); *see also* 28 U.S.C. § 2073(c)(1).

18. Members of the Tennessee Judicial Conference meet to discharge their official duties and consider rules, draft legislation, and then submit their recommendations to the General Assembly, just like members of the United States Judicial Conference in their open meetings when they consider rules and submit their recommendations to Congress.

19. Under the "logic" prong, the First Amendment right of access attaches to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700.

20. Open Tennessee Judicial Conference meetings would be positive because openness would promote public confidence in the judiciary and transparency in the state court rulemaking process. *Applications of Nat'l Broad. Co.,* 828 F. 2d 340, 347 (6th Cir. 1987)

5

21. Allowing the public and press to observe members at federal Judicial Conference meetings considering rules and making recommendations to Congress has played a significant and positive role in the rulemaking process regarding federal court policy. *See Swint*, 514 U.S. at 48.

22. TAOC's closure policy cannot overcome McCaleb's First Amendment right of access to assign reporters to report and cover future Tennessee Judicial Conference meetings, including upcoming meetings in Middle Tennessee. *Press-Enterprise Co. v. Superior Court* (*Press-Enter. I*), 464 U.S. 501, 510 (1984).

23. The closure policy fails to provide findings to assist this Court in determining closure was proper and whether less restrictive alternatives exist. *See Press-Enterprise Company v. Superior Court* (*Press-Enter II*), 478 U.S. 1, 13 (1986).

24. Although attendees' safety and security are important, a generalized interest in "safety and security" is not a legally compelling interest that can overcome the First Amendment. *See Brown & Williamson Tobacco Corp. v. FTC*, 710 F. 2d 1165, 1179 (6th Cir. 1983).

25. The policy lacks tailoring because the blanket closure policy prevents the public and press from attending meetings virtually even though virtual attendance at Tennessee Judicial Conference meetings would pose no safety or security risk, much less a physical threat to attendees. *See Detroit Free Press,* 303 F.3d at 707.

26. As set forth in the Memorandum of Law, McCaleb has established he is entitled to a TRO to preserve the status quo that meetings are presumptively open

in accordance with the General Assembly's intent under the express text of the Tennessee Judicial Conference statute, Tenn. Code Ann. § 17-3-101, et seq.

27. As set forth in the Memorandum of Law, McCaleb's loss of his First Amendment rights is an irreparable injury and is immediate in his specific situation entitling him to a TRO to preserve the status quo that Tennessee Judicial Conference meetings are presumptively open to the public and press.

28. At this time, the Court withholds ruling on Plaintiff's request for a preliminary injunction pending Defendant's written response and briefing schedule as set forth below.

29. Because Plaintiff seeks a temporary restraining order for the loss of his First Amendment rights and the state faces no risk of monetary loss or injury, the Court is exercising its discretion and will waive the bond requirement of Fed. R. Civ. P. 65(c). *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F. 3d 424, 431 (6th Cir. 2013).

Based on Plaintiff's filings and the Court's FINDINGS AND CONCLUSIONS, the Court **GRANTS** Plaintiff's request for a temporary restraining order and it is hereby **ORDERED** that:

A. TAOC Director Long, and all parties acting in concert with the Director, is restrained and enjoined from enforcing TAOC closure policy #3.04;

B. TAOC Director Long is ordered to provide McCaleb, along with the general public, with both virtual and in-person access so he can assign reporters to report on Tennessee Judicial Conference meetings beginning on June 15 in Middle Tennessee

7

in Franklin and the metropolitan Nashville area. Director Long is further ordered to provide the location of the meetings convening this week in Middle Tennessee.

This TRO is effective on _____ and expires on _____, absent further order of the Court. Defendant is ordered to file a response to Plaintiff's Motion for Preliminary Injunction on or before June 21, 2022, and Plaintiff is ordered to file a reply on or before June 24, 2022.

IT IS SO **ORDERED**,

June _____, 2022            _____

DISTRICT JUDGE RICHARDSON

8

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2022, a copy of the foregoing Proposed Order was filed electronically via the Court's CM/ECF filing system. Notice of this filing will be sent by operation of the Court to all parties indicated on the electronic filing receipt. Further, I hereby certify that on June 13, 2022, I sent a copy of the foregoing Proposed Order to the Office of the Tennessee Attorney General and Reporter via electronic mail as follows:

Office of the Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
tnattygen@ag.tn.gov

*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474

9