# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **DAN McCALEB, Executive Editor** of **THE CENTER SQUARE,** ) ) ) ) ) ) ) | **Case No. 3:22-cv-00439** <br><br> **District Judge Richardson** <br> **Magistrate Judge Frensley** |
| **v.** ) ) ) | |
| **MICHELLE LONG, in her** official capacity as **DIRECTOR of** **TENNESSEE ADMINISTRATIVE** **OFFICE OF THE COURTS,** ) ) ) ) ) ) | |
| Defendant. ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 2

QUESTION PRESENTED ....................................................................................... 5

PRELIMINARY STATEMENT ............................................................................... 5

STATEMENT OF FACTS ....................................................................................... 8

    A. Tennessee Judicial Conference (1953-present) .................................................. 8

    B. TAOC closure policy #3.04 (Feb. 1, 2022) ...................................................... 10

LEGAL STANDARDS ........................................................................................... 13

ARGUMENT ......................................................................................................... 14

    I. This Court should grant immediate injunctive relief stopping Director Long from enforcing the closure policy because the First Amendment right of access attaches to Tennessee Judicial Conference meetings, which the policy cannot overcome. ............................... 14

        A. Plaintiff is likely to prevail on the merits. ................................................. 15

            1. Plaintiff has Article III standing. ........................................................ 15

            2. Sovereign immunity is inapplicable under *Ex Parte Young*. ....................................................................................... 16

            3. The First Amendment right of access attaches to Tennessee Judicial Conference meetings. ........................................... 17

                a. The First Amendment attaches under the "experience" prong because similar United States Judicial Conference meetings have provided public access since 1988. ............................................................................... 19

                b. The First Amendment attaches under the "logic" prong because openness would promote public confidence in the judiciary and transparency in the rulemaking process. ......................................................................... 22

            4. The closure policy cannot overcome Plaintiff's First Amendment right of access. ................................................................ 23

        B. The remaining preliminary injunction factors favor Plaintiff. .................. 24

            1. Any loss of First Amendment rights is irreparable. ............................ 24

            2. Preserving constitutional rights serves the public interest. ............... 25

            3. The balancing of factors tilts heavily toward Plaintiff. ...................... 25

CONCLUSION ...................................................................................................... 25

Case 3:22-cv-00439   Document 7   Filed 06/13/22   Page 2 of 28 PageID #: 52

# TABLE OF AUTHORITIES

## Cases

*Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.,*
714 F. 3d 424 (6th Cir. 2013) ................................................................................ 25

*Applications of Nat'l Broad. Co.,*
828 F. 2d 340 (6th Cir. 1987) ............................................................... 18, 22, 23

*Brown & Williamson Tobacco Corp. v. FTC,*
710 F. 2d 1165 (6th Cir. 1983) .................................................................. 17, 24

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F. 3d 427
(6th Cir. 2004) ........................................................................................................ 25

*Clements v. Fashing,*
457 U.S. 957 (1982) .............................................................................................. 15

*Detroit Free Press v. Ashcroft,*
303 F.3d 681 (6th Cir. 2002) ..................................................................... passim

*Dorrier v. Dark,*
537 S.W. 2d 888 (Tenn. 1976) ........................................................................... 12

*Elrod v. Burns,*
427 U.S. 347 (1976) .............................................................................................. 24

*Ernst v. Rising,*
427 F. 3d 351 (6th Cir. 2005) ............................................................................ 16

*Ex Parte Drawbaugh,*
2 App. D.C. 404 (1894) ........................................................................................ 17

*Ex Parte Young,*
209 U.S. 123 (1908) .............................................................................................. 16

*Garlock, Inc. v. United Seal Inc.,*
404 F. 2d 256 (6th Cir. 1968) ............................................................................ 15

*Globe Newspaper Co. v. Superior Court,*
457 U.S. 596 (1982) .............................................................................................. 18

*Hamilton's Bogarts, Inc. v. Michigan,*
501 F. 3d 644 (6th Cir. 2007) ............................................................................ 15

*In re Knoxville News-Sentinel Co.,*
723 F. 2d 470 (6th Cir. 1983) ................................................................... 17, 23

*Indianapolis Star v. United States,*
692 F. 3d 424 (6th Cir. 2012) ............................................................................ 18

*Knight v. Montgomery County,*
2019 U.S. Dist. LEXIS 241127 (M.D. Tenn. Aug. 16, 2019) ....................... 13

2

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*,
172 F. 3d 397 (6th Cir. 1999) ................................................................. 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................... 15

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
945 F. 2d 150 (6th Cir. 1991) ................................................................. 13

*Mich. State A. Philip Randolph Inst. v. Johnson*,
209 F. Supp. 3d 935 (E.D. Mich. 2016) ................................................. 13

