THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 3:22-00439 |
| MICHELLE LONG, in her official capacity as DIRECTOR of TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) ) ) | District Judge Richardson Magistrate Judge Frensley |
| Defendant. | ) | |

---

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

The plaintiff, Dan McCaleb, Executive Editor of The Center Square

("McCaleb" or "Plaintiff"), by and through his undersigned attorneys, hereby files

his First Amended Complaint For Declaratory and Injunctive Relief and alleges as

follows:[1]

---

[1] In accordance with Fed. R. Civ. P. 15(a), Plaintiff is allowed to amend a pleading
once as a matter of course within 21 days after serving the original complaint.

1

# INTRODUCTION

1. McCaleb is a veteran editor and has worked in journalism for more than 25 years, and he is currently Executive Editor of The Center Square. Most recently, McCaleb served as editorial director of Shaw Media and the top editor of the award winning Northwest Herald in suburban Chicago.[2]

2. The Center Square was launched in May 2019 to fulfill the need for high-quality statehouse and statewide news across the United States.[3]

3. The Center Square's focus is state-and local-level government and economic reporting. As a result of this approach, its readers are better informed about the issues of state and local government and its cost to the citizens whose tax dollars fund governmental decisions.

4. The Center Square is staffed by editors and reporters with extensive professional journalism experience. It engages its readers with essential news, data, and analysis.

5. The Center Square distributes its journalism through three main channels at no cost to readers, including a newswire service to legacy publishers and broadcasters, its own website, and social media.

6. The Center Square is a project of the 501(c)(3) Franklin News Foundation, headquartered in Chicago, Illinois. The Center Square provides extensive news

---

[2] https://www.thecentersquare.com/users/profile/dan%20mccaleb/.
[3] https://www.thecentersquare.com/site/about/about.html.

coverage throughout the United States, including the Southeast region and Tennessee.[4]

7. On or about June 30, 2022, McCaleb learned the Tennessee Supreme Court appoints a bench-bar advisory commission established to recommend rules and its meetings are closed to the public. Members of this current appointed advisory commission may be found on the Tennessee Administrative Office of the Court's ("TAOC") website.[5]

8. Michelle Long is the current TAOC Director. There exists a reasonable expectation that Director Long will continue to close future meetings of the Tennessee bench-bar advisory commission established to recommend rules.

9. In contrast to closed meetings of the Tennessee bench-bar advisory commission, the bench-bar Advisory Committees established to recommend rules of *federal* courts are open to the public and press.[6]

10. There is an enduring historical tradition for nearly 34 years of public access to meetings of the bench-bar Advisory Committees on proposed federal rules of practice, procedure, and evidence. *See* 28 U.S.C. § 2073(c)(1).

---

[4] https://www.thecentersquare.com/tennessee/.

[5] *Available at* https://www.tncourts.gov/boards-commissions/boards-commissions/advisory-commission-rules-practice-procedure (last visited June 30, 2022).

[6] *Available at* https://www.uscourts.gov/rules-policies/about-rulemaking-process/open-meetings-and-hearings-rules-committee (last visited June 30, 2022).

3

11. McCaleb seeks prospective injunctive relief to stop Director Long from closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules.

12. McCaleb further seeks prospective injunctive relief against Director Long to end closed bench-bar advisory commission meetings and the ongoing and continuing violation of his First Amendment right of access to assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules.

## PARTIES AND JURISDICTION

13. McCaleb is Executive Editor of The Center Square. He is a resident of Illinois and citizen of the United States.

14. Defendant, Michelle Long, is being sued in her official capacity as Director of the Tennessee Administrative Office of the Courts, located at 511 Union Street, Suite 600, Nashville, Tennessee 37219. Director Long may be served with process by serving the Office of the Tennessee Attorney General and Reporter pursuant to Fed. R. Civ. P. 4(j)(2)(B) and Tenn. R. Civ. P. 4.04(6).

