# THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) | |
| | ) | **Case No. 3:22-00439** |
| Plaintiff, | ) | |
| | ) | **District Judge Richardson** |
| | ) | **Magistrate Judge Frensley** |
| v. | ) | |
| | ) | |
| | ) | |
| MICHELLE LONG, in her official capacity as DIRECTOR of TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

---

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *pro hac vice forthcoming*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. 2

QUESTION PRESENTED ................................................................................................. 5

PRELIMINARY STATEMENT ......................................................................................... 5

STATEMENT OF FACTS ................................................................................................. 8

   A. The Tennessee Supreme Court established a bench-bar advisory commission to recommend rules of practice and procedure in state courts, and meetings are closed to the public and press .................................................................. 8

   B. 28 U.S.C. § 2073 (c)(1) applies to the bench-bar Advisory Committees established to recommend rules of practice and procedure in federal courts, and meetings have been open to the public and press since 1988 ................... 10

LEGAL STANDARD ....................................................................................................... 14

ARGUMENT ................................................................................................................... 15

   I. This Court should grant preliminary injunctive relief stopping Director Long from closing future meetings of bench-bar advisory commission established to recommend rules because the First Amendment right of access attaches to meetings. ........................... 15

      A. Plaintiff is likely to prevail on the merits.................................................. 16

         1. Plaintiff has Article III standing. .......................................................... 16

         2. Sovereign immunity is inapplicable under *Ex Parte Young*................. 18

         3. The First Amendment right of access attaches to meetings of Tennessee bench-bar advisory commission established to recommend state court rules of practice and procedure................... 19

            a. The First Amendment attaches under the "experience" prong because meetings of bench-bar Advisory Committees established to recommend federal court rules have been open to the public since 1988................................ 21

            b. The First Amendment attaches under the "logic" prong because openness would be positive to the state court rulemaking process. ................................................................... 23

      B. The remaining preliminary injunction factors favor Plaintiff. .................. 24

         1. Any loss of First Amendment rights is irreparable. ............................ 24

         2. Preserving constitutional rights serves the public interest. ................ 24

         3. The balancing of factors tilts heavily toward Plaintiff. ....................... 25

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.,*
714 F. 3d 424 (6th Cir. 2013) ................................................................. 7

*Applications of Nat'l Broad. Co.,*
828 F. 2d 340 (6th Cir. 1987) ........................................................... 21, 23

*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass''n,*
110 F. 3d 318 (6th Cir. 1997) ............................................................... 14

*Brown & Williamson Tobacco Corp. v. FTC,*
710 F. 2d 1165 (6th Cir. 1983) ............................................................. 19

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,*
363 F. 3d 427 (6th Cir. 2004) ............................................................... 25

*Clements v. Fashing,*
457 U.S. 957 (1982) ............................................................................. 17

*Detroit Free Press v. Ashcroft,*
303 F.3d 681 (6th Cir. 2002) ........................................................ passim

*Elrod v. Burns,*
427 U.S. 347 (1976) ............................................................................. 24

*Ernst v. Rising,*
427 F. 3d 351 (6th Cir. 2005) ............................................................... 18

*Ex Parte Drawbaugh,*
2 App. D.C. 404 (1894) ........................................................................ 20

*Ex Parte Young,*
209 U.S. 123 (1908) ............................................................................. 18

*First National Bank of Boston v. Bellotti,*
435 U.S. 765 (1978) ............................................................................. 25

*Friendship Materials, Inc. v. Mich. Brick, Inc.,*
679 F. 2d 100 (6th Cir. 1982) ......................................................... 14, 24

*Garlock, Inc. v. United Seal Inc.,*
404 F. 2d 256 (6th Cir. 1968) ............................................................... 16

*Globe Newspaper Co. v. Superior Court,*
457 U.S. 596 (1982) ............................................................................. 20

*Hamilton's Bogarts, Inc. v. Michigan,*
501 F. 3d 644 (6th Cir. 2007) ............................................................... 16

*In re Knoxville News-Sentinel Co.,*
723 F. 2d 470 (6th Cir. 1983) ............................................................... 20

Case 3:22-cv-00439   Document 20-2   Filed 06/30/22   Page 3 of 28 PageID #: 169

*Indianapolis Star v. United States,*
  692 F. 3d 424 (6th Cir. 2012) ............................................................................... 20

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972) ............................................................................................... 25

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.,*
  172 F. 3d 397 (6th Cir. 1999) ............................................................................... 17

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ............................................................................................... 17

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
  945 F. 2d 150 (6th Cir. 1991) ............................................................................... 14

*New York Times Co. v. United States,*
  403 U.S. 713 (1971) ............................................................................................... 24

