IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of<br>THE CENTER SQUARE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHELLE LONG, in her official capacity<br>as DIRECTOR of the TENNESSEE<br>ADMINISTRATIVE OFFICE OF THE<br>COURTS,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:22-cv-00439 |

---

**STATE DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION (DE 20)**

---

Defendant Michelle Long, in her official capacity as Director of the Tennessee
Administrative Office of the Courts ("AOC"), hereby submits this response opposition to
Plaintiff's Motion for Preliminary Injunction. (DE 20.) Director Long also relies upon the entire
record in this matter, including the Supplemental Declaration of AOC Deputy Director Rachel
Harmon ("Harmon Supp. Decl.")(attached as Exhibit 1).

### INTRODUCTION

Plaintiff, the executive editor of an online news organization, "The Center Square," has
filed suit seeking to enforce his alleged First Amendment right of access—but not to any sort of
judicial proceedings or any judicial records. Rather, Plaintiff seeks to enforce his alleged First

Amendment right of access to future meetings of the "Tennessee bench-bar advisory commission established to recommend rules" and of Tennessee Judicial Conference committees established to recommend rules. As such, Plaintiff seeks to enjoin Defendant Long, the Administrative Director of the AOC , from closing all future meetings of these committees and to require Defendant Long to provide Plaintiff with both virtual and in-person access to all future meetings. (DE 19 First Amended Complaint (FAC) PageID # 149.) But no such committees of the TJC exist. The only commission that does exist is the Advisory Commission on Rules of Practice and Procedure—the members of which are appointed by the Tennessee Supreme Court. Director Long is not a member of the Commission nor is the Commission part of the AOC and subject to its policies. Accordingly, Plaintiff's request for extraordinary relief should be denied.

## BACKGROUND

### 1. Tennessee Administrative Office of the Courts

In 1993, the Tennessee AOC was established by the Tennessee General Assembly for the purpose of assisting "in improving the administration of justice in this state by performing the duties and exercising the powers conferred" by statute. Tenn. Code Ann. § 16-3-801. Defendant Long is the current Administrative Director of the AOC and is appointed by and serves at the pleasure of the Tennessee Supreme Court. Tenn. Code Ann. § 16-3-802(a). Director Long works "under the supervision and direction of the chief justice" and, "as the chief administrative officer of the state court system, assist[s] the chief justice in the administration of the state court system to the end that litigation may be expedited and the administration of justice improved." Tenn. Code Ann. § 16-3-803(a).

The duties of the Administrative Director are set forth in Tenn. Code Ann. § 16-3-803 and

include the following:

- Annually prepare a budget for the maintenance and operation of the state court system;

- Administer the accounts of the state court system, including approving all requisitions and audit expenditures of state funds;

- Provide the judges of the trial courts with minimum law libraries;

- Prepare an annual judicial education plan for the orientation and continuing training and education of all elected or appointed judges of trial and appellate courts of record of this state;

- Survey and study the operation of the state court system;

- Establish criteria, develop procedures and implement a Tennessee court information system;

- Develop, define, update and disseminate standard, uniform measures, definitions and criteria for collecting statistics pertaining to the court system;

- Prepare and distribute an annual report reflecting the operation of the state court system;

- Conduct ongoing internal review, analysis and planning for the future needs of the state court system;

- File a copy of the Supreme Court's policies and guidelines governing the reimbursement of expenses for judicial officers with various legislative committees and state officials;

- Annually prepare and distribute to legislative committees a report detailing expenditure of funds in civil legal representation of indigents fund and copy of rules and policies adopted by Supreme Court governing expenditure and application of funds in civil legal representation of indigents fund; and

- Administer finances related to office's control and supervision of state law libraries.

Tenn. Code Ann. § 16-3-803(a) – (m), (o).

### 2. Advisory Commission on Rules of Practice and Procedure

Approximately thirty years prior to the establishment of the Administrative Office of the Courts, the Tennessee General Assembly established the Advisory Commission on Rules of Practice and Procedure (Rules Advisory Commission) in 1965. *See* 1965 Tenn. Pub. Acts, ch. 227, § 7 (codified at Tenn. Code Ann. § 16-3-601). Originally, the Rules Advisory Commission had nine members appointed by the Tennessee Supreme Court whose duty was to advise the Supreme Court "from time to time respecting the rules of practice and procedure." *Id.* In 2001, the General Assembly amended the statute to eliminate the limitation on the number of members that the Supreme Court could appoint. *See* 2001 Tenn. Pub. Acts, ch. 257, § 1 (codified at Tenn. Code Ann. § 16-3-601(a)).

