IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439 |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) | Judge Richardson<br><br>Magistrate Judge Frensley |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Michelle Long, in her official capacity as Director of the Tennessee Administrative Office of the Courts, hereby submits this memorandum of law in support of her Motion to Dismiss Plaintiff's First Amended Complaint (DE 19) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### INTRODUCTION

Plaintiff, the executive editor of an online news organization, "The Center Square," has filed suit seeking to enforce his alleged First Amendment right of access—but not to any sort of judicial proceedings or any judicial records. Rather, Plaintiff seeks to enforce his alleged First Amendment right of access to future meetings of the "Tennessee bench-bar advisory commission established to recommend rules" and of Tennessee Judicial Conference committees established to

recommend rules.  As such, Plaintiff seeks a declaration that "the First Amendment right of access attaches to meetings of the Tennessee bench-bar advisory commission established to recommend rules" and an injunction enjoining Defendant Long, the Administrative Director of the Administrative Office of the Courts, from closing all future meetings of these committees and to require Defendant Long to provide Plaintiff with both virtual and in-person access to all future meetings.  (DE 19 First Amended Complaint (FAC) PageID # 149.)

Director Long seeks to dismiss the First Amended Complaint in its entirety and with prejudice as Plaintiff's claims are barred by sovereign immunity and Plaintiff lacks the requisite standing to confer Article III jurisdiction on this Court.

## BACKGROUND

### 1. Tennessee Administrative Office of the Courts

In 1993, the Tennessee Administrative Office of the Courts ("AOC") was established by the Tennessee General Assembly for the purpose of assisting "in improving the administration of justice in this state by performing the duties and exercising the powers conferred" by statute.  Tenn. Code Ann. § 16-3-801.  Defendant Long is the current Administrative Director of the AOC and is appointed by and serves at the pleasure of the Tennessee Supreme Court.  Tenn. Code Ann. § 16-3-802(a).  Director Long works "under the supervision and direction of the chief justice" and, "as the chief administrative officer of the state court system, assist[s] the chief justice in the administration of the state court system to the end that litigation may be expedited and the administration of justice improved."  Tenn. Code Ann. § 16-3-803(a).

The duties of the Administrative Director are set forth in Tenn. Code Ann. § 16-3-803 and include the following:

- Annually prepare a budget for the maintenance and operation of the state court

2

system;

- Administer the accounts of the state court system, including approving all requisitions and audit expenditures of state funds;

- Provide the judges of the trial courts with minimum law libraries;

- Prepare an annual judicial education plan for the orientation and continuing training and education of all elected or appointed judges of trial and appellate courts of record of this state;

- Survey and study the operation of the state court system;

- Establish criteria, develop procedures and implement a Tennessee court information system;

- Develop, define, update and disseminate standard, uniform measures, definitions and criteria for collecting statistics pertaining to the court system;

- Prepare and distribute an annual report reflecting the operation of the state court system;

- Conduct ongoing internal review, analysis and planning for the future needs of the state court system;

- File a copy of the Supreme Court's policies and guidelines governing the reimbursement of expenses for judicial officers with various legislative committees and state officials;

- Annually prepare and distribute to legislative committees a report detailing expenditure of funds in civil legal representation of indigents fund and copy of rules and policies adopted by Supreme Court governing expenditure and application of funds in civil legal representation of indigents fund; and

- Administer finances related to office's control and supervision of state law libraries.

3

Tenn. Code Ann. § 16-3-803(a) – (m), (o).

### 2. Advisory Commission on Rules of Practice and Procedure

Approximately thirty years prior to the establishment of the Administrative Office of the Courts, the Tennessee General Assembly established the Advisory Commission on Rules of Practice and Procedure (Rules Advisory Commission) in 1965. *See* 1965 Tenn. Pub. Acts, ch. 227, § 7 (codified at Tenn. Code Ann. § 16-3-601). Originally, the Rules Advisory Commission had nine members appointed by the Tennessee Supreme Court whose duty was to advise the Supreme Court "from time to time respecting the rules of practice and procedure." *Id*. In 2001, the General Assembly amended the statute to eliminate the limitation on the number of members that the Supreme Court could appoint. *See* 2001 Tenn. Pub. Acts, ch. 257, § 1 (codified at Tenn. Code Ann. § 16-3-601(a)).

There are currently twenty-two members of the Rules Advisory Commission, all of whom are attorneys appointed by the Tennessee Supreme Court, and include Tennessee's Solicitor General, a state representative, and a clerk and master. The Advisory Commission also includes a Tennessee Supreme Court Justice and four State Court Judges as non-voting judicial liaisons and two Supreme Court staff attorneys (civil and criminal). *See* Supplemental Declaration of Rachel Harmon , ¶ 3 (DE 23-1) attached as Exhibit 1 to Defendant's Response in Opposition to Motion for Preliminary Injunction.

