UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| Dan McCaleb, Executive Editor of THE CENTER SQUARE,<br><br>    Plaintiff,<br><br>v.<br><br>Michelle Long, in her official capacity as DIRECTOR OF TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS,<br><br>    Defendant. | Case No. 3:22-cv-00439<br><br>District Judge Richardson<br><br>Magistrate Judge Frensley |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY DISCOVERY

Respectfully submitted,

LIBERTY JUSTICE CENTER

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, Admitted *pro hac vice*
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... 2

BACKGROUND ................................................................................................. 4

STATEMENT OF SECOND SUPPLEMENTAL FACTS ........................................... 8

LEGAL STANDARD......................................................................................... 13

ARGUMENT .................................................................................................. 15

I. The Federal Rules of Civil Procedure do not provide for a "Motion to Stay Discovery," and the default Local Rule prohibits staying discovery during the pendency of a dispositive motion............................. 15

II. Although Rule 26(c) provides an alternate vehicle for a stay request, Director Long's conclusory statements are insufficient to establish good cause because she failed to show a clearly defined and serious injury would result from participating in discovery .............. 17

III. Rule 26(b)(1) expressly authorizes McCaleb to discover *facts* relevant to Director Long's Eleventh Amendment immunity claim, and staying discovery would contravene the Federal Rules and substantially prejudice McCaleb............................................................ 18

CONCLUSION................................................................................................. 22

1

# TABLE OF AUTHORITIES

**Cases**

*Avirgan v. Hull,*
  118 F.R.D. 252 (D.D.C. Dec. 9, 1987) ................................................................. 14

*Binay v. Bettendorf,*
  601 F. 3d 640 (6th Cir. 2010) ........................................................................... 19

*Blackard v. Memphis Area Med. Ctr. for Women, Inc.,*
  262 F.3d 568 (6th Cir. 2001) ........................................................................ 8, 22

*Cockrill v. Mortgage Electronic Registration System,*
  2013 U.S. Dist. LEXIS 66925 (M.D. Tenn. May 10, 2013) ................................... 13

*Crawford-El. v. Britton,*
  523 U. S. 574 (1998) ......................................................................................... 13

*Gragg v. Ky. Cabinet for Workforce Dev.,*
  289 F. 3d 958 (6th Cir. 2002) ........................................................................... 15

*Hickman v. Taylor,*
  329 U.S. 495 (1947) .......................................................................................... 16

*Hopper v. Credit Assocs., LLC,*
  2021 U.S. Dist. LEXIS 124986 (S.D. Ohio Jul. 6, 2021) ..................................... 15

*In re Amendments to Tenn. Rules of Appellate Procedure and Civ. Procedure,*
  2021 LEXIS 254 (Tenn. Aug. 24, 2021) ................................................................ 8

*In re: Skelaxin Metaxalone Antitrust Lit.,*
  292 F.R.D. 544 (E.D. Tenn. Jun. 10, 2013) .................................................... 14, 17

*Isaac v. Shell Oil Co.,*
  83 F.R.D. 428 (E. D. Mich. Aug. 23, 1979) ........................................................ 14

*Lee v. Vanderbilt Univ.,*
  2021 U.S. Dist. LEXIS 184911 (M.D. Tenn. Apr. 15, 2021) ................ 13, 14, 15, 17

*Nair v. Oakland Cnty. Cmty. Mental Health Auth.,*
  443 F. 3d 469 (6th Cir. 2006) ................................................................. 14, 18, 19

*Nix v. Sword,*
  11 F. App'x. 498 (6th Cir 2001) ......................................................................... 14

*Ohio Bell Tel. Co. v. Glob NAPs Ohio Inc.,*
  2008 U.S. Dist. LEXIS 21288 (S.D. Ohio Mar. 4, 2008) ................................. 15, 21

*Oppenheimer Fund, Inc. v. Sanders,*
  437 U.S. 340 (1978) .......................................................................................... 18

*Rice v. Hudson,*
  2009 U.S. Dist. LEXIS 67592 (N.D. Ohio Aug. 4, 2009) ...................................... 20

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ........................................................................................... 15

*United States v. American Optical Co.,*
39 F.R.D. 580 (N. D. Cal. Feb. 28, 1966) ...................................................... 14

