IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAN MCCALEB, Executive Editor of THE CENTER SQUARE, <br><br> Plaintiff, <br><br> v. <br><br> MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, <br><br> Defendant. | NO. 3:22-cv-00439 <br><br> JUDGE RICHARDSON |

# MEMORANDUM OPINION

Pending before the Court are Plaintiff's motion for a preliminary injunction (Doc. No. 20, "preliminary-injunction motion") and Defendant's motion to dismiss for lack of subject-matter jurisdiction (Doc. No. 24, "motion to dismiss"). Plaintiff filed a memorandum in support of the preliminary-injunction motion (Doc. No. 20-2). Defendant filed a Response thereto (Doc. No. 23), and Plaintiff filed a reply thereto (Doc. No. 26). Defendant filed a memorandum in support of the motion to dismiss (Doc. No. 25). Plaintiff filed a response thereto (Doc. No. 27), and Defendant filed a reply thereto (Doc. No. 28).

For the reasons discussed herein, the Court will deny Defendant's motion to dismiss and grant in part and deny in part Plaintiff's preliminary-injunction motion.

BACKGROUND

A. Factual Background[1]

Plaintiff Dan McCaleb is the executive editor of the online news organization, "The Center Square." Defendant Michelle Long ("Defendant") is the Administrative Director of the Tennessee Administrative Office of the Courts ("AOC"). *Id.* at 2. As part of her duties, Defendant oversees the AOC.[2] The AOC provides administrative support to the Tennessee courts. This includes providing administrative support for a number of judicial boards and commissions, such as the Advisory Commission on the Rules of Practice & Procedure ("Advisory Commission") and the Alternative Dispute Resolution Commission.[3]

The Tennessee Supreme Court established the Advisory Commission to recommend rules of practice and procedure in Tennessee courts. Tenn. Code Ann. §§ 16-3-401, 16-3-402. The rulemaking authority conferred upon the Tennessee Supreme Court authorizes it to appoint members to an advisory commission to recommend rules of practice and procedure in Tennessee state courts. *See* Tenn. Code Ann. § 16-3-601(a). The Advisory Commission has authority to employ legal and clerical assistance to discharge its rulemaking duties. *See* Tenn. Code Ann. § 16-3-601(d). AOC's Michelle Consiglio-Young is providing administrative support to the Advisory Commission.

The meetings of the Advisor Commission are closed to the public. The meeting of the Advisory Commission on September 9, 2022 was closed to the public and press. *Id.* Some past meetings of the Advisory Commission have been open to the public and press. For example,

---

[1] The following facts are undisputed, and the Court takes them as true for the purposes of the motions at issue.

[2] https://www.tncourts.gov/administration

[3] https://tncourts.gov/boards-commissions/boards-commissions

members of the public were invited to attend the meeting held on May 20, 2016, at the TAOC in Nashville. Id. AOC posts notices and provides access to other committee meetings that it has equivalent administrative responsibilities for, such as the Alternative Dispute Resolution Commission meetings. It posted the October 2022 meeting with a link as well. *Id.* at 11.

B. Procedural Posture

Plaintiff filed a claim under 42 U.S.C. § 1983 alleging that Defendant deprives Plaintiff of his First Amendment right of access by closing the Advisory Commission meetings to the public. (Doc. No. 19, "Complaint" at ¶ 72-74).

Defendant filed the motion to dismiss the Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). According to Defendant, dismissal is appropriate because (a) Plaintiff's claims are barred by Eleventh Amendment immunity[4] and (b) Plaintiff lacks standing. (Doc. No. 25 at 2). Thereafter, a response and reply were filed with respect to the motion to dismiss.

