IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTRE SQUARE, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439-EJR-JSF |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) ) | |
| Defendant. | ) | |

**NON-PARTY TENNESSEE SUPREME COURT JUSTICES'
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER**

Pursuant to Rules 45(d) and 26 (c)(1) of the Federal Rules of Civil Procedure, Tennessee

Supreme Court Chief Justice Holly Kirby, Justice Jeffrey Bivins, Justice Roger Page, and Special

Justice Sharon Lee,[1] non-parties to this action, move this Court to quash the subpoenas issued by

Plaintiff's counsel. In the alternative, the non-party Justices seek a protective order barring the

depositions. These subpoenas were served on October 31, 2023, commanding each Justice to

appear for deposition in this lawsuit between November 27-30, 2023.

**BACKGROUND**

Plaintiff, the executive editor of an online news organization, "The Center Square," has

---

[1] Justice Lee retired on August 31, 2023, but maintains the status of a "Special Justice" while she closes out business in her chambers.

filed suit seeking to enforce his alleged First Amendment right of access to (1) meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure; and (2) meetings of any Tennessee Judicial Conference committees recommending the establishment of court rules. (D.E. 19.) At any given time, one Tennessee Supreme Court Justice acts as liaison between the Court and the Advisory Commission on the Rules of Practice and Procedure ("Advisory Commission"). During the time periods relevant to this Motion, Chief Justice Holly Kirby acted as liaison from September 1, 2014, to August 31, 2019, Special Justice Sharon Lee was the liaison September 1, 2019, to August 31, 2023, and Justice Tarwater is the current liaison, having been appointed at the end of Special Justice Lee's term.

Plaintiff now subpoenas four non-party Tennessee Supreme Court Justices to testify at depositions: Chief Justice Kirby, Justice Bivins, Justice Page, and Special Justice Lee ("the Justices"). The Court should quash the subpoenas.

## STANDARD OF REVIEW

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) – (iv). "[C]ourts 'consider one's status as a nonparty to be a significant factor in the undue burden analysis,'" though the nonparty still bears the burden of demonstrating that the subpoena should be quashed. *Sinclair v. Lauderdale County, Tenn.*, No. 2:14-cv-02908, 2015 WL 1393423, at *3 (W.D. Tenn. Mar. 24, 2015) (quoting *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. May 12, 2010)).

## ARGUMENT

The Justices are the high-ranking judicial officials in the State of Tennessee. The motivations behind the performance of their official duties are protected from discovery. Even in

2

the pursuit of factual information (as opposed to judicial motivations), the subpoenaed depositions pose an undue burden weighed against the Justices' lack of factual knowledge relevant to the underlying litigation. Therefore, the subpoenas should be quashed.

## I. Plaintiff Must Clear an Extraordinarily High Bar to Compel the Testimony of Tennessee Supreme Court Justices.

The targets of Plaintiff's subpoenas are judicial officials, and not just any judges—Justices of the Tennessee Supreme Court. Compelling the testimony of judges regarding the motivations underlying performance of their official duties is not permitted. Even depositions limited to discovery of factual knowledge of the Justices would impose an undue burden in this case.

### A. Judicial testimony regarding reasons behind official actions is prohibited and other judicial testimony is disfavored.

At the outset, it should be noted that "[j]udicial testimony is a 'very delicate matter.'" *United States v. Porat*, No. CR 21-170, 2021 WL 5631746, at *1 (E.D. Pa. Nov. 30, 2021) (quoting *United States v. Frankenthal*, 582 F.2d 1102, 1107 (7th Cir. 1978)). "[T]he propriety of compelling a judge to attend a deposition in any given case is subject to considerations not afforded to a non-judge witness regardless of any privilege." *France v. Chippewa Cnty.*, No. 2:20-CV-248, 2022 WL 20016164, at *1 (W.D. Mich. Apr. 14, 2022), *aff'd,* No. 2:20-CV-248, 2022 WL 20016166 (W.D. Mich. Nov. 7, 2022).

The United States Supreme Court has stated that "allowing an examination of a judge's mental processes would be 'destructive of judicial responsibility' and such scrutiny cannot be permitted." *United States v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004) (quoting *U.S. v. Morgan*, 313 U.S. 409, 422 (1941)). The "overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments *or the reasons that motivated him in the performance of his official duties*." *Roth*, 332 F. Supp. 2d at 567

(collecting cases) (emphasis added), *aff'd sub nom. United States v. St. John*, 267 Fed. Appx. 17 (2d Cir. 2008).

