IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439 |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) | Judge Richardson Magistrate Judge Frensley |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO NON-PARTY TENNESSEE
SUPREME COURT JUSTICES' MOTION TO QUASH
SUBPOENA OR FOR PROTECTIVE ORDER**

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    A.  Plaintiff McCaleb's First Amendment Right of Access Claim to
        Advisory Commission Meetings and Defendant Long's Defenses ...................... 2

    B.  The Court's Preliminary Injunction Issued on March 22, 2023 ........................ 4

    C.  The Depositions Thus Far Including Advisory Commission
        Chair Gino Bulso, and AOC Liaison Michelle Consiglio-Young ........................ 5

    D.  Administrative Order No. 102 Issued on October 17, 2023,
        Closing Court for the Thanksgiving Holiday on November 23 and 24 ........... 13

    E.  The Subpoena Served on October 31, 2023, for the Justices' Remote
        Depositions Noticed for November 27, 28, 29, and 30 ..................................... 13

    F.  The Justices' Motion to Quash Subpoena Filed on Thanksgiving Eve ........... 14

LEGAL STANDARD ....................................................................................................... 15

    A.  Rule 45 ............................................................................................................ 15

    B.  Rule 26 ............................................................................................................ 16

ARGUMENT ................................................................................................................. 17

    I.      The Court should deny the Justices' Motion to Quash Subpoena
           under Rule 45 and for a Protective Order under Rule 26 because
           they failed to show why their depositions should not be permitted. ......... 17

        A.  The Justices' Motion is untimely and unreasonable because it
           was filed 1 business day before the depositions were to begin,
           and they provided no reason why they waited .................................... 17

        B.  As non-parties to this case, the Justices lack standing
           to quash the Subpoena on relevancy grounds .................................... 19

C. The supporting "Affidavits"— the instruments themselves — appear to be a hybrid of a sworn Affidavit and unsworn Declaration, do not contain a notary public's signature in ink and affixed official seal, and are facially invalid under Tennessee law ............................. 20

D. The Subpoena does not subject the Justices to an undue burden because they are fact witnesses with relevant "firsthand" and unique knowledge of Advisory Commission meetings according to Michelle Consiglio-Young's testimony............................. 23

II. Plaintiff McCaleb and Defendant Long have agreed to a Case Management Order entered by this Court, which would be severely impacted by quashing or delaying the depositions ...................... 25

CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. F.B.I.*,
186 F.R.D. 60 (D.D.C. Jun. 15, 1998) ........................................................................ 16

*Bickford v. Lifecare Ctr. of Am.*,
2008 U.S. Dist. LEXIS 127183 (E.D. Tenn. Aug. 7, 2008)..................................... 16

*Cooney v. Sun Shipbuilding & Dry-dock Co.*,
288 F. Supp. 708 (E.D. Pa. Jul. 26,1968) ............................................................... 19

*Ghandi v. Police Dep't of City of Detroit*,
74 F.R.D. 115 (E.D. Mich. Mar. 14, 1977) .............................................................. 19

*Ghandi v. Police Dep't*,
747 F.2d 338 (6th Cir. 1984) ................................................................................... 15

*Grove & Jenkins v. Campbell*,
17 Tenn. 7 (Tenn. 1836) .................................................................................... 20, 22

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .................................................................................................. 23

*In re Smirman*,
267 F.R.D. 221 (E.D. Mich. May 12, 2010)............................................................. 15

*MCS Music Am. v. Yahoo!, Inc.*,
2010 U.S. Dist. LEXIS 155580 (M.D. Tenn. Aug. 17, 2010)............................. 19, 20

*Nemir v. Mitsubishi Motors Corp.*,
381 F.3d 540 (6th Cir. 2004) ................................................................................... 23

*Salter v. Upjohn Co.*,
593 F.2d 649 (5th Cir. 1979) ................................................................................... 16

*Save on Energy Sys. v. Energy Automation Sys.*,
2009 U.S. Dist. LEXIS 82505 (M.D. Tenn. Sep. 10, 2009) .................................... 18

*Serrano v. Cintas Corp.*,
699 F.3d 884 (6th 2012) .......................................................................................... 23

*Sinclair v. Lauderdale Cnty.*,
2015 U.S. Dist. LEXIS 37081 (W.D. Tenn. Mar. 24, 2015) .................................... 15

*Stokes & Spiehler Onshore, Inc. v. Ogle* (*In re Wave Energy*),
467 Fed. Appx. 248 (5th Cir. 2012)......................................................................... 22

*Thomas v. City of Cleveland*,
57 F. App'x 652 (6th Cir. 2003).............................................................................. 15

**Statutes**

28 U.S.C. § 1746.......................................................................................... 21, 22, 23

Tenn. Code Ann. § 16-3-601 ................................................................................ 2

Tenn. Code Ann. § 8-16-112 .......................................................................... 20, 22

Tenn. Code Ann. § 8-16-113 .............................................................................. 20

**Other Authorities**

*IN RE: 2023 Holiday Schedule,*
   Administrative Order No. 102 (M.D. Tenn. Oct. 17, 2023) .............................. 13, 18

