# Exhibit

# 2

# MCCALEB

## vs.

## LONG

# GINO BULSO

# October 09, 2023



Lexitas Legal TENNESSEE | 1015 Avery Park Dr | Smyrna, TN 37167 | (615) 595-0073|
tn.scheduling@lexitaslegal.com

Case 3:22-cv-00439   Document 62-2   Filed 11/27/23   Page 2 of 96 PageID #: 1505

IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

DAN McCALEB, Executive
Editor of
THE CENTER SQUARE,

Case No. 3:22-cv-00439

Plaintiff,

Judge Richardson

vs.

Magistrate Judge
MICHELLE LONG, in her        Frensley
official capacity as
DIRECTOR of the
TENNESSEE ADMINISTRATIVE
OFFICE OF THE COURTS,

Defendant.

_____


Deposition of:

GINO BULSO

Taken on behalf of the Plaintiff
October 9, 2023


_____


Saba McKinley, LCR, RPR, CRI

*Lexitas* TENNESSEE
(615)595-0073

A P P E A R A N C E S


For the Plaintiff:

M. E. BUCK DOUGHERTY III
Attorney at Law
LIBERTY JUSTICE CENTER
440 N. Wells Street
Suite 200
Chicago, Illinois 60654
423.326.7548
Bdougherty@ljc.org


For the Defendant:

MICHAEL M. STAHL
Senior Assistant Attorney General
OFFICE OF THE ATTORNEY
GENERAL & REPORTER
Federal Habeas Corpus Division
P.O. Box 20207
Nashville, Tennessee 37202
615.253.5463
Michael.stahl@ag.tn.gov


Also Present:

For Witness Bulso
ASHLEY CARTER
Attorney at Law
Senior Assistant Attorney General
STATE OF TENNESSEE
ATTORNEY GENERAL
315 Deaderick Street
Nashville, Tennessee 37243
615.741.7932

*Lexitas* TENNESSEE
(615)595-0073

APPEARANCES CONTINUED:

                        For Witness Bulso
                        CAROLYN U. SMITH
                        Deputy Attorney General
                        Education and Employment Division
                        315 Deaderick Street
                        Nashville, Tennessee 37243
                        615.532.2578
                        Carolyn.Smith@ag.tn.gov

```
                    I   N   D   E   X

                                              Page

Examination
By Mr. Dougherty                               6
By Mr. Stahl                                  77
By Mr. Dougherty                              79
By Mr. Stahl                                  81




           E   X   H   I   B   I   T   S



              (None marked)
```

S T I P U L A T I O N S

The deposition of GINO BULSO was taken by counsel for the Plaintiff, by Notice, at the John Sevier State Office Building, 500 Dr. Martin Luther King, Jr. Boulevard, Nashville, Tennessee, on October 9, 2023, for all purposes under the Federal Rules of Civil Procedure.

All formalities as to caption, notice, statement of appearance, et cetera, are waived. All objections, except as to the form of the question, are reserved for the hearing, and that said deposition may be read and used in evidence in said cause of action in any trial thereon or any proceeding herein.

It is agreed that SABA MC KINLEY, LCR, RPR, CRI, may swear the witness, and that the reading and signing of the completed deposition by the witness are waived.

*Lexitas* *TENNESSEE*
(615)595-0073

* * *

GINO BULSO,

was called as a witness, and after having been first
duly sworn, testified as follows:

EXAMINATION

QUESTIONS BY MR. DOUGHERTY:

Q   Good morning, Mr. Bulso.

A   Good morning.

Q   Have you ever had your deposition taken before
today?

A   Yes.

Q   When was that?

A   Several times.

Q   Can you recall those times and in what -- what
the reason was?

A   Sure.  I believe I gave several depositions in
litigation with a adverse party named Ken Nelson, who
was a defendant in a fraudulent transfer case that I
filed.  He filed some type of an action against me, and
I think there were one or two depositions in that case.

Q   And that litigation that was filed by
Mr. Nelson, that was against you in your capacity as an
attorney?

A   Yes and no.  I was an attorney.  He sued me as

*Lexitas* **TENNESSEE**
(615)595-0073

a party, claiming some type of malicious prosecution.

Q Okay.

A And it was a deposition that was given, I think, here in Nashville. At some point, the case was dismissed and refiled in Wisconsin. Before that case was dismissed, I may have testified again. And then there was another action brought by parties from San Francisco in which I was deposed.

MR. DOUGHERTY: I tell you what. Let's go off the record for a second.

(Discussion off the record)

BY MR. DOUGHERTY:

Q Mr. Bulso, I appreciate that. I should have probably clarified.

You're an attorney; is that correct?

A Yes.

Q When I asked that question, I was referring to you specifically being part of a deposition, giving your deposition.

Did you understand that correctly?

A Yes.

Q Okay. I'll try to clarify that next time.

Do you understand, Mr. Bulso, that you are

under oath here today?

A   Yes.

Q   Are you prepared to answer the questions that I ask of you today?

A   To the best of my ability.

Q   Okay.  Have you taken any medications before your deposition today that could affect your ability to give honest and truthful answers?

A   No.

Q   Will you inform me if you do not understand a question had that I ask of you today?

A   Yes.

Q   I will try to clarify that to the best of my ability.

And then, I know you're an experienced attorney, it's my understanding.  So any time you need to take a break, feel free and we can.

A   All right.

Q   Then just a couple other points.

Obviously, in giving depositions, it's very important to give audible, verbal responses.

Do you understand that?

A   Yes.

Q   I know quite frequently, as a matter of habit, we all kind of nod our heads.  It's important, for the

Case 3:22-cv-00439    Document 69-1  Filed 11/12/24   Page 10 of 96 PageID #: 1583

Lexitas TENNESSEE
(615)595-0073

court reporter, for you to give audible and verbal answers.

Okay?

A    Understood.

Q    You understand the procedures we've outlined here today for conducting your deposition?

A    Could you ask that again?

Q    Sure.  Do you understand the procedures we've gone over for conducting your deposition today?

A    I presume they're in accordance with the Federal Rules of Civil Procedure.

Q    That's correct.  I meant kind of general guidelines; if you need a break, those simple kind of common sense things.

Do you understand that?

A    I do.

Q    Can you please state your full name for the record?

A    Eugene Nicholas Bulso, Jr.

Q    You go by Gino; is that correct?

A    Correct.

Q    Okay.  How old are you and what is your date of birth?

A    61.  December 25, 1961.

Q    Where do you live, Mr. Bulso?

*Lexitas* MIDDLE TENNESSEE
(615)595-0073

A    Brentwood, Tennessee.

Q    How long have you lived there?

A    28 years.

Q    Okay.  Where do you work?

A    I work at Bulso PLC.  155 Franklin Road, Suite 400, Brentwood, Tennessee.

Q    You're an attorney; is that correct?

A    Yes.

Q    Are there any other attorneys in practice with you at your firm?

A    Yes.

Q    How many other attorneys are in practice with you?

A    Three.

Q    What are their names?

A    Paul Krog, Nicholas Bulso, and Niko Tsiouvaras.

Q    The other Nicholas Bulso, that a relative?

A    Yes.

Q    Is he your son?

A    Exactly.

Q    Okay.  Does he go by "Junior" or "the third" or anything like that?

A    He goes by Nicholas.

Q    Okay.  What other law firms have you been associated with prior to your current firm?

Lexitas TENNESSEE
(615)595-0073

A   Boult Cummings Conners & Berry, and Leader Bulso & Nolan PLC.

Q   Can you give me the approximate years when you were with Boult Cummings?

A   1986 to May 2008.

Q   And the other firm that you gave, what was that name again?

A   Leader Bulso & Nolan.

Q   Approximately what years were you associated with that firm?

A   2008 to 2020.

Q   How long again have you been associated with your current firm, Bulso PLC?

A   Since its formation in about May of 2020.

Q   Where did you go to undergraduate school?

A   Cornell college.

Q   What year did you graduate from Cornell?

A   1983.

Q   What school -- what law school did you attend and graduate from?

A   Emory.

Q   In Atlanta?

A   Yes.

Q   What was your graduation year?

A   1986.

Case 3:22-cv-00439    Document 69-2   Filed 11/11/22   Page 13 of 96 PageID #: 1516

*Lexitas* TENNESSEE
(615)595-0073

Q How many state bar licenses do you currently carry?

A One.

Q And what is that?

A Tennessee.

Q Do you recall the year of your first admission?

A Yes.

Q What is that?

A 1986.

Q Are you admitted to any other courts besides the state of Tennessee courts?

A Yes.

Q What are those?

A In the federal system, the U.S. Supreme Court, the U.S. Court of Appeals for the 6th Circuit, U.S. Court of Appeals for the 5th Circuit, U.S. Court of Appeals for the 4th circuit.

The Middle District of Tennessee. The Eastern District of Tennessee, the Western District of Tennessee, the Eastern District of Arkansas, the Southern District of Texas, the Eastern District of Wisconsin.

And those are the ones that I can recall right now.

Q You did a better job that I did. I typically

have to look at my plaques on the wall to figure that out.

Have you ever been formally disciplined by a state bar licensing authority?

A   No.

Q   Have you ever been disciplined by a court that you're admitted in?

A   I have not.

Q   Have you ever been convicted of a crime?

A   I have not.

Q   Other than the Ken Nelson matter that you described, have you ever been sued before?

A   In the San Francisco matter that I mentioned earlier.

Q   Is that the Ken Nelson matter?

A   That's a different case.

Q   Okay.  Let's try -- I just want to get this for the record.

A   Sure.

Q   Can you tell me the name of the litigation and what court in what you refer to as Ken Nelson litigation?

A   That was Nelson vs. Bulso, originally filed in the Davidson County Chancery Court and later filed in the Eastern District of Wisconsin.

*Lexitas* TENNESSEE
(615)595-0073

Q   Do you happen to recall the case number or anything like that?

A   I do not.

Q   Do you recall the year when that was filed?

A   I do not.

Q   How did that litigation conclude?

A   It was dismissed.

Q   You were a defendant in that case?

A   Correct.

Q   That was a civil matter?

A   Yes.

Q   You refer to something -- the San Francisco litigation; is that correct?

A   Right.  There was an action, San Francisco Residence club versus Leader Bulso & Nolan PLC.  I believe I was individually named in that case as well.

Q   When was that lawsuit filed?

A   Sometime around 2014 or '15.

Q   Did that conclude, that case conclude?

A   It was dismissed on summary judgment.

Q   What court was that in?

A   Ultimately, it was in the Northern District of Alabama.

Q   You say "ultimately."  Was it in another court before it got transferred?

*Lexitas* TENNESSEE
(615)595-0073

A   Yes.

Q   What court was that?

A   As I recall, it was originally filed in state court in Marin County, California.  It was removed to the Northern District of California, Federal District Court, and then transferred to Alabama.

Q   Okay.  Are you represented by counsel today?

A   Yes.

Q   Who represents you?

A   Ashley Carter.

Q   Ms. Carter's here today, correct?

A   Yes.

Q   How did you learn of your deposition today, that it was going to be taken today?

A   I was advised by counsel.

Q   Okay.  As a nonparty to this lawsuit, you're entitled, under federal statute, to receive a daily fee for your attendance plus mileage reimbursement.  I believe I may have sent an email either -- last week to the other -- Mr. Stahl's group, who represents Director Long.

Where should I send your check for your appearance today and your mileage fee, number one?  Who should I send that to?

A   You can send that to me at the firm.

MR. DOUGHERTY: Is that okay, Ms. Carter?

MS. CARTER: Yes.

BY MR. DOUGHERTY:

Q You've already given -- can you go ahead and give me that address once again?

A Sure. It's Bulso PLC. 155 Franklin Road, Suite 400, Brentwood, Tennessee 37027.

Q And then, should I calculate your mileage reimbursement from your office to this office and then back to be able to send you a check?

A That would be fine.

Q Okay.

A It should be -- it will be nine miles either way.

Q Okay. Great.

All right. Mr. Bulso, are you familiar with the Advisory Commission on the Rules of Practice and Procedure that was created by Tennessee Code annotated 16-3-601?

A Yes.

Q What is that?

A It's a commission that the General Assembly created to advise the Supreme Court on rules of practice and procedure.

Q When you say "the Supreme Court," you're

Lexitas TENNESSEE
(615)595-0073

referring to Tennessee Supreme Court; is that right?

A   Yes.

Q   Are the members of that commission typically listed on the Tennessee Administrative Office of the Courts' website?

MS. CARTER:  Can I just make a clarification for the record --

MR. DOUGHERTY:  Yes.

MS. CARTER:  -- as we're going into this?

So I just want to clarify that you've noticed him in his individual capacity.  That's -- to the extent he knows, he's welcome to testify to it, but I just want to make sure that it's clear on the record that he's not testifying for the commission in the deposition today.

MR. DOUGHERTY:  I think that's correct.  I think the reason for Mr. Bulso's testimony is in his, which we'll get into, his capacity as chair of the Advisory Commission.

MS. CARTER:  Right.  But he's not here to testify on behalf of the commission as its chair.  He's here to testify as an individual.

So I just want to make certain that as we go through, he's providing whatever knowledge he has to you just for clarification purposes.

MR. DOUGHERTY:  Okay.

Lexitas TENNESSEE
(615)595-0073

BY MR. DOUGHERTY:

Q Can you describe the commission?

A A commission is a group of attorneys and judges appointed by the Tennessee Supreme Court pursuant to 16-3-601 to assist it in modifying Rules of Civil and Criminal Procedure.

Q We'll get to those different committees in a moment.

So I think you said this already, but there are members of the judiciary that serve on the commission?

A In an ex officio capacity, yes.

Q What does that mean?

A It means they're nonvoting members.

Q But they're on the actual Advisory Commission, the judicial members?

A I'm not sure exactly how to answer that. I know that the statute gives the Supreme Court the authority to appoint members to the commission. I know that we've got attorneys who vote on proposals that come before the commission, and that we have judges who are involved in the meetings but who do not actually vote.

When you say that they're members of the commission, I'm not exactly sure I can answer that specifically.

Q Have you ever gone to the AOC website and seen

Lexitas TENNESSEE
(615)595-0073

the names that were listed for the Advisory Commission on that website?

A Yes.

Q Does it list names of judicial members?

A I don't know.

Q I've actually viewed it this morning. I will give you some names, and you can tell me if they are members of the judiciary.

Okay?

A Sure.