*New York Times Co. v. United States*,
403 U.S. 713 (1971) ............................................................................... 24

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................... 25

*Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell*,
467 F. 3d 999 (6th Cir. 2006) ................................................................. 13

*Press-Enterprise Co. v. Superior Court*,
464 U.S. 501 (1984) ............................................................................... 23

*Press-Enterprise Company v. Superior Court*,
478 U.S. 1 (1986) .................................................................... 18, 23, 24

*Price v. Medicaid Dir.*,
838 F. 3d 739 (6th Cir. 2016) ................................................................. 16

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ........................................................................ 17, 18

*Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*,
834 F. 3d 589 (6th Cir. 2016) ................................................................. 23

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F. 3d 299 (6th Cir. 2016) ................................................................. 23

*Swint v. Chambers County Comm'n*,
514 U.S. 35 (1995) ................................................................... 7, 22, 23

*Virginia v. Am. Booksellers Ass'n, Inc.*,
484 U.S. 383 (1988) ............................................................................... 15

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ............................................................................... 15

## Constitutional Provisions

U.S. Const. Amend. I ................................................................. passim

Tenn. Const. art. VI §1 ................................................................. 12

3

**Statutes**

28 U.S.C. § 2073.................................................................................. 6, 20, 21, 22

Tenn. Code Ann. § 8-44-101 ............................................................................ 12

Tenn. Code Ann. § 16-3-502 ............................................................................ 12

Tenn. Code Ann. § 16-3-803 ............................................................................ 12

Tenn. Code Ann. § 17-3-101 ........................................................................ 8, 12

Tenn. Code Ann. § 17-3-102 ............................................................................... 8

Tenn. Code Ann. § 17-3-103 ......................................................................... 9, 10

Tenn. Code Ann. § 17-3-104 .................................................................... 6, 9, 10, 22

Tenn. Code Ann. § 17-3-105 ......................................................................... 9, 10

Tenn. Code Ann. § 17-3-106 ............................................................................ 6, 9

Tenn. Code Ann. § 17-3-107 ............................................................................ 6, 9

**Rules**

Fed. R. Civ. P. 65 ....................................................................................... 13, 25

**Policies**

Tennessee Administrative Office of the Courts, Index #3.04 ............................passim

**Other Authorities**

Carl Tobias, *Common Sense and Other Legal Reforms*, 48 Vanderbilt Law Review 699 (1995) ............................................................................................... 20

Louis D. Brandeis, *What Publicity Can Do*, Harper's Weekly, Volume 58, Number 2974 (December 20, 1913) .......................................................................... 5

## QUESTION PRESENTED

The Supreme Court recognizes a presumptive First Amendment right of access to judicial proceedings. Federal Judicial Conference members meet to consider rules and federal court policy. Historically, meetings have been open to the public, and openness is a positive feature. Tennessee Judicial Conference members meet to consider rules and improve the administration of justice in state courts, and meetings are closed.

1.  Is there a First Amendment right of access to Tennessee Judicial Conference meetings?

## PRELIMINARY STATEMENT

"Democracies die behind closed doors." *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 683 (6th Cir. 2002). When a branch of government closes its doors, "it selectively controls information rightfully belonging to the people." *Id*. The Framers of the Constitution "protected the people against secret government." *Id*. Justice Louis D. Brandeis, a member of the Supreme Court from 1916-1939 and a towering judicial figure in our nation's history, once famously wrote, "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[1] The Tennessee Judicial Conference should open its doors and let the sunshine in so the public and

---

[1] Louis D. Brandeis, *What Publicity Can Do*, Harper's Weekly, Volume 58, Number 2974, p.10 (December 20, 1913), *available at* https://quoteinvestigator.com/2020/09/22/sunlight/#f+438413+1+8 at n. 8 (last visited June 8, 2022).

5

press can attend meetings and observe members discharging their official duties. Indeed, the First Amendment demands it.

Tennessee's General Assembly enacted a statute in 1953 that requires Tennessee Judicial Conference members to meet annually and: (1) consider all matters to improve the efficient administration of justice in state courts;[2] (2) consider laws and rules of procedure to suppress crime and promote peace and good order;[3] (3) prescribe rules of official conduct for all judges;[4] and (4) appoint committee members to draft legislation and make recommendations to submit to the General Assembly.[5]

This is not a continuing legal education retreat for members. Rather, the General Assembly enacted the Tennessee Judicial Conference statute through legislative action requiring its members to meet annually and deliberate on state court policy. The General Assembly prescribed on members similar duties to those Congress imposed on United States Judicial Conference members for overseeing federal court policy. As Tennessee Judicial Conference's federal equivalent, the Judicial Conference of the United States has had an enduring and historical tradition for nearly 34 years of public access to committee meetings on proposed rules of practice, procedure, and evidence. *See* 28 U.S.C. § 2073(c)(1); *see also Swint*

---

[2] *See* Tenn. Code Ann. § 17-3-104(a)
[3] *See* Tenn. Code Ann. § 17-3-107
[4] *See* Tenn. Code Ann. § 17-3-106
[5] *See* Tenn. Code Ann. § 17-3-107

6

*v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995) (explaining § 2073(c)(1) applies to bench-bar rules committees, and meetings are ordinarily "open to the public").