15. This case raises federal claims arising under 42 U.S.C. § 1983 and the First Amendment of the United States Constitution; therefore, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16. Plaintiff's claims for declaratory and injunctive relief are authorized in accordance with: 28 U.S.C. §§ 2201 and 2202; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the general legal and equitable powers of this Court.

4

17. Venue is appropriate under 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. The Tennessee Supreme Court established a bench-bar advisory commission to recommend rules of practice and procedure in state courts, and meetings are closed to the public and press.

18. The authority to prescribe civil and criminal rules governing the practice and procedure in all state courts vests in the Tennessee Supreme Court. *See* Tenn. Code Ann. §§ 16-3-401 and 16-3-402; *see also State v. Best*, 614 S.W. 2d 791, 793 (Tenn. 1981).

19. These civil and criminal state court rules prescribed by Tennessee's Supreme Court shall not abridge the United States Constitution. Tenn. Code Ann. § 16-3-403.

20. The rules, amendments, and any subsequent modifications take effect after the Tennessee Supreme Court reports the rule to the General Assembly and both houses adopt a resolution of approval. Tenn. Code Ann. § 16-3-404; *Best*, 614 S.W. 2d at 793.

21. This statutory rulemaking scheme vesting authority in the Tennessee Supreme Court contemplates it "will make appropriate use of the advisory commissions authorized by Tenn. Code Ann. § 16-3-601." *Best*, 614 S.W. 2d at 793.

22. All rules eventually adopted by the Tennessee Supreme Court are required to be published in the Tennessee Code Annotated and may also be

5

publicized "both before and after becoming effective in a manner that the supreme court deems appropriate." Tenn. Code Ann. § 16-3-405.

23. The Tennessee Supreme Court rules are published in the Tennessee Court Rules Annotated, which is updated by replacement volumes in July of each year and are updated by supplementation once each year. *See* notes, Tenn. Code Ann. § 16-3-405.

24. As indicated above, the rulemaking authority conferred upon the Tennessee Supreme Court authorizes it to appoint members to an advisory commission to recommend rules of practice and procedure in state courts. *See* Tenn. Code Ann. § 16-3-601(a).

25. The members of the advisory commission serve for a term of three years, and members are eligible for reappointment, but they may not be appointed for more than three successive terms. Tenn. Code Ann. § 16-3-601(b).

26. Appointed members of the advisory commission are entitled to be reimbursed from the state for their expenses incurred in furtherance of the advisory commission's purpose. Tenn. Code Ann. § 16-3-601(c).

27. Subject to the approval of Director Long and state commissioner of finance, the advisory commission has authority to employ legal and clerical assistance to discharge its rulemaking duties. *See* Tenn. Code Ann. § 16-3-601(d).

28. The current makeup of the advisory commission includes individuals from the judicial bench and bar of Tennessee, including: a Tennessee supreme court justice, the clerk of Tennessee appellate courts, a state court chancellor, three state

court judges, the Tennessee solicitor general, a member of the Tennessee House of Representatives, two state supreme court staff attorneys, a law professor, the TAOC Assistant General Counsel, and several members of the state bar in private law practice.

29. This appointed bench-bar advisory commission meets periodically to study and make recommendations on rules of practice and procedure in Tennessee state courts.

30. Meetings of the bench-bar advisory commission established to recommend rules of practice and procedure in Tennessee state courts are closed to the public and press.

### B. 28 U.S.C. § 2307(c)(1) applies to the bench-bar Advisory Committees established to recommend rules of practice and procedure in federal courts, and meetings have been open to the public and press since 1988.

31. Approximately 34 years ago, Congress enacted a reform statute known as the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073(c)(1).[7]

32. The relevant provision of the statute opening access to bench-bar Advisory Committee meetings on proposed federal rules of practice, procedure, and evidence is codified at 28 U.S.C. § 2073(c)(1). It states as follows:

> Each meeting for the transaction of business under this chapter by any committee appointed under this section shall be open to the public,

---

[7] The effective date of the reform statute was December 1, 1988. *See* Judicial Improvements and Access to Justice Act of 1988, § 407, https://www.govinfo.gov/content/pkg/STATUTE-102/pdf/STATUTE-102-Pg4642.pdf.

except when the committee so meeting, in open session and with a majority present, determines that it is in the public interest that all or part of the remainder of the meeting on that day shall be closed to the public, and states the reason for so closing the meeting. Minutes of each meeting for the transaction of business under this chapter shall be maintained by the committee and made available to the public, except that any portion of such minutes, relating to a closed meeting and made available to the public, may contain such deletions as may be necessary to avoid frustrating the purposes of closing the meeting.