*Nken v. Holder,*
  556 U.S. 418 (2009) ............................................................................................... 24

*Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell,*
  467 F. 3d 999 (6th Cir. 2006) ............................................................................... 14

*Overstreet v. Lexington-Fayette Urban County Gov't,*
  305 F. 3d 566 (6th Cir. 2002) ............................................................................... 14

*Press-Enterprise Company v. Superior Court,*
  478 U.S. 1 (1986) ............................................................................................. 20, 21

*Price v. Medicaid Dir.,*
  838 F. 3d 739 (6th Cir. 2016) ............................................................................... 18

*Richmond Newspapers, Inc. v. Virginia,*
  448 U.S. 555 (1980) ......................................................................................... 20, 25

*Star Teams, Inc. v. Transplant Advocs.,*
  LLC 2022 U.S. Dist. LEXIS 106708 (M.D. Tenn., Jun. 15, 2022) .......................... 15

*State v. Best,*
  614 S.W.2d 791 (Tenn. 1981) ................................................................................. 8

*Swint v. Chambers County Comm'n,*
  514 U.S. 35 (1995) ......................................................................................... passim

*Virginia v. Am. Booksellers Ass'n, Inc.,*
  484 U.S. 383 (1988) ............................................................................................... 17

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ............................................................................................... 16

3

**Statutes**

28 U.S.C. § 2073 ................................................................................................ passim

Tenn. Code Ann. § 16-3-401 ...................................................................................... 8

Tenn. Code Ann. § 16-3-402 ...................................................................................... 8

Tenn. Code Ann. § 16-3-403 ...................................................................................... 8

Tenn. Code Ann. § 16-3-404 ...................................................................................... 8

Tenn. Code Ann. § 16-3-405 ...................................................................................... 8

Tenn. Code Ann. § 16-3-601 ................................................................................. 6, 9

**Other Authorities**

Carl Tobias, *Common Sense and Other Legal Reforms*, 48 Vanderbilt Law Review 699 (1995) ............................................................................................................ 11

Louis D. Brandeis, *What Publicity Can Do*, Harper's Weekly, Volume 58, Number 2974 (December 20, 1913) .......................................................................................... 5

Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U.L. Rev. 1655 (1995) .......................................................................................................... 11

The Supreme Court recognizes a presumptive First Amendment right of access to judicial proceedings. Meetings of bench-bar Advisory Committees established to recommend federal court rules historically have been open to the public. Openness enhances rulemaking. Meetings of bench-bar advisory commission established to recommend rules of practice and procedure in Tennessee courts are closed to the public.

1. Is there a First Amendment right of access to meetings of bench-bar advisory commission established to recommend rules?

## PRELIMINARY STATEMENT

"Democracies die behind closed doors." *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 683 (6th Cir. 2002). When a branch of government closes its doors, "it selectively controls information rightfully belonging to the people." *Id*. The Framers of the Constitution "protected the people against secret government." *Id*. Justice Louis D. Brandeis, a member of the United States Supreme Court from 1916-1939 and a towering judicial figure in our nation's history, once famously wrote, "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[1] Tennessee's bench-bar advisory commission established to recommend rules of practice and procedure in state courts should open its doors and let the

---

[1] Louis D. Brandeis, *What Publicity Can Do*, Harper's Weekly, Volume 58, Number 2974, p.10 (December 20, 1913), *available at* https://quoteinvestigator.com/2020/09/22/sunlight/#f+438413+1+8 at n. 8 (last visited June 8, 2022).

sunshine in so the public and press can attend meetings. Indeed, history, tradition, and the favorable judgment of experience counsel that the First Amendment right of access attaches to meetings of the Tennessee bench-bar advisory commission established to recommend rules. Providing open access to meetings of Tennessee's bench-bar advisory commission established to recommend rules would be positive for the state court rulemaking process.

Tennessee's General Assembly enacted a statute requiring the Tennessee Supreme Court to establish an advisory commission to recommend rules of practice and procedure in state courts. Tenn. Code Ann. § 16-3-601(a). The statute requires the Tennessee Supreme Court to appoint members to the advisory commission. *Id.* The Tennessee Supreme Court chose to appoint to the current advisory commission individuals from the judicial bench and state bar.[2] This appointed bench-bar advisory commission meets periodically to study and make recommendations on rules of practice and procedure in Tennessee state courts. *Id.* Meetings of Tennessee's bench-bar advisory commission established to recommend rules of practice and procedure in state courts are closed to the public and press.