There are currently twenty-two members of the Rules Advisory Commission, all of whom are attorneys appointed by the Tennessee Supreme Court, and include Tennessee's Solicitor General, a state representative, and a clerk and master. The Advisory Commission also includes a Tennessee Supreme Court Justice and four State Court Judges as non-voting judicial liaisons and two Supreme Court staff attorneys (civil and criminal). *See* Exh. 1, Harmon Supp. Decl., ¶ 3.

Neither Director Long, nor any employee of the AOC, is a member of the Rules Advisory Commission. Additionally, the Rules Advisory Commission is not part of the AOC and is not subject to any of the AOC's policies. *Id.* at ¶¶ 4-6. The AOC only provides administrative assistance to the Rules Advisory Commission. *Id.*

The enabling statute for the Rules Advisory Commission, Tenn. Code Ann. § 16-3-601, does not specify or require that Rules Advisory Commission meetings shall be open in person or virtually to the public or press. No provision of Tennessee statutory law requires that Rules

Advisory Commission meetings to be open to the public or press. Exh. 1, Harmon Supp. Decl., ¶ 6.

### 3. Tennessee Judicial Conference

In 1953, the Tennessee General Assembly established a judicial conference "whose memberships shall consist of all judges of courts of records whose salary is paid in whole or in part out of the state treasury, including retired judges," i.e., the Tennessee Judicial Conference ("TJC").[1] Tenn. Code Ann. § 17-3-101(a). The General Assembly further directed that the conference meet annually "for the consideration of any and all matters pertaining to the discharge of the official duties and obligations of its several members, to the end that there shall be a more prompt and efficient administration of justice in the courts of this state." Tenn. Code Ann. § 17-3-104. The General Assembly vested full power and authority in the TJC "to prescribe rules of official conduct of all judges" which must be in compliance with the American Bar Association's code of judicial ethics but imposed no other duties on the conference except

> to give consideration to the enactment of laws and rules of procedure that in its judgment may be necessary to the more effective suppression of crime and thus promote peace and good order in the state. To this end, a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly.

Tenn. Code Ann. § 17-3-106-107. The TJC has not established any committees to recommend either civil or criminal rules of practice and procedure. *See* Exh. 1, Harmon Supp. Decl.**, ¶ 3.**

### STANDARD OF REVIEW

Fed. R. Civ. P. 65 provides that a preliminary injunction may be granted if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will

---

[1] The Judicial Conference also includes active and retired judges, who are licensed attorneys, of the probate courts created by private acts in counties having a population of 300,000 or more based on the 1960 and any subsequent census. Tenn. Code Ann. § 17-3-101(b).

5

be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action, or that acts or omissions of the adverse party will tend to render such final judgment ineffectual. Although the issuance of a preliminary injunction pursuant to Rule 65 is within the discretion of this Court, it is an extraordinary and drastic remedy, and one that should not be granted unless the movant, by clear and convincing evidence, carries the burden of persuasion. *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968); *see also* Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2nd § 2948 at 12-9-133 (1995).

> When evaluating a request for preliminary injunction, a court must evaluate four factors:

>> (1) Whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Am. Civil Liberties Union Fund of Mich. v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). "These factors are not prerequisites but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998). When a party seeks a preliminary injunction on the basis a potential constitutional violation, "the likelihood of success on the merits often will be the determinative factor." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (internal quotations marks and citations omitted).

However, injunctive relief is not available unless some real possibility of injury is impending or threatened which can only be averted by protective extraordinary process. *Willett v.*

6

*Wells*, 469 F.Supp. 748, 753 (E.D. Tenn. 1977), *aff'd* 595 F.2d 1227 (6th Cir. 1979). Thus, regarding the third factor, irreparable harm, "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement. That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (citation and internal quotation marks omitted); *see also Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) ('The demonstration of some irreparable injury is a sine qua non for issuance of an injunction."). Here, all four factors counsel against granting Plaintiff's requested relief.

## ARGUMENT

### I.     Plaintiff Is Unlikely to Succeed On The Merits.

Plaintiff cannot demonstrate that he is likely to succeed on the merits of his claims for at least two reasons: First, because Plaintiff's claims are barred by sovereign immunity, and second, because the Plaintiff lacks the requisite standing necessary to confer jurisdiction on this Court.