Neither Director Long, nor any employee of the AOC is a member of the Rules Advisory Commission. Additionally, the Rules Advisory Commission is not part of the AOC and is not subject to any of the AOC's policies. *Id*., ¶ ¶ 4-6. The AOC only provides administrative assistance to the Rules Advisory Commission. *Id*.

4

### 3. Tennessee Judicial Conference

In 1953, the Tennessee General Assembly established a judicial conference "whose memberships shall consist of all judges of courts of records whose salary is paid in whole or in part out of the state treasury, including retired judges," i.e., the Tennessee Judicial Conference ("TJC").[1] Tenn. Code Ann. § 17-3-101(a). The General Assembly further directed that the conference meet annually "for the consideration of any and all matters pertaining to the discharge of the official duties and obligations of its several members, to the end that there shall be a more prompt and efficient administration of justice in the courts of this state." Tenn. Code Ann. § 17-3-104. The General Assembly vested full power and authority in the TJC "to prescribe rules of official conduct of all judges" which must be in compliance with the American Bar Association's code of judicial ethics but imposed no other duties on the conference except

> to give consideration to the enactment of laws and rules of procedure that in its judgment may be necessary to the more effective suppression of crime and thus promote peace and good order in the state. To this end, a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly.

Tenn. Code Ann. § 17-3-106-107. The TJC has not established any committees to recommend either civil or criminal rules of practice and procedure. *See* Harmon Supp. Decl., ¶ 3 (DE 23-1).

### STANDARD OF REVIEW FOR RULE 12(B)(1) MOTION TO DISMISS

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) may be either a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleadings." *Id.* When reviewing a facial attack, this Court must take the allegations in the complaint to be true. *Id.*

---

[1] The Judicial Conference also includes active and retired judges, who are licensed attorneys, of the probate courts created by private acts in counties having a population of 300,000 or more based on the 1960 and any subsequent census. Tenn. Code Ann. § 17-3-101(b).

5

But when there is a factual attack, the Court must weigh conflicting evidence provided by the plaintiff and the defendant to determine whether subject-matter jurisdiction exists. *Id*. Thus in reviewing a factual attack, the Court may consider evidence outside the pleadings and both parties are free to supplement the record by affidavits. *Id*. *See Rogers v. Stratton Industries*, 798 F.2d 913, 916 (6th Cir. 1986). This Court has viewed challenges to subject matter jurisdiction under the Eleventh Amendment as factual challenges under Rule 12(b)(1). *See Hlfip Holding, Inc. v. Rutherford Cnty., Tennessee*, No. 3:19-CV-00714, 2021 WL 4502833, at \*2, n.5 (M.D. Tenn. Oct. 1, 2021) (citations omitted).

## I. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATE'S SOVEREIGN IMMUNITY.

Each "State is a sovereign entity in our federal system." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). A "fundamental aspect" of that sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment "confirms" that a State is not "amendable to the suit of an individual without its consent." *Seminole Tribe*, 517 U.S. at 54 (internal quotation marks omitted). And a "'suit against a state official in his or her official capacity is not a suit against the official'"; it "'is a suit against the State itself.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "'[R]egardless of whether it seeks damages or injunctive relief,'" a suit against a state official "'that is in fact a suit against a State is barred.'" *EMW Women's Surgical Ctr. v. Beshear*, 920 F.3d 421, 444-45 (2019) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)), *cert. denied*, No. 19-417 (U.S.) (Dec. 9, 2019). The Eleventh Amendment erects a "true jurisdictional bar" to such suits unless an exception applies. *Russell*, 784 F.3d at 1046.

6

Director Long is a state official appointed by the Tennessee Supreme Court. *See* Tenn. Code Ann. § 16-3-802(a). Plaintiff has sued Director Long in her official capacity, (DE 19 FAC at ¶ 14) which "is a suit against the State itself." *Russell*, 784 F.3d at 1046. *Ex Parte Young* does not apply; nor does any other exception. Plaintiff's suit is thus barred by the Eleventh Amendment and the State's sovereign immunity.