*Whited v. Motorists Mut. Ins. Co.,*
2009 U.S. Dist. LEXIS 42379 (E.D. Mich. May 19, 2009) ........................... 16

**Statutes**

Tenn. Code Ann. § 16-3-601 ................................................................................ 4

**Rules**

Fed. R. Civ. P. 1. ............................................................................................... 16

Fed. R. Civ. P. 26 ......................................................................................... 14, 18

LR 16.01 ......................................................................................................... 14, 15

# BACKGROUND

Plaintiff Dan McCaleb responds in opposition to Defendant Administrative Director Michelle Long's motion to stay discovery (ECF No. 29).[1] As the Executive Editor of The Center Square, McCaleb filed this lawsuit against Long in her official capacity as Director of the Tennessee Administrative Office of the Courts ("TAOC"), seeking declaratory and prospective injunctive relief.

Under the Supreme Court's holding in *Richmond Newspapers* and its progeny, McCaleb argues the First Amendment right of access attaches to State court rulemaking meetings of the Advisory Commission on Rules of Practice and Procedure, created by Tenn. Code Ann. § 16-3-601 ("Advisory Commission"). He seeks in-person and virtual access to future Advisory Commission meetings so he can assign reporters to report on meetings. The next Advisory Commission quarterly meeting is on September 9, 2022, and it is closed to the public and press.

The Center Square's focus is state-and local-level government and economic reporting. As a result of this approach, its readers are better informed about the issues of state and local government and its cost to the citizens whose tax dollars fund governmental decisions. The Center Square is staffed by editors and reporters with extensive professional journalism experience, and it engages its readers with

---

[1] Director Long's motion to stay discovery filed on August 8, 2022, also requested relief to postpone the initial case management conference set for August 11, 2022. But to allow McCaleb time to fully brief this response, the following day Magistrate Judge Frensley entered an order and reset the initial case management telephone conference until September 19, 2022. So, the issue of postponing the conference is not currently before the Court. Order, ECF No. 32.

4

essential news, data, and analysis. Headquartered in Chicago, The Center Square provides extensive news coverage throughout the United States, including the Southeast region and Tennessee.[2]

Although McCaleb sued Director Long in her official capacity as the chief administrative officer of the State court system—charged with overseeing an operating budget of over $175 million dollars—in her stay motion Director Long "submits that the interests of judicial economy and the parties' resources are best served" by staying discovery.[3] Long Motion, ECF No. 29, Page ID #873.

But this Court has repeatedly held that neither the Federal, nor the Local, Rules provide for such a motion. And when presented with a stay request, the Court views it as a protective order motion and applies Rule 26(c)'s good cause standard. Under Rule 26(c), the moving party must state specific facts showing a clearly defined and serious injury would result from participating in discovery. Rule 26(c)'s good cause standard proves fatal to Director Long's motion because she failed to articulate specific facts to support her request to refrain from discovery, relying instead on conclusory statements to argue her point. Long Mem., ECF No. 30.

[2] https://www.thecentersquare.com/tennessee/.

[3] *See* State Budget that Governor Lee submitted to the Tennessee General Assembly on February 1, 2022. Since McCaleb sued Director Long in her official capacity for injunctive relief and not in her personal capacity for money damages, it is assumed that by referencing her "resources," Director Long is referring to the State court system allocation that exceeds $175 million dollars. It is further notable in the State Budget that the total court system appropriation (which Director Long approved and oversees) increased well over $5 million dollars this fiscal year from the previous 2021-2022 fiscal year. State Budget, ECF No. 27-1, Page ID #718.

Director Long's argument is that since her Rule 12(b)(1) dispositive motion *factually* attacking subject-matter jurisdiction is pending before the Court—and the parties do not dispute this Court's wide discretion to look outside the pleadings to ensure it has jurisdiction—she should be excused from participating in the discovery of *facts* as the Federal Rules of Civil Procedure require.[4] In Director Long's parlance, "to be blunt," her argument is legally incoherent and wholly without merit. *See* Long Reply, ECF No. 28, Page ID #869. To argue on the one hand that this Court lacks subject-matter jurisdiction over McCaleb's First Amendment claim and acknowledge the Court may look outside the pleadings, while also arguing on the other hand to stay discovery, turns the Federal Rules of Civil Procedure on its head.