Plaintiff filed the preliminary-injunction motion, seeking both preliminary injunctive relief that would be stated in "negative" terms and preliminary injunctive relief that would be stated in "affirmative" terms. Specifically, Plaintiff seeks to i) preliminarily stop Defendant from closing future meetings of the Advisory Commission, and ii) order Defendant to provide both virtual and in-person access to Advisory Commission meetings so that he (Plaintiff) can assign reporters to

---

[4] Defendant refers to the state's "sovereign immunity" barring suit. The Supreme Court uses the phrase "Eleventh Amendment immunity" to encompass state sovereign immunity, and this Court proceeds accordingly. *See Alden v. Maine*, 706, 713 (1999); *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020). But c*f.* Collin Hong, *The Eleventh Amendment and Nondiverse Suits Against States*, 91 U. Cin. L. Rev. 741 (2023) (arguing that state sovereign immunity, derived from the common law of nations, and Eleventh Amendment immunity should be treated differently).

report on future meetings. (Doc. No. 20-2 at 25). [5]Thereafter, a response and reply were filed with respect to the preliminary-injunction motion.

## LEGAL STANDARD

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) may be either a facial attack or a factual attack. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleadings." *Id*. When reviewing a facial attack, this Court must take the allegations in the complaint to be true. *Id*. When there is a factual attack, the Court must weigh conflicting evidence provided by the plaintiff and the defendant to determine whether subject-matter jurisdiction exists. *Id*. Thus in reviewing a factual attack, the Court may consider evidence outside the pleadings and both parties are free to supplement the record by affidavits. *Id*. Defendants make a factual challenge to subject-matter jurisdiction, and the Court proceeds accordingly.

## DISCUSSION

When a defendant raises arguments in its motion for dismissal that overlap with those asserted in opposition to a pending motion for a preliminary injunction, a court may resolve both motions at once. *Tennessee v. United States Dept. of Educ.*, No. 3:21-CV-308, 2022 WL 2791450, *4 (E.D. Tenn. Jul. 15, 2022). Here, Defendant raises the same Eleventh Amendment immunity and standing arguments in both its response to the motion for preliminary injunction and its motion to dismiss. Defendant also makes some arguments in the preliminary-injunction motion that are not made in the motion to dismiss. The Court will first resolve the issues raised in the motion to dismiss—and thereby resolve the motion to dismiss as well as provide fodder for its decision on the preliminary-injunction motion. Then, armed with that fodder and with an eye towards the

---

[5] Notably, the granting of the second of these would necessarily be tantamount to granting the first.

additional arguments pertinent only to the preliminary-injunction motion, the Court will proceed to address the preliminary- injunction motion.

    A. <u>Motion to dismiss</u>

        1. *Eleventh Amendment immunity*

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. And a "suit against a state official in his or her official capacity is not a suit against the official"; instead, it "is a suit against the State itself." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Eleventh Amendment erects a "true jurisdictional bar" to such suits unless an exception applies. *Russell*, 784 F.3d at 1046.

The Supreme Court announced, in *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity for claims for injunctive relief against individual state officials in their official capacities. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F. 3d 956, 964 (6th Cir. 2013) (internal citations omitted). It is appropriate under *Young* to enjoin a particular state official "when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes,* 784 F. 3d 1037, 1048 (6th Cir. 2015). "*Young* does not reach state officials who lack a 'special relation to [a] particular statute' and '[are] not expressly directed to see to its enforcement.'" *Id.* at 1047. The *Ex parte Young* doctrine does not require a causal connection between the deprivation and some specific action that a defendant took. Rather, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight*

*Entm't, Ltd. v. Schuette*, 729 F. 3d 623, 634 (6th Cir. 2013). This requirement is satisfied where a state official has "some connection" to the unconstitutional legislation or other challenged action. *Allied Artists Picture Corp. v. Rhodes*, 679 F. 2d 656, 665 n.5 (6th Cir. 1982).

The Eleventh Amendment does not bar Plaintiff's claim. *Ex parte Young* applies because Defendant has responsibility for the alleged constitutional violations via her authority over the organization that provides administrative assistance to the AOC.

Defendant argues that *Ex parte Young* is inapplicable because she has no statutory authority to close meetings of the Rules Advisory Commission, inasmuch as the Advisory Commission (of which she is not a part) is not subject to any policy issued by Defendant. (Doc. No. 25 at 8). The Court disagrees.