But even in the case of judicial testimony on purely factual, nondeliberative matters, judges receive heightened protections. *Kananian v. Brayton Purcell, LLP*, No. 1:07 CV 3188, 2009 WL 10689208, at *9 (N.D. Ohio May 29, 2009) ("A different standard applies if the information sought is factual only, unrelated to a judge's mental processes."). Even in these circumstances, there is a presumption against judicial testimony that "warrants heightened scrutiny." *Porat*, 2021 WL 5631746, at *1 (quoting *Roth*, 332 F. Supp. 2d at 567); *Dalcour v. City Of Lakewood*, No. 08-CV-00747-MSK-KLM, 2008 WL 3845289, at *1 (D. Colo. Aug. 14, 2008) (same).

The purposes for this strong presumption against judicial testimony are obvious. Allowing litigants to routinely depose judges—especially Supreme Court Justices—would license harassment and unreasonable inquiry into judicial functions. For example, litigants may seek to depose Supreme Court Justices to determine how a rule of procedure applicable to their litigation was intended to operate. Or a party may ask to probe the reasoning of a binding decision beyond what the Court has put in the opinion.

Furthermore, repeated attempts to depose Justices of the Tennessee Supreme Court would interfere with the important everyday functions of their jobs. Justices must manage dockets, draft orders and opinions, prepare for and participate in oral arguments and in-chambers conferences, and supervise both the bench and bar of the State through their work on committees and commissions.

**B.** **A subpoena for deposition of a non-party must be quashed or modified when it imposes an "undue burden."**

While the Justices enjoy absolute privilege regarding their deliberations in adjudicative matters and their motivations in performing their other official duties, this Court also must quash

4

a subpoena that imposes an undue burden on any non-party. Rule 45 requires a party serving a subpoena on a nonparty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts are thus required to quash or modify a subpoena that would subject the nonparty to an undue burden. Fed. R. Civ. P. 45(d)(3)(iv). Rule 26 informs the determination of when a burden is "undue." *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc*., 364 F.Supp.3d 758, 767 (E.D. Mich. 2018) (holding that the scope of discovery for a subpoena under Federal Rule of Civil Procedure 45 is governed by Rule 26(b)(1)[2]).

To quash a subpoena for deposition under the undue burden analysis, one of the enumerated harms in Rule 26(c)(1) "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Serrano v. Cintas Corp*., 699 F.3d 884, 901 (6th Cir. 2013) (quoting *Nemir v. Mitsubishi Motors Corp*., 381 F.3d 540, 550 (6th Cir. 2004)). Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or *undue burden* or expense." Fed. R. Civ. P. 26(c)(1)(a).

The Sixth Circuit in *Serrano* cited Wright & Miller to articulate what constitutes undue burden or unreasonable oppression. "To justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and these limits grow more formidable as the showing of need decreases." *Serrano,* 699 F.3d at 901 (quoting 8A Charles Alan Wright & Arthur

---

[2] "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense in proportion to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and *whether the burden or expense of the proposed discovery outweighs its likely benefit*." Fed. R. Civ. P. 26(b)(1) (italics added).

R. Miller, et al, Fed. Practice & Proc. § 2036 (3d ed. 2012)) (ellipsis omitted). "Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id*.

A deposition is improper "when the burden of discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where there is no demonstrable benefit to a deposition, even a "slight inconvenience" imposed by a deposition is an undue burden and unreasonable annoyance under Rule 26(c)(1). *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 257 (6th Cir. 2023). There is no benefit to deposing a witness without any knowledge of the essential facts of a case, thus rendering such deposition an undue burden and unreasonable annoyance. *See, e.g., id.* (quashing subpoena to university president because he had no knowledge essential to the underlying case); *Smith v. Cnty of Wayne, et al.*, No. 2:21-cv-12070, 2023 WL 4830585 (E.D. Mich. Jul. 27, 2023) (quashing subpoena because mayor had no knowledge of the facts underlying the case and other individuals had the knowledge sought); *Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006) (quashing subpoena to mayor because although he had knowledge of essential facts, those same facts were also available from other individuals); *Graves v. Bowles*, 419 F.App'x 640, 645 (6th Cir. 2001) (quashing subpoena to mayor because he had no knowledge essential to the underlying case); *Nix v. Sword*, 11 F.App'x 498, 500 (6th Cir. 2001) (quashing subpoena to a congressman because he had no unique knowledge essential to the underlying case).