**Rules**

Fed. R. Civ. P. 26 ............................................................................................ 16

Fed. R. Civ. P. 30 ............................................................................................ 15

Fed. R. Civ. P. 45 ................................................................................. 15, 17, 19

Tenn. R. Civ. P. 72 .......................................................................................... 21

# INTRODUCTION

Plaintiff Dan McCaleb, Executive Editor of The Center Square, responds in opposition to the Motion to Quash Subpoena or Protective Order (ECF No. 60) filed by Tennessee Supreme Court Chief Justice Holly Kirby, Justice Jeffrey Bivins, Justice Roger Page, and Special Justice Sharon Lee (collectively the "Justices"), all of whom are non-parties to this case. The Justices' remote depositions via Zoom are scheduled to begin this morning at 9:00 am CDT, continuing for the following three days. The Justices do not contest service of the four subpoenas and notices of deposition (collectively the "Subpoena") served upon them on October 31, 2023.

However, in their Motion filed on Thanksgiving Eve — 22 days after being served with the Subpoena and 1 business day before the first scheduled deposition — the Justices contend the Subpoena should be quashed pursuant to Rule 45 or, in the alternative, the Court should enter a protective order under Rule 26. In the Justices' view the Subpoena compelling their deposition testimony seeks "privileged and protected matters," and is unduly burdensome given their "lack of factual knowledge regarding the underlying litigation." ECF No. 60, PageID #1217.

But the Justices possess relevant "firsthand" knowledge of the advisory commission, which forms the underlying basis of this lawsuit. McCaleb claims a First Amendment right of access to advisory commission meetings. And the Supreme Court, including the Justices, appoint members to this commission, who then meet and make recommendations to the Justices on court rules of practice and procedure. Their Motion is unavailing, and this Court should deny it in its entirety.

1

## BACKGROUND

### A. Plaintiff McCaleb's First Amendment Right of Access Claim to Advisory Commission Meetings and Defendant Long's Defenses

On June 30, 2022, Plaintiff McCaleb filed his First Amended Complaint ("Compl.") against Defendant Michelle Long, in her official capacity as Director of the Administrative Office of the Courts ("AOC"). Compl., ECF No. 19. McCaleb sought declaratory and injunctive relief, which included a Section 1983 and First Amendment right of access claim to state court rulemaking meetings of the Tennessee Advisory Commission on the Rules of Practice & Procedure ("Advisory Commission"), created by Tenn. Code Ann. § 16-3-601. *Id.*[1]

Tennessee's Supreme Court appoints members to the Advisory Commission, "whose duty shall be to advise the [Justices and Supreme Court] from time to time respecting the rules of practice and procedure." *See* Tenn. Code Ann. § 16-3-601(a). Under Defendant Long's direction, the AOC provides logistical and administrative support to the Advisory Commission. *See* Tenn. Code Ann. § 16-3-601(d). AOC employee Michelle Consiglio-Young is the liaison to the Advisory Commission, and she provides administrative support to assist the Commission's members in discharging their duties. Memorandum Opinion, ECF No. 39, PageID #1089.

McCaleb sought public access to these Advisory Commission meetings under the "experience and logic test" first articulated by the United States Supreme Court in

---

[1] McCaleb amended his complaint and requested access to rulemaking meetings of the (1) Advisory Commission, as well as the (2) Tennessee Judicial Conference (TJC) committees, created by Tenn. Code Ann. § 17-3-101, et seq. Compl., ECF No. 19.

2

*Richmond Newspapers* and later adopted in its subsequent precedents. Compl., ECF No. 19. Specifically, McCaleb argued pursuant to the "experience and logic test" that, because the federal analogue to the Advisory Commission had opened its rulemaking meetings to the public over 34 years ago, history, tradition, and the favorable judgment of experience counsel that the First Amendment attaches to Tennessee Advisory Commission meetings, and the meetings should also be open to the public as well, absent a compelling governmental reason that is narrowly tailored. *See id.* And McCaleb requested "a preliminary injunction, later to be made a permanent injunction, ordering Director Long to provide him with both virtual and in-person access so he can assign reporters to report on future meetings" of the Advisory Commission. *Id.*, at PageID #149, B.

In her Answer in response to McCaleb's allegations that Advisory Commission meetings were "closed to the public and press," Director Long "Denied" that these meetings were closed. Answer, ECF No. 48, PageID #1126, ¶30; Compl., ECF No. 19, PageID #137, ¶30. As part of her theories and defenses to McCaleb's First Amendment right of access claim to meetings, Director Long contends that under *Richmond Newspapers*' two-part test, "there is no historically recognized right of access to the Tennessee Advisory Commission on the Rules of Practice & Procedure." Initial Case Mgt. Order, ECF No. 50, PageID #1147.

Although in her Answer she "Denied" that Advisory Commission meetings were closed to the public and press, in her recent deposition last month Director Long testified that meetings were open to the public in the past, but at some point, before

3

her tenure they became closed. Director Long further testified she does not know why meetings became closed. Excerpts from Director Long's relevant deposition testimony ("Long Depo.") are attached as **Exhibit 1** and set forth below:

Q. And so are meetings -- is it your understanding that Advisory Commission meetings are open or closed?

A. For this particular commission, I understand the history has been that at one point they were open and at one point they were closed.