Q So it list you as the chair, Gino Bulso, and that's correct?

A It is.

Q How long have you been the chair for the Advisory Commission?

A The last two years.

Q Do you recall the year or the day that you were appointed to the commission as chair?

A Not the specific date, no.

Q Would it have been 2020 or after that?

A It was either in 2020 or 2021.

Q In your current appointment as chair of the Advisory Commission, how long is the term?

A My understanding is it's one year.

Q Did you serve as chair in 2022?

A   Yes.

Q   Was that for the full year?

A   Yes.

Q   Did you serve as chair in 2021?

A   At least for part of the year, I believe so.

Q   You were appointed, you think, halfway or part of the way through 2021; is that your testimony?

A   No.  My testimony is that I was appointed, I believe, either in 2020 or 2021.  I don't recall specifically which year it was.

Q   Okay.  Are you -- is it your understanding you're to chair the full year in 2023?

A   My understanding is that I'm to be chair so long as the Supreme Court wants me to be.  And at some point, if they decide to fill that role with some other person, then obviously they'll issue an order doing that.

But I serve at the pleasure of the Supreme Court as chair.

Q   So earlier you testified that your term was one year.  By that you mean, as I understand it from what you just said, it's a rolling one year until you're notified that you're no longer chair?

A   I'm not sure I'd say it quite that way.

Q   I'm just trying to understand.  I just wanted

Lexitas TENNESSEE
(615)595-0073

to clarify that point.

A Sure. I was appointed by the Supreme Court to be chair of the Advisory Commission, and then at least once or possibly twice since I was initially appointed, the Supreme Court liaison has asked me to continue in that role. And I've agreed to do so.

Q How does the Supreme Court communicate with you about that?

A Principally through the liaison.

Q Do they -- do any of the members of the Supreme Court communicate with you by email regarding your role as chair?

A I do not believe I've ever exchanged an email with anyone on the Supreme Court about that, no.

Q And you never exchanged email with Director Michelle Long of the Tennessee AOC about your -- regarding your role as chair?

A Not that I recall.

Q We'll get to the other members. It's my understanding that there are some AOC staff members that serve on the commission; is that correct?

A I do not believe that it is.

Q Okay. Then let's unpack that.

Can you explain that?

A I don't believe there's anyone at the AOC who

Lexitas TENNESSEE
(615)595-0073

is actually on the commission.

Q   Okay.  So my understanding, from looking at the website this morning, it lists AOC staff contact Michelle Consiglio-Young.

Do you know her?

A   Yes.

Q   Does she attend Advisory Commission meetings?

A   Yes.

Q   What is her role on the Advisory Commission, or what is her role when she does attend the meetings?

A   Her role is that of a facilitator.

Q   Okay.  Can you explain what that means?

A   Sure.  Our meetings are conducted remotely, and so there is a Zoom link that is hosted for the meeting, and Michelle typically is in charge of hosting the remote connection.  So she'll circulate a link to the reporter for the commission, who will then circulate it to the other commission members.

And then Michelle will be virtually online throughout the meeting to manage the connection.

Q   Does Ms. Young -- is it fair to say she provides administrative support to the Advisory Commission?

A   Yes.

Q   Now, when you said that -- we'll get in, a

Lexitas TENNESSEE
(615)595-0073

little bit later, to meetings being open to the public. But when you said that your meetings are remote, what did you mean by that?

A    What I meant was that currently, when we conduct meetings of the Advisory Commission, that the members of the commission are not in the same place. Rather, they're meeting through a Internet connection.

Q    When did the remote meetings of the Advisory Commission, when did that begin?

A    Well, as long as I've been on the commission, at least some portion of the meeting has been remote.

Q    Would that have been in 2020?

A    Can you clarify?

Q    Did the remote Advisory Commission meetings begin in 2020?

A    No.

Q    Did they begin in 2021?

A    No.

Q    Did they begin in 2022?

A    No.

Q    Did they begin in 2023?

A    No.

Q    Okay.  I'm just trying to understand.  When did the remote meetings start, when you all were in different places having your meeting?

*Lexitas* **MIDDLE TENNESSEE**
*(615)595-0073*

A   Well, as I stated a moment ago, for as long as I've been on the commission, at least some portion of the meeting has been remote.

Q   Okay.  Were you on the commission in any other capacity prior to your serving as chair?

A   Yes.

Q   Tell us what -- when that was and what was your role.

A   I was initially appointed as a member of the commission, I believe, in 2016.

Q   So, in 2016, you were not the chair; is that correct?

A   That is correct.

Q   How many years do you recall serving prior to being appointed chair?

A   I would estimate four to five years.

Q   When you started in 2016 with your initial appointment to the Advisory Commission, is it your testimony that you all held meetings remotely?

A   In part, yes.

Q   Okay.  Were there some times where you met physically, in person?

A   What I mean by "in part" is that the way the meetings were conducted were through videoconference. So we have a room of commission members in Nashville who

Lexitas TENNESSEE
(615)595-0073

would be joined by videoconference with other members who were meeting together in the same room in Memphis, and a third group of members meeting in Knoxville. And also there sometimes were members who participated by telephone.

So that was a hybrid of having some members in person; yet, meeting, in part, being conducted remotely through videoconference.

Q In 2016, when you met -- did your group meet here in the Nashville area?

A Yes.

Q What office did you meet at?

A At the AOC.

Q The Tennessee AOC office?

A Yes.

Q That was in 2016?

A Yes.

Q Do you recall who the chair was of the Advisory Commission when you were first appointed?

A I do.

Q Who was that?

A Jim Doran.

(Stenographer interrupts for clarification.)

THE WITNESS: D-O-R-A-N.

Lexitas TENNESSEE
(615)595-0073

BY MR. DOUGHERTY:

Q   Is Mr. Doran still on the commission?

A   No.

Q   When he was chair, was he -- what did he do --
strike that question.

    When he was chair, was he a private attorney or
was he a judge?

A   He was an attorney.

Q   Was he in private practice in the Nashville
area?

A   Yes.

Q   Do you know if he is still practicing law in
Tennessee?

A   I believe so, yes.

Q   Do you know what firm he's with?

A   I believe I do.

Q   Can you name it, please?

A   I believe he's with what is now Holland &
Knight.

Q   Who was the executive director of the Tennessee
AOC in 2016, when you were first appointed?

A   I do not remember.

Q   Was it Michelle Long?

A   I do not believe it was, no.

Q   Do you know the current deputy director, Rachel

Lexitas TENNESSEE
(615)595-0073

Harmon, of the Tennessee AOC?

A   I know of her.

Q   Does she ever participate in you all's meetings currently?

A   I do not recall Rachel ever being in one of our meetings.

Q   Do you recall if she was working with the AOC in 2016, when you were first appointed?

A   I do not.

Q   You do not recall, or you do not know?

A   I do not recall.

Q   When you were first appointed in 2016, were any of those meetings ever open to the public?

A   I'm not sure.

Q   Do you ever -- you don't ever recall the Advisory Commission discussing whether the meeting should or should not be open to the public?

A   Correct.

Q   Do you ever recall seeing a public meeting notice for any of those meetings beginning in 2016?

A   I do not recall seeing such a notice.

Q   Was there someone on the Tennessee AOC staff that provided administrative support during these meetings for you?

A   Yes.

Lexitas TENNESSEE
(615)595-0073

Q   Who was that?

A   Michelle Consiglio.

Q   So she's currently providing administrative support.  I think that's your testimony, correct?

A   I believe she's currently on maternity leave. But when she's not on maternity leave, yes, she is.

Q   I think you're right.  She'll be back in November, is my understanding.

It's also your testimony when you joined the Advisory Commission in 2016, Ms. Young was there participating in your meetings?

A   I believe so.  I believe she was participating then in the same respect that she participates now.

Q   And that would be providing administrative support?

A   Yes.

Q   From 2016 through 2022, during your time serving on the commission, were any of those meetings ever open to the public?

A   I'm not sure.

Q   How would you know if they were open to the public?

A   I mean, if someone had told me, I presume that I would know.

Q   If there were a public meeting notice still

Lexitas TENNESSEE
(615)595-0073

posted on the Tennessee AOC website that says there's a meeting that's open to the public, would you think that that meeting probably was open to the public?

A    I'm not sure.

Q    Let me rephrase it.

Were there any members of the public that physically came in to any of the offices that you observed during these meetings?

A    I do not recall that happening.

Q    Do you ever recall seeing some type of video setup that allowed the meetings to be broadcast to the public from 2016 to 2022?

A    I do not recall that.

Q    We'll go through some more names later.  I want to go kind of back -- more names of the current commission members.

Okay?

A    Sure.

Q    Are there different subcommittees of the Tennessee Advisory Commission?

A    No.

Q    Can you give me a summary of what the commission does in terms of the various court rules that it reviews potential rules?

A    Sure.  In summary, there will be proposals made

by members of the commission or by other attorneys or judges across Tennessee, or by others, to modify an existing rule of evidence, appellate procedure, civil procedure, criminal procedure, or juvenile procedure.

And then we will, at a Advisory Commission meeting, typically assign the proposal to one of our standing committees.  And then the committee will discuss the proposal amongst itself and then report at the next Advisory Commission meeting as to what their recommendation would be with regard to the proposal.

We will then, at some point, vote on whether to adopt a rule change, and if so, that is prepared by the AOC and presented to the Supreme Court.

Q   Is there a committee to make recommendations for the Criminal Rules of Tennessee Procedure?

A   We have a committee on the Rules of Criminal Procedure.  I'm not sure that I would characterize that what that committee does is recommendations.  They will investigate a proposed rule change and then report at a Advisory Commission meeting.  And then one or more members of that committee may make a motion to adopt a rule change, at which point it's debated by the entire commission.

Q   Does the Tennessee Advisory Commission make rule recommendations on the Criminal Rules of Procedure?

Lexitas TENNESSEE
(615)595-0073

MS. CARTER: I'm sorry. Can you just repeat that last question?

MR. DOUGHERTY: Sure.

BY MR. DOUGHERTY:

Q Does the Tennessee Advisory Commission on the Rules of Practice and Procedure make recommendations to the Tennessee Supreme Court regarding the Criminal Rules of Procedure?

A Yes.

Q Does the Tennessee Advisory Commission make rule recommendation to the Supreme Court regarding the Civil Rules of Procedure?

A We do.

Q Does the Tennessee Advisory Commission make rule recommendations to the Supreme Court regarding the Appellate Rules of Procedure?

A Yes.

Q Does the Tennessee Advisory Commission make rule recommendations to the Supreme Court regarding the Rules of Evidence?

A Yes.

Q Does the Tennessee Advisory Commission make rule recommendations to the Supreme Court regarding the Juvenile Rules of Procedure?

A We do.

*Lexitas TENNESSEE*
*(615)595-0073*

Q How do you communicate -- how does the Advisory Commission communicate these rule recommendations to the Tennessee Supreme Court?

A Through the AOC.

Q So once a rule recommendation is made, the Advisory Commission will communicate those recommendations directly to the AOC?

A I wouldn't characterize it that way.

Q Well, you just said that. I just want to understand it.

Can you explain how that process works?

A Well, if there is a firm vote by a majority of the members of the Advisory Commission on a proposed rule change, somehow, administratively, that is prepared by the AOC. And then from that point, it's communicated to the full Supreme Court.

Q Does Michelle Consiglio-Young, once a vote has been taken on a rule change, does she then go back to the AOC, or do you, as chair, communicate with the AOC as far as the rule change?

A To the Supreme Court?

Q To the AOC.

A Well, Michelle's present at the meetings, so she knows what happened.

Q Yeah. I'm just trying to understand the

*Lexitas* **TENNESSEE**
*(615)595-0073*

process.

Let's say the commission makes a vote --

A   Yeah.

Q   -- for a rule recommendation.  Do you then, as chair, get on your email and send an email to someone at the AOC office?

A   No.

Q   Does -- is it your understanding that Ms. Michelle Consiglio-Young, since she's present, does she then go back to the AOC and communicate that to the director, for example?

A   I don't know.

Q   But it's your understanding that the AOC is the next point of contact who receives the rule recommendations from the Advisory Commission?

A   I think that's fair.  I would also add that we do have a reporter that's appointed by the Supreme Court for the Advisory Commission, and so there likely is some involvement between Michelle at the AOC and our reporter on actually packaging the rule and communicating it to the full Supreme Court.

Q   Who is the current reporter for the Tennessee Advisory Commission?

A   Lynn Zehrt.

Q   How do you spell her last name?

Lexitas TENNESSEE
(615)595-0073

A   I believe it's Z-E-R-T.

Q   Would her name be listed, Ms. Zehrt's name, would it be listed on the website that sets out the names for the Advisory Commission members?

A   I don't know.

Q   I see it.  Lynn Zehrt, would it be Z-E-H-R-T?

A   Yes.  I left out the H.

Q   And the same Lynn Zehrt that is a professor at Belmont University College of Law?

A   She is.

Q   Was she, Ms. Zehrt, the reporter when you first joined in 2016?

A   No.

Q   Do you recall who the reporter was then?

A   I do not.

Q   So by "reporter," does that mean an individual who is taking notes?  Is that what Ms. Zehrt does?

A   I don't know whether she takes notes.  The function of the reporter is to prepare agenda for the meetings, to take minutes of the meetings, to take the role at meetings.

Q   Is it your understanding that Ms. Zehrt would take the minutes, the meeting minutes?

A   Yes.  She does currently.

Q   She also is the one who handles putting the

Case 3:22-cv-00439    Document 62-1  Filed 11/17/23  Page 36 of 96 PageID #: 1549

agenda together?

A Correct.

Q Who determines the agenda for each meeting?

A Working together, the reporter and the chair.

Q So you work with Ms. Zehrt to come up with an agenda for the next meeting?

A Exactly.

Q In 2016, when you first joined, how frequently were meetings held of the Advisory Commission?

A Quarterly.

Q Has that always been the case, quarterly meetings?

A It's been the case ever since I've been on the commission.

Q Who determines when those quarterly meetings are going to be held?

A The chair.

Q Since you became the chair of the Advisory Commission, you would make that determination, the date and time when meetings are to be held; is that correct?

A Yes.

Q What is your role as chair?

A To conduct meetings of the Advisory Commission.

Q Do you, as chair, have any other communication in between quarterly meetings with the other members on

the commission?

MS. CARTER: Object to form.

THE WITNESS: From time to time, I would say so.