But the new closure policy of the Tennessee Administrative Office of the Courts ("TAOC") firmly shuts the door on the public and press and restricts access to Tennessee Judicial Conference meetings. This blanket closure policy is a solution in search of a problem. It was promulgated by state administrative fiat, rewriting the Tennessee Judicial Conference statute and the Tennessee Open Meetings Act enacted by the General Assembly. It does not list specific findings. It fails to show a compelling state interest justifying closure. And it is not narrowly tailored to serve its claimed interest. Moreover, it imposes a gag order on members and administrative court office staff preventing disclosure of dates, physical location, virtual access link, speaker documents, or other materials related to Tennessee Judicial Conference meetings.

In ruling on the motion for temporary restraining order and preliminary injunction, the Court is presented with a straightforward issue: (1) Is there a First Amendment right of access to Tennessee Judicial Conference meetings? If the answer is yes, the burden shifts, requiring the state show closure is necessary because of a compelling interest that is narrowly tailored to serve that interest. *Detroit Free Press,* 303 F. 3d at 682-83, 705.

Tennessee Judicial Conference annual meetings are convening **June 15** in Middle Tennessee. Plaintiff, Dan McCaleb, Executive Editor of The Center Square (hereinafter "McCaleb" or "Plaintiff"), is a member of the press seeking a

7

preliminary injunction and an emergency temporary restraining order on or before

**June 14, 2022** to preserve the status quo: (1) to stop enforcement of the state

closure policy that prevents public and press access to meetings; and (2) to obtain

both in-person and virtual access so he may assign reporters he supervises at The

Center Square to report on future Tennessee Judicial Conference meetings

including those beginning on June 15 in Franklin and metropolitan Nashville.

## STATEMENT OF FACTS

### A. Tennessee Judicial Conference (1953-present)

In 1953, the Tennessee General Assembly passed a law creating the

Tennessee Judicial Conference, comprised of all judges of state courts of record.[6]

Governor Frank G. Clement signed the bill into law, and state supreme court justice

A.B. Neil was Tennessee Judicial Conference's first president. *Id.*; *see* Tenn. Code

Ann. § 17-3-101.

Membership in the Tennessee Judicial Conference includes all active and

retired state court judges whose salary is paid in whole or in part out of the state

treasury. Tenn. Code Ann. § 17-3-101(a). Membership also includes active and

retired judges who are licensed attorneys at law of all probate courts in counties

exceeding a certain population threshold. *See* Tenn. Code Ann. § 17-3-101(b). The

Tennessee Attorney General and Reporter is an ex officio member of the Tennessee

Judicial Conference and acts as its legal advisor. Tenn. Code Ann. § 17-3-102.

---

[6] https://www.tncourts.gov/history (last visited June 8, 2022).

8

Tennessee Judicial Conference members are required to meet annually "for the consideration of any and all matters pertaining to the discharge of the official duties and obligations of its several members, to the end that there shall be a more prompt and efficient administration of justice in the courts of [the] state." Tenn. Code Ann. § 17-3-104(a). "It is the official duty of each member of the conference, with the exception of retired judges, to attend its annual meetings unless otherwise officially engaged or for other good and sufficient reasons." Tenn. Code Ann. § 17-3-105(a). Moreover, "[i]t is the duty of the conference to give consideration to the enactment of laws and rules of procedure that in its judgment may be necessary to the more effective suppression of crime and thus promote peace and good order in the state." Tenn. Code Ann. § 17-3-107. To discharge these duties, "a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly." *Id.*

Members elect officers and appoint an executive committee at the annual meeting. Tenn. Code Ann. § 17-3-103(a); Tenn. Code Ann. § 17-3-103(b)(1). Members of the executive committee are reimbursed for their reasonable and necessary travel expenses incurred in attending meetings. Tenn. Code Ann. § 17-3-103(b)(5). And all members of the Tennessee Judicial Conference are entitled to be reimbursed for expenses in attending the annual meeting. Tenn. Code Ann. § 17-3-105(b). Members "shall have full power and authority to prescribe rules of official conduct for all judges, the rules to be in compliance with the code of judicial ethics as promulgated by the American Bar Association but not otherwise." Tenn. Code Ann. § 17-3-106.