28 U.S.C. § 2073(c)(1).

33. The purpose of the statute was to reinvigorate the federal rule revision process by "opening it to greater public involvement, effectively analogizing the process to notice-comment rulemaking under the Administrative Procedure Act."[8]

34. Although subject to periodic criticism, the process by which the federal rules are promulgated has been praised as "perhaps the most thoroughly open, deliberative, and exacting process in the nation for developing substantively neutral rules."[9]

35. In a 1995 law review article, former Secretary to the federal Judicial Conference Standing Committee on Rules of Practice and Procedure noted, "at various points over the last sixty years both Congress and the judiciary have acted to reaffirm and renew the rulemaking process, with the objective of making it more

---

[8] Carl Tobias, *Common Sense and Other Legal Reforms*, 48 Vanderbilt Law Review 699, 706 (1995), *available at* https://scholarship.law.vanderbilt.edu/vlr/vol48/iss3/7 (last visited June 8, 2022).
[9] Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U. L. Rev. 1655, 1656 (1995), *available at* https://www.uscourts.gov/sites/default/files/mccabearticle_1.pdf (last visited June 30, 2022).

8

effective and more open." *Renewal of the Federal Rulemaking Process,* 44 Am. U.L. Rev. at 1657.

36. 28 U.S.C. § 2073(c)(1) is a part of the Rules Enabling Act, 28 U.S.C. §§ 2071-2077. The Rules Enabling Act authorizes the Supreme Court to prescribe general rules of practice and procedure and rules of evidence for federal courts.[10]

37. The Rules Enabling Act has been described as a treaty between Congress and the judiciary and represents a manifestation of the traditional doctrine of separation of powers. *Id.*

38. Congress, through the Rules Enabling Act, delegated the essential rulemaking function to a co-equal branch of government while retaining the ability to review and reject any rule adopted by the Supreme Court. *Id.*

39. Pursuant to Section 2073 of the Rules Enabling Act, the federal Judicial Conference of the United States has established procedures to govern the work of the Standing Committee and its Advisory Rules Committees. *Id.*

40. These procedures do not limit the Rules Committees' authority, and failure to comply with them does not invalidate any Rules Committee action. *Id.*

41. The United States Supreme Court analyzed § 2073(c)(1) in a 1995 opinion and explained "that meetings of bench-bar committees established to recommend

---

[10] *Available at* https://www.uscourts.gov/rules-policies/about-rulemaking-process/laws-and-procedures-governing-work-rules-committees#:~:text=The%20Rules%20Enabling%20Act%2C%2028,evidence%20for%20the%20federal%20courts (last visited June 30, 2022).

rules ordinarily [are] open to the public." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995).

42. Openness of meetings of bench-bar committees is a positive aspect of the federal rulemaking process. *See id.*

43. The federal Judicial Conference of the United States has approximately 20 committees.

44. One of the committees subject to 28 U.S.C. § 2073(c)(1)'s open meetings requirement is the committee on Rules of Practice and Procedure.

45. Within this committee on Rules of Practice and Procedure are five Advisory Committees established to recommend rules, and meetings are open to the public.

46. The five federal Advisory Rules Committees that open their meetings to the public and press are as follows:

- Advisory Committee on Appellate Rules
- Advisory Committee on Bankruptcy Rules
- Advisory Committee on Civil Rules
- Advisory Committee on Criminal Rules
- Advisory Committee on Evidence Rules

47. The Standing Committee and each of the Advisory Committees typically meet twice a year and meetings are open to the public subject to the limited exceptions in 28 U.S.C. § 2073(c)(1).