In contrast, bench-bar Advisory Committees established to recommend rules of *federal* courts are open to the public and press.[3] There is an enduring historical tradition for nearly 34 years of public access to meetings of bench-bar Advisory

---

[2] *Available at* https://www.tncourts.gov/boards-commissions/boards-commissions/advisory-commission-rules-practice-procedure (last visited June 30, 2022).

[3] *Available at* https://www.uscourts.gov/rules-policies/about-rulemaking-process/open-meetings-and-hearings-rules-committee (last visited June 30, 2022).

6

Committees on proposed federal rules of practice, procedure, and evidence. *See* 28 U.S.C. § 2073(c)(1).

In ruling on Plaintiff's motion for preliminary injunction, the Court is presented with a straightforward issue: (1) Is there a First Amendment right of access to meetings of bench-bar advisory commission established to recommend rules? If the answer is yes, the burden shifts, requiring the state show a compelling interest for closing meetings of bench-bar advisory commission that is narrowly tailored to serve that interest. *Detroit Free Press,* 303 F. 3d at 682-83, 705.

Plaintiff, Dan McCaleb, Executive Editor of The Center Square (hereinafter "McCaleb" or "Plaintiff"), seeks a preliminary injunction: (1) to stop Director Michelle Long of the Tennessee Administrative Office of the Courts ("TAOC") from closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules of practice and procedure in state courts; and (2) to order Director Long to provide in-person and virtual access so he may assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules of practice and procedure in state courts.[4]

---

[4] Because relief is sought for Plaintiff's loss of his First Amendment rights and the state defendant has no risk of monetary injury, the Court may waive the bond requirement of Fed. R. Civ. P. 65(c). *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.,* 714 F. 3d 424, 431 (6th Cir. 2013).

## STATEMENT OF FACTS

### A. The Tennessee Supreme Court established a bench-bar advisory commission to recommend rules of practice and procedure in state courts, and meetings are closed to the public and press.

The authority to prescribe civil and criminal rules governing the practice and procedure in all state courts vests in the Tennessee Supreme Court. *See* Tenn. Code Ann. §§ 16-3-401 and 16-3-402; *see also State v. Best*, 614 S.W. 2d 791, 793 (Tenn. 1981). These civil and criminal state court rules prescribed by Tennessee's Supreme Court shall not abridge the United States Constitution. Tenn. Code Ann. § 16-3-403. The rules, amendments, and any subsequent modifications take effect after the Tennessee Supreme Court reports the rule to the General Assembly and both houses adopt a resolution of approval. Tenn. Code Ann. § 16-3-404; *Best*, 614 S.W. 2d at 793. This statutory rulemaking scheme vesting authority in the Tennessee Supreme Court contemplates it "will make appropriate use of the advisory commissions authorized by Tenn. Code Ann. § 16-3-601." *Best*, 614 S.W. 2d at 793.

All rules eventually adopted by the Tennessee Supreme Court are required to be published in the Tennessee Code Annotated and may also be publicized "both before and after becoming effective in a manner that the supreme court deems appropriate." Tenn. Code Ann. § 16-3-405. The Tennessee Supreme Court rules are published in the Tennessee Court Rules Annotated, which is updated by replacement volumes in July of each year and are updated by supplementation once each year. *See* notes, Tenn. Code Ann. § 16-3-405.

8

As indicated above, the rulemaking authority conferred upon the Tennessee Supreme Court authorizes it to appoint members to an advisory commission to recommend rules of practice and procedure in state courts. *See* Tenn. Code Ann. § 16-3-601(a). The members of the advisory commission serve for a term of three years, and members are eligible for reappointment, but they may not be appointed for more than three successive terms. Tenn. Code Ann. § 16-3-601(b). Appointed members of the advisory commission are entitled to be reimbursed from the state for their expenses incurred in furtherance of the advisory commission's purpose. Tenn. Code Ann. § 16-3-601(c). Subject to the approval of Director Long and state commissioner of finance, the advisory commission has authority to employ legal and clerical assistance to discharge its rulemaking duties. *See* Tenn. Code Ann. § 16-3-601(d).

Members of the current appointed advisory commission established to recommend rules of practice and procedure in Tennessee state courts may be found on TAOC's website. *See* Dan McCaleb Declaration ("McCaleb Decl.") at ¶ 13. The appointed members include individuals from both the bench and bar of Tennessee. McCaleb Decl. at ¶ 14. Specifically, the current members include a Tennessee supreme court justice, the clerk of Tennessee appellate courts, a state court chancellor, three state court judges, the Tennessee solicitor general, a member of the Tennessee House of Representatives, two state supreme court staff attorneys, a law professor, the TAOC Assistant General Counsel, and several members of the state bar in private law practice.  McCaleb Decl. at ¶ 15. This appointed bench-bar

9

advisory commission meets periodically to study and make recommendations on rules of practice and procedure in Tennessee state courts. McCaleb Decl. at ¶ 16. Meetings of the bench-bar advisory commission established to recommend rules of practice and procedure in Tennessee state courts are closed to the public and press. McCaleb Decl. at ¶ 17.