### A. Plaintiff's claims are barred by the State's sovereign immunity.

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment "confirms" that a State is not "amendable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (internal quotation marks omitted). And a "'suit against a state official in his or her official capacity is not a suit against the official'"; it "'is a suit against the State itself.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "'[R]egardless of whether it seeks damages or injunctive relief,'" a suit against a state official "'that is in fact a suit against a State is barred.'" *EMW Women's*

7

*Surgical Ctr. v. Beshear*, 920 F.3d 421, 444-45 (2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)), *cert. denied*, No. 19-417 (U.S.) (Dec. 9, 2019). The Eleventh Amendment erects a "true jurisdictional bar" to such suits unless an exception applies. *Russell*, 784 F.3d at 1046.

Director Long is a state official appointed by the Tennessee Supreme Court. *See* Tenn. Code Ann. § 16-3-802(a). Plaintiff has sued Director Long in her official capacity, (DE 19 FAC at ¶ 14) which "is a suit against the State itself." *Russell*, 784 F.3d at 1046. *Ex Parte Young* does not apply; nor does any other exception. Plaintiff's suit is thus barred by the Eleventh Amendment and the State's sovereign immunity.

### 1. The *Ex Parte Young* exception to sovereign immunity applies only when a state official enforces or has threatened to enforce a challenged action.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to sovereign immunity: "'a suit challenging the constitutionality of a state official's action is not one against the State'" and is thus not barred by its sovereign immunity. *Russell*, 784 F.3d at 1046-47 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). "In order to fall within the *Ex Parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

But the *Young* exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute [or action]." *Deters*, 92 F.3d at 1415. And "*Young* does not reach state officials who lack a 'special relation to the particular statute' and '[a]re not expressly directed to see to its enforcement.'" *Russell*, 784 F.3d at 1047 (alterations in original) (quoting *Young*, 209 U.S. at 157). As *Young* explained, if this "special relation" were not required, "then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general." 209 U.S. at

8

157. Although "convenient," that "is a mode which cannot be applied to the states . . . consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons." *Id.* Instead, a state officer is subject to suit under the *Young* exception only if he "ha[s] some connection with the enforcement of the act [or action]." *Id.* That required connection "is the important and material fact" that allows the claim to proceed. *Id.*; *see also Deters*, 92 F.3d at 1415-16.

In *EMW Women's Surgical Center, P.S.C. v. Beshear*, 920 F.3d 421 (6th Cir. 2019), the Sixth Circuit reaffirmed that the *Young* exception is a narrow one that does not apply absent a realistic threat of enforcement:

> State officials who are "clothed with some duty in regard to the enforcement of the laws of the state, and *who threaten and are about to commence proceedings* . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." However, this exception to sovereign immunity created in *Ex parte Young* has been read narrowly. We have held that it "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." There must be "a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." General enforcement authority is insufficient.

*Beshear*, 920 F.3d at 445 (internal citations omitted) (emphasis in original).

Enjoining a state official under *Young* is thus appropriate only when there is a "realistic possibility" that the official will take enforcement action against the plaintiff and when that injunction prevents a state official from acting in an unconstitutional manner against the plaintiff. *See id.*; *Russell*, 784 F.3d at 1048; *see also Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc) (plurality opinion) ("*Young* requires both a close connection between the official and the act and the threatening or commencement of enforcement proceedings by the official."). This "requirement that there be some actual or threatened enforcement" has been "repeatedly applied

9

by the federal courts" to dismiss suits against governors, attorneys general, and other state officials. *Okpalobi*, 244 F.3d at 415-16 (collecting cases). That is because "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute [or action] is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute [or action]." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) ("[S]tate officials must have a particular duty to 'enforce' the statute [or action] in question and a demonstrated willingness to exercise that duty.").

**2. The *Ex Parte Young* exception does not apply because Director Long has no authority to close the meetings of the Advisory Commission on Rules.**

The *Young* exception exists only to allow a federal court to issue "an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment [or action], to the injury of complainant." *Ex Parte Young*, 209 U.S. at 159. No such injunction is possible against Director Long because she has taken no steps—or even has the authority to take—any steps toward closing meetings of the Rules Advisory Commission. Director Long is not a member of the Rules Advisory Commission, and the Commission is not part of the AOC. And because the Commission is not part of the AOC, it is not subject to any policy issued by the AOC and/or Director Long. See Exh. 1, Harmon Supp. Decl., ¶¶ 4-6. In short, Director Long has no authority over the Rules Advisory Commission, and certainly no authority to close either past or future meetings of the Rules Advisory Commission.

The Sixth Circuit has been clear that, under *Ex Parte Young*, the state official sued must have some connection with the alleged unconstitutional conduct. *See e.g.*, *Floyd v. Cty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012) ("The state official sued, however, must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff

10

complains."); *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations.") (citation omitted). Here, Director Long has no connection with the alleged unconstitutional conduct, i.e., the closing of meetings of the Rules Advisory Commission, and has not taken any steps—or even has authority to take—any steps toward closing past or future meetings of the Rules Advisory Commission, *Young* does not apply, and Plaintiff's claims are barred by sovereign immunity.