**A. The *Ex Parte Young* Exception to Sovereign Immunity Applies Only When A State Official Enforces Or Has Threatened To Enforce A Challenged Action.**

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to sovereign immunity: "'a suit challenging the constitutionality of a state official's action is not one against the State'" and is thus not barred by its sovereign immunity. *Russell*, 784 F.3d at 1046-47 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). "In order to fall within the *Ex Parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

But the *Young* exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute [or action]." *Deters*, 92 F.3d at 1415. And "*Young* does not reach state officials who lack a 'special relation to the particular statute' and '[a]re not expressly directed to see to its enforcement.'" *Russell*, 784 F.3d at 1047 (alterations in original) (quoting *Young*, 209 U.S. at 157). As *Young* explained, if this "special relation" were not required, "then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general." 209 U.S. at 157. Although "convenient," that "is a mode which cannot be applied to the states . . . consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons." *Id.* Instead, a state officer is subject to suit under the *Young* exception only if he "ha[s] some connection with the enforcement of the act [or action]." *Id.* That required

7

connection "is the important and material fact" that allows the claim to proceed.  *Id.*; *see also Deters*, 92 F.3d at 1415-16.

In *EMW Women's Surgical Center, P.S.C. v. Beshear*, 920 F.3d 421 (6th Cir. 2019), the Sixth Circuit reaffirmed that the *Young* exception is a narrow one that does not apply absent a realistic threat of enforcement:

> State officials who are "clothed with some duty in regard to the enforcement of the laws of the state, and *who threaten and are about to commence proceedings* . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."  However, this exception to sovereign immunity created in *Ex parte Young* has been read narrowly.  We have held that it "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."  There must be "a realistic possibility the official will take legal or administrative actions against the plaintiff's interests."  General enforcement authority is insufficient.

*Beshear*, 920 F.3d at 445 (internal citations omitted) (emphasis in original).

Enjoining a state official under *Young* is thus appropriate only when there is a "realistic possibility" that the official will take enforcement action against the plaintiff and when that injunction prevents a state official from acting in an unconstitutional manner against the plaintiff. *See id.*; *Russell*, 784 F.3d at 1048; *see also Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (en banc) (plurality opinion) ("*Young* requires both a close connection between the official and the act and the threatening or commencement of enforcement proceedings by the official.").  This "requirement that there be some actual or threatened enforcement" has been "repeatedly applied by the federal courts" to dismiss suits against governors, attorneys general, and other state officials. *Okpalobi*, 244 F.3d at 415-16 (collecting cases).  That is because "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute [or action] is not aided by enjoining the actions of a state official not directly involved in enforcing the subject

8

statute [or action]."  *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) ("[S]tate officials must have a particular duty to 'enforce' the statute [or action] in question and a demonstrated willingness to exercise that duty.").

### B. The *Ex Parte Young* Exception Does Not Apply Because Director Long Has No Authority to Close Meetings Of the Rules Advisory Commission.

The *Young* exception exists only to allow a federal court to issue "an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment [or action], to the injury of complainant."  *Ex Parte Young*, 209 U.S. at 159.  No such injunction is possible against Director Long because she has taken no steps—or even has the authority to take—any steps toward closing meetings of the Rules Advisory Commission.  Director Long is not a member of the Rules Advisory Commission, and the Commission is not part of the AOC.  And because the Commission is not part of the AOC, it is not subject to any policy issued by the AOC and/or Director Long.  *See* (DE 23-1), Harmon Supp. Decl., ¶¶ 4-6.  In short, Director Long has no authority over the Rules Advisory Commission, and certainly no authority to close either past or future meetings of the Rules Advisory Commission.

The Sixth Circuit has been clear that, under *Ex Parte Young*, the state official sued must have some connection with the alleged unconstitutional conduct.  *See e.g.*, *Floyd v. Cty. of Kent*, 454 F. App'x 493, 499 (6th Cir. 2012) ("The state official sued, however, must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains."); *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) ("A plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations.") (citation omitted).  Here, since Director Long has no connection with the alleged unconstitutional conduct, i.e., the closing of meetings of the Rules Advisory

Commission, and has not taken any steps—or even has authority to take—any steps toward closing past or future meetings of the Rules Advisory Commission, *Young* does not apply, and Plaintiff's claims are barred by sovereign immunity. Accordingly, Plaintiff's First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## II.   PLAINTIFF LACKS THE REQUISTE STANDING TO VEST SUBJECT MATTER JURISDICTION IN THIS COURT.

"The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Evans v. Allen*, No. 3:13-CV-480-TAV-CCS, 2014 WL 585392, at *1 (E.D. Tenn. Feb. 14, 2014) (quoting *Douglas v. E.G. Baldwin & Assocs.,* 150 F.3d 604, 607 (6th Cir. 1998), *abrogation on other grounds recognized by Heartwood, Inc. v. Agpaoa,* 628 F.3d 261, 266 (6th Cir. 2010)). "Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz,* 715 F.3d 969, 972 (6th Cir. 2013) (internal quotation and brackets omitted).