Under Rule 26(b)(1), McCaleb is entitled to discover relevant information pertaining to Director Long's jurisdictional claims. As a routine matter of course under the Rules, this includes facts that form the basis for Director Long's Eleventh Amendment immunity claim. Director Long's attempt to stay discovery is ironic because she took exception to McCaleb's "sparse" factual allegations as she characterized them, to argue the Court lacked subject-matter jurisdiction over his First Amendment right of access claim. Long Mem., ECF No. 25, Page ID #234.

---

[4] Despite being the only State official sued in this lawsuit, Director Long previously displayed a similar posture of "not wanting to participate" since she did not submit her own supporting declarations, and she opted to have Deputy Director Rachel Harmon submit them on her behalf. *See e.g.,* Harmon Supplemental Declaration, ECF No. 23-1. After Director Long filed the stay motion, her counsel represented that if the Court denies her Rule 12(b)(1) motion, within 14 days of denial she will submit a scheduling order for the completion of discovery. *See generally* ECF No. 31.

6

Now, in a reversal of legal strategy, Director Long attempts to distance herself from the *actual facts* bearing on her Eleventh Amendment immunity claim.

Instead of enlarging the circle of information to buttress her factual attack on subject-matter jurisdiction that she initiated, Director Long retreats and wants to limit facts. This is because McCaleb submitted overwhelming factual support to show *Ex Parte Young* clearly applies as an exception to Director Long's immunity claim. McCaleb further established Article III standing to confer jurisdiction on this Court. McCaleb Resp., ECF No. 27. Although a plaintiff has the burden to establish a court's subject matter jurisdiction over his claim, *Director Long* carries the burden to show she is entitled to Eleventh Amendment immunity, which she failed to establish. Because her flawed Eleventh Amendment immunity claim is the "*sine qua non*" to her Rule 12(b)(1) dispositive motion, her stay request must also fail. *See* Long Mem., ECF No. 30, Page ID #878.

Therefore, the Court should deny Director Long's motion to stay discovery because (1) her motion is procedurally defective under the Federal Rules and expressly prohibited by the Local Rules; (2) she failed to articulate specific facts under Rule 26(c)'s good cause standard that show a clearly defined and serious injury would result from participating in discovery; and (3) under Rule 26(b)(1), McCaleb is entitled to discover *facts* relevant to her Eleventh Amendment immunity claim, and staying discovery would contravene the Federal Rules and substantially prejudice McCaleb.

## STATEMENT OF SECOND SUPPLEMENTAL FACTS

*Advisory Commission 2020-2021 term State court*
*rule recommendations ordered to be posted on TAOC's website*

Last year on August 24, 2021, the Tennessee Supreme Court entered an order stating that the Advisory Commission met on June 11, 2021, concluding its 2020-2021 term. *In re Amendments to Tenn. Rules of Appellate Procedure and Civ. Procedure*, 2021 LEXIS 254, *1 (Tenn. Aug. 24, 2021). A copy of the order is attached as ECF No. 33-1.

The Tennessee Supreme Court noted that after its meeting, the Advisory Commission presented its annual recommendations to amend various State court rules. *Id.* The Tennessee Supreme Court further ordered that its order, along with the Advisory Commission's recommended rule amendments, be posted on its website to invite public comments. The Tennessee Supreme Court and the TAOC share the same website. *Id.*[5]

*As ordered, TAOC posted on its website the*
*Advisory Commission's rule recommendations for its 2020-2021 term*

On August 24, 2021, the same day as ordered by the Tennessee Supreme Court, TAOC made available for public comment and posted on its website the Advisory Commission's annual recommendations for its 2020-2021 term, to amend various

---

[5] *Available at* https://tncourts.gov/courts/supreme-court (last visited on Aug. 17, 2022). The fact the Tennessee Supreme Court and TAOC share the same website is consistent with the Sixth Circuit's holding in *Blackard* that Tennessee's Administrative Director and the State court system maintain "an identity of interests or privity between the two." *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F. 3d 568, 576 (6th Cir. 2001).

State court rules.[6] In addition to the link to the Tennessee Supreme Court and TAOC's website, a copy of the order posted on the website is also attached as ECF No. 33-2.