An official's mere enforcement, as opposed to creation or issuance, of an unconstitutional statute or policy is sufficient under *Ex parte Young* to allow suit against that official. For example, an executive branch officer may be enjoined from enforcing an unconstitutional statute despite being statutorily required to enforce it. Otherwise, the only proper defendants in suits regarding illegal statutes would be legislators, who are typically absolutely immune under the Speech and Debate Clause. Thus, although Defendant cannot create a formal policy for the Advisory Commission, Defendant "oversees" the AOC and thus can direct people like Michelle Consiglio-Young to post the meetings on the website. She may also post it herself given that the AOC provides administrative support to the Advisory Commission. The test is not whether Defendant has statutory authority to create a policy, but rather whether Defendant can implement the injunction or relief sought. To be subject to suit under *Ex parte Young*, Defendant needs only the physical authority to carry out the relief, not the explicit policymaking authority. Defendant can implement the injunction because the AOC may post links to Advisory Commission meetings just

as it did so with respect to the Alternative Dispute Resolution Commission, over which Defendant holds the same administrative capabilities. Because Defendant has responsibility for the AOC, the body which conducts the act of posting or not posting a livestream link to meetings, *Ex parte Young* applies.

The Eleventh Amendment therefore does not strip this Court of subject-matter jurisdiction.

2. *Standing*

To establish minimum Article III standing, a plaintiff must show: (1) an injury-in-fact that is concrete, particularized, and imminent; (2) fairly traceable to defendant's conduct; and (3) would be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Defendant argues that even if Plaintiff has alleged a First Amendment injury, that injury is neither traceable to nor redressable by Defendant. (Doc. No. 25 at 12.). Defendant states that Plaintiff has not alleged that Defendant has actually closed any meetings. *Id.* at 11. According to Defendant, Long has neither the authority nor the ability to open the meetings. *Id.* at 12.

But the alleged First Amendment injury is traceable to Defendant's conduct. It is Defendant's refusal, whether or not at the direction of the Advisory Commission, to open the meetings that causes the alleged First Amendment injury. Her not doing so causes the deprivation of the alleged First Amendment right of access.

The alleged deprivation of the First Amendment right of access would be redressed by a favorable decision regarding Plaintiff's complaint. The AOC has the ability to open meetings to the public as evidenced by the AOC doing so for the Alternative Dispute Resolution Commission. Plaintiff requests that this Court "Issue a preliminary injunction, later to be made a permanent injunction, ordering Defendant to provide him with both virtual and in-person access so he can

assign reporters to report on future meetings of the Tennessee bench-bar advisory commission established to recommend rules" (Doc. No. 19 at 19). By granting such an injunction, the Court would redress the alleged deprivation because Plaintiff would have access to the government proceeding to which he claims a right of access.

Plaintiff therefore has standing for his claim.

B. <u>Preliminary-injunction motion</u>

"Those seeking a preliminary injunction must meet several requirements. They must show a likelihood of success on the merits. They must show irreparable harm in the absence of the injunction. They must show that the balance of equities favors them. And they must show that the public interest favors an injunction. In this case, as in many First Amendment cases, the key inquiry is the first one: Who is likely to prevail on the constitutional claim?" *Sisters for Life, Inc. v. Louisville-Jefferson Cty.*, 56 F.4th 400, 403 (6th Cir. 2022) (citations omitted).

1. *Likelihood of success on the merits*

Regarding likelihood of success on the merits, Defendant argues once again that (i) Plaintiff's claim is barred by the Eleventh Amendment and (ii) Plaintiff does not have standing. (Doc. No. 23 at 7). As discussed above, these claims are not barred by the Eleventh Amendment, and Plaintiff has standing.

In determining whether there is a First Amendment right of access to a public proceeding, we evaluate whether "experience and logic" counsel in favor of open access. *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 683 (6th Cir. 2002). "The Supreme Court has announced that the right applies . . . if (1) that proceeding has 'historically been open to the press and the general public' and (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012).