Moreover, "the court must limit the frequency or extent of discovery [] if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

6

## C. Separation of Powers requires extraordinary circumstances to depose current and former high-ranking state government officials.

The "apex doctrine," recognized in several Circuits, creates a presumption that deposing a high-ranking official is unduly burdensome unless the official possesses first-hand knowledge of facts[3] that are essential to the party's case[4] and cannot be obtained from another source or less burdensome method.[5] The presumption shifts the burden of opposing a motion to quash or a motion for protective order to the party seeking to take the deposition. *Cannavan v. Cnty. of Ventura*, No. CV-2010-012-FMO-PVCX, 2021 WL 4945186, at *6 (C.D. Cal. July 16, 2021) ("To invoke the protection of the apex doctrine, the party resisting discovery must first demonstrate he or she is a high-ranking official. Once that is shown, the burden shifts to the party seeking the deposition" to establish extraordinary circumstances.") In *Serrano v. Cintas Corporation*, the

---

[3] *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1264 (Tenth Circuit holding a party must show "the official has first-hand knowledge related to the claim being litigated"); *France v. Chippewa Cnty.*, No. 2:20-cv-248, 2022 WL 20016164, at *2 (W.D. Mich. Apr. 14, 2022) (holding judge may only be required to testify if he "possesses factual knowledge"); *Williams v. Court Servs. & Offender Supervision Agency*, No. 08-CV-1538 (RCL-AK), 2014 WL 12788954, at *2 (D.D.C. Mar. 6, 2014) (holding "[t]he party seeking the deposition must demonstrate that the official has at least some personal knowledge about the underlying matter").

[4] *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1264 (Tenth Circuit holding deposition must be "essential"); *Chippewa Cnty.*, 2022 WL 20016164, at *2 (W.D. Mich. holding official's knowledge must be "highly pertinent to the jury's task"); *McNamee v. Massachusetts*, No. CIV.A. 12-40050-FDS, 2012 WL 1665873, at *1 (D. Mass. May 10, 2012) (holding court will quash subpoena unless "the information sought is essential (not merely relevant) to the case"); *United States v. Menominee Tribal Enterprises*, 70 Fed. R. Serv. 3d 1185, 2008 WL 2273285, at *13 (E.D. Wis. 2008) (holding deposition must be "necessary").

[5] *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1264 (Tenth Circuit requiring showing that "information cannot be obtained from an alternative source or via less burdensome means"); *Chippewa Cnty.*, 2022 WL 20016164, at *2 (W.D. Mich. holding official must be "the only possible source of testimony on the relevant factual information"); *Williams*, 2014 WL 12788954, at *2 (D.D.C. holding party must demonstrate "that the information is available only from that official and not from another source"); *McNamee*, 2012 WL 1665873, at *1 (D. Mass. holding information sought must not be "obtainable elsewhere"); *Menominee Tribal Enterprises*, 2008 WL 2273285, at *13 (E.D. Wis. holding party must seek "information that cannot be obtained from any other source").

7

Sixth Circuit rejected application of the apex doctrine to a high-ranking corporate executive who moved the district court to bar his deposition, instead requiring a showing of undue burden or other specific harm listed in Fed. R. Civ. P. 26(c). *Serrano*, 699 F.3d at 901.

While the apex doctrine is inapplicable to corporate executives in the Sixth Circuit, "it is not clear" whether the apex doctrine extends to depositions involving "high-ranking government officials." *EMW Women's Surgical Center, P.S.C.,* Case No. 17CV-00189), 2017 WL 3749889 *2 (W.D. Ky. Aug. 20, 2017). "[T]he apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking [government official] either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Elvis Presley Enters.*, 2020 WL 4015476, at *11 (W.D. Tenn. Jul. 16, 2020) (citing *Turner*, 2012 WL 4839139, at *2). Should the deposing party fail to overcome this presumption, the court must then limit or even prohibit the deposition." *Id*.