Q. And at what point is it your understanding on the history were they open?

A. It predates me. I want to say maybe 2017, 2018, but I am not certain.

Q. What is your understanding of history wise when they became closed?

A. I don't know why they became closed.

Q. I didn't say "why," I said what is your understanding of the process of getting closed and why they became closed?

A. I don't know.

**Exhibit 1**, Long Depo., p. 106, Lines 8-25.

### B. The Court's Preliminary Injunction Issued on March 22, 2023

On March 22, 2023, effective at 3:00 pm, along with its Memorandum Opinion (ECF No. 39), the Court issued an Order And Preliminary Injunction (ECF No. 40), finding that McCaleb had shown a likelihood of success on the merits of his First Amendment right of public access claim to Advisory Commission meetings. In its Order And Preliminary Injunction, the Court said:

4

It is, therefore, **ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, Defendant and her officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby **ENJOINED** and **RESTRAINED** from:

> Holding future meetings of the Tennessee bench-bar advisory commission established to recommend rules without providing the public with access either via livestreaming or in-person attendance; provided, however, that such access may be denied with respect to a particular meeting, such that the meeting is closed in whole or in part on a case-specific basis; based on a particular stated reason that purportedly justifies such closure; provided further, however, that any such disclosure shall be separately subject to challenge in its own right by any party with standing to do so.

Defendant is **FURTHER ORDERED** to provide notice of this Order to her officers, directors, agents, servants, representatives, attorneys, employees, and affiliates, and those persons in active concert or participation with them. Defendant shall take whatever means are necessary or appropriate to ensure proper compliance with this Order. ECF No. 40, PageID ##1103-04.

## C. The Depositions Thus Far Including Advisory Commission Chair Gino Bulso, and AOC Liaison Michelle Consiglio-Young

The parties have taken seven (7) total depositions thus far, as follows:

- October 3, 2023 (remote) – Prof. Benjamin Barton, Plaintiff's Expert

- October 9, 2023 (in-person) – Gino Bulso, Chair Advisory Commission

- October 13, 2023 (remote) – Plaintiff Dan McCaleb

- October 24, 2023 (in-person) – AOC Deputy Director Rachel Harmon

- October 25, 2023 (in-person) – Defendant AOC Director Michelle Long

5

- November 16, 2023 (in-person) – AOC liaison Michelle Consiglio-Young

- November 21, 2023 (remote) – Lang Wiseman, Defendant's Expert

Relevant excerpts from the depositions given by Gino Bulso, Chair of the Advisory Commission ("Bulso Depo."), attached as **Exhibit 2**, and Michelle Consiglio-Young, ("Consiglio-Young Depo."), attached as **Exhibit 3**, with respect to whether meetings have historically been open to the public or closed, as well as the Tennessee Supreme Court's and Justices' involvement with the Commission, are as follows:

### *Gino Bulso, Chair Advisory Commission*

Q. Can you describe the commission?

A. A commission is a group of attorneys and judges appointed by the Tennessee Supreme Court pursuant to 16-3-601 to assist it in modifying Rules of Civil and Criminal Procedure.

**Exhibit 2**, Bulso Depo., p. 18, Lines 2-6.

Q. From 2016 through 2022, during your time serving on the commission, were any of those meetings ever open to the public?

A. I'm not sure.

*Id.*, p. 28, Lines 17-20.

Q. Okay. I think you said -- I want to make sure I understood this. Did you say in your earlier testimony that you serve at the pleasure of the Tennessee Supreme Court?

A. I did say that.

Q. Is that language, is that in the statute?

6

A. Yes.

Q. It is?

A. It is implicitly in 16-3-601.

Q. I think, as I recall, the AOC director uses that language, "Serves at the pleasure of the chief justice of the Supreme Court"; would that be correct?

A. I don't know.

Q. But you're saying implicitly, you, as the chair -- who do you serve at the pleasure of, the Supreme Court or the Chief Justice?

A. The Supreme Court.

*Id.*, p. 68, Lines 6-22.

Q. How do you communicate with your Supreme Court liaison? Do you do it while you're at the meeting or at a later time?

A. By telephone, typically.

Q. Who was the Supreme Court liaison in 2022 from the Supreme Court?

A. Justice Lee.

Q. How often did you communicate by telephone with Justice Lee during the 2022 calendar year?

A. Likely once or twice.

Q. Once or twice?

A. (Witness nods head up and down.)

Q. Do you recall what the nature of those calls were about?

7

A. Yes. Questions about reappointment as chair. Reappointment to the commission.

Q. Why would you communicate with Justice Lee about that, those issues?

A. Because it's -- the Supreme Court appoints the members of the commission. It's the Supreme Court who appoints the chair, the vice chair, the reporter, and the other offices of the commission.

*Id.*, p. 69, Line 17 through p. 70, Line 13.