BY MR. DOUGHERTY:

Q During these communications in between quarterly meetings, do you discuss business, Advisory Commission business with other members?

A If I understood your question correctly, yes.

Q Do you have these discussions with other members in between quarterly meetings by email?

A On some occasions.

Q Do you still keep -- do you have those emails?

A I'm not sure.

Q When did you first become aware of this lawsuit that you're currently giving a deposition in?

A Probably at some point within the last six months or so.

Q You only became aware of this lawsuit within the last six months?

A I believe that's what I said, yes.

Q Has anyone from the AOC office reached out to you with a litigation hold letter?

A I have not receive a litigation hold letter from anyone.

Lexitas TENNESSEE
(615)595-0073

Q   When you became aware of this litigation six months ago, did you discuss with the other members on the Advisory Commission if they should hold on to emails?

A   I did not.

Q   How did you prepare for this deposition?

A   Met with counsel.

Q   That would be Ms. Carter?

A   Correct.

Q   Have you ever served on any other boards or commissions in Tennessee, other than the Advisory Commission?

A   Yes.

Q   What are those other boards and commissions?

A   I was on the board of the directors for Pope John Paul II High School, on the board of the St. Thomas More Society of Middle Tennessee.

There are probably others that I've been on as well.

Q   Have you ever served on any other boards or commissions where the AOC office provides administrative support, other than the Advisory Commission?

A   Not that I recall.

Q   Are you aware of similar meetings held by the federal courts and the federal advisory committees?

*Lexitas* TENNESSEE
*(615)595-0073*

A   No.

Q   You're not aware of any of those meetings and what they do with regard to making federal rules?

A   Correct.

Q   You've never seen any or observed any of those federal advisory committee rule-making meetings?

A   Correct.

Q   When was the first time you ever became aware of those federal advisory committee meetings?

A   Likely sometime during law school.

Q   Is it your testimony you've never had that discussion with your current Tennessee Advisory Commission meetings regarding what the federal advisory committee meetings do?

A   I believe that's true.

Q   In 2022, you were the chair of the Tennessee Advisory Commission; is that right?

A   Yes.

Q   Were there quarterly meetings held during that year, 2022?

A   Yes.

Q   Was there a quarterly meeting in March of 2022 that was held?

A   Well, we have to check the record, but I believe so.

Lexitas TENNESSEE
(615)595-0073

Q   Was that meeting open to the public?

A   I don't know.

Q   You wouldn't know if the public was able to watch it?

A   Well, first, I've told you that I'm not able to testify for certain that there was a meeting in March of 2022.  Even if there were such a meeting, I do not know whether the AOC or anyone else made any provision for public participation in that meeting.

Q   Was that March 2022 meeting held remotely among the members of the Advisory Commission?

A   If there was such a meeting, it was held remotely, yes.

Q   Where were you when you participated in that meeting?

A   Well, I do not recall that there was a meeting in March of 2022, even if there were, I could not, sitting here, tell you where I was.

Q   Of the four quarterly meetings in March of 2022, were any of those open to the public?

A   I don't know.

Q   Did you see any of the public participating in those meetings?

A   No.

Q   Was the June 2023 Advisory Commission meeting

Lexitas TENNESSEE
(615)595-0073

open to the public?

A  Depends on what you mean by "open to the public."

Q  Was the June 9, 2023, Advisory Commission meeting livestreamed to the public?

A  My understanding is that it was.

Q  Why is that, your understanding?  How do you know?

A  Based on discussions with Michelle.

Q  Is that Michelle Consiglio-Young?

A  Yes.

Q  What did she tell you about that June 9, 2023, meeting?

A  Well, at some point, Michelle advised me, perhaps the other members of the commission, that Judge Richardson had issued some type of an injunction that provided for livestreaming of our Advisory Commission meetings.  And she wanted to make sure that the members of the commission were aware that the meetings were going to be livestreamed.

Q  Did Michelle Consiglio-Young tell you during any of the quarterly meetings of 2022 that those were going to be livestreamed?

A  I don't recall.

Q  Did you have a discussion with the members on

Lexitas TENNESSEE
(615)595-0073

the Advisory Commission about the June 9, 2023, meeting being livestreamed to the public?

A No.

Q When is the -- did the Advisory Commission have a meeting in September of 2023?

A We did not.

Q Do you know why?

A I believe so.

Q And why is that?

A My understanding is that the AOC had intended to issue some type of a public notice regarding the meeting. But I think, in part, because Michelle was on maternity leave, the notice was not sent out when perhaps it otherwise would have been sent out.

And we made the decision, in light of the absence of that public notice, just to move the agenda items from the September 2023 meeting to the December 2023 meeting.

Q Was that meeting supposed to be held on September 8th, 2023?

A I believe that is correct.

Q At the end of the June 9th, 2023, livestream meeting, you said to the public that it was going to be held on September 8th, 2023, correct?

A I don't know.

*Lexitas* TENNESSEE
(615)595-0073

Q   Have you ever watched that livestreamed video?

A   I have not.

Q   Are you aware that the Tennessee courts have YouTube pages that you can watch the videos?

A   I'm aware that one can watch oral arguments from the Supreme Court and the Court of Appeals on a YouTube channel.

Q   Were you aware that people can also watch the June 9, 2023, meeting that was livestreamed to the public?

A   I'm aware of that, yes.

Q   Have you ever watched that video?

A   I have not.

Q   By having that June 9, 2023, meeting livestreamed to the public, did it cause you, as chair -- or did it burden you in terms of how you conducted the meeting?

A   You've got two questions in there, counsel.

Q   I apologize.  I will strike that.

Having the June 9, 2023, meeting livestreamed, did that burden the meeting, from your perspective as chair?

A   I can't say that I know exactly what you mean by "burden the meeting."

Q   Did it cause you more stress, more problems in

Lexitas TENNESSEE
(615)595-0073

terms of the way the meeting was conducted?

A   Having the meeting livestreamed in June 2023 did not cause me any stress.  It did not cause me any problems.

Q   So is it your testimony that the meeting that was livestreamed in June 2023 was very similar to other meetings that you've overseen?

A   I have not testified to that, no.

Q   Well, is there any difference between the June 9, 2023, meeting that was livestreamed to any other meetings that you've chaired?

A   I'm sure there are, yes.

Q   Well, can you tell me what those differences are?

A   Sure.  I mean, at some meetings, we simply discuss proposed rule changes.  At other meetings, we actually vote on adopting amendments or recommending the adoption of amendments to the Supreme Court.

Q   Did the June 9, 2023, meeting, the fact that it was livestreamed, did that interfere with the meeting itself?

A   It did not.

Q   Have you ever discussed with other members whether meetings should be open or closed to the public?

A   Could you repeat that?

*Lexitas* **TENNESSEE**
**(615)595-0073**

Q Yeah. Have you ever discussed with other members on the Advisory Commission whether meetings should be open or closed to the public?

A No.

Q You've never had that discussion?

A Correct.

Q Have the members themselves ever had that discussion amongst themselves?

MS. CARTER: Object to the form.

THE WITNESS: I don't mow.

BY MR. DOUGHERTY:

Q Have you ever observed anybody talking about whether meetings should be open or closed the public?

A Are you excluding discussions with counsel?

Q I'm certainly -- not your discussions with counsel.

I'm saying: Have you ever observed, at any point during your chairmanship, other individuals on the commission discussing whether that meeting should be opened or closed?

A I have not, no.

Q You mentioned a preliminary injunction that Judge Richardson issued. When was the first time you became aware of the preliminary injunction?

A I'm not sure.

Lexitas TENNESSEE
(615)595-0073

Q   Do you recall when Ms. Consiglio-Young told you about the preliminary injunction prior to the June 9, 2023, meeting?

A   I think, as I testified earlier, it's been at least six months that I've known about it.  It could be longer.

Q   Okay.  So when Ms. Michelle Consiglio-Young first told you about the preliminary injunction, was that the first time you heard about the lawsuit?

A   I believe so.

Q   As part of your legal practice, do you do any first amendment work?

A   I do not believe I've ever handled a first amendment case.

Q   I probably should have clarified.  Free speech, first amendment work?

You've never handled free speech, first amendment work?

A   I do not believe I've ever had a case involving the first amendment or the right to free speech.

Q   What is the nature of your law practice, Mr. Bulso?

A   Commercial litigation.

Q   I know that's kind of a broad area.  Can you expand on that a little bit?  What are the types of

*Lexitas* TENNESSEE
(615)595-0073

cases you typically get involved in?

A   We get involved in business disputes.  I've handled cases involving commercial/residential real estate, federal estate securities, franchise litigation, transportation litigation, warranty fraud, Consumer Protection Act, breach of contract, other types of commercial disputes.

Q   Now, on the website that I viewed this morning that list the members of the Advisory Commission, it list a vice chair.  Her name is Catherine Clayton.

Do you know Ms. Clayton?

A   Yes.

Q   How long has she been the vice chair?

A   I believe Cathy has been vice chair for as long as I have been chair.

Q   Was she also on the committee when you first joined in 2016?

A   If by "committee" you mean commission, no.

Q   Correct.  So Ms. Clayton came on the Advisory Commission after you had been appointed in 2016?

A   I believe so, yes.

Q   Did you make Ms. Clayton vice chair, or does the Supreme Court make that appointment?

A   The Supreme Court makes that appointment.

Q   So not only -- it's my understanding -- I just

Lexitas TENNESSEE
(615)595-0073

want to understand this.

The Supreme Court appoints the members to the Advisory Commission, correct?

A   It does.

Q   And the Supreme Court appoints the specific roles, like chair and vice chair; is that correct?

A   Precisely.

Q   Okay.  Does the Tennessee Supreme Court also make the appointment on the judicial liaisons?

A   It does.

Q   Does the Tennessee Supreme Court make an appointment on the Supreme Court liaison?

A   I believe it does.

Q   Do you know why there's a distinction between judicial liaisons and Supreme Court liaison?

A   Well, it may be that "judicial liaison" refers to judges who are not on the Supreme Court.  And the Supreme Court liaison refers to a liaison who is.

Q   Makes sense.  I just was curious.  When you look at the website, it makes a clear distinction.  Have you ever looked at the website that lists your Advisory Commission before, on the AOC website?

A   I have a vague recollection of having seen it several years ago.

Q   Currently, it lists, under the judicial

Lexitas TENNESSEE
(615)595-0073

liaison, the first person is Chancellor William Cole.

A  Sure.

Q  And was Chancellor Cole on the Advisory Commission in 2016?

A  I don't recall.

Q  You don't know if he was there when you first joined or if he came later?

A  I do not.

Q  The -- and it lists him as a chancellor.  He's a chancellor in chancery court, as you understand it?

A  He is.

Q  James Hivner.  Who is Mr. Hivner?

A  He's the clerk.

Q  Would that be the clerk of the Tennessee appellate courts?

A  Exactly.

Q  Is Mr. Hivner a judge?

A  I do not believe so.

Q  Is Mr. Hivner an attorney?

A  I'm sure he is.

Q  Okay.  The next person under judicial liaison category on the website is Judge Carma Dennis McGee.  Do you know Judge McGee?

A  I do.

Q  What court is Judge McGee -- what court does

Lexitas TENNESSEE
(615)595-0073

she oversee?

A   Court of Criminal Appeals.

Q   Do you know what county?

A   I'm not sure the Court of Criminal Appeals is restricted to a county.

Q   Okay.  So she's on the Court of Criminal Appeals?

A   Yes.

Q   Do you know if she's in the west, east, or middle grand division?

A   That, I'm not sure of.

Q   Are appointments made by the Tennessee Supreme Court Advisory Commission made based on the grand divisions, east, west and middle?

A   I believe that is certainly a factor that the Supreme Court takes into account.

Q   Do you know if that's a required factor in the statute?

A   Yes.

Q   It's your understanding that is a required factor in the statute?

A   No, it's not.

Q   It's not?

A   No.

Q   So you think the Supreme Court just makes that

Lexitas TENNESSEE
(615)595-0073

their own decision to do that, have the representatives from each grand division?

A    I might express that a bit differently.  I would say that the statute that you referred to earlier, 16-3-601, vests the Supreme Court with the authority to appoint members to the Advisory Commission, and the Supreme Court has the discretion about whom to appoint.

So it could, according to the statute, appoint all the members from one grand division.  But in practice, I believe it has appointed members from all three grand divisions.

Q    Currently, the current members that serve on the Advisory Commission of which you chair, is there a equal breakdown of members between east, west and middle grand divisions?

A    I have not looked at it statistically, but my sense would be that each grand division is well represented on the commission.

Q    The next individual under judicial liaisons is Judge Camille McMullen of Memphis, Tennessee.  Do you know Judge McMullen?

A    Yeah.

Q    In what court does Judge McMullen serve?

A    Also the Court of Criminal Appeals.

Q    Where?

Lexitas TENNESSEE
(615)595-0073

A   Court of Criminal Appeals.

Q   Also the Court of Criminal Appeals?

A   (No audible response from witness.)

Q   But Chancellor Cole would be in the lower trial chancery court; is that right?

A   Correct.  He's out in Hardeman County, McNairy County, that area.

Q   The last judicial liaison listed is Judge Jennifer Smith of Nashville.  Do you know Judge Smith?

A   Yes.

Q   What court does she oversee?

A   She's in a trial-level court.

Q   Do you know if that's circuit court or general sessions or chancery court?

A   I am not certain.

Q   But you think it's a trial-level court?

A   I do.

Q   And then there's one Supreme Court liaison, justice, Dwight Tarwater; is that right?

A   That's correct.

Q   I believe he started his tenure as Supreme Court justice on September 1, 2023; is that right?

A   Yes.

Q   So has he participated yet in any Advisory Commission meetings?

Lexitas TENNESSEE
(615)595-0073

A No.

Q That would be because the September meeting, you all did not have it, right?

A That is correct.

Q When is the December meeting? When is it scheduled for?

A It is scheduled for the second Friday of December.

Q Do you have a date on that?

A As I'm sitting here, I do not recall the date, no.

Q Its looks like that might be December the 8th, on my calendar. But you said the second Friday; is that your testimony?

A Yes.

Q Are Advisory Commission meetings typically held on the second Friday of each month?

A For the last -- well, no.

For the last few years, we have held the meetings at 9:00 a.m. on the second Friday of March, June, September, and December.

Q Since when have you done that?

A At least for the last several years.

Q Since you've been there, since 2016?