9

The Tennessee Judicial Conference is further required by statute to "set the time and place of each annual meeting." Tenn. Code Ann. § 17-3-104(b). The statute is silent as to whether meetings are either open or closed to the public and press. *See generally* Tenn. Code Ann. §§ 17-3-101 through 17-3-107. The statute does not reference continuing legal education classes for members during annual meetings. *See id.* The statute does reference the state supreme court's "policies and guidelines" on reimbursing members' expenses to attend meetings. *See* Tenn. Code Ann. § 17-3-103(b)(5); *see also* Tenn. Code Ann. § 17-3-105(b).

**B. TAOC closure policy #3.04 (Feb. 1, 2022)**

TAOC oversees the state court system. TAOC's mission is "to promote the effective and efficient administration of justice in the state of Tennessee."[7] In December of 2021, TAOC promoted Michelle Long, a Deputy Director at the time, to be the new TAOC Director effective February 1, 2022.[8] As the Director of TAOC, Long is "the chief administrative officer of the state court system." Tenn. Code Ann. § 16-3-803(a). On February 1, 2022, her first day as TAOC Director, Long promulgated a new closure policy for TAOC-hosted "conferences." This new closure policy approved by Director Long is index #3.04 and may be found on TAOC's

[7] https://www.tncourts.gov/press/2021/12/15/supreme-court-names-long-next-aoc-director (last visited June 8, 2022).
[8] *See id.*

website.[9] A true and correct copy of policy #3.04 is attached to the Complaint

("Compl.") as *Exhibit 1*. The closure policy defines several terms:

A. "Conference" is a formal education-centered gathering of current or former members of the ***Tennessee Judicial Conference***, Tennessee General Sessions Judges Conference, Tennessee Conference of Juvenile and Family Court Judges, Tennessee Municipal Judges Conference, Tennessee State Court Clerks Association, or current appellate law clerks and staff attorneys who work in a full-time or part-time status.

B. "Conference Attendee" is any current or former justice, judge, senior judge, magistrate, court clerk, or current law clerk or staff attorney who works in a full-time or part-time status.

C. "Staff" is any person who works for the [T]AOC in a full-time or part-time status.

D. "Invited Speaker" is any person who is not otherwise considered a "Conference Attendee" or "Staff" and is invited to a[] [T]AOC conference to present on a specific subject matter or training session.

Compl., *Exhibit 1*, ¶ II, p. 1 (emphasis added).[10] Under closure policy #3.04,

"[c]onferences are not open meetings. Only conference attendees, invited speakers,

and staff will be permitted to enter the physical conference spaces or receive virtual

access links." Compl., *Exhibit 1*, ¶ V, p. 2.

---

[9] https://www.tncourts.gov/sites/default/files/docs/administrative_policy_3.04_attendance_at_aoc_conferences_2-1-22_-_ml_initialed_0.pdf (last visited June 8, 2022).

[10] The closure policy applies to other conferences for judges created by the General Assembly through legislative action, such as the Tennessee General Sessions Judges Conference (Tenn. Code Ann. §17-3-201) and the Tennessee Municipal Judges Conference (Tenn. Code Ann. § 17-3-301). Like the Tennessee Judicial Conference statute, the statutes enacted by the General Assembly governing these other conferences for judges are also silent as to whether they are open or closed to the public. *See generally*, §§ 17-3-201, 17-3-301.

The stated purpose of closure policy #3.04 is to "ensure the safety and security of conference attendees, staff, and invited speakers during [T]AOC conferences." *Id*. at ¶ III, p. 1. Under Article I, in bold, it states as follows:

**The safety and security of conference attendees, staff, and invited speakers during conferences is of paramount importance. The Administrative Office of the Courts ([T]AOC) and the Tennessee Department of Safety and Homeland Security will implement appropriate security protocols for events taking place at each conference.**

*Id*. at ¶ I, p. 1. The closure policy mandates that "all conference attendees, invited speakers, and staff shall maintain the confidentiality of the dates, physical location, and/or link to virtual access, speaker documents, and other conference materials."

*Id*. at ¶ VI, p. 2. Policy #3.04 cites several authorities to justify its promulgation:

- Tenn. Const. art. VI §1
- Tenn. Code Ann. § 16-3-502
- Tenn. Code Ann. § 16-3-803
- Tenn. Code Ann. § 8-44-101
- *Dorrier v. Dark*, 537 S.W. 2d 888, 892 (Tenn. 1976)

*Id*. at ¶ I, p. 1. Notably, closure policy #3.04 does not provide as legal support the actual Tennessee Judicial Conference statute itself, Tenn. Code Ann. § 17-3-101, et seq., which does not state that meetings are closed to the public. In other words, the status quo is that meetings are presumptively open to the public and press. Had the General Assembly intended Tennessee Judicial Conference meetings to be closed, it could have expressly stated so in the statutory text. Further, none of the cited statutes listed in the closure policy designate or impose confidentiality or closure requirements on Tennessee Judicial Conference meetings.