10

48. This open access policy extends to both in-person and virtual attendance of meetings.

49. In addition to listing upcoming meeting dates and locations in a calendar format on the U.S. Courts' website, advance notices for each Advisory Committee meeting are published in the Federal Register.

50. Transcripts and testimony provided during Advisory Committee meetings are published and archived.

51. Meeting agenda books dating back to 1992 are published and archived.

52. The Administrative Office of the U.S. Courts — the federal equivalent to TAOC —maintains and archives Advisory Committee meeting reports from 1937.

53. The federal administrative court office also archives Advisory Committee meeting minutes going back to 1935.

54. Additionally, a search on YouTube reveals that some past open bench-bar meetings with federal judges discussing the rule and decision-making process—for example a 2006 Federal Circuit Court of Appeals session—have been broadcast on cable television by C-SPAN.

### C. Committees established to recommend rules are also authorized by state statute pursuant to the Tennessee Judicial Conference (1953-present).

55. In 1953, the Tennessee General Assembly passed a law creating the Tennessee Judicial Conference, comprised of all judges of state courts of record.[11] Governor Frank G. Clement signed the bill into law, and state supreme court justice

---

[11] https://www.tncourts.gov/history (last visited June 8, 2022).

A.B. Neil was Tennessee Judicial Conference's first president. *Id.*; *see* Tenn. Code Ann. § 17-3-101.

56. Membership in the Tennessee Judicial Conference includes all active and retired state court judges whose salary is paid in whole or in part out of the state treasury. Tenn. Code Ann. § 17-3-101(a).

57. Membership also includes active and retired judges who are licensed attorneys at law of all probate courts in counties exceeding a certain population threshold. *See* Tenn. Code Ann. § 17-3-101(b).

58. The Tennessee Attorney General and Reporter is an ex officio member of the Tennessee Judicial Conference and acts as its legal advisor. Tenn. Code Ann. § 17-3-102.

59. Tennessee Judicial Conference members are required to meet annually "for the consideration of any and all matters pertaining to the discharge of the official duties and obligations of its several members, to the end that there shall be a more prompt and efficient administration of justice in the courts of [the] state." Tenn. Code Ann. § 17-3-104(a).

60. "It is the official duty of each member of the conference, with the exception of retired judges, to attend its annual meetings unless otherwise officially engaged or for other good and sufficient reasons." Tenn. Code Ann. § 17-3-105(a).

61. Moreover, "[i]t is the duty of the conference to give consideration to the enactment of laws and rules of procedure that in its judgment may be necessary to

the more effective suppression of crime and thus promote peace and good order in the state." Tenn. Code Ann. § 17-3-107.

62. To discharge these duties, "a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly." *Id*.

63. Members elect officers and appoint an executive committee at the annual meeting. Tenn. Code Ann. § 17-3-103(a); Tenn. Code Ann. § 17-3-103(b)(1). Members of the executive committee are reimbursed for their reasonable and necessary travel expenses incurred in attending meetings. Tenn. Code Ann. § 17-3-103(b)(5).

64. All members of the Tennessee Judicial Conference are entitled to be reimbursed for expenses in attending the annual meeting. Tenn. Code Ann. § 17-3-105(b).

65. Members "shall have full power and authority to prescribe rules of official conduct for all judges, the rules to be in compliance with the code of judicial ethics as promulgated by the American Bar Association but not otherwise." Tenn. Code Ann. § 17-3-106.

66. The Tennessee Judicial Conference is further required by statute to "set the time and place of each annual meeting." Tenn. Code Ann. § 17-3-104(b).

67. The statute is silent as to whether meetings are either open or closed to the public and press. *See generally* Tenn. Code Ann. §§ 17-3-101 through 17-3-107.

68. The statute does not reference continuing legal education classes for members during annual meetings. *See id*.

13

69. The statute does reference the state supreme court's "policies and guidelines" on reimbursing members' expenses to attend meetings. *See* Tenn. Code Ann. § 17-3-103(b)(5); *see also* Tenn. Code Ann. § 17-3-105(b).