**B. 28 U.S.C. § 2307(c)(1) applies to the bench-bar Advisory Committees established to recommend rules of practice and procedure in federal courts, and meetings have been open to the public and press since 1988.**

Approximately 34 years ago, Congress enacted a reform statute known as the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073(c)(1).[5] The relevant provision of the statute opening access to bench-bar Advisory Committee meetings on proposed federal rules of practice, procedure, and evidence is codified at 28 U.S.C. § 2073(c)(1). It states as follows:

> Each meeting for the transaction of business under this chapter by any committee appointed under this section shall be open to the public, except when the committee so meeting, in open session and with a majority present, determines that it is in the public interest that all or part of the remainder of the meeting on that day shall be closed to the public, and states the reason for so closing the meeting. Minutes of each meeting for the transaction of business under this chapter shall be maintained by the committee and made available to the public, except that any portion of such minutes, relating to a closed meeting and made available to the public, may contain such deletions as may be necessary to avoid frustrating the purposes of closing the meeting.

---

[5] The effective date of the reform statute was December 1, 1988. *See* Judicial Improvements and Access to Justice Act of 1988, § 407, https://www.govinfo.gov/content/pkg/STATUTE-102/pdf/STATUTE-102-Pg4642.pdf.

10

28 U.S.C. § 2073(c)(1). The purpose of the statute was to reinvigorate the federal rule revision process by "opening it to greater public involvement, effectively analogizing the process to notice-comment rulemaking under the Administrative Procedure Act."[6] Although subject to periodic criticism, the process by which the federal rules are promulgated has been praised as "perhaps the most thoroughly open, deliberative, and exacting process in the nation for developing substantively neutral rules."[7] In a 1995 law review article, former Secretary to the federal Judicial Conference Standing Committee on Rules of Practice and Procedure noted, "at various points over the last sixty years both Congress and the judiciary have acted to reaffirm and renew the rulemaking process, with the objective of making it more effective and more open." *Renewal of the Federal Rulemaking Process,* 44 Am. U.L. Rev. at 1657.

28 U.S.C. § 2073(c)(1) is a part of the Rules Enabling Act, 28 U.S.C. §§ 2071-2077. The Rules Enabling Act authorizes the Supreme Court to prescribe general rules of practice and procedure and rules of evidence for federal courts.[8] The Rules Enabling Act has been described as a treaty between Congress and the judiciary

---

[6] Carl Tobias, *Common Sense and Other Legal Reforms*, 48 Vanderbilt Law Review 699, 706 (1995), *available at* https://scholarship.law.vanderbilt.edu/vlr/vol48/iss3/7 (last visited June 8, 2022).

[7] Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U. L. Rev. 1655, 1656 (1995), *available at* https://www.uscourts.gov/sites/default/files/mccabearticle_1.pdf (last visited June 30, 2022).

[8] *Available at* https://www.uscourts.gov/rules-policies/about-rulemaking-process/laws-and-procedures-governing-work-rules-committees#:~:text=The%20Rules%20Enabling%20Act%2C%2028,evidence%20for%20 20the%20federal%20courts (last visited June 30, 2022).

and represents a manifestation of the traditional doctrine of separation of powers. *Id*. Congress, through the Rules Enabling Act, delegated the essential rulemaking function to a co-equal branch of government while retaining the ability to review and reject any rule adopted by the Supreme Court. *Id*. Pursuant to Section 2073 of the Rules Enabling Act, the federal Judicial Conference of the United States has established procedures to govern the work of the Standing Committee and its Advisory Rules Committees. *Id*. These procedures do not limit the Rules Committees' authority, and failure to comply with them does not invalidate any Rules Committee action. *Id*. The United States Supreme Court analyzed § 2073(c)(1) in a 1995 opinion and explained "that meetings of bench-bar committees established to recommend rules ordinarily [are] open to the public." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995). Openness of meetings of bench-bar committees is a positive aspect of the federal rulemaking process. *See id*.