### B. Plaintiff Lacks the Requisite Standing to Confer Subject Matter Jurisdiction On This Court.

"The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Evans v. Allen*, No. 3:13-CV-480-TAV-CCS, 2014 WL 585392, at \*1 (E.D. Tenn. Feb. 14, 2014) (quoting *Douglas v. E.G. Baldwin & Assocs.,* 150 F.3d 604, 607 (6th Cir. 1998), *abrogation on other grounds recognized by Heartwood, Inc. v. Agpaoa,* 628 F.3d 261, 266 (6th Cir. 2010)). "Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz,* 715 F.3d 969, 972 (6th Cir. 2013) (internal quotation and brackets omitted).

The requirement of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Plaintiffs have the burden "to allege facts demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Furthermore, standing "must affirmatively appear in the record"; it cannot be "inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). And the inquiry into whether plaintiffs have standing should be "especially rigorous" where, as here, Plaintiffs seek to have the actions of

11

a sovereign state declared unconstitutional. *See Crawford v. U.S. Dept. of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–10 (2013)).

The "irreducible constitutional minimum" of standing is that plaintiff must allege an actual or imminent injury that is traceable to the defendant and redressable by the court for each claim asserted. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560–62 (1992). An injury must be an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* at 560 (citations omitted). In *Spokeo*, the Court held that an injury must be both "concrete *and* particularized," and for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." 136 S.Ct. at 1548 (emphasis in original) (citations omitted). For an injury to be "concrete," it must be "'de facto'; that is, it must actually exist." *Id*.

And the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks and alterations omitted). Finally, that Court has recognized that lawsuits that do not challenge "specifically identifiable Government violations of law," but instead challenge "particular programs agencies establish to carry out their legal obligations are . . . rarely if ever appropriate for federal-court adjudication." *Lujan*, 504 U.S. at 568 (citation omitted).

Even if a plaintiff alleges an actual or imminent injury that is concrete and particularized, the plaintiff must also show that the injury is "fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Finally, a plaintiff must also plead facts sufficient to establish that the court is capable of providing relief that would redress the alleged injury. *Lujan*, 504 U.S. at 561.

Here, Plaintiff's allegations against Director Long are sparse. Plaintiff does not allege that Director Long has actually closed any meetings of the Rules Advisory Commission. Instead, Plaintiff simply alleges that Director Long has the legal authority as the Director of the AOC under Tenn. Code Ann. § 16-3-802(a) to close future meetings of the bench-bar advisory commission established to recommend rules. *See* DE 20-1 McCaleb Decl. at ¶ 33; *see also* DE 19 FAC at ¶ 8 ("Michelle Long is the current TAOC Director. There exists a reasonable expectation that Director Long will continue to close future meetings of the Tennessee bench-bar advisory commission established to recommend rules."). But such a general allegation about Director Long's authority as Director of the AOC is not sufficient to invoke federal jurisdiction. As the Sixth Circuit recently stated,

> [w]e need specific, plausible allegations about what the [defendant] has done, is doing, or might do to injure plaintiffs. Without them, plaintiffs have shown no basis on which they can seek an injunction—an *in personem* decree coercing the [defendant] to act or refrain from acting—or a declaration judgment, the "real value" of which is to influence the future "behavior of the defendant towards the plaintiff."

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031-32 (6th Cir. 2022) (internal citations omitted).

To the extent Plaintiff has been injured by closed meetings of the Rules Advisory Commission, Plaintiff's allegations do not establish that the harm is fairly traceable to Director Long's actions or redressable by her. Director Long has no authority over the Rules Advisory Commission as she is not a member of the Rules Advisory Commission, the Commission is not part of the AOC and it is not subject to any policies of the AOC. *See* Exh. 1, Harmon Supp. Decl., ¶¶ 4-6. In other words, Plaintiff has both failed to demonstrate how Director Long caused Plaintiff's alleged injury—a causation defect—and failed to show what this Court could order

Director Long to do or refrain from doing to give Plaintiff relief—a redressability defect. "To invoke federal jurisdiction, plaintiffs have the burden of showing some 'viable remedy' we can dispense that would at least partially relieve their injury. *Universal Life Church*, 35 F.4th at 1033 (citing *Alston v. Advanced Brands & Imp. Co.*, 494 F.3d 562, 565 (6th Cir. 2007). Accordingly, Plaintiff can demonstrate no likelihood of success on the merits regarding his First Amendment right of access claim and a preliminary injunction should not issue against Defendant Long.