The requirement of standing is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). A plaintiff has the burden "to allege facts demonstrating that [he is a ] proper part[y] to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Furthermore, standing "must affirmatively appear in the record"; it cannot be "inferred argumentatively from averments in the pleadings." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). And the inquiry into whether a plaintiff hase standing should be "especially rigorous" where, as here, Plaintiff seeks to have the actions of a sovereign state declared unconstitutional. *See Crawford v. U.S. Dept. of Treasury*, 868 F.3d 438, 457 (6th Cir. 2017) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–10 (2013)).

The "irreducible constitutional minimum" of standing is that a plaintiff must allege an actual or imminent injury that is traceable to the defendant and redressable by the court for each

claim asserted.  *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560–62 (1992).  An injury must be an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'"  *Id.* at 560 (citations omitted).  In *Spokeo*, the Court held that an injury must be both "concrete *and* particularized," and for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  136 S.Ct. at 1548 (emphasis in original) (citations omitted).  For an injury to be "concrete," it must be "'de facto'; that is, it must actually exist."  *Id*.

And the Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient."  *Clapper*, 568 U.S. at 409 (internal quotation marks and alterations omitted).  Finally, that Court has recognized that lawsuits that do not challenge "specifically identifiable Government violations of law," but instead challenge "particular programs agencies establish to carry out their legal obligations are . . . rarely if ever appropriate for federal-court adjudication."  *Lujan*, 504 U.S. at 568 (citation omitted).

Even if a plaintiff alleges an actual or imminent injury that is concrete and particularized, the plaintiff must also show that the injury is "fairly traceable to the defendant's allegedly unlawful conduct."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).  Finally, a plaintiff must also plead facts sufficient to establish that the court is capable of providing relief that would redress the alleged injury.  *Lujan*, 504 U.S. at 561.

Here, Plaintiff's allegations against Director Long are sparse.  Plaintiff does not allege that Director Long has actually closed any meetings of the Rules Advisory Commission.  Instead, Plaintiff simply alleges that "Michelle Long is the current TAOC Director.  There exists a reasonable expectation that Director Long will continue to close future meetings of the Tennessee

11

bench-bar advisory commission established to recommend rules." (DE 19 FAC at ¶ 8). But such a general allegation about Director Long's position as the Director of the AOC is not sufficient to invoke federal jurisdiction (particularly given the Harmon Supplemental Declaration (DE 23-1). As the Sixth Circuit recently stated,

> [w]e need specific, plausible allegations about what the [defendant] has done, is doing, or might do to injure plaintiffs. Without them, plaintiffs have shown no basis on which they can seek an injunction—an *in personem* decree coercing the [defendant] to act or refrain from acting—or a declaration judgment, the "real value" of which is to influence the future "behavior of the defendant towards the plaintiff."

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031-32 (6th Cir. 2022) (internal citations omitted).

To the extent Plaintiff has been injured by closed meetings of the Rules Advisory Commission, Plaintiff's allegations do not establish that the harm is fairly traceable to Director Long's actions or redressable by her. Director Long has no authority over the Rules Advisory Commission as she is not a member of the Rules Advisory Commission, the Commission is not part of the AOC, and it is not subject to any policies of the AOC. *See* (DE 23-1) , Harmon Supp. Decl.,¶¶ 4-6. In other words, Plaintiff has both failed to demonstrate how Director Long caused Plaintiff's alleged injury—a causation defect—and failed to show what this Court could order Director Long to do or refrain from doing to give Plaintiff relief—a redressability defect. "To invoke federal jurisdiction, plaintiffs have the burden of showing some 'viable remedy' we can dispense that would at least partially relieve their injury. *Universal Life Church*, 35 F.4th at 1033 (citing *Alston v. Advanced Brands & Imp. Co*., 494 F.3d 562, 565 (6th Cir. 2007). Accordingly, Plaintiff has failed to allege sufficient facts establishing standing necessary to confer jurisdiction

on this Court, and accordingly, Plaintiff's First Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For these reasons, Director Long respectfully requests that this Court dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


/s/ *Janet M. Kleinfelter*
JANET M. KLEINFELTER (BPR 13889)
Deputy Attorney General
Public Interest Division

STEVEN A. HART (BPR 7050)
Special Counsel
Office of Tennessee Attorney General
P.O. Box 20207
Nashville, TN  37202
(615) 741-7403
Janet.kleinfelter@ag.tn.gov
Steve.hart@ag.tn.gov

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document has been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

M. E. Buck Dougherty III
James McQuaid
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, IL 60654
bdoughterty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Date: July 14, 2022

/s/ *Janet M. Kleinfelter*
JANET M. KLEINFELTER
Deputy Attorney General