*The Commission on the Future of the*
*Tennessee Judicial System (1996-2026) 30-year Vision Report*

In 1996, the Tennessee Supreme Court asked a distinguished and highly accomplished group of individuals serving on a Commission, to develop and provide a 30-year report (1996-2026) on the "Future of the Tennessee Judicial System" ("Report"). The Commission responded to the Tennessee Supreme Court's request by authoring an exhaustive and comprehensive Report, which is attached as ECF No. 33-3.[7] One of Director Long's Administrative Director predecessors served on the Commission's Court Executive Team. *Id.*

The Commission received testimony and conducted interviews with a broad, cross-section of people, conducting research to develop potential goals and a vision where the Tennessee Judicial System should aspire to be in the year 2026. *Id.* Under a section entitled "Tomorrow's Vision," the Commission set forth its mission by identifying three main goals in which to serve all people, by:

---

[6] *Available at* https://www.tncourts.gov/sites/default/files/public_comment_order_soliciting_rules_package_adm2021-00969.pdf (last visited on Aug. 17, 2022).

[7] It may also be found on TAOC's website *available at* https://www.tncourts.gov/sites/default/files/docs/report_of_future_of_tn_judicial_system.pdf (last visited on Aug. 17, 2022).

- Providing a fair, independent, accessible, understandable and efficient means of determining rights and resolving disputes,

- Preserving and interpreting the evolving rule of law,

- Protecting all rights and liberties guaranteed by the United States and Tennessee Constitutions.

*Id.* Under a section entitled "Public Opinion," the Commission noted that the "highest opinions of the judicial system come from those within the system—the judges, lawyers, and clerks whose places are secure in the present. Time after time, we heard from them that a few minor improvements might be useful, but that by and large the system was serving the public well." *Id.* In contrast, the "public disagrees, and it regards self-satisfaction within the system as a telling fault." *Id.*

Expanding on this theme of the public's dissatisfaction with the State judicial system compared to those on the inside who were satisfied, in a section of the Report entitled "Access," it states:

> Legal language and complex procedures make it difficult for persons to represent themselves even in simple cases, especially if the opposing sides are represented by counsel. Personnel of the judicial system frequently treat lawyers and judges as the clients of the system and members of the public, including witnesses, victims, and jurors, as troublesome outsiders.

*Id.*

To combat this problem of the public feeling like "outsiders," the Report in a main section entitled, "Lower Barriers," recommended that improved "customer service" within the judicial system would do much to increase public trust and understanding. *Id.* In a sub-section within "Lower Barriers," entitled, "Easier

10

access," the Report notes the "many obstacles to public access of the judicial system should be reduced." And many individuals, even "well-educated, socially, and culturally competent citizens, can be alienated by a legal system with its own arcane language and subculture. The procedures, the rules, and even the words are almost unintelligible to the uninitiated, and they almost seem designed to exclude." *Id.*

The Report concludes under a main heading entitled, "New Directions." And the first sub-section is entitled, "Public accountability." It states in its entirety as follows:

> The Tennessee judicial system is a public institution. It should therefore serve the public. In too many ways, it fails to do so now. Too often it treats the public as outsiders. Too often its manners and mores serve its bishops rather than its laymen. Not in all ways, of course. The system also includes hundreds of dedicated persons in official positions, with thousands more in the bar and affiliated roles. Members of the commission have frequently been impressed by the intelligence, concern, and diligence of those who have appeared before us. Frequently, in fact, it is precisely those most talented members of the judicial system who are so insightful about the system's faults and who urge us most articulately to move boldly in improving upon it. It is not always individuals who are failing, although some fall far short of their professions' lofty principles. Just as often, it is the system's own structure, rules, habits, workload, and economics that undermine its role as a public institution. We have made various recommendations about those subjects, but the most effective way to re-orient the judicial system to the public it serves is through public accountability. Occasional elections are not enough. There must be numerous, overlapping forms of evaluation and responsibility. If the judicial system is to serve the public, it must report to the public.