Defendant's only argument regarding the existence of a right of access to the Advisory Commission meetings is a footnote suggesting that the right of access under the First Amendment has been extended to cover only certain judicial and quasi-judicial proceedings (and records filed in those adversarial-type proceedings), and not to a state rules advisory commissions. (Doc. No. 23 at 15 n.2). But the Sixth Circuit has noted that the right of access and the "experience and logic" test have been extended to non-adversarial proceedings. "Notwithstanding its origin in criminal proceedings, courts have also applied the 'experience and logic' test to determine whether a First Amendment right of access exists in a wide variety of other contexts. The test has been used, for example, to determine whether there is a right of access to civil trials, administrative hearings, deportation proceedings, and *municipal planning meetings*." *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (emphasis added). Furthermore, nothing in the concurrence in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), from which the test originated, suggests that either the right to access or the "experience and logic" test is limited to adversarial proceedings. *Id.* at 587-598.[6] The concurrence in *Richmond Newspapers* was applying the test to trials as a subset of government processes to which the test would apply. *Id.* at 589.

"Experience and logic" is thus the proper test by which to evaluate whether there is a right of access to the Advisory Commission meetings. Defendant makes no argument that under this test, there is no right of access to Advisory Commission meetings, and the Court concludes that application of this test does suggest a right of access. The Court below examines in turn the experience (*i.e.*, tradition) prong and the logic prong.

---

[6] The Supreme Court later adopted the "experience and logic" test in the majority opinion in *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 603-606 (1982). This was reaffirmed shortly thereafter in *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 (1984) (*Press–Enterprise I*) and *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986) (*Press–Enterprise II*).

a. Experience

"First, the case for a right of access has special force when drawn from an enduring and vital tradition of public entree to particular proceedings or information." *Richmond Newspapers*, 448 U.S. at 589 (1980) (Brennan, J. concurring). In *Detroit Free Press v. Ashcroft*, the Sixth Circuit held that a 37-year history of deportation proceedings being open was sufficient length to establish a tradition under the "experience" prong of the "experience and logic" test. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 701 (6th Cir. 2002). The Sixth Circuit noted that "a brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted." *Id.*

Approximately 34 years ago, Congress enacted a reform statute known as the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073(c)(1). The relevant provision of the statute opens access to the meetings of the federal analogue to Tennessee's Advisory Commission, *i.e.*, the Judicial Conference's Committee on Rules and Practice and Procedure (also called the "Standing Committee"). 28 U.S.C. § 2073(c)(1). Before that, in 1983, the Standing Committee internally instituted the change whereby, thereafter, records considered by the rules committees would be available to the public and public hearings would be held on proposed amendments.[7] What § 2073(c)(1) added was the requirement that *all* meetings of the Standing Committee be open to the public and that minutes be prepared.

Thus, federal Standing Committee hearings on rule changes have been open for 40 years, longer even than the period in *Detroit Free Press* that was found sufficiently lengthy to establish a tradition under the experience prong. And all Standing Committee meetings have been open

---

[7] https://www.uscourts.gov/sites/default/files/mccabearticle_1.pdf, n. 43.

since 1988. There is a sufficient tradition of presumptive public access to rules advisory committee meetings at the federal level.

That said, 28 U.S. Code § 2073(c)(1) requires only that the meetings be "open to the public," a requirement that may be satisfied without *both* in-person *and* virtual access, as long as *either* kind of access is available. 28 U.S. Code § 2073(c)(1) also allows for closing if a reason is given. The limited tradition of access potentially warrants at most only part of Plaintiff's requested injunction.

The Court will therefore consider injunctive relief that: (i) requires the AOC under Defendant's direction to open Advisory Commission meetings *either* by livestreaming or by hosting public in-person meetings (rather than in both ways as Plaintiff requests); (ii) subject to the AOC's prerogative to close such meetings in whole or in part on a case-specific basis based on a particular stated reason that purportedly justifies such closure—provided, however, that any such closure is subject to challenge in its own right.[8]

b. Logic

"Next, we turn to the 'logic' prong, which asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Detroit Free Press*, 303 F.3d at 703 (citing *Press-Enter. II*, 478 U.S. at 8-9).