Regardless, United States Supreme Court precedent establishes certain protections from deposition for high-ranking government officials, with some similarity to the apex doctrine. In *Morgan v. United States*, a district court allowed the Secretary of Agriculture to testify at deposition and at trial on "the process by which he reached the conclusions [to take an agency action], including the manner and extent of his study of the record and his consultation with subordinates." *Morgan v. United States*, 313 U.S. 409, 422 (1941). Criticizing the district court's decision to compel the Secretary's deposition and trial testimony, Justice Frankfurter wrote:

> [T]he short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary has a quality resembling that of a judicial proceeding. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that it was not the function of the court to probe the mental processes of the Secretary. Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative

8

process must be equally respected. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Id.* (internal quotation marks and citations omitted).

Unlike the corporate apex doctrine which is based upon a presumption that corporate executives are presumptively burdened by a deposition due to their busy schedules, the *Morgan* doctrine[6] is grounded in deliberative process protections and separation of powers. "'If the Commissioner [of an agency] was asked to testify in every case which the [agency] prosecuted, his time would be monopolized by preparing and testifying in such cases." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022) (quoting *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993)). "In order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony.'" *Id.*

After surveying *Morgan* and its progeny, the 9th Circuit Court of Appeals concluded, "[t]he executive branch's execution of the laws can be crippled if courts can unnecessarily burden [high ranking government officials] with compelled depositions." *Id.* Furthermore, "*Morgan* stands for the proposition that high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances." *U.S. v. Sensient Colors*, 649 F.Supp.2d 309, 321 (D.N.J. 2009).

---

[6] To avoid confusion with the apex doctrine, this Memorandum uses the term "*Morgan* doctrine" to refer to the Supreme Court's discussion of protecting high-level government officials from deposition and trial testimony in *Morgan v. United States*.

9

1. **Without knowledge essential to the underlying case and unable to be obtained from any other source, high-ranking government officials should not be deposed.**

*Morgan* created a strong disinclination against deposing high-ranking government officials, but some courts have, nevertheless, allowed for the taking of such depositions only in extraordinary circumstances. *In re U.S. Dep't of Educ.*, 25 F.4th at 701. The extraordinary circumstances test "is applied almost universally by state and federal courts across the country" in analyzing motions to quash subpoenas to high-ranking government officials. *In re Office of the Utah Attorney Gen.*, 56 F.4th 1254, 1263 (10th Cir. 2022). While the Circuits "vary on what constitutes extraordinary circumstances, [] nearly all of them agree that a party must show at a minimum that the information sought is not obtainable from another source" and that the facts known to the official are essential to the requesting party's claims or defenses. *Id*. at 1260.

Although the apex doctrine used in other Circuits has its genesis in *Morgan v. United States*, the Court in *Morgan* did not impose a presumption that high-level depositions are *per se* unduly burdensome or intended to harass and annoy under Rule 26, nor does *Morgan* shift the burden of proof in a motion to quash to the party seeking the deposition. Those are features of judicial construction in other Circuits which the Sixth Circuit clearly rejected, at least as to corporate executives, in *Serrano*. To the extent that the elements of the extraordinary circumstances test developed in other Circuits may inform the Rule 26 "undue burden" analysis here, that test is addressed in Part II(C), *infra*.

2. **The *Morgan* doctrine applies to current and former high-ranking state officials in the Sixth Circuit.**

A district court in Michigan has reasoned that the *Morgan* doctrine applies to both current and *former* government officials. "Separation of powers concerns and the potential of discouraging persons from taking high-ranking positions still exist when the potential deponent no

longer holds the high-ranking position." *Burgess v. United States*, No. 17-11218, 2022 WL 17725712, at *5 (E.D. Mich. Dec. 15, 2022); *see also United States v. Newman*, 531 F.Supp. 3d 181, 188 (D.D.C. 2021) ("The need to protect the integrity of the underlying decision-making process, and encourage public service by protecting officials from 'indiscriminate depositions,' continue to persist after the official leaves government service. Therefore, the [*Morgan*] doctrine still applies to former officials.").

In short, between the strong general presumption against judicial testimony, the lack of relevant factual knowledge possessed by the Justices, and the burden imposed upon high-ranking government officials, Plaintiff is not entitled to depose the Tennessee Supreme Court Justices in this matter.