### *Michelle Consiglio-Young, AOC Liaison to the Advisory Commission*

Q. Let's kind of backtrack a little bit. So I think you said 2015 to 2016 you sat in on some meetings?

A. Uh-huh.

Q. And the -- your recollection, they were open to the public?

A. Yes.

Q. At what point did those Advisory Commission meetings become closed to the public?

A. I believe it was 2018.

Q. I'm sorry?

A. 2018. It was after I had taken over as liaison. There was -- meetings were open to the public, as far as I can recall. And there was a meeting that we had that there was a member of the public who had attended in person who was there and became unruly and combative with the Commission. And after that, the -- the

Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident.

Q. And what -- where was this particular meeting in 2018?

A. I wish I could recall the exact date. I do believe it was 2018 and the meeting was at the Administrative Office of the Courts, it was in our conference room. And members of the public would come periodically, sometimes we didn't have any and sometimes some would request to come.

And that particular meeting there was a member of the public who attended, and he was interested in a topic that was being discussed by the Commission. And during that discussion, he was speaking kind of out of term, you know, without being called on or outside of the public comment period that was allowed and essentially became very assertive with the members and -- and the meeting was stopped and he was asked to leave.

Q. Do you recall how many members of the public were at that particular meeting in 2018?

A. I believe it was just that gentleman and his son.

Q. Do you recall his name?

A. I don't. I'm sorry.

Q. When you say "combative," do you mean -- what do you mean? Was it verbal combativeness --

A. Yes.

Q. -- or physical?

A. It was verbal. He did leave his chair -- or, you know, get up from his chair while he was having this discussion, which kind of escalated the -- the tone that was going on in there in his interaction with the members. So it -- yeah, it just became more of an aggressive action on his part. Clearly he was upset with a topic that was being discussed.

Q. Do you recall the topic?

A. No.

Q. Do you recall who the chair was at that time at that meeting?

A. I believe the chair was Allen Wade then.

Q. Is Mr. Wade currently a member on the Advisory Commission?

A. Yes.

Q. Were there four quarterly meetings in 2018?

A. Yes. As far as I remember there were.

Q. And you were at this meeting in 2018?

A. I was at that meeting, yes.

Q. Who was the chief justice of the Supreme Court at that time in 2018?

A. It was Justice Jeff Bivins at that time.

Q. So did the Chairman Wade ask this person that was being verbal -- verbally combative to leave? Did he -- did the person leave?

A. I don't recall who exactly asked him to leave; however, he was asked to leave. We did have to have several people help escort him out. And I can't remember if

security was called at that meeting or not. I -- I do believe that building security was made aware.

Q. Do you recall if any formal charges, criminal charges were brought against this person?

A. I -- I do not believe that there were formal criminal charges.

Q. So the person that was verbally combative was never prosecuted to the best of your recollection?

A. Correct, I do not believe that he was.

Q. And so, I guess, was there a member of the Tennessee Supreme Court that was attending that particular meeting?

A. Yes.

Q. And who was that?

A. It was Justice Holly Kirby.

Q. So Justice Kirby was the Supreme Court liaison on the Commission in 2018?

A. She was.

Q. Justice Kirby is now the Chief Justice of the Supreme Court?

A. Yes, she is.

Q. So you said something about the -- the justices at that point, they made the call, they made the decision to close meetings. Explain what -- explain what happened after that.

A. After the meeting where the person got combative -- and Justice Kirby was in attendance in that meeting, so she had seen it firsthand, the -- as far as I am

11

aware, she took that matter back to the Supreme Court for discussion, and we at the AOC were told that the meetings would no longer be open after that. And that was really my interaction with that. They were -- I was informed that they would be closed.

Q. How were you told? How were the members of the Commission told that from now on they were going to be closed, the meetings?

A. I don't recall exactly. I do know that if our General Counsel Rachel Harmon at the time had told me that there was no need to put public notice out because they were going to be closed the next meeting after that incident. And I cannot recall if Justice Kirby told the members directly or if a member of our office told them that we -- that they would be closed. I just don't remember exactly.

Q. But that decision would have come from either the justices or the AOC office to the Advisory Commission?

A. One of the two, yes, would have told either the Commission as a whole or the chair and the chair would have relayed that to the Commission.

Q. So the Chair, Mr. Wade, didn't make that decision?

A. No.

Q. Did -- was it reported, do you recall, that meetings were going to be closed and formally in the minutes?

A. I do not recall. I would have to look back at the minutes to see if they were -- if there was any mention.

Q. Where are the minutes kept?

12

A. Like I had said earlier, they're housed within the Tennessee Supreme Court building overseen by the Appellate Court Clerk's Office, so there is -- whether they're electronic or paper filed.