A No. I wouldn't say that.

Case 3:22-cv-00439   Document 62-1   Filed TENNESSEE  Page 54 of 96 PageID #: 1527
Lexitas
(615)595-0073

Q   Well, can you recall when you started this March, June, September, December?  Can you recall what year that was when that began?

A   That's been the case ever since I've been on the commission.

Q   You've been on the commission since 2016.

A   Correct.

Q   So has this March, June, September, December staggering of quarterly meetings happened since 2016?

A   Yes.

Q   Since you're not having a meeting in September in 2023, is the Advisory Commission communicating as to what you might otherwise be doing in your meeting?  Are you communicating online with each other, emailing with each other?

        MS. CARTER:  Object the form.

        THE WITNESS:  Yeah.  I'll have to ask you to rephrase the question, please.

BY MR. DOUGHERTY:

Q   Since you're not going to have quarterly meetings in 2023 because there's no September meeting, is Advisory Commission business being conducted in another form or fashion?

A   Well, I disagree with the predicate of your question, but the answer is no.

*Lexitas TENNESSEE*
*(615)595-0073*

Q You disagree that there was no meeting in September of 2023?

A I do not disagree with that.

Q Well, what do you disagree with, the predicate of the question?

A The predicate of your question was, "Since quarterly meetings are not being held in 2023." It's inaccurate and I disagree with it.

Q Okay. How many meetings are going to be held in 2023?

A Three.

Q Does three meetings in 2023 satisfy the quarterly meeting standard?

A Yes.

Q It does?

A (No audible response from witness.)

Q And how is that?

A Because of the nature of what a quarterly meeting is. A quarterly is a meeting that's held every three months, and our meetings in 2003 (sic) have been held every three months.

Therefore, they are quarterly meetings.

Q You said "2003." We're referring to 2023.

A Exactly.

Q Okay. When did you -- when were the meetings

Lexitas TENNESSEE
(615)595-0073

in 2023?

A We had one in March. We had on in June. We'll have one in December.

Q From June meeting until the December meeting, how many months is that?

A Six.

Q So then, you would agree that there haven't been meetings in 2023 every three months?

A I will agree that there was no September quarterly meeting.

Q But it's your testimony there will only be three meetings in September -- excuse me -- three meeting in 2023?

A That is correct.

Q The next would be in the second Friday in December?

A Yes.

Q At 9:00 a.m.?

A Exactly.

Q That will be livestreamed to the public, right?

A I don't know.

Q You're waiting for Ms. Michelle Consiglio-Young to tell you?

A I am not waiting on anything, counsel.

Q Did you receive a copy of the preliminary

*Lexitas* **MIDDLE TENNESSEE**
(615)595-0073

injunction?

A   Well, let me answer it this way.

At some point, I went on PACER and got the preliminary injunction.

Q   Did anyone from the Tennessee Administrative Office of Courts provide you with a copy of the preliminary injunction?

A   I do not recall.

Q   You don't recall if Ms. Consiglio-Young provided you with a copy of the preliminary injunction?

A   Correct.  I do not believe that anyone at the AOC provided me a copy of the preliminary injunction. It's possible, but I just do not recall it.

MS. CARTER:  Counsel, when you have a minute, if we can take five minutes for a comfort break, that would be great.

MR. DOUGHERTY:  Yeah.  We can go ahead and do that.  There's no question on the table.  That's fine.

It's 10:05.  When do you want to come back?

MS. CARTER:  I'm just going to run down to the ladies' room.

MR. DOUGHERTY:  We can do 10 minutes or 15.  It doesn't matter to me.

MS. CARTER:  That's fine.

MR. DOUGHERTY:  We will be back at 10:15.

Lexitas TENNESSEE
(615)595-0073

We'll take a break now, Mr. Bulso.

(Whereupon, a recess was taken from 10:06 a.m. to 10:12 a.m.)

MR. DOUGHERTY:  We're back on the record, Mr. Bulso.

BY MR. DOUGHERTY:

Q   What is the process, from your understanding, once the Advisory Commission transmits the rule recommendations to the AOC office?

What happens after that?

A   Well, I would not characterize it as what happens as a transmission from the Advisory Commission to the AOC.  That is a bit of a seamless process because the AOC is in the meetings when the rule recommendations are adopted.

And once we vote on and approve a proposed change to the rules, I do not know by what process the AOC notifies the Supreme Court of that.

Q   Understood.

Is it your understanding -- and I'm trying to get to if the General Assembly is involved at any point after the Advisory Commission's rule recommendations.

A   Sure.

Q   So is the General Assembly involved at any point after the Advisory Commission makes -- votes and

*Lexitas* **TENNESSEE**
*(615)595-0073*

makes its rule recommendations?

A   Yes.

Q   Can you tell me what your understanding of that process is, that the General Assembly then gets involved at some point?

A   Sure.  At some point, the Supreme Court will propose changes to the rules of civil or criminal procedure, and those proposals are sent to the General Assembly by way of resolutions.  And in order for any rule change to go into affect, the rule change has to be approved by resolution in the House and in the Senate.

Q   And then is that when the rule becomes final, at some point?

A   I think the rule becomes effective once those resolutions have been adopted.

Q   By the General Assembly?

A   Yes.

Q   Is that typically in July, maybe July 1st of each year?

A   I believe the effective date on those resolutions typically is July 1 of each year.

Q   Is the public ever notified at any point?  Is there some type of public and notice comment period after the commission makes its recommendations?

A   Yes.

Lexitas TENNESSEE
(615)595-0073

Q   What is your understanding of that process?

A   That at some point, when the Supreme Court decides that it is contemplating a rule change, that it will put the proposed change out for public comment.

Q   Are you, as chair, or is the Advisory Commission involved in that process with the Supreme Court?

A   No.

Q   Does that happen immediately and contemporaneously, when the Advisory Commission votes on its recommendations?

A   No.

Q   That happens after?

A   Yes.

Q   Do you know how long after?

A   I do not.

Q   Does the public notice and comment period, is that predate when the Supreme Court sends the proposed rule to the general assembly?

A   Yes.

Q   Are you, as chair, or any members of the Advisory Commission involved in that process with the General Assembly or the public notice and comment period?

A   Yes.

Lexitas TENNESSEE
(615)595-0073

Q How?

A In my role as chairman of the Advisory Commission, I have, in the past, appeared at meetings of the Civil Justice Subcommittee to the extent testimony would be necessary before the House on the proposed rule changes.

Q How many times have you appeared at hearings to provide testimony on proposed rule changes?

A At least twice.

Q Do you recall when that was?

A Sometime between 2020 or -- strike that.

Sometime likely between 2018 and today.

Q How were you notified that your testimony at these hearings were necessary?

A Well, let me amend that question slightly, 'cause there have been times when I've gone and I haven't actually testified.

What occurs is that Michelle tells me that, on a particular day, a rules package will be presented to the subcommittee or the full committee of the Civil Justice Committee and the House, and then I will be present in the event that testimony is necessary.

But in every instance previously, before this year, I've been notified by Michelle that the package is going to be submitted, and myself, either as vice chair

Lexitas TENNESSEE
(615)595-0073

or chair, would be there in case testimony were necessary.

Q   When you say "Michelle," you're referring to Michelle Consiglio-Young of the AOC?

A   Correct.

Q   You said you were -- how long did you serve as vice chair?

A   For at least a year, possibly two years.

Q   Does the Advisory Commission, are they required to do any kind extra training above and beyond your normal CLE-required hours?

A   No.

Q   Are there ever any kind of meetings about what the federal equivalent advisory committees is doing or not doing?

A   I have never been a party to any such meeting.

Q   The rule recommendations that the Tennessee Advisory Commission evaluates, is there ever any consideration with what the federal rules -- what they're doing in the federal rules?

A   Sure.

Q   Can you elaborate on that, please?

A   (No audible response from witness.)

Q   And let just ask a couple questions as a lead-in.

Lexitas TENNESSEE
(615)595-0073

It's my understanding that the Tennessee rules can make its own rules for court procedure; is that correct?

A    (No audible response from witness.)

Q    Assuming the process is -- goes through the process.

A    Let me answer it this way.

Q    Sure.

A    I mean, in Title 16, the General Assembly has vested the Tennessee Supreme Court with the authority to promulgate rules for all the civil and criminal courts. That's what happens in Tennessee.

Q    I understand that Tennessee does not have to follow what the federal rules, what they do.  You would agree with that?

A    A hundred percent.

Q    Is it fair to say that, historically, the Tennessee rules somewhat mirror the federal rules?

A    In some respects.

Q    So would that typically be who -- your commission would look to see what the federal rules are doing?  That would be kind of your guide post, so to speak; would you agree with that?

A    Not as you've stated it.  I would say that we look at federal rules of civil procedure.  We look at

Lexitas TENNESSEE
(615)595-0073

other states' rules of civil procedure, and try to look at what would be the best practice for the state of Tennessee.

Q   What would you say the percentage of Tennessee rules are that follow the federal rules?  Would it be, like, 90 percent of the Tennessee rules are about the same as the federal equivalent rules?  Would that be a fair number?

A   I doubt it.  I think it would be lower than that.

Q   You think it would be lower than that?  What do you think it would be?

A   Well, we have to go rule by rule.  If you look at Rule 4 on service of process, they are similar, but they're not identical.  If you look at Rule 6 on timing, they are similar, but they're not identical.  If you look at Rule 8 on pleadings, they are similar, but they're not identical.  If you look at the process under Rule 12, they're similar, but they're not identical.

If you get to Rule 26 and you're dealing with discovery of fact witnesses and expert witnesses, they're similar, but not identical.  If you look at Rule 38 on the practice of jury selection, once again, they're similar, but they're not identical.

So I would have a very difficult time believing

that 90 percent of our state rules are the same as what we've got in the federal rules.

Q When the Advisory Commission is coming up with its rule recommendations, does it look to the federal rules to say, "What are the feds doing? Do we want to do that or not want to do that?"

Is that part of your process?

A We certainly have had members that propose changes based on what's going on in federal courts.

Q Do you know why that is?

A Sure. Because sometimes the federal rules have a process or procedure that would benefit litigation in Tennessee.

Q Now, as part of the rules that are published, once they're a adopted by the General Assembly, there's usually -- as I understand it, in the rules, there's, like, a comment section that says, "Advisory Commission."

Do you know what I'm referring to?

A I do.

Q Is that the Advisory Commission on the Rules of Practice and Procedure that you chair?

A It is.

Q Who publishes that? Is that something that you get involved in? Does the AOC get involved in it? How

does that get transmitted to some type of published rule when you have the Advisory Commission comments?

A   It's something that we vote on in the Advisory Commission.  If we adopt a new rule or amend an existing rule, often there is a comment that explains why that change was made.

And so what we send through the AOC to the Supreme Court will be not just a proposed rule change, but a proposed Advisory Commission comment.  And ultimately, that will follow all the way through the process and be part of the resolution, as presented to the General Assembly.

If it's adopted, it becomes part of the official rule package.

Q   So any time --

Are all proposed rule changes, do they -- do they come with an Advisory Commission comment?

A   Many times, yes.

Q   But not all the time; is that your testimony?

A   I think that's correct, yes.

Q   Do you ever look at when the AOC sends out for the public notice and comment period -- well, let me back up.

Who sends that out, the public notice and comment period, to the public?

A   I'm not sure.

Q   Is it on the AOC website, typically?

A   I don't know.

Q   You've never looked?

A   Correct.

Q   Do you know if the Tennessee Supreme Court and the AOC, if they share the same website?

A   I'm not sure how to answer that, but what I can tell you is that the Tennessee Administrative Office of the Courts maintains the website.  And part of the website reflects arguments in front of the Supreme Court, opinions issued by the Supreme Court, arguments before the Court of Appeals, opinions from the court of Appeals.

So when you say, "Do they share the same website," I'm not really sure.

Q   If I wanted to pull up the Advisory Commission on the Rules of Practice and Procedure on the AOC website, would I go to the AOC website?

A   If you wanted to do what?

Q   To look at the Advisory Commission names and members, would I go to the AOC website?

A   As far as I'm aware, the names of the commission members are posted on the AOC website.

Q   If I wanted to look up oral arguments or

Lexitas TENNESSEE
(615)595-0073

opinions from the Tennessee Supreme Court, would I go to the same AOC website or would I go to a different website?

A   The same website.

Q   Okay.  Do you ever get with Michelle Consiglio-Young at the beginning of a calendar year to map out agendas or meetings notices?  Do you do anything like that at the beginning of each calendar year?

A   Well, I've never done what you've asked, but I have met with Michelle about other things.

Q   Related to the Advisory Commission?

A   Probably.

Q   How often do you meet with Michelle Consiglio-Young regarding the Advisory Commission?

A   I'd say, over the seven years that I've been on the commission, maybe two or three times.

Q   Two or three times total?

A   Yes.

Q   Is that when she tells you about a package that the General Assembly may be considering, a rules package?

A   No.

Q   Okay.  What were those two or three times? What were they related to?

A   Well, just likely how to make the commission

operate as efficiently as possible, whether we should use the committee structure, whether we should have subcommittees, who we should perhaps assign to committees to make sure that they're evenly and appropriately staffed.

Q   Okay.  I think you said -- I want to make sure I understood this.

Did you say in your earlier testimony that you serve at the pleasure of the Tennessee Supreme Court?

A   I did say that.

Q   Is that language, is that in the statute?

A   Yes.

Q   It is?

A   It is implicitly in 16-3-601.

Q   I think, as I recall, the AOC director uses that language, "Serves at the pleasure of the chief justice of the Supreme Court"; would that be correct?

A   I don't know.

Q   But you're saying implicitly, you, as the chair -- who do you serve at the pleasure of, the Supreme Court or the Chief Justice?

A   The Supreme Court.

Q   Tell me how that is implicit.  What does that mean?  What do you do vis-à-vis your relationship with the Supreme Court members?

Lexitas TENNESSEE
(615)595-0073

A    Well, the statute states explicitly that it's the Supreme Court who appoints the members.  So at any day, the Supreme Court could decide to appoint someone else.

Q    Okay.  So do you -- let's say through a year, and you're about to have four quarterly meetings.

A    All right.

Q    Would you ever communicate with any members of the Supreme Court during the course of that year about potential Advisory Commission roles?

MS. CARTER:  Object to form.

THE WITNESS:  I've never done that about a rule.  But, I mean, certainly I've had communications with our Supreme Court liaison over times about other things.