12

## LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 65, a court analyzes four factors in determining whether to grant a motion for preliminary injunctive relief:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Detroit Free Press*, 303 F. 3d at 685 (cleaned up). Although a preliminary injunction is an extraordinary remedy, "[t]hese factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell,* 467 F. 3d 999, 1009 (6th Cir. 2006) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F. 2d 150, 152 (6th Cir. 1991)).

A temporary restraining order (TRO) is also an extraordinary remedy designed to protect the status quo pending a preliminary injunction ruling. *Mich. State A. Philip Randolph Inst. v. Johnson*, 209 F. Supp. 3d 935, 941-42 (E.D. Mich. 2016)). "[A] TRO may be issued only where the harm to [a] plaintiff[ ] is both irreparable *and* immediate." *Knight v. Montgomery County*, 2019 U.S. Dist. LEXIS 241127, *4 (M.D. Tenn. Aug. 16, 2019) (emphasis in original) (Richardson, J.).

# ARGUMENT

## I. This Court should grant immediate injunctive relief stopping Director Long from enforcing the closure policy because the First Amendment right of access attaches to Tennessee Judicial Conference meetings, which the policy cannot overcome.

From the record before this Court, McCaleb has satisfied his burden entitling him to relief. This includes a TRO to preserve the status quo of meetings being presumptively open to the public and press in accordance with the statutory text enacted by the General Assembly. It entitles him to a preliminary injunction stopping Director Long from enforcing TAOC's closure policy #3.04. This showing further entitles McCaleb to both virtual and in-person access so he may assign reporters he supervises to report on future Tennessee Judicial Conference meetings, including in Middle Tennessee this week.

*First*, the public right of access under the First Amendment attaches to Tennessee Judicial Conference meetings. Meetings of the Judicial Conference of the United States provide the quintessential equivalent proceedings to Tennessee Judicial Conference meetings. Federal Judicial Conference meetings are indistinguishable from Tennessee Judicial Conference meetings. They differ in only one material area: Federal Judicial Conference meetings have historically been open to the public for many years, and Tennessee Judicial Conference meetings are closed to the public and press.

*Second*, open access to Tennessee Judicial Conference meetings would be positive because openness would promote public confidence in the judiciary and transparency in the state court rulemaking process.

14

*Third*, the closure policy cannot overcome the First Amendment right of access. It lists no findings, has no compelling interest, and is not narrowly tailored.

## A. Plaintiff is likely to prevail on the merits.

Under the first preliminary injunction factor, a movant must demonstrate at least a meaningful "[p]robability of success." *Garlock, Inc. v. United Seal Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968). In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F. 3d 644, 649 (6th Cir. 2007).

### 1. Plaintiff has Article III standing.

Before a court considers likely success on the merits, a plaintiff must first establish the necessary constitutional standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish minimum Article III standing, a plaintiff must show: (1) an injury-in-fact that is concrete, particularized, and imminent; (2) fairly traceable to defendant's conduct; and (3) would be redressed by a favorable court decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). But Article III standing does not require a plaintiff to engage in "costly futile gestures simply to establish standing, particularly when the First Amendment is implicated." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.*, 172 F. 3d 397, 406 (6th Cir. 1999) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988); *Clements v. Fashing*, 457 U.S. 957, 962 (1982)).

McCaleb has demonstrated he has Article III standing to sue and assert his pre-enforcement First Amendment right of access claim. First, McCaleb's injury

15

arises out of his inability as Executive Editor of The Center Square to assign reporters to report on future Tennessee Judicial Conference meetings, either virtually or in-person, including upcoming meetings beginning on June 15 in Middle Tennessee. *See* Declaration of Dan McCaleb ("McCaleb Decl.") ¶16. Second, McCaleb's injury can be traced to Director Long promulgating TAOC's closure policy #3.04. McCaleb Decl. ¶15. McCaleb learned of this policy about one week ago on or about June 6, 2022. McCaleb Decl. ¶15. But for the closure policy, McCaleb would make an editorial decision to assign reporters to report on future meetings, either virtually or in person, including upcoming meetings this week in Middle Tennessee. McCaleb Decl. ¶17. Third, a favorable decision from this Court stopping Long from enforcing the policy and providing McCaleb with virtual and in-person access so he can assign reporters to cover meetings this week and, in the future, redresses his First Amendment deprivation and injury. McCaleb Decl. ¶¶27, 28.