70. On February 1, 2022, Governor Bill Lee presented the state fiscal year 2023 budget to the 112th General Assembly, which included an appropriation for "Judicial Conference." Total appropriation for Judicial Conference was $413,700, with $373,700 funded through state revenues and $40,000 funded through "other." This line-item appropriation stated, "The Judicial Conference provides continuing legal education and legal updates to judges."[12]

## CLAIMS FOR RELIEF

### COUNT I - 42 U.S.C. § 1983 - First Amendment right of access
### (To meetings of the Tennessee bench-bar advisory commission established to recommend rules; and to meetings of the Tennessee Judicial Conference committees established to recommend rules)

71. Plaintiff realleges and incorporates by reference the allegations contained in all the preceding paragraphs as though set forth fully herein.

72. Long, in her capacity as TAOC Director, acts under color of state law when she closes future meetings of the Tennessee bench-bar advisory commission established to recommend rules.

73. By closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules, Director Long deprives McCaleb of his rights secured under federal law.

---

[12] *See* State of Tennessee Fiscal Year 2022-2023 Budget Document, Volume 1.pdf, p. B-240, 302.18.

14

74. Specifically, by closing future meetings Director Long deprives McCaleb of his First Amendment right of access to assign reporters to report on meetings of the Tennessee bench-bar advisory commission established to recommend rules. *See Handy-Clay v. City of Memphis, Tenn.*, 695 F. 3d 531, 539 (6th Cir. 2012).

75. But for the closing of future meetings, as the Executive Editor of The Center Square, McCaleb would make an editorial decision to assign reporters he supervises to report and cover meetings of the Tennessee bench-bar advisory commission established to recommend rules.

76. Likewise, McCaleb would make an editorial decision to assign reporters he supervises to report and cover future meetings of any committees of the Tennessee Judicial Conference established to recommend rules.

77. As part of his duties as Executive Editor, McCaleb assigns reporters to cover newsworthy events in Tennessee that he thinks would be keeping within The Center Square's focus on state-and local-level government.

78. As Executive Editor, McCaleb thinks reporting and covering Tennessee's bench-bar advisory commission established to recommend rules would be keeping within The Center Square's focus on state-and local-level government and would engage its readers with essential news, data, and analysis on the state court rulemaking process in Tennessee state courts.

79. Under the *Richmond Newspapers* two-part test, the First Amendment right of access attaches to meetings of the Tennessee bench-bar advisory

15

commission established to recommend rules. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (Brennan, J. concurring in the judgment).

80. The First Amendment right of access attaches under the "experience" prong to the Tennessee bench-bar advisory commission established to recommend rules. *See Detroit Free Press v. Ashcroft,* 303 F.3d 681, 700 (6th Cir. 2002).

81. Meetings of the federal bench-bar Advisory Committees provide the quintessential equivalent proceedings in form and substance to meetings of the Tennessee bench-bar advisory commission established to recommend rules.

82. It is well-settled law "that meetings of bench-bar committees established to recommend rules ordinarily [are] open to the public." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995); *see also* 28 U.S.C. § 2073(c)(1).

83. Members of Tennessee's bench-bar advisory commission meet to recommend proposed rules of practice and procedure in state courts, just like members of the federal bench-bar Advisory Committees in their open meetings when they meet to recommend proposed federal court rules. *See* Tenn. Code Ann. § 16-3-601; *see also* 28 U.S.C. § 2071, et seq.

84. Under the "logic" prong, the First Amendment right of access attaches to the Tennessee bench-bar advisory commission meetings. *See Detroit Free Press,* 303 F. 3d at 700.

85. Open Tennessee bench-bar advisory commission meetings would be positive because openness would promote public confidence in the judiciary and

16

transparency in the state court rulemaking process. *Applications of Nat'l Broad. Co.*, 828 F. 2d 340, 347 (6th Cir. 1987)

86. Allowing the public and press to observe members at federal bench-bar Advisory Committee meetings considering and recommending rules has played a significant and positive role in the rulemaking process regarding federal court rules. *See Swint*, 514 U.S. at 48.