The federal Judicial Conference of the United States has approximately 20 committees. McCaleb Decl., at ¶ 18. One of the committees subject to 28 U.S.C. § 2073(c)(1)'s open meetings requirement is the committee on Rules of Practice and Procedure. McCaleb Decl., at ¶ 19. Within this committee on Rules of Practice and Procedure are five Advisory Committees established to recommend rules, and meetings are open to the public. McCaleb Decl., at ¶ 20. The five federal Advisory Rules Committees that open their meetings to the public and press are as follows:

- Advisory Committee on Appellate Rules
- Advisory Committee on Bankruptcy Rules

12

- Advisory Committee on Civil Rules

- Advisory Committee on Criminal Rules

- Advisory Committee on Evidence Rules

McCaleb Decl., at ¶ 21. The Standing Committee and each of the Advisory Committees typically meet twice a year and meetings are open to the public subject to the limited exceptions in 28 U.S.C. § 2073(c)(1). McCaleb Decl., at ¶ 22. This open access policy extends to both in-person and virtual attendance of meetings. McCaleb Decl., at ¶ 23.

In addition to listing upcoming meeting dates and locations in a calendar format on the U.S. Courts' website, advance notices for each Advisory Committee meeting are published in the Federal Register. McCaleb Decl., at ¶ 24. Transcripts and testimony provided during Advisory Committee meetings are published and archived. McCaleb Decl., at ¶ 25. Meeting agenda books dating back to 1992 are published and archived. McCaleb Decl., at ¶ 26. The Administrative Office of the U.S. Courts — the federal equivalent to TAOC —maintains and archives Advisory Committee meeting reports from 1937. McCaleb Decl., at ¶ 27. The federal administrative court office also archives Advisory Committee meeting minutes going back to 1935. McCaleb Decl., at ¶ 28. Additionally, a search on YouTube reveals that some past open bench-bar meetings with federal judges discussing the rule and decision-making process—for example a 2006 Federal Circuit Court of Appeals session—have been broadcast on cable television by C-SPAN. McCaleb Decl., at ¶ 29.

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 65, a court must analyze four factors in determining whether to grant a motion for a preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Detroit Free Press*, 303 F. 3d at 685 (cleaned up). The plaintiff bears the burden of establishing his entitlement to a preliminary injunction. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F. 3d 566, 573 (6th Cir. 2002). Although a preliminary injunction is an extraordinary remedy, "[t]hese factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." *Northeast Ohio Coalition for Homeless and Service Employees v. Blackwell,* 467 F. 3d 999, 1009 (6th Cir. 2006) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F. 2d 150, 152 (6th Cir. 1991)).

In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F. 3d 644, 649 (6th Cir. 2007). While a court must engage in balancing, the irreparable harm factor is also critical, and a strong showing on the other factors cannot eliminate the irreparable harm requirement. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F. 2d 100, 105 (6th Cir. 1982). Likewise, a strong showing on the irreparable harm factor can overcome deficiencies in the other three factors, "even where the plaintiff fails to show a

14

strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Star Teams, Inc. v. Transplant Advocs.*, LLC 2022 U.S. Dist. LEXIS 106708, \*5-6 (M.D. Tenn., Jun. 15, 2022) (Richardson, J.) (quoting *Friendship Materials*, 679 F. 2d at 105).

## ARGUMENT

### I. This Court should grant preliminary injunctive relief stopping Director Long from closing future meetings of bench-bar advisory commission established to recommend rules because the First Amendment right of access attaches to meetings.

From the record before the Court, including the McCaleb Decl. and First Amended Complaint ("Compl."), McCaleb has satisfied his burden entitling him to a preliminary injunction stopping Director Long from closing future meetings of the bench-bar advisory commission established to recommend rules of practice and procedure in Tennessee state courts. Absent a preliminary injunction from this Court, McCaleb will suffer irreparable harm due to the loss of his First Amendment right of access to future meetings of the bench-bar advisory commission established to recommend rules. This showing entitles McCaleb to both virtual and in-person access so he may assign reporters he supervises to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules.

*First*, history, tradition, and the favorable judgement of experience counsel that the First Amendment right of access attaches to meetings of the Tennessee bench-bar advisory commission established to recommend state court rules.

15

Meetings of bench-bar Advisory Committees established to recommend federal court rules have historically been open to the public and press since 1988. These meetings of bench-bar Advisory Committees established to recommend federal court rules provide the quintessential equivalent proceedings in form and substance to meetings of Tennessee's bench-bar advisory commission. Meetings of bench-bar Advisory Committees established to recommend federal court rules are indistinguishable from meetings of the Tennessee bench-bar advisory commission established to recommend state court rules. The only material difference is that meetings of Tennessee's bench-bar commission established to recommend state court rules are closed to the public and press.

*Second*, public access to meetings of Tennessee's bench-bar advisory commission established to recommend state court rules would be positive for the rulemaking process because openness and transparency would promote public confidence in the judiciary and the advisory commission's rule recommendations.