## II. Plaintiff is unlikely to suffer irreparable injury caused by Director Long absent an injunction.

"When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (internal quotation and citation omitted). Thus, where a Plaintiff fails to show a likelihood of success on the merits of their claim that their constitutional rights were violated, the Sixth Circuit has instructed that a finding of irreparable harm is not warranted. *See McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) (affirming denial of preliminary injunction noting that because plaintiff "does not have a likelihood of success on the merits ... his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails."); *Overstreet*, 305 F.3d at 578 (6th Cir. 2002) (denying injunctive relief noting that plaintiff's "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit" since he failed to show a likelihood of success on the merits); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) (denying TRO noting "[p]laintiff has not established a strong likelihood of success on the merits of its misappropriation of trade secrets claim. Because it has not been shown that Defendants misappropriated Plaintiff's trade secrets, irreparable harm cannot be presumed.").

14

Here, Plaintiff has not established a likelihood of success on the merits of his claim that his First Amendment right of access has been violated by Director Long and, therefore, his argument that he is irreparably harmed by the alleged deprivation of this right also fails.[2]

### III. Plaintiff's Requested Relief Would Cause Substantial Harm to Director Long and Would Not Further the Public Interest.

Both the Supreme Court and the Sixth Circuit have recognized that while the preliminary-injunction analysis usually entails consideration of the harm to the opposing party and a weighing the public interest, these two factors "merge when the Government is the opposing party." *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *11 (6th Cir. June 9, 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

While the public has an interest in the protection of First Amendment liberties, "the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge." *Connection Distribution Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1988). Here, because Plaintiff can demonstrate no likelihood of success on the merits of his First Amendment claim, the granting of an injunction would not be in the public interest. *See Ison v. Madison Local School Board*, 395 F.Supp.3d 923, 939 (S.D. Ohio 2019).

---

[2] Moreover, the right of access under the First Amendment has never been construed as a right of access to any government proceeding. While the First Amendment right of access covers certain judicial and quasi-judicial proceedings and records filed in those adversarial-type proceedings, neither the Sixth Circuit nor the Supreme Court has ever recognized a First Amendment right of access to meetings of a state rules advisory commission. Indeed, the Sixth Circuit has recently recognized that the "right of access to government proceedings is not a tool for judges to pry open the doors of state and federal agencies because they believe that public access to this type of information would be a good idea. It is a qualified right to certain proceedings and documents filed therein and nothing more." *Phillips v. DeWine*, 841 F.3d 405, 417-20 (6th Cir. 2016) (internal quotations omitted).

15

Additionally, in establishing the Rules Advisory Commission, the Tennessee General Assembly specifically did not require that meetings of that body be open to the public and the press. Furthermore, since the Rules Advisory Commission only makes recommendations to the Tennessee Supreme Court and does not make decisions or recommendations on policy or administration, it is not subject to Tennessee's Open Meetings Act, Tenn. Code Ann. §§ 8-44-101, et seq. *See Moncier v. Hearing Panel of Bd. of Professional Responsibility*, No. M2012-01850-COA-R3-CV, 2013 WL 3833543, at \*4 (Tenn. Ct. App. July 19, 2013) (finding that Board of Professional Responsibility hearing panels do not "make decisions or recommendations on policy or administration affecting the conduct of the business of the people in the governmental sector" and therefore are not governing bodies for purposes of the Open Meetings Act) (citing *Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976)). Thus, the granting of the requested injunctive relief would contravene Tennessee's public policy and discretion regarding whether meetings of the Rules Advisory Commission are open. "[A]ny time a State is enjoined by a court from effectuating [the public policy] enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 133 S. Ct. 1, 3, 183 L.Ed.2d 667 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977) (Rehnquist, J., in chambers)).

16

**CONCLUSION**

For these reasons, Defendant Long respectfully requests that this Court deny Plaintiff's request for preliminary injunctive relief.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ *Janet M. Kleinfelter*
JANET M. KLEINFELTER (BPR 13889)
Deputy Attorney General
Public Interest Division

STEVEN A. HART (BPR 7050)
Special Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-7403
Janet.kleinfelter@ag.tn.gov
Steve.hart@ag.tn.gov

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

M. E. Buck Dougherty III
James McQuaid
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, IL  60654
bdoughterty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Date:  July 14, 2022

/s/ *Janet M. Kleinfelter*
JANET M. KLEINFELTER
Deputy Attorney General

18