*Id.*

*The Tennessee Appellate Courts recently celebrated the*
*1,000th Livestreamed Case on the Courts' Two YouTube Channels*

Approximately three weeks ago on August 2, 2022, in an article appearing on the TAOC's website, the Tennessee Appellate Courts noted a recent milestone: the 1,000th livestreamed case, greatly improving accessibility and transparency in the State court system.[8] A copy of this article is attached as ECF No. 33-4. It notes the first appellate case was livestreamed in April 2020. *Id.*

Chief Justice of the Tennessee Supreme Court, Roger A. Page, was quoted in the article regarding this milestone.[9] He stated, "The Supreme Court is always looking for ways to improve transparency. Livestreaming is one of the great advances to come out of the pandemic. Transparency builds confidence and trust in the court system. We have always welcomed the public into the courtroom, but livestreaming opens the doors to thousands of more viewers." *Id.*

The presiding judge of the Tennessee Court of Appeals, Judge Michael Swiney, stated, "After appearing on Zoom for just over two years, it felt natural to start livestreaming our in-person cases too when we returned to the courtroom. Inviting the public to watch vastly improves understanding of how the appellate courts and

[8] https://www.tncourts.gov/press/2022/08/02/tennessee-appellate-courts-livestream-1000th-case (last visited on Aug. 18, 2022).

[9] According to the article, Chief Justice Page's comments appear to have been made on August 2, 2022, after McCaleb filed his response to Director Long's Rule 12(b)(1) motion, and 2 days *before* Director Long filed her reply. Despite highlighting in quotation marks in her Rule 12(b)(1) memorandum that she serves "under the supervision and direction of the chief justice" (ECF No. 25, Page ID #225), Director Long elected to *not* include Chief Justice Page's comments in her Reply brief. Long Reply, ECF No. 28; *see infra* n. 11.

12

entire judiciary operate. I think for clients in particular it was always this great mystery as to what happened at oral arguments. Now they can pull it up on YouTube and see for themselves what questions were asked and what issues were the focus of discussion." *Id.*

The presiding judge of the Tennessee Court of Criminal Appeals, Judge John Everett Williams, stated, "I am always in favor of increasing the visibility and understanding of our court. We know lawyers are using the previous cases to prepare for oral arguments. By seeing the types of questions asked, the decorum in the courtroom, and the overall process, they come in better prepared. We also know teachers and professors at all levels are playing clips during class and assigning specific cases as homework. Our country and communities benefit when there is better understanding of the courts and our constitutions." *Id.*

## LEGAL STANDARD

"The trial court is afforded broad discretion in order to control and dictate the sequence of discovery." *Lee v. Vanderbilt Univ.*, 2021 U.S. Dist. LEXIS 184911, *3-4 (M.D. Tenn. Apr. 15, 2021) (Frensley, J.) (citing *Crawford-El. v. Britton*, 523 U. S. 574, 598-99 (1998)). It is well-settled law and practice in the Middle District that the Federal Rules of Civil Procedure do not provide for a "Motion to Stay Discovery." *Lee*, 2021 U.S. Dist. LEXIS *4 (quoting *Cockrill v. Mortgage Electronic Registration System*, 2013 U.S. Dist. LEXIS 66925, *2 (M.D. Tenn. May 10, 2013)). Moreover, the relevant provision of the Local Rules states that "[d]iscovery is not stayed, *including during the pendency of dispositive motions*, unless specifically authorized by Fed. R.

13

Civ. P. 26(d) or by order of the Court, or with regard to e-discovery, as outlined by Administrative Order 174-1." LR 16.01(g) (emphasis added).

Courts typically view requests to stay discovery as a motion for a protective order under Fed. R. Civ. P. 26(c)(1). *Lee*, 2021 U.S. Dist. LEXIS *4. Parties seeking a protective order pursuant to Rule 26(c) to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense have the burden to show good cause for such an order. *In re: Skelaxin Metaxalone Antitrust Lit.*, 292 F.R.D. 544, 549-50 (E.D. Tenn. Jun. 10, 2013).

To show good cause the moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient. *Id.* at 549. Rule 26(c) "assumes that a party has the right to issue a discovery request in the first place." *Nix v. Sword*, 11 F. App'x. 498 (6th Cir 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. Dec. 9, 1987)). Good cause will not be shown merely because discovery may be inconvenient or expensive. *Isaac v. Shell Oil Co.*, 83 F.R.D. 428, 431 (E. D. Mich. Aug. 23, 1979) (citing *United States v. American Optical Co.*, 39 F.R.D. 580 (N. D. Cal. Feb. 28, 1966)).