Opening rules advisory committee meetings, whether at the federal or state level, not only creates transparency and public confidence, it likely creates better rules. The rules of practice & procedure are quite important for accessing justice, and thus public participation is helpful,

---

[8] The Court presumes that such a challenge potentially could occur before the closure (if the closure is announced sufficiently in advance) but also perhaps could be challenged after the fact (to the extent that the lapse of time does not render the closure moot). The Court declines to specify particular procedures or precise criteria for case-specific disclosures, and instead merely notes that such procedures and criteria themselves (and their application in particular cases) could be challenged and that it would behoove Defendant and all other implicated officials and agencies to conduct themselves accordingly.

particularly considering that these rules are not created by the legislature. Rules of criminal procedure are of especially great consequence in the administration of justice. And unlike in *In re Search of Fair Finance*, 692 F.3d 424, 433 (2012) (holding that logic cautioned against unsealing search warrants and investigatory documents to protect sensitive information related to ongoing criminal prosecutions), there are no potential harms from opening the government process at issue.

Thus, a plaintiff would be likely to succeed on both logic and experience prongs so as to establish a First Amendment right of access to federal rules advisory committees such as the Standing Committee. If so, because the right to access is incorporated under the Fourteenth Amendment, it stands to reason that the analogous state rules advisory committee meetings are subject to the same constitutional requirements.[9] Therefore, Plaintiff's likelihood of success in establishing a right of access to federal rules advisory committee meetings also leads to a likelihood of success in establishing a right of access Tennessee Advisory Commission meetings.

2. *Irreparable injury*

Absent relief, Plaintiff will likely suffer an irreparable First Amendment injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (plurality opinion) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).

---

[9] The right to access, which emanates from the freedom of speech and freedom of press, applies fully to the states. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). *Sisters for Life, Inc. v. Louisville-Jefferson Cty.*, 56 F.4th 400, 403 (6th Cir. 2022). *Near v. Minnesota* 283 U.S. 697 (1931). *Gitlow v. New York* 268 U.S. 652 (1925). Under the Supreme Court's current incorporation doctrine, states are subject to the same constitutional requirements that the United States is. *Ramos v. Louisiana*, 206 L. Ed. 2d 583, 140 S. Ct. 1390, 1405 (2020) ("Until recently, dual-track incorporation attracted at least a measure of support in dissent. But this Court has now roundly rejected it."). *Timbs v. Indiana*, 203 L. Ed. 2d 11, 139 S. Ct. 682, 687 (2019) ("Thus, if a Bill of Rights protection is incorporated, there is no daylight between the federal and state conduct it prohibits or requires.").

3. *Balance of equities*

The balance of equities favors Plaintiff. It is not very burdensome for the AOC to provide at least a livestream of the meetings. It already does so with respect to other committees. Furthermore, under the injunction presently considered by the Court, if there is an exigent reason to close meetings, the AOC need only provide a reason to do so.[10] The potential burden on Plaintiff's First Amendment rights and ability to report on the proceedings outweigh the burden on Defendant.

4. *Public interest*

Defendant argues injunction would contravene public policy because the Tennessee General Assembly did not require that Advisory Commission meetings be open to the public. But the General Assembly also never required that these meetings be closed. And there would be no public policy problem if the AOC decided voluntarily to open Advisory Commission meetings on its own. Thus, the public interest lies with opening these meetings, not only to prevent the First Amendment violation but also for the reasons outlined above in the "logic" prong of "experience and logic."

Therefore, all four factors weigh in favor of granting a preliminary injunction to the extent required by the "experience and logic" test.

## CONCLUSION

For the reasons discussed herein, the Court will deny Defendant's motion to dismiss (Doc. No. 24) and will grant Plaintiff's preliminary-injunction motion in part. As for Plaintiff's second request for particular injunctive language, the Court will require that the AOC under Defendant's

---

[10] As noted above, though, any closure is not exempt from scrutiny and could itself be challenged.

direction must open the meetings to the public either by livestreaming or by allowing in-person attendance. The meetings may be closed in whole or in part on a case-specific basis based on a particular stated reason that purportedly justifies such closure; provided, however, that any such disclosure is separately subject to challenge in its own right as noted above. Plaintiff's first request—*i.e.*, to enjoin Defendant from closing meetings—will be denied as moot in light of the fact that it has been fully addressed via the Court's resolution of Plaintiff's second request.

      Two appropriate accompanying orders will be entered.

                                  *Eli Richardson*
                                  ELI RICHARDSON
                                  UNITED STATES DISTRICT JUDGE