## II. The Subpoenaed Depositions Impermissibly Seek to Discover Protected Motivations Underlying the Justices' Official Actions and Would Impose an Undue Burden on Each of the Justices.

The Justices have the burden to demonstrate why the subpoenas should be quashed or protective orders barring the depositions should be entered. First, Plaintiff appears to be seeking the reasons underlying the Justices' performance of their official duties with the Tennessee Advisory Commission on the Rules of Practice and Procedure. Second, even if Plaintiff seeks only testimony about factual, non-deliberative matters, the depositions impose an undue burden on the Justices when weighed against their complete lack of relevant factual knowledge. And third, if applicable to high-ranking government officials in the Sixth Circuit, the subpoenas fail the *Morgan* doctrine's extraordinary circumstances test, because any relevant information possessed by the Justices is available from other sources.

### A. Plaintiff appears to seek deliberative information he cannot compel.

Plaintiff cannot discover the Justices' mental processes and reasoning for the performance of their official duties as justices. *See* Part I(A), *supra*. But all evidence indicates Plaintiff in fact

11

seeks to inquire into the Justices' reasoning to the extent they were involved in decisions to open or close the meetings at issue in the litigation.

Plaintiff included each of the Justices in his Rule 26 initial disclosures. In summarizing the "subjects of information" he believed the Justices possessed, Plaintiff listed for each Justice "decisions on whether meetings are open or closed to the public." ("Plaintiff's Rule 26(a)(1) Initial Disclosures," attached as Exhibit 1, at 2-3.) In direct conflict with Plaintiff's initial disclosures, the Justices have submitted affidavits in support of this Motion indicating that they have no such knowledge. (Exhibit 2.) Since Plaintiff clearly knows whether the meetings are in fact open or closed, (D.E. 1, PageID# 133, ¶ 7), the only information Plaintiff could be referencing in his initial disclosures is the mental processes and reasoning the Justices may possess animating any decision to close meetings.

When Plaintiff supplemented his interrogatory responses on November 6, 2023, he did not identify any additional information possessed by the Justices. ("Plaintiff's First Supplemental Response to Defendant's First Set of Interrogatories and Requests for Production of Documents," attached as Exhibit 3, at 3.)

In Plaintiff's own deposition, he testified that he was first alerted to the facts forming the basis of his complaint when he heard of a statement by Michelle Long, the Defendant in this case, about closing the Tennessee Judicial Conference. ("Deposition of Dan McCaleb," excerpt attached as Exhibit 4, at 11-12.) Never did he mention any of the Justices being relevant to his case. (Exhibit 4.)

In fact, in the deposition of Rachel Harmon—Deputy Director of the Administrative Office of the Courts—Rachel Harmon testified that that "Michelle Consiglio-Young is the AOC employee who has the most knowledge of what takes place at Advisory Commission meetings."

("Deposition of Rachel Harmon," excerpt attached at Exhibit 5, at 49.) Only two statements from Rachel Harmon evidence even a tenuous connection between the subpoenaed Justices and this case. First, Rachel Harmon testified that she gave privileged legal advice to Justices Kirby and Page when this Court entered a preliminary injunction in this case, long after the events that gave rise to the Complaint. (Exhibit 5, at 51-52, 54.) Of course, Plaintiff cannot learn the content of that privileged conversation in a deposition. Second, Rachel Harmon testified that she advised Chief Justice Kirby that a particular meeting of the advisory commission could not "go forward" because there was no public notice of the meeting compliant with the preliminary injunction entered by this Court. (Exhibit 5, at 79-81.) That conversation occurred (again long after the events alleged in the Complaint) when the "primary liaison was on leave," resulting in some amount of confusion. (Exhibit 5, at 80.) But Rachel Harmon made it clear that Chief Justice Kirby does not set the dates for the advisory commission, and that Harmon's communication was passed along to other individuals, like the chair of the committee, who would make those decisions. (Exhibit 5, at 81-82.)

In sum, there is no evidence that there is *factual* information possessed by any of the Justices that Plaintiff could discover in a deposition. That is no surprise when two of the subpoenaed Justices have never even served as the Supreme Court's liaison to the Advisory Commission. The Justices, and this Court, must be left to conclude that Plaintiff seeks what he cannot have: to have the Justices explain their mental processes and reasoning in the performance of their official duties as Justices of the Tennessee Supreme Court.