**Exhibit 3**, Consiglio-Young Depo., p. 40, Line 8 through p. 46, Line 12.

### D. Administrative Order No. 102 Issued on October 17, 2023, Closing Court for the Thanksgiving Holiday on November 23 and 24

On October 17, 2023, the United States District Court for the Middle District of Tennessee in the matter of *IN RE: 2023 Holiday Schedule*, Administrative Order No. 102 (M.D. Tenn. Oct. 17, 2023), issued the Court's holiday schedule, and it was signed by Chief Judge Waverly D. Crenshaw, Jr. and District Court Judges Aleta A. Trauger, William L. Campbell, Jr., and Eli Richardson. Administrative Order No. 102 is attached as **Exhibit 4**, and it said in relevant part:

> It is hereby ORDERED that the United States District Court for the Middle District of Tennessee, including the Clerk's Office and the United States Probation Office, will be closed on the following dates:
>
> Thursday, November 23, 2023, and Friday, November 24, 2023
>
> Pleadings or other documents required to be filed on the dates listed above will be treated as timely filed if filed on the next business day after the required date.
>
> It is so ORDERED.

### E. The Subpoena Served on October 31, 2023, for the Justices' Remote Depositions Noticed for November 27, 28, 29, and 30

On October 31, 2023, McCaleb's counsel served four subpoenas and notices of remote Zoom depositions of the Justices for November 27-30, 2023. These documents

13

and the Subpoena were initially served upon Defendant Long's counsel, who represented to Plaintiff's counsel that they would accept service on behalf of the Justices. Attached as **Exhibit 5** is the Declaration of James McQuaid ("McQuaid Decl."), pro hac vice attorney of record on behalf of Plaintiff McCaleb in this case, along with these supporting documents. Moreover, attached as **Exhibit 6** is the Declaration of Buck Dougherty, lead counsel and attorney of record on behalf of Plaintiff McCaleb in this case, along with records documenting $40 checks were tendered to the Justices' counsel for attendance at their noticed depositions.

### F. The Justices' Motion to Quash Subpoena Filed on Thanksgiving Eve

On Thanksgiving Eve, November 22, 2023, at approximately 11:43 am CDT, the Justices filed their Motion to Quash their depositions. ECF No. 60. Accompanying their Motion was a supporting Memorandum of Law (ECF No. 61), Plaintiff's Rule 26 Initial Disclosures served on May 19, 2023 (ECF No. 61-1), four Affidavits signed and dated by the Justices (ECF No. 61-2), Plaintiff's First Supplemental Response to Interrogatories (ECF No. 61-3), excerpts from Plaintiff McCaleb's deposition (ECF No. 61-4), and excerpts from Rachel Harmon's deposition (ECF No. 61-5).

In the Memorandum in support of their Motion to Quash, they said, "Even in the pursuit of factual information (as opposed to judicial motivations), the subpoenaed depositions pose an undue burden weighed against the Justices' lack of factual knowledge relevant to the underlying litigation." ECF No. 61, PageID # 1221-22.

**LEGAL STANDARD**

**A. Rule 45**

Under the Federal Rules of Civil Procedure, Rule 45 provides the legal vehicle for quashing a subpoena: On timely motion, the court for the district where compliance is required mush quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A); *see* Fed. R. Civ. P. 30(a)(1) (providing that a party may depose any person, and their "attendance [at a deposition] may be compelled by subpoena under Rule 45"). The decision to quash a subpoena lies within the sound discretion of the trial court. *Thomas v. City of Cleveland*, 57 F. App'x 652, 654 (6th Cir. 2003) (citing *Ghandi v. Police Dep't*, 747 F.2d 338, 354 (6th Cir. 1984)).

"A nonparty seeking to quash a subpoena bears the burden of demonstrative that the discovery should not be permitted." *Sinclair v. Lauderdale Cnty.*, 2015 U.S. Dist. LEXIS 37081, *7 (W.D. Tenn. Mar. 24, 2015) (quoting *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. May 12, 2010)). Even though courts "consider one's status as a nonparty to be a significant factor in the undue-burden analysis," the nonparty still bears the burden of demonstrating that the discovery sought should not be permitted. *Sinclair*, 2015 U.S. Dist. LEXIS at *9 (cleaned up). "The quashing of a subpoena and the complete prohibition of a deposition are certainly

15

extraordinary measures which should be resorted to only in rare occasions." *Bickford v. Lifecare Ctr. of Am.*, 2008 U.S. Dist. LEXIS 127183, \*4 (E.D. Tenn. Aug. 7, 2008) (quoting *Alexander v. F.B.I.*, 186 F.R.D. 60, 64 (D.D.C. Jun. 15, 1998)). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

### B. Rule 26

Rule 26 provides for broad and ample discovery relevant to the parties' claims and defenses and states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts may issue a protective order from annoyance, embarrassment, oppression, or undue burden or expense, upon good cause and a "clearly defined and serious injury." Fed. R. Civ. P. 26(c)(1); *Nix v. Sword,* 11 Fed. Appx. 498, 501 (6th Cir. 2001). "The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander*, 186 F.R.D. at 64.