BY MR. DOUGHERTY:

Q    How do you communicate with your Supreme Court liaison?  Do you do it while you're at the meeting or at a later time?

A    By telephone, typically.

Q    Who was the Supreme Court liaison in 2022 from the Supreme Court?

A    Justice Lee.

Q    How often did you communicate by telephone with Justice Lee during the 2022 calendar year?

Lexitas TENNESSEE
(615)595-0073

A    Likely once or twice.

Q    Once or twice?

A    (Witness nods head up and down.)

Q    Do you recall what the nature of those calls were about?

A    Yes.  Questions about reappointment as chair. Reappointment to the commission.

Q    Why would you communicate with Justice Lee about that, those issues?

A    Because it's -- the Supreme Court appoints the members of the commission.  It's the Supreme Court who appoints the chair, the vice chair, the reporter, and the other offices of the commission.

Q    Well, do you ever -- have you, in the past, ever communicated with any members of the Supreme Court about the Advisory Commission, other than the Supreme Court liaison?

A    No.

Q    So your point of communication in the past has always been with the individual who's named as the Supreme Court liaison?

A    Correct.

Q    I'm not talking about communications you might have at a bar function.  I'm only referring, when I talk about these communications, related to the Advisory

Lexitas TENNESSEE
(615)595-0073

Commission and your duties.

A  That's the way I understood your question.

Q  Okay.  Did Justice Lee have any information or comments back to you during your one or two meetings with her in 2022?

A  I don't believe I had any meetings with you.

Q  Well, I think -- my understanding, I said, "How many meeting in 2022 by telephone," and I think you said, "One or two."

Was that your testimony?

A  My testimony was intended to be that I spoke with her by phone once or twice.  They were not meetings --

Q  Okay.

A  -- in person.

Q  The one or two times in 2022 when you spoke by phone with Justice Lee, do you recall what information Justice Lee said to you or gave to you?

A  In general, yes.

Q  Okay.  What was that?

A  Had to do with reappointment as chairman of the commission, possibly reappointment to the commission itself.

Q  Were you calling Justice Lee, at that point, to see if you were going to be reappointed, or you were

Lexitas TENNESSEE
(615)595-0073

requesting reappointment?

Explain that a little bit, please.

A   I don't believe I called her.  Most likely, she called me.

Q   Okay.  When she called you during those one or two times, what did she say?

A   In words or in substance, "The Supreme Court would like you to continue to serve on the commission. The Supreme Court would like you to continue to serve as chair."

Something to that effect.

Q   Do you recall in 2022 when that happened, those one or two times?

A   I do not.

Q   I'm going to jump back to the -- what I viewed on the AOC website this morning, okay, regarding the Advisory Commission and the members that are listed.

There's another heading.  It says -- and we talked about Justice Tarwater, who was just appointed to the Supreme Court.  I think Justice Lee retired.

Is that accurate?

A   She did.

Q   There's a heading here that says, "Assigned staff attorney (criminal)," and the individual is Elizabeth Ryan, Supreme Court staff attorney.

Lexitas TENNESSEE
(615)595-0073

What is Ms. Ryan's role on the Advisory Commission?

A   Let me answer it this way.

I don't know that she's actually on the commission.  I know that Elizabeth is in our meetings, along with Jeff Zager, as counsel, and they participate in the meetings there.  They do not vote on proposed rule changes, but they provide expertise and guidance on various issues.

Q   Well, if someone's not on the commission, how do they get to go to the meetings?  I don't understand that.

Can you explain that?

MS. CARTER:  I'm going to object to the form.

Go ahead.

THE WITNESS:  My explanation is that the Tennessee Supreme Court has authority to decide who the members of the commission are and how the meetings proceed, and that, at some level, the Supreme Court has determined that having those in the position of Elizabeth Ryan and Jeff Zager would be helpful to the commission's business.

And so they have, since I can remember, been in attendance at the meetings.

BY MR. DOUGHERTY:

Lexitas TENNESSEE
(615)595-0073

Q   How long has Ms. Ryan been in attendance at the meetings?

A   For as long as I can remember.

Q   What does she do?  What is your understanding of Ms. Ryan's role at these meetings?

A   To lend expertise to the subject matter of the discussions.

Q   Is Ms. Ryan a judge, or she a practicing attorney?  Do you know?

A   I do know, and she's an attorney.  She's not a judge.

Q   Okay.  The other person, it says, "Assigned staff attorney (civil), Jeff Zager."  I think you mentioned his name.  You are saying Mr. Zager participates in all the meetings?

A   He's participated in all of the meetings that I can remember, yes.

Q   Okay.  Mr. Zager would have participated in quarterly meetings in 2022?

A   Yes.

Q   Did Ms. Ryan participate in the quarterly meetings in 2022?

A   I believe so.

Q   Did Mr. Zager participate in the meetings thus far in 2023?

A   I'm not entirely sure, but I believe so.

Q   Did Ms. Ryan participate in the meetings thus far in 2023?

A   I believe so.

Q   Just to confirm, the reporter, Ms. Zehrt, did she participate in the meetings in 2022?

A   I'm not sure.

Q   Do you know when she was appointed to the Advisory Commission?

A   It was, I believe, either in 2022 or 2023.

Q   I believe, as I understand your testimony, you said that the Supreme Court makes appointments of members to the Advisory Commission; is that accurate?

A   That's what I testified to, yes.

Q   Do they enter any type of judicial order when they make these appointments?  Are you aware?

A   Yes, I am aware.  Yes, they do.

Q   Do they make judicial orders when they appoint judicial liaisons to the Advisory Commission?

A   I believe so.

Q   Do they make judicial orders when they appoint and assign staff attorneys?  For example, Ms. Ryan or Mr. Zager?

A   I'm not sure.

Q   Okay.  Do they make judicial orders when they

appoint a reporter, like Ms. Zehrt, for example?

A    I believe so.

Q    Okay.  Do they make judicial orders when they appoint someone like an AOC contact, like Ms. Michelle Consiglio-Young?

A    I'm not sure.

Q    As far as you recall, Ms. Michelle Consiglio-Young has served at least until you have been on the commission, since 2016?

A    That's my memory.

Q    Okay.  Are all of the other people that are listed on the AOC website for the Advisory Commission, other than judicial liaisons, are all those individuals in private practice?  Are they private attorneys?

MS. CARTER:  Object to the form.

THE WITNESS:  For the most part.

BY MR. DOUGHERTY:

Q    The only one I don't see, from what I'm seeing, it says "ESQ" after pretty much everything.  What is your understanding of ESQ?

A    It's an abbreviation for the word "esquire."

Q    What does that mean?  Does that mean an attorney?

A    It's a suffix that oftentimes you'll see appended to the name of an attorney.

Lexitas TENNESSEE
(615)595-0073

Q   There's a Representative William Lamberth of Nashville, Tennessee that does not have the "ESQ" next to his name.  Who is Representative Lamberth?

A   He's a member of the Advisory Commission, and also a member of the Tennessee House of Representatives.

Q   Is Representative Lamberth an attorney?  Do you know?

A   I do know.  Yes, he is an attorney.

Q   He is an attorney?

A   (Witness nods head up and down.)

Q   Is he -- do you know what -- is he with a particular firm that you're aware of?

A   He has his own firm in Sumner County.

Q   Andree Blumstein is listed here.  As I recall, Ms. Blumstein is the current solicitor general; is that right?

A   That is correct.

MR. DOUGHERTY:  I think someone else, Mr. Stahl, may have some questions.

I'll pass the witness, Mike.

EXAMINATION

BY MR. STAHL:

Q   Representative Bulso, have you ever personally denied a member of the public the option of attending an Advisory Commission meeting?

Lexitas TENNESSEE
(615)595-0073

A   I have not.

Q   Do commission members ever disagree about proposed rule changes?

A   Yes.

Q   Does the commission ever assign subcommittees to examine proposed rule changes?

A   We have committees.  We have no subcommittees.

Q   You mentioned earlier that you'll testify before the House or the General Assembly about proposed rule changes that may have gone up through the AOC to the Tennessee Supreme Court; is that right?

A   Yes.

Q   When you are at those proceedings, whether you testify or not, do you know if those proceedings are open to the public?

A   I do.

Q   Are they?

A   They are.

Q   Have you ever been involved in a commission meeting where you noticed that members of the public were present?

A   I do not recall such a meeting.

Q   As chair of the Advisory Commission, do you believe that honest and frank discussions among the members is in the committee's best interest?

A Yes.

Q Have you ever had a rule change that you submitted through the AOC to the Tennessee Supreme Court that the General Assembly denied?

A By the Supreme Court?

Q Uh-huh.

A Yes.

Q Have you ever noticed that a submitted proposed rule change and the advisory comments that you said you most often submit with those have been amended or changed in any way before being accepted?

A That has happened as well.

MR. STAHL: That's all I have.

EXAMINATION

BY MR. DOUGHERTY:

Q When did these changes -- what years did that occur, where the Supreme Court either denied -- well, when did the Supreme Court deny a proposed rule change that the Advisory Commission made?

A My recollection is that that occurred with regard to a proposed change regarding mandatory disclosure under Rule 26.

Q Do you recall what year that might have been?

A No. I could not recall the year that occurred.

Q Would there be a record somewhere on the AOC

website or the Supreme Court orders?  Do you know?

A   I know that there would be a written record that a rule was proposed to the Supreme Court, and that the Supreme Court did not adopt it.

Q   Where would that be?  Would that be in your typically Lexis/Westlaw search, or where would that be?

A   Well, it would be in a number of places.  It would be a written record of what the commission approved.  There'd be some writing of the communication of that action to the Supreme Court, and then there would be, perhaps, no further action by the Supreme Court on putting that proposed rule out for public comment or change.

Q   Do you recall what year it was when there was a -- the Supreme Court rewrote the recommended rule or changed it somehow?  Do you recall when that would have been?

A   I can't recall the precise year.

Q   But you're saying it would -- it's your understanding that there would be some type of record of what the Advisory Commission recommended versus what was actually enacted?

A   Absolutely.

Q   Were -- those times when the Supreme Court either made a change or denied, were you ever required

*Lexitas* **TENNESSEE**
*(615)595-0073*

to testify before the General Assembly?

A   I don't recall.

MR. DOUGHERTY:  I don't think I have anything else.

MR. STAHL:  I just have one more question.

EXAMINATION

BY MR. STAHL:

Q   Does every meeting result in a vote?

A   No.

MR. STAHL:  That's all I have.

MR. DOUGHERTY:  We're on the same schedule, an hour and 45 minutes for both of our first depos.

MS. CARTER:  You have the right to read and sign, so do you want to read and sign your deposition?

THE WITNESS:  No, I'll waive it.

THE STENOGRAPHER:  Do you want a copy of the transcript?

MR. DOUGHERTY:  Yes, I do.

We're off the record.

(At 10:47 a.m. Central Time, proceedings concluded.)

REPORTER'S CERTIFICATE

STATE OF TENNESSEE

COUNTY OF DAVIDSON

I, Saba Mc Kinley, court reporter, with offices in Clarksville, Tennessee, hereby certify that I reported the foregoing deposition of GINO BULSO by machine shorthand to the best of my skills and abilities, and thereafter the same was reduced to typewritten form by me.

I am not related to any of the parties named herein, nor related to their counsel, and have no interest, financial or otherwise, in the outcome of the proceedings.

I further certify that in order for this document to be considered a true and correct copy, it must bear my original signature, and that any unauthorized reproduction in whole or in part and/or transfer of this document is not authorized, will not be considered authentic, and will be in violation of Tennessee Code Annotated 3-914-104, Theft of Services.

_____
SABA MC KINLEY, LCR, RPR, CRI
Licensed Court Reporter
Registered Professional Reporter
Certified Reporting Instructor

LCR #843 - Expires:    6/30/2024

**1**

**1** 51:22 58:21

**10** 56:22

**10:05** 56:19

**10:06** 57:3

**10:12** 57:3

**10:15** 56:25

**10:47** 81:21

**12** 63:19

**15** 14:18 56:22

**155** 10:5 16:6

**16** 62:9

**16-3-601** 16:19 18:5 50:5 68:14

**1961** 9:24

**1983** 11:18

**1986** 11:5,25 12:9

**1st** 58:18

**2**

**2003** 54:20,23

**2008** 11:5,11

**2014** 14:18

**2016** 24:10,11,17 25:9,16 26:21 27:8,12,20 28:10, 17 29:12 34:12 35:8 46:17,20 48:4 52:24 53:6,9 76:9

**2018** 60:12

**2020** 11:11,14 19:20,21 20:9 23:12,15 60:11

**2021** 19:21 20:4,7, 9 23:17

**2022** 19:25 23:19 28:17 29:12 38:16,20,22 39:7, 10,17,20 40:22 69:21,25 71:5,8,

16 72:12 74:19,22 75:6,10

**2023** 20:12 23:21 39:25 40:4,12 41:1,5,17,18,20, 22,24 42:9,14,20 43:2,6,10,19 45:3 51:22 53:12,21 54:2,7,10,12,23 55:1,8,13 74:25 75:3,10

**25** 9:24

**26** 63:20 79:22

**28** 10:3

**3**

**37027** 16:7

**38** 63:23

**4**

**4** 63:14

**400** 10:6 16:7

**45** 81:12

**4th** 12:17

**5**

**5th** 12:16

**6**

**6** 63:15

**61** 9:24

**6th** 12:15

**8**

**8** 63:17

**8th** 41:20,24 52:12

**9**

**9** 40:4,12 41:1 42:9,14,20 43:10,

19 45:2

**90** 63:6 64:1

**9:00** 52:20 55:18

**9th** 41:22

**A**

**a.m.** 52:20 55:18 57:3 81:21

**abbreviation** 76:21

**ability** 8:5,7,14

**absence** 41:16

**Absolutely** 80:23

**accepted** 79:11

**accordance** 9:10

**account** 49:16

**accurate** 72:21 75:13

**Act** 46:6

**action** 6:20 7:7 14:14 80:10,11

**actual** 18:14

**add** 33:16

**address** 16:5

**administrative** 17:4 22:22 27:23 28:3,14 37:21 56:5 66:9

**administratively** 32:14

**admission** 12:6

**admitted** 12:10 13:7

**adopt** 30:12,21 65:4 80:4

**adopted** 57:15 58:15 64:15 65:13

**adopting** 43:17

**adoption** 43:18

**adverse** 6:18

**advise** 16:23

**advised** 15:15 40:14

**advisory** 16:17 17:18 18:14 19:1, 15,23 21:3 22:7,9, 22 23:5,8,14 24:18 25:18 27:16 28:10 29:20 30:5, 9,20,24 31:5,10, 14,18,22 32:1,6, 13 33:15,18,23 34:4 35:9,18,23 36:7 37:3,11,22, 25 38:6,9,12,13, 17 39:11,25 40:4, 17 41:1,4 44:2 46:9,19 47:3,21 48:3 49:13 50:6, 13 51:24 52:16 53:12,22 57:8,12, 22,25 59:5,10,22 60:2 61:9,14,18 64:3,17,21 65:2,3, 9,17 66:17,21 67:11,14 69:10 70:16,25 72:17 73:1 75:9,13,19 76:12 77:4,25 78:23 79:9,19 80:21