### 2. Sovereign immunity is inapplicable under *Ex Parte Young*.

One additional issue a court must consider before analyzing a plaintiff's likelihood of success on the merits is the Eleventh Amendment. Sovereign immunity under the Eleventh Amendment protects states and state officials when they are sued in their official capacity for money damages. *Ernst v. Rising*, 427 F. 3d 351, 358 (6th Cir. 2005). An exception to sovereign immunity is when the *Ex Parte Young* doctrine applies. *See generally Ex Parte Young*, 209 U.S. 123 (1908). "[A] federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Price*

16

*v. Medicaid Dir.*, 838 F. 3d 739, 746-47 (6th Cir. 2016). *Ex Parte Young* applies here, and thus the Eleventh Amendment is inapplicable. First, McCaleb has sued Long in her official capacity as Director of the TAOC for promulgating its closure policy. Compl., ¶14. Second, McCaleb seeks prospective or future injunctive relief to stop Long from enforcing the closure policy. Compl., ¶12. Third, McCaleb seeks future injunctive relief against Long to end the closure policy's ongoing and continuing violation of his First Amendment right of access to assign reporters to report on future Tennessee Judicial Conference meetings, including this week's annual meetings in Middle Tennessee. Compl., ¶12.

### 3. The First Amendment right of access attaches to Tennessee Judicial Conference meetings.

The First Amendment right of access attaches to Tennessee Judicial Conference meetings. "[T]he open courtroom has been a fundamental feature of the American judicial system." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F. 2d 1165, 1177 (6th Cir. 1983). This firmly rooted history of open access to courts was perhaps best summarized by the D.C. Circuit in the nineteenth century when it warned that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co.*, 723 F. 2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbaugh*, 2 App. D.C. 404, 407 (1894)).

To determine whether the First Amendment right of access attaches, courts must apply a two-part test. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555,

17

589 (1980) (Brennan, J. concurring in the judgment). First, a court looks to a similar proceeding to see whether it historically has been open to the public because "a tradition of accessibility implies the favorable judgment of experience." *Id.* Second, a court must determine "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Company v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enter. II*"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *see also Richmond Newspapers* 448 U.S. at 589. *Richmond Newspapers* is the seminal case in which the Supreme Court recognized a First Amendment right of access for the public and press to attend criminal trials based on the tradition of trials being presumptively open. *See generally Richmond Newspapers*, 448 U.S. 555. The Sixth Circuit refers to the *Richmond Newspapers* two-part test as the "experience and logic" test. *Detroit Free Press,* 303 F. 3d at 700.

The fundamental right of public and press access extends beyond a criminal trial and applies to other criminal proceedings, criminal records, civil proceedings, and civil records. *Indianapolis Star v. United States*, 692 F. 3d 424, 429-30 (6th Cir. 2012) (cleaned up); *Detroit Free Press,* 303 F. 3d at 695 n.11 (recognizing other circuits beyond the Sixth have "agreed that the press and public have a First Amendment right to attend civil proceedings…"); *Applications of Nat'l Broad. Co.*, 828 F. 2d 340, 347 (6th Cir. 1987) ("the importance of some pretrial proceedings dictates that the rule of openness not be confined to the actual trial").

18

### a. The First Amendment attaches under the "experience" prong because similar United States Judicial Conference meetings have provided public access since 1988.

The Judicial Conference of the United States is the national policymaking body for federal courts.[11] The current name took effect when Congress enacted into law 28 U.S.C. § 331.[12] Prior to this, the body was known as the Conference of Senior Circuit Judges from its inception in 1922, and this year marks the Centennial of the Judicial Conference of the United States.[13]

At the end of each calendar year on New Year's Eve, United States Supreme Court Chief Justice John G. Roberts, Jr. publishes his annual year-end report on the federal judiciary.[14] This past December Chief Justice Roberts delivered his 2021 report and paid tribute to William Howard Taft, who served as both President of the United States and Chief Justice of the Supreme Court, as well as visionary of a governing body that would one day oversee federal court policy.[15] As noted by Chief Justice Roberts in his 2021 year-end report, it was Chief Justice Taft's vision behind the modern-day Judicial Conference.[16] In the fall of 1922, Congress passed a statute bringing to fruition Chief Justice Taft's campaign to form "a governing body within

---

[11] *Available at* https://www.uscourts.gov/about-federal-courts/governance-judicial-conference (last visited June 8, 2022).

[12] *Id*.

[13] *Id*.

[14] *Available at* https://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx (last visited June 8, 2022).

[15] *Available at* https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf (last visited June 8, 2022).