87. Based on a publicly available 2009 publication by the Davidson County Circuit Court Clerk's Office welcoming the new president of the Tennessee Judicial Conference, in 2009 the Tennessee Judicial Conference had approximately 20 committees.[13]

88. Upon information and belief, there are at least the same number of committees currently, if not more, and some of these committees meet to recommend rules.

89. In this 2009 Davidson County Clerk's publication explaining its committee structure, the article noted the "Conference relies on a committee structure, comprised of approximately 20 committees, to carry out its mission of improving the judiciary and the practice of law. For example, the Legislative Committee reviews proposed legislation as it relates to the judiciary, and the Conference may even initiate legislation to address specific concerns." *Id*.

90. Based on a publicly available 2022 judges' schedule from the First Judicial District of Tennessee, there are at least three sessions of Tennessee

---

[13] https://circuitclerk.nashville.gov/wp-content/uploads/rr2009_07.pdf/.

Judicial Conference meetings scheduled for 2022: (1) March 8-10; (2) June 15-17; and (3) October 25-27.[14]

91. Upon information and belief, meetings of the Tennessee bench-bar advisory commission established to recommend rules will meet in the remaining 2022 calendar year, including possibly in conjunction with the October 2022 Tennessee Judicial Conference meetings, if not sooner.

92. During the COVID-19 pandemic, TAOC adopted virtual hearings and has its own YouTube Channel where judicial proceedings remain publicly available.[15]

93. TAOC continues to utilize its virtual infrastructure in other court-related events including public meetings. For example, TAOC has a public notice on its website of an "ADR Commission" quarterly meeting in October, and the event is open to the public. Notably, it states the "meeting will be in-person and via Zoom."[16]

94. In its "history and milestones" March 13, 2020, entry, TAOC looks back on the pandemic challenges and proudly notes that "at no point are Tennessee courts closed for business."[17] Indeed, TAOC should be commended for its efforts.

95. Unfortunately for the public and press, meetings of Tennessee's bench-bar advisory commission established to recommend rules, as well as Tennessee Judicial Conference committees established to recommend rules, remain closed for business.

---

[14] https://www.washingtoncountytn.org/DocumentCenter/View/1358/2022-Judges-Schedule-updated.

[15] https://www.youtube.com/user/TNCourts/featured.

[16] https://tncourts.gov/calendar/adr-commission/2022/10/18/adr-commission-quarterly-meeting.

[17] https://www.tncourts.gov/history.

18

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a preliminary injunction, later to be made a permanent injunction, restraining and enjoining Director Long from closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules;

B. Issue a preliminary injunction, later to be made a permanent injunction, ordering Director Long to provide him with both virtual and in-person access so he can assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules;

C. Enter a judgement declaring that the First Amendment right of access attaches to meetings of the Tennessee bench-bar advisory commission established to recommend rules;

D. Issue a preliminary injunction, later to be made a permanent injunction, restraining and enjoining Director Long from closing future meetings of the Tennessee Judicial Conference committees established to recommend rules;

E. Issue a preliminary injunction, later to be made a permanent injunction, ordering Director Long to provide him with both virtual and in-person access so he can assign reporters to report on future meetings of the Tennessee Judicial Conference committees established to recommend rules;

F. Enter a judgement declaring that the First Amendment right of access attaches to meetings of the Tennessee Judicial Conference committees established to recommend rules;

19

G. Award him costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

H. Grant such further relief this Court deems just, proper, and equitable.

June 30, 2022 — Respectfully submitted,

*/s/ M. E. Buck Dougherty III*

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, a copy of the foregoing First Amended Complaint For Declaratory And Injunctive Relief was filed electronically via the Court's CM/ECF filing system. Notice of this filing will be sent by operation of the Court to all parties indicated on the electronic filing receipt, including a copy to the Office of Tennessee Attorney General and Reporter, counsel for the state defendant TAOC Director Michelle Long, via electronic mail as follows:

Office of the Attorney General & Reporter
Attn.: Janet Kleinfelter, Deputy Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
janet.kleinfelter@ag.tn.gov

*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474

21