### A. Plaintiff is likely to prevail on the merits.

Under the first preliminary injunction factor, a movant must demonstrate at least a meaningful "[p]robability of success." *Garlock, Inc. v. United Seal Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968).

### 1. Plaintiff has Article III standing.

Before a court considers likely success on the merits, a plaintiff must first establish the necessary constitutional standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish minimum Article III standing, a plaintiff must

show: (1) an injury-in-fact that is concrete, particularized, and imminent; (2) fairly traceable to defendant's conduct; and (3) would be redressed by a favorable court decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). But Article III standing does not require a plaintiff to engage in "costly futile gestures simply to establish standing, particularly when the First Amendment is implicated." *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd.,* 172 F. 3d 397, 406 (6th Cir. 1999) (citing *Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 392–93 (1988); *Clements v. Fashing,* 457 U.S. 957, 962 (1982)).

McCaleb has demonstrated he has Article III standing to sue and assert his pre-enforcement First Amendment right of access claim. First, McCaleb's injury and First Amendment deprivation arises out of his inability as Executive Editor of The Center Square to assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules. McCaleb Decl. at ¶ 30. Tennessee's bench-bar advisory commission established to recommend rules will convene meetings during the remaining six months of the 2022 calendar year. McCaleb Decl. at ¶ 31. Although the precise meeting dates are unclear because TAOC does not make them public, it is possible meetings could convene as early as October 2022, if not sooner. McCaleb Decl. at ¶ 32. Second, McCaleb's injury can be traced to Director Long's legal authority as the "director of the administrative office of the courts" under Tenn. Code Ann. § 16-3-802(a) to close future meetings of the bench-bar advisory commission established to recommend rules. McCaleb Decl. at ¶ 33. There exists a reasonable expectation that Director Long will continue to close

17

future meetings of the Tennessee bench-bar advisory commission established to recommend rules. Compl. at ¶ 10; McCaleb Decl., at ¶ 34. McCaleb learned of the Tennessee bench-bar advisory commission established to recommend rules and its closed meetings on or about June 30, 2022. McCaleb Decl. at ¶ 35. But for closed meetings of the bench-bar advisory commission established to recommend rules, McCaleb would make an editorial decision to assign reporters to report on future meetings, either virtually or in person. McCaleb Decl. at ¶ 36. Third, a favorable decision from this Court stopping Director Long from closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules and providing McCaleb with virtual and in-person access so he can assign reporters to cover future meetings, redresses his First Amendment deprivation and injury. McCaleb Decl. at ¶ 37.

### 2. Sovereign immunity is inapplicable under *Ex Parte Young*.

One additional issue a court must consider before analyzing a plaintiff's likelihood of success on the merits is the Eleventh Amendment. Sovereign immunity under the Eleventh Amendment protects states and state officials when they are sued in their official capacity for money damages. *Ernst v. Rising*, 427 F. 3d 351, 358 (6th Cir. 2005). An exception to sovereign immunity is when the *Ex Parte Young* doctrine applies. *See generally Ex Parte Young*, 209 U.S. 123 (1908). "[A] federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law." *Price v. Medicaid Dir.*, 838 F. 3d 739, 746-47 (6th Cir. 2016).

*Ex Parte Young* applies here, and thus the Eleventh Amendment is inapplicable. First, McCaleb has sued Long in her official capacity as Director of the TAOC pursuant to the legal authority and powers conferred upon her by statute to close future meetings of the Tennessee bench-bar advisory commission established to recommend rules. Compl. at ¶ 14. Second, McCaleb seeks prospective injunctive relief to stop Director Long from closing future meetings of the bench-bar advisory commission established to recommend rules. Compl. at ¶ 11. Third, McCaleb seeks prospective injunctive relief against Director Long to end closed bench-bar advisory commission meetings and the ongoing and continuing violation of his First Amendment right of access to assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules. Compl. at ¶ 12.

### 3. The First Amendment right of access attaches to meetings of Tennessee bench-bar advisory commission established to recommend state courts rules of practice and procedure.

The First Amendment right of access attaches to Tennessee's bench-bar advisory commission established to recommend rules of practice and procedure in state courts. "[T]he open courtroom has been a fundamental feature of the American judicial system." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F. 2d 1165, 1177 (6th Cir. 1983). This deeply rooted history of open access to courts was perhaps best summarized by the D.C. Circuit in the nineteenth century when it warned that "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of

19

record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co.*, 723 F. 2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbaugh*, 2 App. D.C. 404, 407 (1894)).