Under Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any matter that is relevant to any party's claim or defense. A party "asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity." *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F. 3d 469, 474 (6th Cir. 2006) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F. 3d 958, 963 (6th Cir.

14

2002)). Likewise, the party "asserting subject-matter jurisdiction bears the burden of establishing that it exists." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

Courts "frequently den[y] stays of discovery in the face of motions to dismiss for lack of subject-matter jurisdiction." *Hopper v. Credit Assocs., LLC*, 2021 U.S. Dist. LEXIS 124986, \*6 (S.D. Ohio Jul. 6, 2021) (cleaned up). When a party requests staying discovery during the pendency of a Rule 12(b)(1) dispositive motion, a court typically determines whether the jurisdictional issue is "clear-cut" and likely to result in dismissal (which weighs in favor of a stay), or "fairly debatable" (which weighs against a stay). *See Ohio Bell Tel. Co. v. Glob NAPs Ohio Inc.*, 2008 U.S. Dist. LEXIS 21288, \*2 (S.D. Ohio Mar. 4, 2008).

**ARGUMENT**

### I. The Federal Rules of Civil Procedure do not provide for a "Motion to Stay Discovery," and the default Local Rule prohibits staying discovery during the pendency of a dispositive motion.

As indicated, this Court previously determined the Federal Rules do not specifically provide for a "Motion to Stay Discovery." *Lee*, 2021 U.S. Dist. LEXIS \*4 (quoting *Cockrill*, 2013 U.S. Dist. LEXIS at \*2). And the Local Rules expressly prohibit staying discovery during the pendency of dispositive motions. LR 16.01(g).

Here, as an initial threshold matter, Director Long's motion to stay discovery should be summarily denied because it is facially invalid since the Federal Rules do not provide for such a motion, and this Court's Local Rules expressly forbid it. A swift denial of Director Long's motion by this Court would be keeping within the

15

scope and purpose of the Federal Rules because they "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In addition to her motion's procedural defects, Director Long's request to stay discovery reveals a lack of appreciation and fundamental understanding of the discovery process. Rather than viewing discovery as burdensome, inefficient, or expensive (as she apparently does from her stay motion), discovery has the opposite effect because its purpose is to make relevant information available to litigants, so that disputes may be resolved with as full and accurate an understanding of the true facts as possible. *Whited v. Motorists Mut. Ins. Co.*, 2009 U.S. Dist. LEXIS 42379, *8 (E.D. Mich. May 19, 2009). Properly conducted, discovery narrows and clarifies issues in dispute, reduces the risk of surprise, and gives parties a better sense of their chances of success, and their options for settlement. *Id.* at *8-9 (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.")).

Presumably Director Long should want to seek *more* discovery, not less, since she has levied a factual attack on this Court's subject-matter jurisdiction and has the burden to establish her entitlement to Eleventh Amendment immunity. Further, as this Court recently noted in a case where a party sought to stay discovery under similar circumstances, the problem with Director Long's argument is "that it applies to every case in which an early dispositive motion is filed. If that were sufficient basis, one would not expect the default position of Local Rule

16

16.01(g) to provide that discovery is not stayed during the pendency of dispositive motions." *Lee*, 2021 U.S. Dist. LEXIS *6.

### II. Although Rule 26(c) provides an alternate vehicle for a stay request, Director Long's conclusory statements are insufficient to establish good cause because she failed to show a clearly defined and serious injury would result from participating in discovery.

Under the good cause threshold pursuant to a protective order under Rule 26(c), the "moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient." *In re: Skelaxin*, 292 F.R.D at 549. Director Long's motion to stay discovery fails under the Rule 26(c) standard. *See id.*

First, she provides no declaration or affidavit to fully support her stay request, relying instead on mere conclusory statements. Second, although she references "judicial economy" and "resources" in her motion, no explanation is provided as to how she will specifically suffer a clearly defined and serious injury from her participation in discovery, nor is there any explanation how "judicial economy" and "resources" are applicable to her situation to warrant staying discovery. Long Mot., ECF No. 29, Page ID #873. Third, none of her conclusory statements even identify the specific enumerated conditions in Rule 26(c), of annoyance, embarrassment, oppression, or undue burden or expense, which *might* warrant a discovery stay if properly supported with factual evidence, which Director Long failed to articulate.