**B.      The depositions impose an undue burden on the Justices when weighed against their complete lack of relevant factual knowledge.**

The subpoenas for deposition of Chief Justice Kirby, Justice Bivins, Justice Page, and Special Justice Lee must be quashed because they impose an undue burden on the recipients. The

Justices must illustrate the requisite undue burden "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano,* 699 F.3d at 901.

Justice Bivins and Justice Page stated in their affidavits that they have never acted as liaisons to the Advisory Commission on the Rules of Practice and Procedure. Each further stated that he possesses no knowledge of the decisions to designate the Advisory Commission meetings as open or closed to the public. Finally, Justice Bivins and Justice Page each indicated that, to the best of their recollection, they have never personally interacted with Plaintiff or his online news organization.

Chief Justice Kirby and Special Justice Lee stated in their affidavits that they each acted as liaisons to the Advisory Commission on the Rules of Practice and Procedure in the past. Each stated the original decision to close Advisory Commission meetings to the public was made prior to her tenure as liaison and that she did not take part in that decision. Each Justice confirmed that she possesses no knowledge of any decision to designate the Advisory Commission meetings as open or closed to the public during her tenure. Both Justices stated that any facts known to them regarding decisions to open or close Advisory Commission meetings would also be known to others, including Administrative Office of the Courts staff members and other members of the Advisory Commission. Finally, Chief Justice Kirby and Special Justice Lee each indicated that, to the best of their recollection, they have never personally interacted with Plaintiff or his online news organization.

All four Justices stated in their sworn affidavits that preparing for and submitting to a deposition regarding subject matter of which they have no knowledge would be unduly burdensome and an unreasonable annoyance, detracting from their duties as Tennessee Supreme Court Justices.

A deposition is improper "when the burden of discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where there is no demonstrable benefit to a deposition, even a "slight inconvenience" imposed by a deposition is an undue burden and unreasonable annoyance under Rule 26(c)(1). In *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244 (6th Cir. 2023), the Sixth Circuit recently upheld a district court's decision to grant a protective order barring the deposition of a university president in a former staff member's retaliatory discharge action against the university. *Id*. at 257. The president submitted an affidavit stating that he had limited knowledge of the staff member's termination and disclaimed any role in the decision to terminate her. *Id*. The Court found that "[g]iven the unlikely chance of [the university president's] deposition proving beneficial, the district court properly found that even a 'slight inconvenience' imposed by a deposition would 'amount to unreasonable harassment' under Rule 26." *Id*.

In *Overall v. Oakland Cnty.*, No. 20-12869, 2022 WL 351068, at *2 (E.D. Mich. Feb. 4, 2022), the County Sheriff demonstrated that he had no unique knowledge of any relevant facts, but he failed to claim any specific harm would result from being deposed. *Id*. The district court quashed the subpoena, finding that "a purpose to harass or annoy may be inferred where there is no showing the high-ranking official has relevant and personal knowledge about the facts at issue." *Id*. (citing *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006)).

Here, the four subpoenaed Justices have submitted affidavits reflecting their lack of knowledge and involvement regarding the underlying case. They have also established the duplicative nature of any knowledge they might possess as Plaintiff has already deposed Defendant Long and Deputy Director Harmon. As such, even the slight inconvenience of preparing for and

attending a deposition unlikely to spawn any discovery benefit creates an undue burden requiring the subpoena to be quashed under Rule 45 or barred by protective order under Rule 26.

**C.     If applicable to high-ranking government officials in the Sixth Circuit, the subpoenas fail the *Morgan* doctrine's extraordinary circumstances test, because any relevant information possessed by the Justices is available from other sources.**

Finally, while the applicability of the extraordinary circumstances test to high-ranking government officials is unsettled in the Sixth Circuit, application of the test results in the same conclusion as the undue burden analysis:  the subpoenas must be quashed.  To invoke the extraordinary circumstances test of the *Morgan* doctrine, "the party resisting discovery must first demonstrate he or she is a high-ranking official."  *Cannavan*, 2021 WL 4945186, at \*6 (quoting *Estate. of Silva by & through Allen v. City of San Diego*, 2021 WL 211613, at \*2 (S.D. Cal. Jan. 21, 2021)).