ARGUMENT

**I. The Court should deny the Justices' Motion to Quash Subpoena under Rule 45 and for a Protective Order under Rule 26 because they failed to show why their depositions should not be permitted.**

The Court should deny the Justices' Motion to Quash Subpoena under Rule 45 and for a Protective Order under Rule 26 because they failed to show why their depositions should not be permitted. Their Motion (1) is untimely and unreasonable because it was filed 1 business day before the depositions were scheduled to begin, and no reason was provided why they waited; (2) they lack standing as a non-party to quash the Subpoena on relevancy grounds; (3) their Affidavits are facially invalid; and (4) the Subpoena does not subject the Justices to an undue burden because they have "firsthand" and unique knowledge of Advisory Commission meetings according to Michelle Consiglio-Young's testimony.[2]

**A. The Justices' Motion is untimely and unreasonable because it was filed 1 business day before the depositions were to begin, and they provided no reason why they waited.**

The Justices' Motion filed on Thanksgiving Eve, November 22, 2023 — 22 days after being served with the Subpoena and 1 business day before the first scheduled deposition — is untimely and unreasonable.

Although Rule 45 does not define when a motion to quash is "timely," this Court has denied a motion to quash depositions and for a protective order when the motion was filed one business day before the depositions were to begin. *Save on*

---

[2] In their Motion, the Justices do not argue that they did not have reasonable time to comply with the Subpoena, nor that it requires them to go beyond the geographical limits specified in Rule 45(c). *See* Fed. R. Civ. P. 45(d)(3)(A)(i) and (ii).

17

*Energy Sys. v. Energy Automation Sys.*, 2009 U.S. Dist. LEXIS 82505, *4-5 (M.D. Tenn. Sep. 10, 2009). That case provides a good fit here because the motion to quash there was filed just prior to the Labor Day holiday, "effectively one business day before the depositions were scheduled to begin." *Id.* at *2-3. In denying the motion to quash, this Court was troubled by the failure of the movant to offer "absolutely no explanation why they waited" to move to quash when they had plenty advance notice of the scheduled depositions. *Id.* at *4.

Here, in their Memorandum the Justices concede the Subpoena was "served on October 31, 2023, commanding each Justice to appear for deposition in this lawsuit between November 27-30, 2023." ECF No. 61, PageID #1220. In the matter of *IN RE: 2023 Holiday Schedule*, this Court provided public notice on October 17, 2023, that Court would be closed on Thursday, November 23, 2023, and Friday, November 24, 2023, meaning the "next business day" would be Monday, November 27, 2023, the first day depositions were scheduled to begin. *See* **Exhibit 4**. Justice Page signed his Affidavit on November 20, 2023.[3] ECF No. 61-2, PageID ##1250-51. Chief Justice Kirby, Justice Bivins, and Special Justice Lee signed their Affidavits on November 21, 2023. *Id.* at PageID ##1252-57. But they do not say why they waited until Thanksgiving Eve to file. It was untimely and unreasonable for the Justices to wait until November 22, 2023, to move to quash "effectively one business day before

---

[3] On the same day Justice Page executed his Affidavit, the AOC announced his retirement on its webpage. *See* https://www.tncourts.gov/press/2023/11/20/justice-page-announces-august-2024-retirement (last visited November 26, 2023).

18

the depositions were scheduled to begin" and offer "absolutely no explanation why they waited." *See Energy Automation Sys.*, 2009 U.S. Dist. LEXIS at \*2-4.

### B. As non-parties to this case, the Justices do not have standing to quash the Subpoena on relevancy grounds.

As non-parties to this case, the Justices' Motion is improper and must fail because they do not have standing to quash the Subpoena on relevancy grounds.

This Court previously expressed that it "has serious questions about whether a non-party can, under normal circumstances, raise lack of relevancy in a motion to quash." *MCS Music Am. v. Yahoo!, Inc.*, 2010 U.S. Dist. LEXIS 155580, \*4 (M.D. Tenn. Aug. 17, 2010). This reasoning is guided by common sense because a non-party "generally has no interest in the outcome" of a case. *Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 123 (E.D. Mich. Mar. 14, 1977) (citing *Cooney v. Sun Shipbuilding & Dry-dock Co.,* 288 F. Supp. 708, 717 (E.D. Pa. Jul. 26,1968)). In other words, because a non-party has no interest in the outcome, it would be illogical to allow them to quash on relevancy grounds and thus dictate to *actual parties before the Court* whether the discovery sought is relevant. That is left to the parties, and "relevancy" is not the concern of non-parties attempting to quash, who have no interest in the outcome of a case. *See* Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).

But as non-parties the Justices attempt to do what this Court said it had "serious questions about" by raising "lack of relevancy" in moving to quash. The Justices argue in their Memorandum that the Subpoena should be quashed because "the subpoenaed depositions pose an undue burden weighed against the Justices' lack of factual knowledge *relevant* to the underlying litigation." ECF No. 61, PageID # 1221-22

19

(emphasis added). Their Motion fails because they do not have standing to quash the Subpoena on relevancy grounds. *See Yahoo!, Inc.*, 2010 U.S. Dist. LEXIS at \*4.

### C. The supporting "Affidavits"— the instruments themselves — appear to be a hybrid of a sworn Affidavit and unsworn Declaration, do not contain a notary public's signature in ink and affixed official seal, and are facially invalid under Tennessee law.