**affect** 8:7 58:10

**agenda** 34:19 35:1,3,6 41:16

**agendas** 67:7

**agree** 55:7,9 62:15,23

**agreed** 21:6

**ahead** 16:4 56:17 73:15

**Alabama** 14:23 15:6

**all's** 27:3

**allowed** 29:11

**amend** 60:15 65:4

**amended** 79:10

**amendment** 45:12,14,16,18,20

Lexitas TENNESSEE
(615)595-0073

amendments 43:17,18

Andree 77:14

annotated 16:18

answers 8:8 9:2

AOC 18:25 21:16, 20,25 22:3 25:13, 14 26:21 27:1,7, 22 29:1 30:13 32:4,7,15,19,22 33:6,10,13,19 36:22 37:21 39:8 41:10 47:22 56:12 57:9,13,14,18 61:4 64:25 65:7, 21 66:2,7,18,19, 22,24 67:2 68:15 72:16 76:4,12 78:10 79:3,25

apologize 42:19

Appeals 12:15, 16,17 42:6 49:2,4, 7 50:24 51:1,2 66:13,14

appearance 15:23

appeared 60:3,7

appellate 30:3 31:16 48:15

appended 76:25

appoint 18:18 50:6,7,8 69:3 75:18,21 76:1,4

appointed 18:4 19:18 20:6,8 21:2, 4 24:9,15 25:19 26:21 27:8,12 33:17 46:20 50:10 72:19 75:8

appointment 19:22 24:18 46:23,24 47:9,12

appointments 49:12 75:12,16

appoints 47:2,5 69:2 70:10,12

appropriately 68:5

approve 57:16

approved 58:11 80:9

approximate 11:3

Approximately 11:9

area 25:10 26:10 45:24 51:7

arguments 42:5 66:11,12,25

Arkansas 12:20

Ashley 15:10

assembly 16:22 57:21,24 58:4,9, 16 59:19,23 62:9 64:15 65:12 67:20 78:9 79:4 81:1

assign 30:6 68:3 75:22 78:5

Assigned 72:23 74:12

assist 18:5

Assuming 62:5

Atlanta 11:22

attend 11:19 22:7, 10

attendance 15:18 73:24 74:1

attending 77:24

attorney 6:24,25 7:17 8:16 10:7 26:6,8 48:19 72:24,25 74:9,10, 13 76:23,25 77:6, 8,9

attorneys 10:9,12 18:3,19 30:1 75:22 76:14

audible 8:21 9:1 51:3 54:16 61:23 62:4

authority 13:4 18:18 50:5 62:10 73:17

aware 36:15,19 37:1,24 38:2,8 40:19 42:3,5,8,11 44:24 66:23 75:16,17 77:12

---

### B

---

back 16:10 28:7 29:15 32:18 33:10 56:19,25 57:4 65:23 71:4 72:15

bar 12:1 13:4 70:24

based 40:9 49:13 64:9

began 53:3

begin 23:9,15,17, 19,21

beginning 27:20 67:6,8

behalf 17:20

believing 63:25

Belmont 34:9

benefit 64:12

Berry 11:1

birth 9:23

bit 23:1 45:25 50:3 57:13 72:2

Blumstein 77:14, 15

board 37:15,16

boards 37:10,14, 20

Boult 11:1,4

breach 46:6

break 8:17 9:13 56:15 57:1

breakdown 50:14

Brentwood 10:1, 6 16:7

broad 45:24

broadcast 29:11

brought 7:7

Bulso 6:2,8 7:15, 25 9:19,25 10:5, 16,17 11:2,8,13 13:23 14:15 16:6, 16 19:11 45:22 57:1,5 77:23

Bulso's 17:16

burden 42:16,21, 24

business 36:7,8 46:2 53:22 73:22

---

### C

---

calculate 16:8

calendar 52:13 67:6,8 69:25

California 15:4,5

called 6:3 72:3,4, 5

calling 71:24

calls 70:4

Camille 50:20

capacity 6:23 17:11,17 18:11 24:5

Carma 48:22

carry 12:2

Carter 15:10 16:1, 2 17:6,9,19 31:1 36:2 37:8 44:9 53:16 56:14,20,24 69:11 73:14 76:15 81:13

Carter's 15:11

case 6:19,21 7:4,5 13:16 14:1,8,16, 19 35:11,13 45:14,19 53:4 61:1

cases 46:1,3

category 48:22

Catherine 46:10

Cathy 46:14

Lexitas    TENNESSEE    amendments.geo.Cathy19

(615)595-0073

**Central** 81:21

**chair** 17:17,20 19:11,14,18,22,25 20:4,12,13,19,23 21:3,12,17 24:5, 11,15 25:18 26:4, 6 32:19 33:5 35:4, 17,18,22,24 38:16 42:16,22 46:10, 13,14,15,22 47:6 50:13 59:5,21 60:25 61:1,7 64:22 68:20 70:6, 12 72:10 78:23

**chaired** 43:11

**chairman** 60:2 71:21

**chairmanship** 44:18

**chancellor** 48:1, 3,9,10 51:4

**chancery** 13:24 48:10 51:5,14

**change** 30:12,19, 22 32:14,18,20 57:17 58:10 59:3, 4 65:6,8 79:2,9, 18,21 80:13,25

**changed** 79:11 80:16

**channel** 42:7

**characterize** 30:17 32:8 57:11

**charge** 22:15

**check** 15:22 16:10 38:24

**chief** 68:16,21

**circuit** 12:15,16, 17 51:13

**circulate** 22:16, 17

**civil** 9:11 14:10 18:5 30:3 31:12 58:7 60:4,20 62:11,25 63:1 74:13

**claiming** 7:1

**clarification** 17:6,24 25:24

**clarified** 7:16 45:15

**clarify** 7:24 8:13 17:10 21:1 23:13

**Clayton** 46:10,11, 19,22

**CLE-REQUIRED** 61:11

**clear** 17:13 47:20

**clerk** 48:13,14

**closed** 43:24 44:3,13,20

**club** 14:15

**Code** 16:18

**Cole** 48:1,3 51:4

**college** 11:16 34:9

**comfort** 56:15

**comment** 58:23 59:4,17,23 64:17 65:5,9,17,22,25 80:13

**comments** 65:2 71:4 79:9

**commercial** 45:23 46:7

**commercial/ residential** 46:3

**commission** 16:17,22 17:3,14, 18,20 18:2,3,10, 14,18,20,23 19:1, 15,18,23 21:3,21 22:1,7,9,17,18,23 23:5,6,9,10,14 24:2,4,10,18,25 25:19 26:2 27:16 28:10,18 29:16, 20,23 30:1,5,9,20, 23,24 31:5,10,14, 18,22 32:2,6,13 33:2,15,18,23 34:4 35:9,14,19, 23 36:1,8 37:3,12, 22 38:13,17

39:11,25 40:4,15, 17,19 41:1,4 44:2, 19 46:9,18,20 47:3,22 48:4 49:13 50:6,13,18 51:25 52:16 53:5, 6,12,22 57:8,12, 25 58:24 59:6,10, 22 60:3 61:9,18 62:21 64:3,18,21 65:2,4,9,17 66:17, 21,24 67:11,14, 16,25 69:10 70:7, 11,13,16 71:1,22 72:8,17 73:2,5,10, 18 75:9,13,19 76:9,12 77:4,25 78:2,5,19,23 79:19 80:8,21

**commission's** 57:22 73:22

**commissions** 37:11,14,21

**committee** 30:7, 14,16,18,21 38:6, 9,14 46:16,18 60:20,21 68:2

**committee's** 78:25

**committees** 18:7 30:7 37:25 61:14 68:4 78:7

**common** 9:14

**communicate** 21:7,11 32:1,2,6, 19 33:10 69:8,17, 24 70:8

**communicated** 32:15 70:15

**communicating** 33:20 53:12,14

**communication** 35:24 70:19 80:9

**communications** 36:6 69:13 70:23, 25

**conclude** 14:6,19

**concluded** 81:22

**conduct** 23:5

35:23

**conducted** 22:13 24:24 25:7 42:17 43:1 53:22

**conducting** 9:6,9

**confirm** 75:5

**connection** 22:16,20 23:7

**Conners** 11:1

**consideration** 61:19

**Consiglio** 28:2

**Consiglio-young** 22:4 32:17 33:9 40:10,21 45:1,7 55:22 56:9 61:4 67:6,14 76:5,8

**Consumer** 46:5

**contact** 22:3 33:14 76:4

**contemplating** 59:3

**contemporaneo usly** 59:10

**continue** 21:5 72:8,9

**contract** 46:6

**convicted** 13:9

**copy** 55:25 56:6, 10,12 81:16

**Cornell** 11:16,17

**correct** 7:17 9:12, 20,21 10:7 14:9, 13 15:11 17:15 19:12 21:21 24:12,13 27:18 28:4 35:2,20 37:9 38:4,7 41:21,24 44:6 46:19 47:3,6 51:6,20 52:4 53:7 55:14 56:11 61:5 62:3 65:20 66:5 68:17 70:22 77:17

**correctly** 7:22 36:9

counsel 15:7,15
  37:7 42:18 44:14,
  16 55:24 56:14
  73:6

county 13:24 15:4
  49:3,5 51:6,7
  77:13

couple 8:19 61:24

court 9:1 12:14,
  15,16 13:6,21,24
  14:21,24 15:2,4,6
  16:23,25 17:1
  18:4,17 20:14,19
  21:2,5,7,11,14
  29:23 30:13 31:7,
  11,15,19,23 32:3,
  16,21 33:17,21
  42:6 43:18 46:23,
  24 47:2,5,8,11,12,
  15,17,18 48:10,25
  49:2,4,6,13,16,25
  50:5,7,23,24 51:1,
  2,5,11,12,13,14,
  16,18,22 57:18
  58:6 59:2,7,18
  62:2,10 65:8 66:6,
  12,13 67:1 68:9,
  17,21,22,25 69:2,
  3,9,14,17,21,22
  70:10,11,15,17,21
  72:7,9,20,25
  73:17,19 75:12
  78:11 79:3,5,17,
  18 80:1,3,4,10,12,
  15,24

courts 12:10,11
  37:25 42:3 48:15
  56:6 62:11 64:9
  66:10

Courts' 17:5

created 16:18,23

crime 13:9

criminal 18:6
  30:4,15,16,25
  31:7 49:2,4,6
  50:24 51:1,2 58:7
  62:11 72:24

Cummings 11:1,
  4

curious 47:19

current 10:25
  11:13 19:22 26:25
  29:15 33:22 38:12
  50:12 77:15

___

**D**

___

D-O-R-A-N 25:25

daily 15:17

date 9:22 19:19
  35:19 52:9,10
  58:20

Davidson 13:24

day 19:17 60:19
  69:3

dealing 63:20

debated 30:22

December 9:24
  41:18 52:5,8,12,
  21 53:2,8 55:3,4,
  16

decide 20:15 69:3
  73:17

decides 59:3

decision 41:15
  50:1

defendant 6:19
  14:8

denied 77:24
  79:4,17 80:25

Dennis 48:22

deny 79:18

Depends 40:2

depos 81:12

deposed 7:8

deposition 6:10
  7:3,20,21 8:7 9:6,
  9 15:13 17:14
  36:16 37:6 81:14

depositions
  6:17,21 8:20

deputy 26:25

describe 18:2

determination

35:19

determined
  73:20

determines 35:3,
  15

difference 43:9

differences
  43:13

differently 50:3

difficult 63:25

directly 32:7

director 15:20
  21:15 26:20,25
  33:11 68:15

directors 37:15

disagree 53:24
  54:1,3,4,8 78:2

disciplined 13:3,
  6

disclosure 79:22

discovery 63:21

discretion 50:7

discuss 30:8 36:7
  37:2 43:16

discussed 43:23
  44:1

discussing 27:16
  44:19

discussion 7:12
  38:12 40:25 44:5,
  8

discussions
  36:10 40:9 44:14,
  15 74:7 78:24

dismissed 7:5,6
  14:7,20

disputes 46:2,7

distinction 47:14,
  20

District 12:18,19,
  20,21 13:25 14:22
  15:5

division 49:10
  50:2,9,17

divisions 49:14
  50:11,15

Doran 25:22 26:2

doubt 63:9

DOUGHERTY
  6:7 7:9,14 16:1,3
  17:8,15,25 18:1
  26:1 31:3,4 36:5
  44:11 53:19
  56:17,22,25 57:4,
  6 69:16 73:25
  76:17 77:18 79:15
  81:3,11,18