[16] *Id*. at p. 2.

the Judiciary to focus on administration of the Judiciary's work."[17] The Conference

was charged by law with "ensuring efficient administration of justice in the courts

and creating managerial policy for the Judiciary."[18]

Approximately 34 years ago, Congress enacted a reform statute known as the

Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28

U.S.C. § 2073(c)(1).[19] The purpose of this statute was to reinvigorate the national

rule revision process by "opening it to greater public involvement, effectively

analogizing the process to notice-comment rulemaking under the Administrative

Procedure Act."[20] The relevant provision of the statute opening access to Judicial

Conference committee meetings on proposed rules of practice, procedure, and

evidence is codified at 28 U.S.C. § 2073(c)(1). It states as follows:

> Each meeting for the transaction of business under this chapter by any
> committee appointed under this section shall be open to the public,
> except when the committee so meeting, in open session and with a
> majority present, determines that it is in the public interest that all or
> part of the remainder of the meeting on that day shall be closed to the
> public, and states the reason for so closing the meeting. Minutes of
> each meeting for the transaction of business under this chapter shall
> be maintained by the committee and made available to the public,
> except that any portion of such minutes, relating to a closed meeting
> and made available to the public, may contain such deletions as may
> be necessary to avoid frustrating the purposes of closing the meeting.

---

[17] *Id.*

[18] *Id.*

[19] The effective date of the reform statute was December 1, 1988. *See* Judicial Improvements and Access to Justice Act of 1988, § 407, https://www.govinfo.gov/content/pkg/STATUTE-102/pdf/STATUTE-102-Pg4642.pdf.

[20] Carl Tobias, *Common Sense and Other Legal Reforms*, 48 Vanderbilt Law Review 699, 706 (1995), *available at* https://scholarship.law.vanderbilt.edu/vlr/vol48/iss3/7 (last visited June 8, 2022).

20

28 U.S.C. § 2073(c)(1).

The Standing Committee and each of the Advisory Rules Committees typically meet twice a year and meetings are open to the public subject to the limited exceptions in 28 U.S.C. § 2073(c)(1).[21] This open access policy extends to both in-person and virtual attendance of meetings.[22] In addition to listing upcoming meeting dates and locations in a calendar format on the U.S. Courts' website, advance notices for each meeting are published in the Federal Register. *Id.* [23] Transcripts and testimony provided during committee meetings are published and archived.[24] Meeting agenda books dating back to 1992 are published and archived.[25] The Administrative Office of the U.S. Courts — the federal equivalent to TAOC — maintains and archives committee meeting reports from 1937.[26] The federal administrative court office also archives committee meeting minutes going back to 1935.[27] Additionally, a search on YouTube reveals that past Judicial Conference meetings with federal judges discussing the rule-making process—for example a

---

[21] *Available at* https://www.uscourts.gov/rules-policies/about-rulemaking-process/open-meetings-and-hearings-rules-committee (last visited June 8, 2022).
[22] *Id.*
[23] *Available at* https://www.federalregister.gov/agencies/judicial-conference-of-the-united-states (last visited June 8, 2022).
[24] *Available at* https://www.uscourts.gov/rules-policies/records-rules-committees/transcripts-and-testimony (last visited June 8, 2022).
[25] *Available at* https://www.uscourts.gov/rules-policies/records-rules-committees/agenda-books (last visited June 8, 2022).
[26] *Available at* https://www.uscourts.gov/rules-policies/records-and-archives-rules-committees/committee-reports (last visited June 8, 2022).
[27] *Available at* https://www.uscourts.gov/rules-policies/records-and-archives-rules-committees/meeting-minutes (last visited June 8, 2022).

21

2006 Federal Circuit Court of Appeals session—have been broadcast on cable television by C-SPAN.[28]

Here, under the "experience" prong, the First Amendment right of access attaches to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700. It is well-settled "that meetings of bench-bar committees established to recommend rules ordinarily [are] open to the public." *Swint,* 514 U.S. at 48; *see also* 28 U.S.C. § 2073(c)(1). Members of the Tennessee Judicial Conference meet to discharge their official duties and consider rules, draft legislation, and then submit their recommendations to the General Assembly, just like members of the United States Judicial Conference in their open meetings when they consider rules and submit their recommendations to Congress. Tenn. Code Ann. § 17-3-104(a); Tenn. Code Ann. § 17-3-106; Tenn. Code Ann. § 17-3-107; Compl., ¶62, ¶63, ¶64; McCaleb Decl., ¶12, ¶13, ¶14, and ¶17.

### b. The First Amendment attaches under the "logic" prong because openness would promote public confidence in the judiciary and transparency in the rulemaking process.