To determine whether the First Amendment right of access attaches to the proceeding in question, courts must apply a two-part test. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589 (1980) (Brennan, J. concurring in the judgment). First, a court looks to a similar proceeding to see whether it historically has been open to the public because "a tradition of accessibility implies the favorable judgment of experience." *Id.* Second, a court must determine "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Company v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enter. II*"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *see also Richmond Newspapers* 448 U.S. at 589. *Richmond Newspapers* is the seminal case in which the United States Supreme Court recognized a First Amendment right of access for the public and press to attend criminal trials based on the tradition of courts being presumptively open. *See generally Richmond Newspapers*, 448 U.S. 555. The Sixth Circuit refers to the *Richmond Newspapers* two-part test as the "experience and logic" test. *Detroit Free Press,* 303 F. 3d at 700.

This fundamental right of public and press access to judicial proceedings extends beyond a criminal trial and applies to other criminal proceedings, criminal records, civil proceedings, and civil records. *Indianapolis Star v. United States*, 692 F. 3d 424, 429-30 (6th Cir. 2012) (cleaned up); *Detroit Free Press,* 303 F. 3d at 695

20

n.11 (recognizing other circuits beyond the Sixth have "agreed that the press and public have a First Amendment right to attend civil proceedings…"); *Applications of Nat'l Broad. Co.*, 828 F. 2d 340, 347 (6th Cir. 1987) ("the importance of some pretrial proceedings dictates that the rule of openness not be confined to the actual trial").

### a. The First Amendment attaches under the "experience" prong because meetings of bench-bar Advisory Committees established to recommend federal court rules have been open to the public since 1988.

Under the "experience" prong, the First Amendment right of access attaches to meetings of Tennessee's bench-bar advisory commission established to recommend state court rules, because the historical tradition of accessibility to meetings of bench-bar Advisory Committees established to recommend federal court rules implies the favorable judgment of experience. *See Detroit Free Press,* 303 F. 3d at 700. "Substantively, [courts] look to other proceedings that have the same effect" when deciding if the First Amendment attaches to the proceeding in question. *Id.* at 702. As the *Detroit Free Press* panel explained in paraphrasing the Supreme Court, it's the "walk, talk, and squawk" approach when making a comparative analysis. *Id.* In looking at similar proceedings, courts "should look to proceedings that are similar in *form and substance." Id.* (emphasis added).

Following Congress's enactment of 28 U.S.C. § 2073(c)(1) in 1988, the Supreme Court in a unanimous 1995 opinion authored by Justice Ginsburg addressed the statute's application to bench-bar Advisory Committees established to recommend federal court rules. *See generally Swint*, 514 U.S. 35. The issue in

21

*Swint* addressed by the Court was essentially a procedural issue on whether the Eleventh Circuit Court of Appeals had jurisdiction to rule on the county commission's liability at the interlocutory stage of the appeal. *Id*. at 37-38. The *Swint* Court ultimately ruled that the Court of Appeals did not have jurisdiction to hear the appeal under the collateral order doctrine. *Id*. at 38.

Particularly relevant to Plaintiff's motion for preliminary injunction here is the *Swint* Court's discussion of the federal rulemaking process. *Id*. at 48. The Supreme Court provided a review of the federal rulemaking process pursuant to the Rules Enabling Act, 28 U.S.C. § 2071 et seq., which gives the Court "the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts . . . and courts of appeals." *Id*. (citing 28 U.S.C. § 2072(a)). The Court noted the procedure Congress ordered for such rule changes, however, is not expansion by court decision, but by rulemaking under § 2072. *Id*. The Supreme Court explained its "rulemaking authority is constrained by §§ 2073 and 2074, which require, among other things, that meetings of bench-bar committees established to recommend rules ordinarily be open to the public, § 2073(c)(1), and that any proposed rule be submitted to Congress before the rule takes effect, § 2074(a)." *Id*.

Here, Tennessee's statutory scheme vesting rulemaking authority in the Tennessee Supreme Court is identical in form and substance to the federal Rules Enabling Act. *See* Tenn. Code Ann. §§ 16-3-401 and 16-3-402; *see also State v. Best*, 614 S.W. 2d at 793. Like the federal Rules Enabling Act, Tennessee's "Little Rules

22

Enabling Act" provides that rules, amendments, and any subsequent rule modifications take effect after the Tennessee Supreme Court reports the proposed new rule to the General Assembly and both houses adopt a resolution of approval. *See* Tenn. Code Ann. § 16-3-404; *Best*, 614 S.W. 2d at 793; *see also* 28 U.S.C. § 2071 et seq.[9] And members of Tennessee's bench-bar advisory commission meet to recommend proposed rules of practice and procedure in state courts, just like members of the federal bench-bar Advisory Committees in their open meetings when they meet to recommend proposed federal court rules. *See* Tenn. Code Ann. § 16-3-601; *see also* 28 U.S.C. § 2071, et seq.