17

### III. Rule 26(b)(1) expressly authorizes McCaleb to discover *facts* relevant to Director Long's Eleventh Amendment immunity claim, and staying discovery would contravene the Federal Rules and substantially prejudice McCaleb.

Rule 26(b)(1) authorizes McCaleb to discover *facts* relevant to Director Long's Eleventh Amendment immunity claim and staying discovery would contravene the Federal Rules and substantially prejudice McCaleb. The general scope of discovery under Rule 26(b)(1) entitles McClaeb to obtain:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense or proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In interpreting the broad sweep of the text, the U.S. Supreme Court has stated that because "discovery itself is designed to help define and clarify the issue," Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Staying discovery and preventing McCaleb his express right to discover facts under Rule 26(b)(1) related to Director Long's factual attack and Eleventh Amendment immunity claim, would substantially prejudice McCaleb since Director Long has the burden to establish her entitlement to immunity. *See Nair*, 443 F. 3d at 474.

18

Director Long has not presented any evidence or cited any applicable cases supporting her contention that discovery should be stayed based on Eleventh Amendment immunity grounds. She rests her entire stay argument on her pending Rule 12(b)(1) dispositive motion factually attacking subject-matter jurisdiction, as the basis for staying discovery. But her argument is unpersuasive.

*First*, her flawed immunity claim under the Eleventh Amendment is not even a predicate to stay discovery. In fact, she concedes (in a footnote) that she cites no case law where *Eleventh Amendment immunity* was the basis to stay discovery. Her cited cases are misplaced because they involve *qualified immunity* or suits against state officials for money damages. Under qualified immunity, unlike Eleventh Amendment immunity, the plaintiff bears the burden to establish the defendant is not entitled to immunity. So, in those instances under qualified immunity it logically follows that discovery would be stayed.

But McCaleb is entitled to factual discovery because Director Long has the burden to establish her entitlement to immunity under the Eleventh Amendment. *See Nair*, 443 F.3d at 474. Director Long notes three well-known Supreme Court cases involving qualified immunity—*Mitchell, Crawford-El,* and *Harlow*—for the proposition that the same analysis should apply to staying discovery under her Eleventh Amendment immunity claim. Long Mem., ECF No. 30, Page ID #878, n.1. But in cases where a defendant raises qualified immunity as a defense, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Binay v. Bettendorf*, 601 F. 3d 640, 647 (6th Cir. 2010) (cleaned up).

19

That is not the case here since there is no burden shift under the Eleventh Amendment when Director Long raises her immunity claim, and *Mitchell, Crawford-El, and Harlow* are inapposite to this case. Thus, an argument that Director Long should be excused from discovery is unpersuasive because there is no legal authority for doing so under an Eleventh Amendment immunity claim, where she bears the burden to establish entitlement to immunity based on a Rule 12(b)(1) factual attack. And Director Long's cite of *Wells* quoting *Mitchell* is equally unpersuasive because *Wells* involved a suit for money damages, and McCaleb is seeking injunctive relief and in-person and virtual access to future Advisory Commission meetings. Long Mem., ECF No. 30, Page ID #878, n.1.

*Second*, in her Rule 12(b)(1) Reply, Director Long did not even address McCaleb's response arguments on the Article III standing issue, abandoning the standing issue, and instead focusing entirely on the Eleventh Amendment immunity issue in her Reply. *See e.g., Rice v. Hudson*, 2009 U.S. Dist. LEXIS 67592, *16 (N.D. Ohio Aug. 4, 2009) (finding claim abandoned for failure to address it in reply brief); *see also* Long Reply, ECF No. 28. So, to the extent she argues discovery should be stayed because McCaleb lacks Article III standing, procedurally Director Long abandoned that claim and argument, and substantively McCaleb demonstrated in his response that he has Article III standing to confer jurisdiction on this Court. McCaleb Resp., ECF No. 27.