The proposed deponents in this case, as Supreme Court Justices, are "high-ranking officials," *In re Guzman*, No. 2:16-CV-00303, 2017 WL 2210519, at \*1 (W.D. Tex. May 19, 2017), who "have greater duties and time constraints than other witnesses," *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995).

Accordingly, to compel the depositions of the Justices, they must each possess facts which are essential to Plaintiff's case and cannot be obtained through any other source.  *In re Office of the Utah Attorney Gen.*, 56 F.4th at 1260.  Through their respective affidavits, the Justices have carried their burden of demonstrating that they possess no facts that are essential to Plaintiff's case.  *See* Part II(B), *supra*.  Further, Chief Justice Kirby and Special Justice Lee stated that there are other individuals who have knowledge of all facts known to the Justices in their role as liaison to the Advisory Commission.   Specifically, the Justices have no relevant factual knowledge about the Advisory Commission that AOC staff and other Commission members would not also possess.

16

Because the Justices are high-ranking government officials and they possess no unique factual information essential to Plaintiff's claims, the extraordinary circumstances test of the *Morgan* doctrine requires the subpoenas to be quashed.

**III.     The Justices have demonstrated that less burdensome means of discovery exist.**

Moreover, deposing four Tennessee Supreme Court Justices is not the least burdensome way to obtain whatever factual information Plaintiff seeks.  Rachel Harmon testified that that "Michelle Consiglio-Young is the AOC employee who has the most knowledge of what takes place at Advisory Commission meetings." (Exhibit 4, at 49.)  And, of course, Plaintiff has deposed and issued written discovery to Defendant Long in her capacity as the Director of the AOC.  The Justices are aware of no discovery question seeking an essential fact to which the responding party stated that only a Tennessee Supreme Court Justice could answer the question. Nothing indicates that the Justices possess essential information not obtainable through other witnesses.

Nor is there any indication that Plaintiff has attempted, and been thwarted from, less burdensome means of discovering facts in the Justices' knowledge.  There is no plausible reason to depose *four* Justices, when none of them possess any relevant factual information about the underlying case.  Likewise, if any such relevant information existed, Plaintiff could have served a Rule 30(b)(6) subpoena upon the Tennessee Advisory Commission on the Rules of Practice and Procedure describing with particularity the matters for examination.  The Commission would have been able to designate knowledgeable individuals to testify with respect to each matter.  The lack of any of these efforts by Plaintiff suggests that the depositions are intended to impermissibly explore the Justices' non-factual mental processes or simply to harass or annoy.  *See EMW Women's Surgical Ctr., et al.*, 2017 WL 3749889, at \*4.

17

**CONCLUSION**

For the foregoing reasons, the Court should quash pursuant to Rule 45(d)(3)(a)(iv) the subpoenas to depose Chief Justice Holly Kirby, Justice Jeffrey Bivins, Justice Roger Page, and Special Justice Sharon Lee.  In the alternative, the Court should enter a protective order pursuant to Rule 26(c)(1)(A) forbidding the depositions of all four Justices.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

/s/      *Donna L. Green*
DONNA GREEN (BPR 19513)
     Assistant Attorney General
     Managing Attorney
CODY BRANDON (BPR 37504)
     Assistant Attorney General
     Managing Attorney
LIZ EVAN (BPR 37770)
     Assistant Attorney General
Law Enforcement and
Special Prosecutions Division
P.O. Box 20207
Nashville, TN  37202
(615) 532-6023
Donna.Green@ag.tn.gov
Cody.Brandon@ag.tn.gov
Liz.Evan@ag.tn.gov

18

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing document has been forwarded electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties named below. Parties may access this filing through the Court's electronic filing system.

M. E. Buck Dougherty III
James McQuaid
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, IL 60654
bdoughterty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

Andrew C. Coulam
Michael M. Stahl
Robert W. Wilson
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
Andrew.coulam@ag.tn.gov
Michael.stahl@ag.tn.gov
Robert.wilson@ag.tn.gov

Date:  11-22-2023                                    /s/ *Donna Green*
                                                     DONNA GREEN
                                                     Assistant Attorney General

19