Their Affidavits — the instruments themselves — are facially invalid under Tennessee law. Thus, the statements contained within these defective instruments in support of the Motion to Quash Subpoena may not be considered by the Court.[4]

Under well-settled precedents of the Tennessee Supreme Court, the word "affidavit," *ex vi termini,* means an oath reduced to writing. *See Grove & Jenkins v. Campbell*, 17 Tenn. 7, 10 (Tenn. 1836). Tennessee law provides that a notary public is authorized to act in any county in the state and has the power to acknowledge signatures upon personal knowledge or satisfactory proof, to administer oaths, to take depositions, qualify parties to bills in chancery, and to take affidavits. Tenn. Code Ann. § 8-16-112. A notary public must sign all documents in ink by his or her own hand, and affix the notary's official seal. Tenn. Code Ann. *Id*. The official signature of the notary should reflect the notary's title as a notary public for the State of Tennessee. Tenn. Code Ann. § 8-16-113.

---

[4] To be clear, McCaleb's argument here is with the defective instruments themselves, and not directed at the statements made by the Justices contained within the instruments. McCaleb takes no position on the actual statements made by the Justices that are embodied within the instruments, other than to argue that the instruments themselves are procedurally defective under Tennessee law.

When a "sworn declaration, verification, certificate, statement, oath, or affidavit," is required to support the truth of a matter at issue, federal law provides that an "unsworn declaration, certificate, verification, or statement, in writing by such person which is subscribed by him, as true under penalty of perjury, and dated," may be used in lieu of the sworn instrument. 28 U.S.C. § 1746; *see also* Tenn. R. Civ. P. 72 (Advisory Commission Comments [2011] "Rule 72 is intended to make the practice pursuant to the Tennessee Rules of Civil Procedure consistent with the practice in the federal courts in accordance with 28 U.S.C. § 1746.").[5]

Here, the Justices' supporting instruments all use the express word, "Affidavit," in bold in the caption. The body of the instruments contains the state and county and includes the same introductory language that the Justices are "affiant[s]," and acknowledge that "after being duly sworn," they make their "statements under oath." ECF No. 61-2, PageID ##1249-57. All of the Justices used "DAVIDSON COUNTY, TENNESSEE," as the designated county in these instruments (ECF No. 61-2, PageID ##1250, 1252, 1256), with the exception of Special Justice Lee, who used "KNOX COUNTY, TENNESSEE." ECF No. 61-2, PageID #1254. The Justices conclude each of their statements by stating, "FURTHER THE AFFIANT SAYETH NOT." ECF No. 61-2, PageID ## 1251, 1253, 1255, 1257. Then following their statements each Justice said, "Pursuant to 28 U.S.C. §1746, I declare under penalty

---

[5] The "Advisory Commission" referenced in this citation to Tenn. R. Civ. P. 72 is the same Advisory Commission appointed by the Tennessee Supreme Court to make court rule recommendations to them, that is at issue in this case in which Plaintiff is seeking access to the Commission's meetings under the First Amendment so he can assign reporters to report on meetings.

21

of perjury that the foregoing is true and correct." And they each dated and signed their respective instruments with "wet signatures." ECF No. 61-2, PageID ## 1251, 1253, 1255, 1257. There was no name or title of a Tennessee notary public who administered the oaths to the Justices, no signature by a notary public in ink by his or her own hand, and there was no notary's official seal affixed to the instruments.

The Fifth Circuit Court of Appeals addressed a similar issue that is applicable here in this instance in *Stokes & Spiehler Onshore, Inc. v. Ogle* (*In re Wave Energy*), 467 Fed. Appx. 248 (5th Cir. 2012). In that case, the court held that the notary public's statement in an affidavit was insufficient under Texas law, thus invalidating the affidavit.[6]

Under Tennessee law, the Justices' Affidavits are defective and invalid because they do not contain the required notary public's signature in ink by his or her own hand who administered the oath, nor do they contain an affixed notary public's official seal. *See* Tenn. Code Ann. § 8-16-112. And including in their "hybrid" Affidavits statutory language from 28 U.S.C. §1746 regarding unsworn statements does not transform the Justices' "sworn" Affidavits into "unsworn" Affidavits. While there are valid instruments such as an "unsworn declaration, certificate, verification, or statement," there is no such "unsworn affidavit" that is recognized as a valid instrument. *See* 28 U.S.C. §1746; *see also Grove & Jenkins*, 17 Tenn. at 10. And the express substance, character, and nature of the Justices' supporting

---

[6] Texas law required that an affidavit contain a certification by a notary public who had administered the oath, which is known as the "jurat." *Id*. at 250.

22

instruments were clearly intended to be "sworn Affidavits," not unsworn affidavits, declarations, certificates, verifications, or statements. *See* 28 U.S.C. §1746; ECF No. 61-2, PageID ##1249-57.

> ### D. The Subpoena does not subject the Justices to an undue burden because they are fact witnesses with relevant "firsthand" and unique knowledge of Advisory Commission meetings according to Michelle Consiglio-Young's testimony.