duly 6:4

duties 71:1

Dwight 51:19

___

**E**

___

earlier 13:14
  20:20 45:4 50:4
  68:8 78:8

east 49:9,14 50:14

Eastern 12:18,20,
  21 13:25

effect 72:11

effective 58:14,20

efficiently 68:1

elaborate 61:22

Elizabeth 72:25
  73:5,21

email 15:19 21:11,
  13,15 33:5 36:11

emailing 53:14

emails 36:13 37:4

Emory 11:21

enacted 80:22

end 41:22

enter 75:15

entire 30:22

entitled 15:17

equal 50:14

equivalent 61:14

63:7

**ESQ** 76:19,20 77:2

**esquire** 76:21

**estate** 46:4

**estimate** 24:16

**Eugene** 9:19

**evaluates** 61:18

**evenly** 68:4

**event** 60:22

**evidence** 30:3 31:20

**EXAMINATION** 6:6 77:21 79:14 81:6

**examine** 78:6

**exchanged** 21:13,15

**excluding** 44:14

**excuse** 55:12

**executive** 26:20

**existing** 30:3 65:4

**expand** 45:25

**experienced** 8:15

**expert** 63:21

**expertise** 73:8 74:6

**explain** 21:24 22:12 32:11 72:2 73:13

**explains** 65:5

**explanation** 73:16

**explicitly** 69:1

**express** 50:3

**extent** 17:11 60:4

**extra** 61:10

---
**F**
---

**facilitator** 22:11

**fact** 43:19 63:21

**factor** 49:15,17,21

**fair** 22:21 33:16 62:17 63:8

**familiar** 16:16

**fashion** 53:23

**federal** 9:11 12:14 15:5,17 37:25 38:3,6,9,13 46:4 61:14,19,20 62:14,18,21,25 63:5,7 64:2,4,9,11

**feds** 64:5

**fee** 15:17,23

**feel** 8:17

**figure** 13:1

**filed** 6:20,22 13:23,24 14:4,17 15:3

**fill** 20:15

**final** 58:12

**fine** 16:11 56:18, 24

**firm** 10:10,25 11:6,10,13 15:25 26:15 32:12 77:12,13

**firms** 10:24

**follow** 62:14 63:5 65:10

**form** 36:2 44:9 53:16,23 69:11 73:14 76:15

**formally** 13:3

**formation** 11:14

**franchise** 46:4

**Francisco** 7:8 13:13 14:12,14

**frank** 78:24

**Franklin** 10:5 16:6

**fraud** 46:5

**fraudulent** 6:19

**free** 8:17 45:15, 17,20

**frequently** 8:24 35:8

**Friday** 52:7,13,17, 20 55:15

**front** 66:11

**full** 9:17 20:2,12 32:16 33:21 60:20

**function** 34:19 70:24

---
**G**
---

**gave** 6:17 11:6 71:18

**general** 9:12 16:22 51:13 57:21,24 58:4,8, 16 59:19,23 62:9 64:15 65:12 67:20 71:19 77:15 78:9 79:4 81:1

**Gino** 6:2 9:20 19:11

**give** 8:8,21 9:1 11:3 16:5 19:7 29:22

**giving** 7:20 8:20 36:16

**Good** 6:8,9

**graduate** 11:17, 20

**graduation** 11:24

**grand** 49:10,13 50:2,9,11,15,17

**great** 16:15 56:16

**group** 15:20 18:3 25:3,9

**guidance** 73:8

**guide** 62:22

**guidelines** 9:13

---
**H**
---

**habit** 8:24

**halfway** 20:6

**handled** 45:13,17 46:3

**handles** 34:25

**happen** 14:1 59:9

**happened** 32:24 53:9 72:12 79:12

**happening** 29:9

**Hardeman** 51:6

**Harmon** 27:1

**head** 70:3 77:10

**heading** 72:18,23

**heads** 8:25

**heard** 45:9

**hearings** 60:7,14

**held** 24:19 35:9, 16,20 37:24 38:19,23 39:10,12 41:19,24 52:16,19 54:7,9,19,21

**helpful** 73:21

**High** 37:16

**historically** 62:17

**Hivner** 48:12,17, 19

**hold** 36:23,24 37:3

**Holland** 26:18

**honest** 8:8 78:24

**hosted** 22:14

**hosting** 22:15

**hour** 81:12

**hours** 61:11

**House** 58:11 60:5, 21 77:5 78:9

**hundred** 62:16

**hybrid** 25:6

**I**

**identical** 63:15, 16,18,19,22,24

**II** 37:16

**immediately** 59:9

**implicit** 68:23

**implicitly** 68:14, 19

**important** 8:21, 25

**inaccurate** 54:8

**individual** 17:11, 21 34:16 50:19 70:20 72:24

**individually** 14:16

**individuals** 44:18 76:13

**inform** 8:10

**information** 71:3, 17

**initial** 24:17

**initially** 21:4 24:9

**injunction** 40:16 44:22,24 45:2,8 56:1,4,7,10,12

**instance** 60:23

**intended** 41:10 71:11

**interest** 78:25

**interfere** 43:20

**Internet** 23:7

**interrupts** 25:23

**investigate** 30:19

**involved** 18:21 46:1,2 57:21,24 58:4 59:6,22 64:25 78:19

**involvement** 33:19

**involving** 45:19 46:3

**issue** 20:16 41:11

**issued** 40:16 44:23 66:12

**issues** 70:9 73:9

**items** 41:17

**J**

**James** 48:12

**Jeff** 73:6,21 74:13

**Jennifer** 51:9

**Jim** 25:22

**job** 12:25

**John** 37:16

**joined** 25:1 28:9 34:12 35:8 46:17 48:7

**Jr** 9:19

**judge** 26:7 40:15 44:23 48:17,22, 23,25 50:20,21,23 51:8,9 74:8,11

**judges** 18:3,20 30:2 47:17

**judgment** 14:20

**judicial** 18:15 19:4 47:9,15,16, 25 48:21 50:19 51:8 75:15,18,19, 21,25 76:3,13

**judiciary** 18:10 19:8

**July** 58:18,21

**jump** 72:15

**June** 39:25 40:4, 12 41:1,22 42:9, 14,20 43:2,6,10, 19 45:2 52:21 53:2,8 55:2,4

**Junior** 10:21

**jury** 63:23

**justice** 51:19,22

60:4,21 68:17,21 69:23,25 70:8 71:3,17,18,24 72:19,20

**juvenile** 30:4 31:24

**K**

**Ken** 6:18 13:11, 15,21

**kind** 8:25 9:12,13 29:15 45:24 61:10,13 62:22

**Knight** 26:19

**knowledge** 17:23

**Knoxville** 25:3

**Krog** 10:16

**L**

**ladies'** 56:21

**Lamberth** 77:1,3, 6

**language** 68:11, 16

**law** 10:24 11:19 26:12 34:9 38:10 45:21

**lawsuit** 14:17 15:16 36:15,19 45:9

**lead-in** 61:25

**Leader** 11:1,8 14:15

**learn** 15:13

**leave** 28:5,6 41:13

**Lee** 69:23,25 70:8 71:3,17,18,24 72:20

**left** 34:7

**legal** 45:11

**lend** 74:6

**letter** 36:23,24

**level** 73:19

**Lexis/westlaw** 80:6

**liaison** 21:5,9 47:12,15,16,18 48:1,21 51:8,18 69:14,18,21 70:17,21

**liaisons** 47:9,15 50:19 75:19 76:13

**licenses** 12:1

**licensing** 13:4

**light** 41:15

**link** 22:14,16

**list** 19:4,11 46:9, 10

**listed** 17:4 19:1 34:2,3 51:8 72:17 76:12 77:14

**lists** 22:3 47:21,25 48:9

**litigation** 6:18,22 13:20,22 14:6,13 36:23,24 37:1 45:23 46:4,5 64:12

**live** 9:25

**lived** 10:2

**livestream** 41:22

**livestreamed** 40:5,20,23 41:2 42:1,9,15,20 43:2, 6,10,20 55:20

**livestreaming** 40:17

**long** 10:2 11:12 15:21 19:14,23 20:14 21:16 23:10 24:1 26:23 46:13, 14 59:15 61:6 74:1,3

**longer** 20:23 45:6

**looked** 47:21 50:16 66:4

**lower** 51:4 63:9, 11

*Lexitas* TENNESSEE (615)595-0073

**Lynn** 33:24 34:6,8

**M**

**made** 29:25 32:5 39:8 41:15 49:12,13 65:6 79:19 80:25

**maintains** 66:10

**majority** 32:12

**make** 17:6,13,22 30:14,21,24 31:6,10,14,18,22 35:19 40:18 46:22,23 47:9,11 62:2 67:25 68:4,6 75:16,18,21,25 76:3

**makes** 33:2 46:24 47:19,20 49:25 57:25 58:1,24 75:12

**making** 38:3

**malicious** 7:1

**manage** 22:20

**mandatory** 79:21

**map** 67:7

**March** 38:22 39:6,10,17,19 52:20 53:2,8 55:2

**Marin** 15:4

**maternity** 28:5,6 41:13

**matter** 8:24 13:11,13,15 14:10 56:23 74:6

**Mcgee** 48:22,23,25

**Mcmullen** 50:20,21,23

**Mcnairy** 51:6

**means** 18:13 22:12

**meant** 9:12 23:4

**medications** 8:6

**meet** 25:9,12 67:13

**meeting** 22:14,20 23:7,11,25 24:3 25:2,3,7 27:16,19 28:25 29:2,3 30:6,9,20 34:23 35:3,6 38:22 39:1,6,7,9,10,12,15,16,25 40:5,13 41:1,5,12,17,18,19,23 42:9,14,17,20,21,24 43:1,2,5,10,19,20 44:19 45:3 52:2,5 53:11,13,21 54:1,13,19 55:4,10,13 61:16 69:18 71:8 77:25 78:20,22 81:8

**meetings** 18:21 22:7,10,13 23:1,2,5,8,14,24 24:19,24 27:3,6,13,20,24 28:11,18 29:8,11 32:23 34:20,21 35:9,12,15,20,23,25 36:7,11 37:24 38:2,6,9,13,14,19 39:19,23 40:18,19,22 43:7,11,15,16,24 44:2,13 51:25 52:16,20 53:9,21 54:7,9,12,20,22,25 55:8,12 57:14 60:3 61:13 67:7 69:6 71:4,6,13 73:5,7,11,18,24 74:2,5,15,16,19,22,24 75:2,6

**member** 24:9 77:4,5,24

**members** 17:3 18:10,13,15,18,22 19:4,8 21:10,19,20 22:18 23:6 24:25 25:1,3,4,6 29:6,16 30:1,21 32:13 34:4 35:25 36:8,11 37:2 39:11 40:15,18,25 43:23 44:2,7 46:9 47:2 50:6,9,10,12,14 59:21 64:8 66:22,24 68:25

69:2,8 70:11,15 72:17 73:18 75:13 78:2,20,25

**memory** 76:10

**Memphis** 25:2 50:20

**mentioned** 13:13 44:22 74:14 78:8

**met** 24:21 25:9 37:7 67:10

**Michelle** 21:16 22:4,15,19 26:23 28:2 32:17 33:9,19 40:9,10,14,21 41:12 45:7 55:22 60:18,24 61:3,4 67:5,10,13 76:4,7

**Michelle's** 32:23

**middle** 12:18 37:17 49:10,14 50:14

**Mike** 77:20

**mileage** 15:18,23 16:8

**miles** 16:13

**minute** 56:14

**minutes** 34:20,23 56:15,22 81:12

**mirror** 62:18

**modify** 30:2

**modifying** 18:5

**moment** 18:8 24:1

**month** 52:17

**months** 36:18,20 37:2 45:5 54:20,21 55:5,8

**morning** 6:8,9 19:6 22:3 46:8 72:16

**motion** 30:21

**move** 41:16

**mow** 44:10

**N**

**named** 6:18 14:16 70:20

**names** 10:15 19:1,4,7 29:14,15 34:4 66:21,23

**Nashville** 7:4 24:25 25:10 26:9 51:9 77:2

**nature** 45:21 54:18 70:4

**Nelson** 6:18,23 13:11,15,21,23

**Nicholas** 9:19 10:16,17,23

**Niko** 10:16

**nod** 8:25

**nods** 70:3 77:10

**Nolan** 11:2,8 14:15

**nonparty** 15:16

**nonvoting** 18:13

**normal** 61:11

**Northern** 14:22 15:5

**notes** 34:17,18

**notice** 27:20,21 28:25 41:11,13,16 58:23 59:17,23 65:22,24

**noticed** 17:10 78:20 79:8

**notices** 67:7

**notified** 20:23 58:22 60:13,24

**notifies** 57:18

**November** 28:8

**number** 14:1 15:23 63:8 80:7

Lexitas — TENNESSEE — Lynn Cumbie
(615)595-0073

## O

**oath** 8:1

**object** 36:2 44:9 53:16 69:11 73:14 76:15

**observed** 29:8 38:5 44:12,17

**occasions** 36:12

**occur** 79:17

**occurred** 79:20, 24

**occurs** 60:18

**office** 16:9 17:4 25:12,14 33:6 36:22 37:21 56:6 57:9 66:9

**offices** 29:7 70:13

**official** 65:14

**officio** 18:11

**oftentimes** 76:24

**online** 22:19 53:14

**open** 23:1 27:13, 17 28:19,21 29:2, 3 39:1,20 40:1,2 43:24 44:3,13 78:15

**opened** 44:20

**operate** 68:1

**opinions** 66:12, 13 67:1

**option** 77:24

**oral** 42:5 66:25

**order** 20:16 58:9 75:15

**orders** 75:18,21, 25 76:3 80:1

**originally** 13:23 15:3

**outlined** 9:5

**oversee** 49:1 51:11

**overseen** 43:7

## P

**PACER** 56:3

**package** 60:19,24 65:14 67:19,21

**packaging** 33:20

**pages** 42:4

**part** 7:20 20:5,6 24:20,23 25:7 41:12 45:11 64:7, 14 65:11,13 66:10 76:16

**participate** 27:3 73:6 74:21,24 75:2,6

**participated** 25:4 39:14 51:24 74:16,18

**participates** 28:13 74:15

**participating** 28:11,12 39:22

**participation** 39:9

**parties** 7:7

**party** 6:18 7:1 61:16

**pass** 77:20

**past** 60:3 70:14,19

**Paul** 10:16 37:16

**people** 42:8 76:11

**percent** 62:16 63:6 64:1

**percentage** 63:4

**period** 58:23 59:17,24 65:22,25

**person** 20:16 24:22 25:7 48:1, 21 71:15 74:12

**personally** 77:23

**perspective** 42:21

**phone** 71:12,17

**physically** 24:22 29:7

**place** 23:6

**places** 23:25 80:7

**plaques** 13:1

**PLC** 10:5 11:2,13 14:15 16:6

**pleadings** 63:17

**pleasure** 20:18 68:9,16,20

**point** 7:4 20:15 21:1 30:11,22 32:15 33:14 36:17 40:14 44:18 56:3 57:21,25 58:5,6, 13,22 59:2 70:19 71:24

**points** 8:19

**Pope** 37:15

**portion** 23:11 24:2

**position** 73:20

**possibly** 21:4 61:8 71:22

**post** 62:22

**posted** 29:1 66:24

**potential** 29:24 69:10

**practice** 10:9,12 16:17,23 26:9 31:6 45:11,21 50:10 63:2,23 64:22 66:18 76:14

**practicing** 26:12 74:8

**precise** 80:18

**Precisely** 47:7

**predate** 59:18

**predicate** 53:24 54:4,6

**preliminary** 44:22,24 45:2,8 55:25 56:4,7,10, 12

**prepare** 34:19 37:6

**prepared** 8:3 30:12 32:14

**present** 32:23 33:9 60:22 78:21

**presented** 30:13 60:19 65:11

**presume** 9:10 28:23

**pretty** 76:19

**previously** 60:23

**Principally** 21:9

**prior** 10:25 24:5, 14 45:2

**private** 26:6,9 76:14

**problems** 42:25 43:4

**procedure** 9:11 16:18,24 18:6 30:3,4,15,17,25 31:6,8,12,16,24 58:8 62:2,25 63:1 64:12,22 66:18

**procedures** 9:5,8

**proceed** 73:19

**proceedings** 78:13,14 81:22

**process** 32:11 33:1 57:7,13,17 58:4 59:1,6,22 62:5,6 63:14,18 64:7,12 65:11

**professor** 34:8

**promulgate** 62:11

**proposal** 30:6,8, 10

**proposals** 18:19 29:25 58:8

**propose** 58:7 64:8

proposed 30:19
32:13 43:16 57:16
59:4,18 60:5,8
65:8,9,16 73:7
78:3,6,9 79:8,18,
21 80:3,12