Under the "logic" prong, the First Amendment right of access attaches to Tennessee Judicial Conference meetings. *See Detroit Free Press,* 303 F. 3d at 700. "Openness in judicial proceedings promotes public confidence in the courts." *Applications of NBC,* 828 F. 2d at 347. Here, open Tennessee Judicial Conference meetings would be positive because openness would promote public confidence in

---

[28] *Available at* https://www.youtube.com/watch?v=EwVUyZmynF0 (last visited June 8, 2022).

the judiciary and transparency in the state court rulemaking process. Allowing the public and press to observe members at federal Judicial Conference meetings considering rules and making recommendations to Congress has played a significant and positive role in the rulemaking process regarding federal court policy. *See Swint*, 514 U.S. at 48.

### 4. The closure policy cannot overcome Plaintiff's First Amendment right of access.

When the First Amendment right of access applies, the burden on a party seeking closure "is a heavy one." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F. 3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d at 476)). The asserted interest in closure may not be based on platitudes, speculation, or conjecture, but instead must be identified with specificity. *Id.* at 307-08. There must be specific findings on the record so that a reviewing court can determine whether closure was proper and whether less restrictive alternatives exist. *See Press- Enter. II*, 478 U.S. at 13. "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Application NBC,* 828 F. 2d at 343 (quoting *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 510 (1984) ("*Press-Enter. I*")); *see also Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F. 3d 589, 593 (6th Cir. 2016). In the context of court records, interests deemed compelling are: (1) national security; (2) trade secrets;

23

(3) fair trial rights of criminal defendants; (4) third party privacy rights, especially innocent third parties; (5) privileged information; and (6) confidential information designated by statute. *Brown & Williamson*, 710 F.2d at 1179.

The closure policy fails to overcome McCaleb's First Amendment right of access. *See Detroit Free Press,* 303 F. 3d at 682-83, 705. First, there are no findings to assist a reviewing court to determine whether closure was proper and whether less restrictive alternatives exist. *See Press- Enter. II*, 478 U.S. at 13. For example, the closure policy does not indicate whether safety or security breaches occurred at past meetings. Moreover, although attendees' safety and security are important, a generalized interest in "safety and security" is not a legally compelling interest that can overcome the First Amendment. *See Brown & Williamson*, 710 F.2d at 1179. Finally, the blanket closure policy lacks precision and tailoring because it prevents the public and press from attending virtually even though virtual attendance at Tennessee Judicial Conference meetings would pose no safety or security risk, much less a physical threat to attendees. *See Detroit Free Press,* 303 F.3d at 707.

**B. The remaining preliminary injunction factors favor Plaintiff.**

**1. Any loss of First Amendment rights is irreparable.**

McCaleb's injury is irreparable because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). Moreover, he has shown his injury "is both irreparable and immediate" entitling McCaleb to a TRO to preserve

24

the status quo of meetings being presumptively open. *Knight*, 2019 U.S. Dist. LEXIS at *4; McCaleb Decl., ¶15, ¶16, ¶17, ¶23, ¶24, ¶27, and ¶28.

### 2. Preserving constitutional rights serves the public interest.

When the state is a defendant, the third and fourth factors (harm to others and public interest) merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the state closure policy cannot overcome McCaleb's First Amendment right of access to Tennessee Judicial Conference meetings, so "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F. 3d 427, 436 (6th Cir. 2004).

### 3. The balancing of factors tilts heavily toward Plaintiff.

The press is "on equal footing with the public;" therefore, a win for McCaleb is a win for the public. *See Detroit Free Press*, 303 F. 3d at 694.

### CONCLUSION

McCaleb requests emergency injunctive relief on or before **June 14, 2022**.[29] He seeks a preliminary injunction and TRO to preserve the status quo: (1) to stop Long's enforcement of TAOC closure policy #3.04; and (2) to obtain both in-person and virtual access so he can assign reporters to report on future meetings.[30]

---

[29] Because Plaintiff seeks preliminary injunctive relief for the loss of his First Amendment rights and the state faces no risk of monetary loss or injury, respectfully the Court should exercise its discretion and waive the bond requirement of Fed. R. Civ. P. 65(c) should the Court issue Plaintiff's requested relief. *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F. 3d 424, 431 (6th Cir. 2013).

[30] A proposed TRO will be submitted in accordance with LR 65.01(b).

25

June 13, 2022

Respectfully submitted,

*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *pro hac vice pending*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
423-326-7548-mobile
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square

26

# CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction was filed electronically via the Court's CM/ECF filing system. Notice of this filing will be sent by operation of the Court to all parties indicated on the electronic filing receipt. Further, I hereby certify that on June 13, 2022, I sent a copy of the foregoing Memorandum to the Office of the Tennessee Attorney General and Reporter via electronic mail as follows:

Office of the Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
tnattygen@ag.tn.gov

/s/ M. E. Buck Dougherty III
M. E. Buck Dougherty III, TN BPR #022474

27