### b. The First Amendment attaches under the "logic" prong because openness would be positive to the state court rulemaking process.

Under the "logic" prong, the First Amendment right of access attaches to Tennessee's bench-bar advisory commission established to recommend state court rules. *See Detroit Free Press,* 303 F. 3d at 700. "Openness in judicial proceedings promotes public confidence in the courts." *Applications of NBC*, 828 F. 2d at 347.

Here, open meetings of Tennessee's bench-bar advisory commission established to recommend rules would be positive and enhance the state court rulemaking process. McCaleb Decl., at ¶ 38. Openness would promote transparency and public confidence in the judiciary as well as in the advisory commission's rule

---

[9] The use of "Little Rules Enabling Act" here is consistent with describing other state statutory schemes based on similar federal statutes, such as for example state "Little Miller Acts." *See* https://www.levelset.com/blog/little-miller-acts-bond-requirements-by-state/ (last visited June 30, 2022).

recommendations. McCaleb Decl., at ¶ 39. Allowing the public and press to observe meetings of federal Advisory Committees considering proposed rules and making rule recommendations has played a significant and positive role in the federal court rulemaking process. McCaleb Decl., at ¶ 40; *see also Swint*, 514 U.S. at 48.

### B. The remaining preliminary injunction factors favor Plaintiff.

### 1. Any loss of First Amendment rights is irreparable.

Having established that he is likely to prevail on the merits, McCaleb has also shown that his injury is irreparable under the second preliminary injunction factor because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)). Because of the loss of his First Amendment rights, McCaleb has demonstrated that, without an injunction, he would suffer irreparable harm that would outweigh any potential harm to the State of Tennessee from a preliminary injunction requiring Tennessee's bench-bar advisory commission to provide public and press access to future meetings. *See Friendship Materials*, 679 F. 2d at 105.

### 2. Preserving constitutional rights serves the public interest.

When the state is a defendant, the third and fourth preliminary injunction factors (harm to others and public interest) merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest will be served if this Court grants McCaleb his requested preliminary injunctive relief. Absent a preliminary injunction from the Court, McCaleb will be deprived of his First Amendment right of access to assign

24

reporters to report on future meetings of Tennessee's bench-bar advisory commission established to recommend rules. Thus, "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F. 3d 427, 436 (6th Cir. 2004).

### 3. The balancing of factors tilts heavily toward Plaintiff.

The First Amendment "prohibit[s] government from limiting the stock of information from which members of the public may draw." *Richmond Newspapers,* 448 U.S. at 576 (quoting *First National Bank of Boston* v. *Bellotti*, 435 U.S. 765, 783 (1978)). This includes the right of the public and press "to receive information and ideas." *Id.* (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). Although he is an accomplished member of the press seeking a preliminary injunction to meetings of Tennessee's bench-bar advisory commission, under the First Amendment McCaleb stands before this Court "on equal footing with the public." *See Detroit Free Press*, 303 F. 3d at 694. Therefore, a win for McCaleb is a win for the public.

### CONCLUSION

McCaleb respectfully requests a preliminary injunction: (1) to stop Director Long from closing future meetings of the Tennessee bench-bar advisory commission established to recommend rules of practice and procedure in state courts; and (2) to order Director Long to provide him and the public with in-person and virtual access to meetings of the Tennessee bench-bar advisory commission.

June 30, 2022                              Respectfully submitted,


                                          */s/ M. E. Buck Dougherty III*
                                          M. E. Buck Dougherty III, TN BPR #022474
                                          James McQuaid, *pro hac vice forthcoming*
                                          LIBERTY JUSTICE CENTER
                                          440 N. Wells Street, Suite 200
                                          Chicago, Illinois 60654
                                          312-637-2280-telephone
                                          312-263-7702-facsimile
                                          bdougherty@libertyjusticecenter.org
                                          jmcquaid@libertyjusticecenter.org

                                          Attorneys for Plaintiff, Dan McCaleb,
                                          Executive Editor of The Center Square

26

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2022, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction was filed electronically via the Court's CM/ECF filing system. Notice of this filing will be sent by operation of the Court to all parties indicated on the electronic filing receipt, including a copy to the Office of Tennessee Attorney General and Reporter, counsel for the state defendant TAOC Director Michelle Long, via electronic mail as follows:

Office of the Attorney General & Reporter
Attn.: Janet Kleinfelter, Deputy Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
janet.kleinfelter@ag.tn.gov

*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474