Moreover, her Rule 12(b)(1) motion is particularly weak, and courts routinely deny discovery stay requests when the underlying dispositive motion challenging

20

subject-matter jurisdiction is "fairly debatable." *Ohio Bell Tel. Co.,* 2008 U.S. Dist. LEXIS at *2. The *Ex Parte Young* exception to Eleventh Amendment immunity clearly applies here, and it is not even a close issue. Director Long's argument that she does not have any connection with the Advisory Commission strains credulity. For example, and as an analogy, this is not a situation where McCaleb sued the Executive Director of the Tennessee Arts Commission in her official capacity, to gain access to Advisory Commission State court rulemaking meetings, which would arguably raise a challenge to the application of *Ex Parte Young*.[10]

Instead, he sued the single most appropriate State official located in the entire State of Tennessee—stretching from the Northeast corner of the East Grand Division in the Tri-Cities, across the rolling hills of Middle Tennessee and the entertainment district on Broadway in Nashville, down to Beale Street in Memphis—to gain in-person and virtual access to Advisory Commission State court rulemaking meetings. TAOC Director Michelle Long's official State position (1) is expressly named in the Advisory Commission enabling statute; (2) she has statutory authority to approve legal, clerical, and other necessary assistance so the Advisory Commission may carry out its rulemaking duties; (3) she dedicates Michelle Consiglio-Young as a TAOC liaison providing administrative support to the Advisory Commission; (4) her office hosts in-person Advisory Commission public meetings in Nashville; (5) her office publishes and disseminates Advisory

---

[10] https://tnartscommission.org/about-us/#boxzilla-18509 (last visited on Aug. 18, 2022). The Arts Commission was created to promote the performing, visual, and literary arts in Tennessee. *See* Tenn. Code Ann. §§ 4-20-101, et seq.

Commission public meeting notices on its website; (6) her office provides virtual livestreaming access to public meetings of other Boards and Commissions (ADR Commission) similar to the Advisory Commission; (7) her office posts orders on its website it shares with the Tennessee Supreme Court, when the Advisory Commission recommends State court rules for public comment; and (8) the Sixth Circuit Court of Appeals held over twenty years ago that her State position of Administrative Director and the State court system maintain "an identity of interests or privity between the two." *Blackard v. Memphis Area Med. Ctr. for Women, Inc.*, 262 F. 3d 568, 576 (6th Cir. 2001).[11]

## CONCLUSION

For these reasons, Director Long's motion to stay discovery should be denied because (1) her motion is procedurally defective under the Federal Rules and expressly prohibited by the Local Rules; (2) she failed to articulate specific facts under Rule 26(c)'s good cause standard that show a clearly defined and serious injury would result from participating in discovery; and (3) under Rule 26(b)(1), McCaleb is entitled to discover *facts* relevant to her Eleventh Amendment immunity claim, and staying discovery would contravene the Federal Rules and substantially prejudice McCaleb.

---

[11] Moreover, although Director Long did not contest "the merits" of McCaleb's claim, it may reasonably be inferred from their comments that the Chief Justice of the Tennessee Supreme Court and Presiding Judges for the State Court of Appeals and Criminal Court of Appeals, support McCaleb's legal position that open Advisory Commission meetings would be positive for the State court rulemaking process, and the First Amendment right of access attaches to meetings under the "logic" prong in *Richmond Newspapers*. ECF No. 33-4; ECF No. 20-2, Page ID ##190-91.

22

August 22, 2022         Respectfully submitted,

LIBERTY JUSTICE CENTER

*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, Admitted *pro hac vice*
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square

23

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, a copy of the foregoing Plaintiff's

Response in Opposition to Defendant's Motion to Stay Discovery, was filed

electronically via the Court's CM/ECF filing system. Notice of this filing will be sent

by operation of the Court to all parties indicated on the electronic filing receipt,

including a copy to the Office of Tennessee Attorney General and Reporter, counsel

for Administrative Director Michelle Long, via electronic mail as follows:


HERBERT H. SLATERY III
Office of the Attorney General & Reporter
Janet M. Kleinfelter, *Deputy Attorney General*
Public Interest Division
Steven A. Hart, *Special Counsel*
P.O. Box 20207
Nashville, Tennessee 37202-0207
janet.kleinfelter@ag.tn.gov
steve.hart@ag.tn.gov


*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474

24