The Subpoena does not subject the Justices to an undue burden because they are fact witnesses with relevant "firsthand" and unique knowledge of Advisory Commission meetings according to Michelle Consiglio-Young's testimony.

The Sixth Circuit has rejected the "apex doctrine" and simply applied the Federal Rules of Civil Procedure to protect a person from a deposition, so long as the person shows "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th 2012) (citing *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). The Sixth Circuit has never applied such a doctrine to government officials and defers to Rules 26 or 45 as applicable. *See Serrano v. Cintas Corp.*, 699 F.3d at 901.

Here, the Justices argue that they do not possess relevant factual information. For support, the Justices point to the deposition of Rachel Harmon — Deputy Director of the AOC. Their theory supporting why they should not be deposed is that Harmon testified that "Michelle Consiglio-Young is the AOC employee who has the most knowledge of what takes place at Advisory Commission meetings." ECF No. 61, PageID #1231. But Consiglio-Young's deposition testimony *does not support*

23

their argument. Rather, her testimony *undercuts* the Justices' argument that they should be shielded from giving their depositions. *See* **Exhibit 3**, Consiglio-Young Depo., p. 40, Line 8 through p. 46, Line 12.

First, Consiglio-Young testified that, after the 2018 public Advisory Commission meeting when the gentleman became verbally combative and disruptive, the Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident. According to their bios on the AOC webpage, Chief Justice Kirby, Justices Bivins and Page, and Special Justice Lee all served on the Tennessee Supreme Court in 2018 during the time of this incident.[7]

Second, Consiglio-Young testified that current Chief Justice Kirby was the Supreme Court liaison in 2018 and was at that specific public Advisory Commission meeting involving the verbally combative man and had "firsthand" knowledge of this incident. Chief Justice Kirby confirmed that she was in fact Supreme Court liaison to the Advisory Commission in 2018. ECF No. 61-2, PageID #1256.

Third, Consiglio-Young testified that Justice Bivins was the Chief Justice during the time of this incident in 2018 when the Supreme Court "took the matter up for discussion and then the meetings were closed after that incident."

Fourth, as one of her theories and defenses, Director Long has squarely injected into this case whether there is a "historically recognized right of access to the

---

[7] (Chief Justice Kirby) https://tncourts.gov/courts/supreme-court/judges/holly-kirby (Justice Bivins) https://tncourts.gov/courts/supreme-court/judges/jeffrey-s-bivins (Justice Page) https://tncourts.gov/courts/supreme-court/judges/roger-page (Special Justice Lee) https://www.tncourts.gov/press/2022/11/15/justice-lee-announces-august-2023-retirement

Tennessee Advisory Commission on the Rules of Practice & Procedure." Initial Case Mgt. Order, ECF No. 50, PageID #1147. But she also does not know about the historical nature of meetings and whether they were open or closed to the public because that predates her tenure as AOC Director according to her testimony. Moreover, under *Richmond Newspapers* and its progeny, once the First Amendment attaches to meetings, the government must come forward with a compelling governmental reason that is narrowly tailored why meetings should be closed. And from his excerpted testimony, Chairman Bulso likewise does not know if Advisory Commission meetings historically have been open or closed, and Chairman Wade did not make the decision in 2018 to close meetings according to Consiglio-Young.

Finally, Consiglio-Young provided compelling testimony involving the 2018 incident, narrowing the issues in dispute over the historical nature of open and closed meetings. But she also pointed directly back at the Justices since they "took the matter up for discussion and then the meetings were closed after that incident."

**II.     Plaintiff McCaleb and Defendant Long have agreed to a Case Management Order entered by this Court, which would be severely impacted by quashing or delaying the depositions.**

Plaintiff and Defendant have agreed to the Initial Case Mgt. Order, ECF No. 50, and Modified Case Mgt. Order, ECF No. 58, which would be severely impacted by quashing or delaying the depositions. The discovery cutoff deadline is November 30, 2023; the dispositive motion deadline is December 15, 2023; and trial is May 7, 2024.

## CONCLUSION

For these reasons, the Justices' Motion to Quash Subpoena should be denied.

25

November 27, 2023                    Respectfully submitted,


_/s/ M. E. Buck Dougherty III_

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,*
*Executive Editor of The Center Square*

# CERTIFICATE OF SERVICE

I, counsel for Plaintiff, hereby certify that a true and correct copy of the foregoing document has been served on the following counsel of record, via the Court's ECF system by email on this 27th day of November 2023:

JONATHAN SKRMETTI

Office of the Attorney General & Reporter
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202-0207

Andrew C. Coulam
Michael M. Stahl
Robert W. Wison
andrew.coulam@ag.tn.gov
michael.stahl@ag.tn.gov
robert.wilson@ag.tn.gov

*Attorneys for Defendant*
*AOC Director Michelle Long*

Donna Green
Cody Brandon
Liz Evan
donna.green@ag.tn.gov
cody.brandon@ag.tn.gov
liz.evan@ag.tn.gov

*Attorneys for Non-Party*
*Tennessee Supreme Court Justices*

/s/ M.E. Buck Dougherty III

27