prosecution 7:1

Protection 46:6

provide 56:6 60:8
73:8

provided 27:23
40:17 56:10,12

providing 17:23
28:3,14

provision 39:8

public 23:1 27:13,
17,19 28:19,22,25
29:2,3,6,12 39:1,
3,9,20,22 40:1,3,5
41:2,11,16,23
42:10,15 43:24
44:3,13 55:20
58:22,23 59:4,17,
23 65:22,24,25
77:24 78:15,20
80:12

published 64:14
65:1

publishes 64:24

pull 66:17

purposes 17:24

pursuant 18:4

put 59:4

putting 34:25
80:12

**Q**

quarterly 35:10,
11,15,25 36:7,11
38:19,22 39:19
40:22 53:9,20
54:7,13,18,19,22
55:10 69:6 74:19,
21

question 7:19
8:11 26:5 31:2
36:9 53:18,25

54:5,6 56:18
60:15 71:2 81:5

questions 6:7 8:3
42:18 61:24 70:6
77:19

**R**

Rachel 26:25 27:5

reached 36:22

read 81:13,14

real 46:3

reappointed
71:25

reappointment
70:6,7 71:21,22
72:1

reason 6:16 17:16

recall 6:15 12:6,
23 14:1,4 15:3
19:17 20:9 21:18
24:14 25:18 27:5,
7,10,11,15,19,21
29:9,10,13 34:14
37:23 39:16 40:24
45:1 48:5 52:10
53:1,2 56:8,9,13
60:10 68:15 70:4
71:17 72:12 76:7
77:14 78:22
79:23,24 80:14,
16,18 81:2

receive 15:17
36:24 55:25

receives 33:14

recess 57:2

recollection
47:23 79:20

recommendation
30:10 31:11 32:5
33:4

recommendation
s 30:14,18,25 31:6,
15,19,23 32:2,7
33:15 57:9,14,22
58:1,24 59:11
61:17 64:4

recommended
80:15,21

recommending
43:17

record 7:10,12
9:18 13:18 17:7,
13 38:24 57:4
79:25 80:2,8,20
81:19

refer 13:21 14:12

referred 50:4

referring 7:19
17:1 54:23 61:3
64:19 70:24

refers 47:16,18

refiled 7:5

reflects 66:11

regard 30:10 38:3
79:21

reimbursement
15:18 16:9

related 67:11,24
70:25

relationship
68:24

relative 10:17

remember 26:22
73:23 74:3,17

remote 22:16
23:2,8,11,14,24
24:3

remotely 22:13
24:19 25:7 39:10,
13

removed 15:4

repeat 31:1 43:25

rephrase 29:5
53:18

report 30:8,19

reporter 9:1
22:17 33:17,19,22
34:11,14,16,19
35:4 70:12 75:5
76:1

Representative
77:1,3,6,23

representatives
50:1 77:5

represented 15:7
50:18

represents 15:9,
20

requesting 72:1

required 49:17,20
61:9 80:25

Residence 14:15

resolution 58:11
65:11

resolutions 58:9,
15,21

respect 28:13

respects 62:19

response 51:3
54:16 61:23 62:4

responses 8:21

restricted 49:5

result 81:8

retired 72:20

reviews 29:24

rewrote 80:15

Richardson
40:16 44:23

Road 10:5 16:6

role 20:15 21:6,
11,17 22:9,10,11
24:8 34:21 35:22
60:2 73:1 74:5

roles 47:6 69:10

rolling 20:22

room 24:25 25:2
56:21

rule 30:3,12,19,
22,25 31:11,15,
19,23 32:2,5,14,
18,20 33:4,14,20
43:16 57:8,14,22
58:1,10,12,14
59:3,19 60:5,8

Lexitas TENNESSEE
(615)595-0073

61:17 63:13,14, 15,17,19,20,22 64:4 65:1,4,5,8, 14,16 69:13 73:8 78:3,6,10 79:2,9, 18,22 80:3,12,15

**rule-making** 38:6

**rules** 9:11 16:17, 23 18:5 29:23,24 30:15,16,25 31:6, 7,12,16,20,24 38:3 57:17 58:7 60:19 61:19,20 62:1,2,11,14,18, 21,25 63:1,5,6,7 64:1,2,5,11,14,16, 21 66:18 67:20

**run** 56:20

**Ryan** 72:25 73:21 74:1,8,21 75:2,22

**Ryan's** 73:1 74:5

———————

**S**

———————

**San** 7:8 13:13 14:12,14

**satisfy** 54:12

**schedule** 81:11

**scheduled** 52:6,7

**school** 11:15,19 37:16 38:10

**seamless** 57:13

**search** 80:6

**section** 64:17

**securities** 46:4

**selection** 63:23

**Senate** 58:11

**send** 15:22,24,25 16:10 33:5 65:7

**sends** 59:18 65:21,24

**sense** 9:14 47:19 50:17

**September** 41:5, 17,20,24 51:22 52:2,21 53:2,8,11,

21 54:2 55:9,12

**serve** 18:10 19:25 20:4,18 21:21 50:12,23 61:6 68:9,20 72:8,9

**served** 37:10,20 76:8

**Serves** 68:16

**service** 63:14

**serving** 24:5,14 28:18

**sessions** 51:14

**sets** 34:3

**setup** 29:11

**share** 66:7,15

**she'll** 22:16 28:7

**sic** 54:20

**sign** 81:14

**similar** 37:24 43:6 63:14,16,17,19, 22,24

**simple** 9:13

**simply** 43:15

**sitting** 39:18 52:10

**slightly** 60:15

**Smith** 51:9

**Society** 37:17

**solicitor** 77:15

**someone's** 73:10

**son** 10:19

**Southern** 12:21

**speak** 62:23

**specific** 19:19 47:5

**specifically** 7:20 18:24 20:10

**speech** 45:15,17, 20

**spell** 33:25

**spoke** 71:11,16

**St** 37:16

**staff** 21:20 22:3 27:22 72:24,25 74:13 75:22

**staffed** 68:5

**staggering** 53:9

**Stahl** 77:19,22 79:13 81:5,7,10

**Stahl's** 15:20

**standard** 54:13

**standing** 30:7

**start** 23:24

**started** 24:17 51:21 53:1

**state** 9:17 12:1,11 13:4 15:3 63:2 64:1

**stated** 24:1 62:24

**states** 69:1

**states'** 63:1

**statistically** 50:16

**statute** 15:17 18:17 49:18,21 50:4,8 68:11 69:1

**stenographer** 25:23 81:16

**stress** 42:25 43:3

**strike** 26:5 42:19 60:11

**structure** 68:2

**subcommittee** 60:4,20

**subcommittees** 29:19 68:3 78:5,7

**subject** 74:6

**submit** 79:10

**submitted** 60:25 79:3,8

**substance** 72:7

**sued** 6:25 13:12

**suffix** 76:24

**Suite** 10:5 16:7

**summary** 14:20 29:22,25

**Sumner** 77:13

**support** 22:22 27:23 28:4,15 37:22

**supposed** 41:19

**Supreme** 12:14 16:23,25 17:1 18:4,17 20:14,18 21:2,5,7,10,14 30:13 31:7,11,15, 19,23 32:3,16,21 33:17,21 42:6 43:18 46:23,24 47:2,5,8,11,12,15, 17,18 49:12,16,25 50:5,7 51:18,21 57:18 58:6 59:2,6, 18 62:10 65:8 66:6,11,12 67:1 68:9,17,21,22,25 69:2,3,9,14,17,21, 22 70:10,11,15, 16,21 72:7,9,20, 25 73:17,19 75:12 78:11 79:3,5,17, 18 80:1,3,4,10,11, 15,24

**sworn** 6:4

**system** 12:14

———————

**T**

———————

**table** 56:18

**takes** 34:18 49:16

**taking** 34:17

**talk** 70:24

**talked** 72:19

**talking** 44:12 70:23

**Tarwater** 51:19 72:19

**telephone** 25:5 69:20,24 71:8

**tells** 60:18 67:19

**Tennessee** 10:1, 6 12:5,11,18,19, 20 16:7,18 17:1,4 18:4 21:16 25:14 26:13,20 27:1,22 29:1,20 30:2,15, 24 31:5,7,10,14, 18,22 32:3 33:22 37:11,17 38:12,16 42:3 47:8,11 48:14 49:12 50:20 56:5 61:17 62:1, 10,12,13,18 63:3, 4,6 64:13 66:6,9 67:1 68:9 73:17 77:2,5 78:11 79:3

**tenure** 51:21

**term** 19:23 20:20

**terms** 29:23 42:16 43:1

**testified** 6:4 7:6 20:20 43:8 45:4 60:17 75:14

**testify** 17:12,20, 21 39:6 78:8,14 81:1

**testifying** 17:14

**testimony** 17:16 20:7,8 24:19 28:4, 9 38:11 43:5 52:14 55:11 60:4, 8,13,22 61:1 65:19 68:8 71:10, 11 75:11

**Texas** 12:21

**There'd** 80:9

**things** 9:14 67:10 69:15

**Thomas** 37:16

**time** 7:24 8:16 28:17 35:20 36:3 38:8 44:23 45:9 63:25 65:15,19 69:19 81:21

**times** 6:14,15 24:21 60:7,16 65:18 67:16,17,23 69:14 71:16 72:6, 13 80:24

**timing** 63:15

**Title** 62:9

**today** 6:11 8:1,4, 7,11 9:6,9 15:7, 11,13,14,23 17:14 60:12

**told** 28:23 39:5 45:1,8

**total** 67:17

**training** 61:10

**transcript** 81:17

**transfer** 6:19

**transferred** 14:25 15:6

**transmission** 57:12

**transmits** 57:8

**transmitted** 65:1

**transportation** 46:5

**trial** 51:4

**trial-level** 51:12, 16

**true** 38:15

**truthful** 8:8

**Tsiouvaras** 10:16

**type** 6:20 7:1 29:10 40:16 41:11 58:23 65:1 75:15 80:20

**types** 45:25 46:6

**typically** 12:25 17:3 22:15 30:6 46:1 52:16 58:18, 21 62:20 66:2 69:20 80:6

---

**U**

---

**U.S.** 12:14,15,16

**Uh-huh** 79:6

**ultimately** 14:22, 24 65:10

**undergraduate** 11:15

**understand** 7:22, 25 8:10,22 9:5,8, 15 20:21,25 23:23 32:10,25 47:1 48:10 62:13 64:16 73:11 75:11

**understanding** 8:16 19:24 20:11, 13 21:20 22:2 28:8 33:8,13 34:22 40:6,7 41:10 46:25 49:20 57:7,20 58:3 59:1 62:1 71:7 74:4 76:20 80:20

**understood** 9:4 36:9 57:19 68:7 71:2

**University** 34:9

**unpack** 21:23

---

**V**

---

**vague** 47:23

**verbal** 8:21 9:1

**versus** 14:15 80:21

**vested** 62:10

**vests** 50:5

**vice** 46:10,13,14, 22 47:6 60:25 61:7 70:12

**video** 29:10 42:1, 12

**videoconference** 24:24 25:1,8

**videos** 42:4

**viewed** 19:6 46:8 72:15

**virtually** 22:19

**vis-à-vis** 68:24

**vote** 18:19,21 30:11 32:12,17 33:2 43:17 57:16 65:3 73:7 81:8

**votes** 57:25 59:10

---

**W**

---

**waiting** 55:22,24

**waive** 81:15

**wall** 13:1

**wanted** 20:25 40:18 66:17,20,25

**warranty** 46:5

**watch** 39:4 42:4, 5,8

**watched** 42:1,12

**website** 17:5 18:25 19:2 22:3 29:1 34:3 46:8 47:20,21,22 48:22 66:2,7,10,11,16, 19,22,24 67:2,3,4 72:16 76:12 80:1

**week** 15:19

**west** 49:9,14 50:14

**Western** 12:19

**William** 48:1 77:1

**Wisconsin** 7:5 12:22 13:25

**witnesses** 63:21

**word** 76:21

**words** 72:7

**work** 10:4,5 35:5 45:12,16,18

**working** 27:7 35:4

**works** 32:11

**writing** 80:9

**written** 80:2,8

---

**Y**

---

**year** 11:17,24 12:6 14:4 19:17,24 20:2,5,10,12,21, 22 38:20 53:3

*Lexitas* TENNESSEE Reporters
(615)595-0073

58:19,21 60:24
61:8 67:6,8 69:5,
9,25 79:23,24
80:14,18

**years** 10:3 11:3,9
19:16 24:14,16
47:24 52:19,23
61:8 67:15 79:16

**Young** 22:21
28:10

**Youtube** 42:4,7

---

### Z

---

**Z-E-H-R-T** 34:6

**Z-E-R-T** 34:1

**Zager** 73:6,21
74:13,14,18,24
75:23

**Zehrt** 33:24 34:6,
8,11,17,22 35:5
75:5 76:1

**Zehrt's** 34:2

**Zoom** 22:14

*Lexitas TENNESSEE Index of years Zoom*
*(615)595-0073*