IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439 |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) | Judge Richardson  Magistrate Judge Frensley |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL NON-PARTY TENNESSEE SUPREME COURT
JUSTICES' COMPLIANCE WITH SUBPOENA**

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

QUESTION PRESENTED ............................................................................................... 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 3

    A.  Plaintiff McCaleb's First Amendment Right of Access Claim to Advisory
        Commission Meetings; Defendant Long's Defenses and Deposition; and the
        Case Management Order that Discovery is Not Stayed During Motions
        Unless Further Ordered by the Court ............................................................... 3

    B.  Court's Preliminary Injunction Issued on March 22, 2023 ............................... 6

    C.  Depositions Thus Far Including Advisory Commission
        Chair Gino Bulso, AOC Liaison Michelle Consiglio-Young,
        and Defendant's Expert Witness Lang Wiseman ............................................. 7

    D.  Subpoena Served on October 31, 2023, for the Justices' Remote Depositions
        to Give Testimony Scheduled for November 27, 28, 29, and 30 ...................... 15

    E.  Justices' Motion to Quash Filed on Thanksgiving Eve .................................... 16

    F.  The Justices Did Not Obey the Subpoena and Said They Would Not Appear
        Until They Received a Decision From the Court on their Motion to Quash .... 17

LEGAL STANDARD .................................................................................................... 18

ARGUMENT ................................................................................................................ 19

    The Court should order the Justices to comply with the Subpoena because the
    act of filing a motion to quash was not an "adequate excuse" under Rule 45
    for the Justices to then disobey the Subpoena and fail to appear at their
    depositions to give testimony when the Court had not ruled on the motion ... 19

        A.  Merely filing a motion to quash did not automatically stay the
           depositions and did not relieve the Justices of their duty to attend .... 20

        B.  They have unique knowledge of Advisory Commission meetings ........ 22

CONCLUSION .............................................................................................................. 24

ii

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Madison,*
    79 Fed. Appx. 691 (5th Cir. 2003) .................................................................. 18, 20

*Batt v. Kimberly-Clark Corp.,*
    438 F. Supp. 2d 1315 (N.D. Okla. Jul. 14, 2006) ..................................................... 18

*Goodwin v. City of Boston,*
    118 F.R.D. 297 (D. Mass. Feb. 4, 1988) ............................................................. 19

*Hahn v. Star Bank,*
    190 F.3d 708 (6th Cir. 1999) ....................................................................... 19

*Hepperle v. Johnston,*
    590 F.2d 609 (5th Cir. 1979) ....................................................................... 19

*Raymond James & Assocs. v. 50 N. Front St. TN, LLC.,*
    2023 U.S. Dist. LEXIS 99271 (W.D. Tenn. Jun. 6, 2023) .............................................. 21

*Stephen L. Lafrance Holdings, Inc. v. Sorensen,*
    278 F.R.D. 429 (W.D. Ark.  Dec. 13, 2011) ..................................................... 18, 20, 22

*Sutherland v. Mesa Air Group, Inc.,*
    2003 WL 21402549 (S.D. Fla. Jun. 6, 2003) .......................................................... 19

**Statutes**

Tenn. Code Ann. § 16-3-601 ........................................................................... 3

Tenn. Code Ann. § 17-3-101 ........................................................................... 3

**Rules**

Fed. R. Civ. P. 26 ............................................................................. 18, 19, 20

Fed. R. Civ. P. 45 .................................................................................. 18

LR 16.01 .................................................................................. 19, 20, 21, 22

Tenn. R. Civ. P. 45.04 ................................................................................ 2

## QUESTION PRESENTED

1. Is filing a motion to quash a subpoena an "adequate excuse" under Rule 45 for a person to then disobey the subpoena and not appear at their deposition to give testimony when the court has not ruled on the motion?

## INTRODUCTION

Plaintiff Dan McCaleb, Executive Editor of The Center Square, files this Memorandum of Law in support of his Motion to Compel compliance with subpoena that commands deposition testimony from Non-Party Tennessee Supreme Court Chief Justice Holly Kirby, Justice Jeffrey Bivins, Justice Roger Page, and Special Justice Sharon Lee (collectively the "Justices"). Motion to Compel, ECF No. 67.

The Justices' remote depositions via Zoom were scheduled for this week on November 27, 28, 29, and 30. The Justices have not contested service of the four subpoenas and notices of deposition (collectively the "Subpoena") served upon them on October 31, 2023. However, the Justices filed a motion to quash the Subpoena or alternatively for a protective order on Thanksgiving Eve — 22 days after being served with the Subpoena and 1 business day before Chief Justice Kirby's scheduled deposition on November 27. ECF No. 60. Then after filing the motion, the Justices said they would not be appearing at their depositions this week to give testimony until they received a decision from the Court on the motion to quash.

But merely filing — and resting on — a motion to quash was not an "adequate excuse" under Rule 45 for the Justices to then disobey the Subpoena and fail to appear at their scheduled depositions to give testimony when the Court had not

1

ruled on the motion to quash.[1] Indeed, the Federal Rules of Civil Procedure make clear that a subpoena recipient must appear in person for a testimonial deposition. Under the Federal Rules, subpoenas commanding deposition testimony are distinguished from those that command the production of documents. For example, when a subpoena recipient is commanded to produce documents, they may choose to not appear in person at the place of production if they produce the requested documents. Or they may choose to serve a written objection to the command that they produce specific documents.[2]

But a subpoena recipient — like the Justices here — may not resist a subpoena that commands *deposition testimony* by simply resting on a motion to quash without further court intervention, such as a ruling on the pending motion or staying discovery. In other words, the Justices were obligated to obey the Subpoena, appear at their depositions, and give testimony even though they had filed a motion to quash the Subpoena that was pending before the Court.

The question presented to the Court is straightforward. And the answer is, No. Filing a motion to quash a subpoena is not an "adequate excuse" under Rule 45 for a

---

[1] Although briefing has closed and the matter is ripe the Court has yet to rule on the Justices' motion to quash the Subpoena, at or about the time of filing this motion to compel. *See* Justices' Reply, ECF No. 64, filed on November 28, 2023.

[2] By contrast, the Tennessee Rules of Civil Procedure make no distinction between objecting to a "deposition subpoena for testimony or subpoena for production of document[s]." *See* Tenn. R. Civ. P. 45.04(1) (Advisory Commission Comments [2013] "The amendment requires a notice to be placed on a deposition subpoena issued to a non-party witness with the information that the witness has until twenty-one days after service of the subpoena to serve an objection to the subpoena on the issuing attorney").

2

person to then disobey the subpoena and not appear at their deposition to give testimony when the court has not ruled on the motion. Accordingly, Plaintiff McCaleb requests a Court Order compelling the Justices' compliance with the Subpoena that commands their deposition testimony.

## BACKGROUND

**A. Plaintiff McCaleb's First Amendment Right of Access Claim to Advisory Commission Meetings; Defendant Long's Defenses and Deposition; and the Case Management Order that Discovery is Not Stayed During Motions Unless Further Ordered by the Court**

On June 30, 2022, Plaintiff McCaleb filed his First Amended Complaint ("Compl.") against Defendant Michelle Long, in her official capacity as Director of the Administrative Office of the Courts ("AOC"). Compl., ECF No. 19. McCaleb sought declaratory and injunctive relief, which included a Section 1983 and First Amendment right of access claim to state court rulemaking meetings of the Tennessee Advisory Commission on the Rules of Practice & Procedure ("Advisory Commission"), created by Tenn. Code Ann. § 16-3-601. *Id*.[3]

Tennessee's Supreme Court appoints members to the Advisory Commission, "whose duty shall be to advise the [Justices and Supreme Court] from time to time respecting the rules of practice and procedure." *See* Tenn. Code Ann. § 16-3-601(a). Under Defendant Long's direction, the AOC provides logistical and administrative support to the Advisory Commission. *See* Tenn. Code Ann. § 16-3-601(d). AOC

---

[3] McCaleb amended his complaint and requested access to rulemaking meetings of the (1) Advisory Commission, as well as the (2) Tennessee Judicial Conference (TJC) committees, created by Tenn. Code Ann. § 17-3-101, et seq. Compl., ECF No. 19.

3

employee Michelle Consiglio-Young is the liaison to the Advisory Commission, and she provides administrative support to assist the Commission's members in discharging their duties. Memorandum Opinion, ECF No. 39, PageID #1089.

McCaleb sought public access to these Advisory Commission meetings under the "experience and logic test" first articulated by the United States Supreme Court in *Richmond Newspapers* and later adopted in its subsequent precedents. Compl., ECF No. 19. Specifically, McCaleb argued pursuant to the "experience and logic test" that, because the federal analogue to the Advisory Commission had opened its rulemaking meetings to the public over 34 years ago, history, tradition, and the favorable judgment of experience counsel that the First Amendment attaches to Tennessee Advisory Commission meetings, and the meetings should also be open to the public as well, absent a compelling governmental reason that is narrowly tailored. *See id.* And McCaleb requested "a preliminary injunction, later to be made a permanent injunction, ordering Director Long to provide him with both virtual and in-person access so he can assign reporters to report on future meetings" of the Advisory Commission. *Id.*, at PageID #149, ¶ B.

In her Answer in response to McCaleb's allegations that Advisory Commission meetings were "closed to the public and press," Director Long "Denied" that these meetings were closed. Answer, ECF No. 48, PageID #1126, ¶30; Compl., ECF No. 19, PageID #137, ¶30. As part of her theories and defenses to McCaleb's First Amendment right of access claim to meetings, Director Long contends that under *Richmond Newspapers'* two-part test, "there is no historically recognized right of

4

access to the Tennessee Advisory Commission on the Rules of Practice &

Procedure." Initial Case Mgt. Order, ECF No. 50, PageID #1147, ¶ B. In the same

Order governing discovery, the Court said, "Discovery is not stayed during

dispositive or other motions, unless ordered by the Court." *Id.* at PageID #1149, ¶ G.

Although in her Answer she "Denied" that Advisory Commission meetings were

closed to the public and press, in her recent deposition last month Director Long

testified that meetings were open to the public in the past, but at some point, before

her tenure they became closed. She testified that she does not know why meetings

became closed. Excerpts from Director Long's relevant deposition testimony ("Long

Depo.") are attached to the Motion as **Exhibit 1** and set forth below:

Q. And so are meetings -- is it your understanding that Advisory Commission

meetings are open or closed?

A. For this particular commission, I understand the history has been that at one

point they were open and at one point they were closed.

Q. And at what point is it your understanding on the history were they open?

A. It predates me. I want to say maybe 2017, 2018, but I am not certain.

Q. What is your understanding of history wise when they became closed?

A. I don't know why they became closed.

Q. I didn't say "why," I said what is your understanding of the process of getting

closed and why they became closed?

A. I don't know.

ECF No. 67**, Exhibit 1**, Long Depo., p. 106, Lines 8-25.

## B. Court's Preliminary Injunction Issued on March 22, 2023

On March 22, 2023, effective at 3:00 pm, along with its Memorandum Opinion (ECF No. 39), the Court issued an Order And Preliminary Injunction (ECF No. 40), finding that McCaleb had shown a likelihood of success on the merits of his First Amendment right of public access claim to Advisory Commission meetings. In its Order And Preliminary Injunction, the Court said:

It is, therefore, **ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, Defendant and her officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby **ENJOINED** and **RESTRAINED** from:

> Holding future meetings of the Tennessee bench-bar advisory commission established to recommend rules without providing the public with access either via livestreaming or in-person attendance; provided, however, that such access may be denied with respect to a particular meeting, such that the meeting is closed in whole or in part on a case-specific basis; based on a particular stated reason that purportedly justifies such closure; provided further, however, that any such disclosure shall be separately subject to challenge in its own right by any party with standing to do so.

Defendant is **FURTHER ORDERED** to provide notice of this Order to her officers, directors, agents, servants, representatives, attorneys, employees, and affiliates, and those persons in active concert or participation with them. Defendant shall take whatever means are necessary or appropriate to ensure proper compliance with this Order. ECF No. 40, PageID ##1103-04.

**C. Depositions Thus Far Including Advisory Commission Chair Gino Bulso, AOC Liaison Michelle Consiglio-Young, and Defendant's Expert Witness Lang Wiseman**

The parties have taken seven (7) total depositions thus far, as follows:

- October 3, 2023 (remote) – Prof. Benjamin Barton, Plaintiff's Expert

- October 9, 2023 (in-person) – Gino Bulso, Chair Advisory Commission

- October 13, 2023 (remote) – Plaintiff Dan McCaleb

- October 24, 2023 (in-person) – AOC Deputy Director Rachel Harmon

- October 25, 2023 (in-person) – Defendant AOC Director Michelle Long

- November 16, 2023 (in-person) – AOC liaison Michelle Consiglio-Young

- November 21, 2023 (remote) – Lang Wiseman, Defendant's Expert

Relevant excerpts from the depositions given by Gino Bulso, Chair of the Advisory Commission ("Bulso Depo."), and Michelle Consiglio-Young, ("Consiglio-Young Depo."), attached to the Motion as **Exhibit 2** and **Exhibit 3**, respectively, as to whether meetings have historically been open to the public, and the Tennessee Supreme Court's and Justices' involvement with the Commission, are as follows:

*Gino Bulso, Chair Advisory Commission*

Q. Can you describe the commission?

A. A commission is a group of attorneys and judges appointed by the Tennessee Supreme Court pursuant to 16-3-601 to assist it in modifying Rules of Civil and Criminal Procedure.

ECF No. 67, **Exhibit 2**, Bulso Depo., p. 18, Lines 2-6.

Q. From 2016 through 2022, during your time serving on the commission, were any of those meetings ever open to the public?

A. I'm not sure.

*Id.*, p. 28, Lines 17-20.

Q. Okay. I think you said -- I want to make sure I understood this. Did you say in your earlier testimony that you serve at the pleasure of the Tennessee Supreme Court?

A. I did say that.

Q. Is that language, is that in the statute?

A. Yes.

Q. It is?

A. It is implicitly in 16-3-601.

Q. I think, as I recall, the AOC director uses that language, "Serves at the pleasure of the chief justice of the Supreme Court"; would that be correct?

A. I don't know.

Q. But you're saying implicitly, you, as the chair -- who do you serve at the pleasure of, the Supreme Court or the Chief Justice?

A. The Supreme Court.

*Id.*, p. 68, Lines 6-22.

Q. How do you communicate with your Supreme Court liaison? Do you do it while you're at the meeting or at a later time?

A. By telephone, typically.

Q. Who was the Supreme Court liaison in 2022 from the Supreme Court?

A. Justice Lee.

Q. How often did you communicate by telephone with Justice Lee during the 2022 calendar year?

A. Likely once or twice.

Q. Once or twice?

A. (Witness nods head up and down.)

Q. Do you recall what the nature of those calls were about?

A. Yes. Questions about reappointment as chair. Reappointment to the commission.

Q. Why would you communicate with Justice Lee about that, those issues?

A. Because it's -- the Supreme Court appoints the members of the commission. It's the Supreme Court who appoints the chair, the vice chair, the reporter, and the other offices of the commission.

*Id.*, p. 69, Line 17 through p. 70, Line 13.

### *Michelle Consiglio-Young, AOC Liaison to the Advisory Commission*

Q. Let's kind of backtrack a little bit. So I think you said 2015 to 2016 you sat in on some meetings?

A. Uh-huh.

Q. And the -- your recollection, they were open to the public?

A. Yes.

Q. At what point did those Advisory Commission meetings become closed to the

public?

A. I believe it was 2018.

Q. I'm sorry?

A. 2018. It was after I had taken over as liaison. There was -- meetings were open to the public, as far as I can recall. And there was a meeting that we had that there was a member of the public who had attended in person who was there and became unruly and combative with the Commission. And after that, the -- the Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident.

Q. And what -- where was this particular meeting in 2018?

A. I wish I could recall the exact date. I do believe it was 2018 and the meeting was at the Administrative Office of the Courts, it was in our conference room. And members of the public would come periodically, sometimes we didn't have any and sometimes some would request to come.

And that particular meeting there was a member of the public who attended, and he was interested in a topic that was being discussed by the Commission. And during that discussion, he was speaking kind of out of term, you know, without being called on or outside of the public comment period that was allowed and essentially became very assertive with the members and -- and the meeting was stopped and he was asked to leave.

Q. Do you recall how many members of the public were at that particular meeting in 2018?

10

A. I believe it was just that gentleman and his son.

Q. Do you recall his name?

A. I don't. I'm sorry.

Q. When you say "combative," do you mean -- what do you mean? Was it verbal combativeness --

A. Yes.

Q. -- or physical?

A. It was verbal. He did leave his chair -- or, you know, get up from his chair while he was having this discussion, which kind of escalated the -- the tone that was going on in there in his interaction with the members. So it -- yeah, it just became more of an aggressive action on his part. Clearly he was upset with a topic that was being discussed.

Q. Do you recall the topic?

A. No.

Q. Do you recall who the chair was at that time at that meeting?

A. I believe the chair was Allen Wade then.

Q. Is Mr. Wade currently a member on the Advisory Commission?

A. Yes.

Q. Were there four quarterly meetings in 2018?

A. Yes. As far as I remember there were.

Q. And you were at this meeting in 2018?

A. I was at that meeting, yes.

11

Q. Who was the chief justice of the Supreme Court at that time in 2018?

A. It was Justice Jeff Bivins at that time.

Q. So did the Chairman Wade ask this person that was being verbal -- verbally combative to leave? Did he -- did the person leave?

A. I don't recall who exactly asked him to leave; however, he was asked to leave. We did have to have several people help escort him out. And I can't remember if security was called at that meeting or not. I -- I do believe that building security was made aware.

Q. Do you recall if any formal charges, criminal charges were brought against this person?

A. I -- I do not believe that there were formal criminal charges.

Q. So the person that was verbally combative was never prosecuted to the best of your recollection?

A. Correct, I do not believe that he was.

Q. And so, I guess, was there a member of the Tennessee Supreme Court that was attending that particular meeting?

A. Yes.

Q. And who was that?

A. It was Justice Holly Kirby.

Q. So Justice Kirby was the Supreme Court liaison on the Commission in 2018?

A. She was.

Q. Justice Kirby is now the Chief Justice of the Supreme Court?

A. Yes, she is.

Q. So you said something about the -- the justices at that point, they made the call, they made the decision to close meetings. Explain what -- explain what happened after that.

A. After the meeting where the person got combative -- and Justice Kirby was in attendance in that meeting, so she had seen it firsthand, the -- as far as I am aware, she took that matter back to the Supreme Court for discussion, and we at the AOC were told that the meetings would no longer be open after that. And that was really my interaction with that. They were -- I was informed that they would be closed.

Q. How were you told? How were the members of the Commission told that from now on they were going to be closed, the meetings?

A. I don't recall exactly. I do know that if our General Counsel Rachel Harmon at the time had told me that there was no need to put public notice out because they were going to be closed the next meeting after that incident. And I cannot recall if Justice Kirby told the members directly or if a member of our office told them that we -- that they would be closed. I just don't remember exactly.

Q. But that decision would have come from either the justices or the AOC office to the Advisory Commission?

A. One of the two, yes, would have told either the Commission as a whole or the chair and the chair would have relayed that to the Commission.

Q. So the Chair, Mr. Wade, didn't make that decision?

13

A. No.

Q. Did -- was it reported, do you recall, that meetings were going to be closed and formally in the minutes?

A. I do not recall. I would have to look back at the minutes to see if they were -- if there was any mention.

Q. Where are the minutes kept?

A. Like I had said earlier, they're housed within the Tennessee Supreme Court building overseen by the Appellate Court Clerk's Office, so there is -- whether they're electronic or paper filed.

ECF No. 67, **Exhibit 3**, Consiglio-Young Depo., p. 40, Line 8 through p. 46, Line 12.

### *Defendant's Expert Witness Lang Wiseman*

Defendant Long's expert witness, Lang Wiseman, recently testified, and his deposition transcript excerpts are attached to the Motion as **Exhibit 4** ("Wiseman Depo."). These excerpts include Wiseman's confirmation that he served on the Advisory Commission from 2015-2018, his failure to recall the 2018 incident involving the verbally combative man at a public meeting, and his opinion on why meetings of other Tennessee boards and commissions have been open to the public:

Q. Now, tell me again the years that you served on the Advisory Commission.

A. I would -- in order to be specific I would refer you to the information that I put in my report as I -- I've said we'd go back and -- and look at that, but I believe it was 2015 until late 2018.

ECF No. 67, **Exhibit 4**, Wiseman Depo., p. 27, Lines 4-10.

Q. Are you aware of an incident in 2018 where a member of the public became verbally combative with questions during a Tennessee Advisory Commission that was open to the public?

A. I'm not.

Q. You're not aware of that?

A. I do not recall that.

*Id*. at p. 39, Lines 10-17.

Q. Yeah. Other Tennessee State boards and commissions other than the Advisory Commission work fine despite, you know, the public has open access, they're open. Why are they okay and the Advisory Commission is not?

A. Well, I think you need to ask the Supreme Court that.

*Id*. at p. 50, Line 25 through p. 51, Line 6.

### D. Subpoena Served on October 31, 2023, for the Justices' Remote Deposition Noticed for November 27, 28, 29, and 30

On October 31, 2023, McCaleb's counsel served four subpoenas and notices of remote Zoom depositions upon the Justices for their testimony noticed for November 27-30, 2023. These documents and the Subpoena were initially served upon Defendant Long's counsel, who represented to Plaintiff's counsel that they would accept service on behalf of the Justices. Attached to the Motion as **Exhibit 5** is the Declaration of James McQuaid ("McQuaid Decl."), counsel for Plaintiff, along with the relevant documents perfecting service of the Subpoena.

The box labeled, "*Testimony*," was checked on page one of each of the Justices' specific subpoena. And it said, "**YOU ARE COMMANDED** to appear at the time,

15

date, and place set forth below to testify at a deposition to be taken in this civil action." ECF No. 67, **Exhibit 5**, McQuaid Decl. The box labeled, "*Production,*" was not checked and left blank for each of the Justices' specific subpoena. *Id.* On page three of each subpoena, there were instructions on applicable provisions of Rule 45 that provided the subpoena recipient with information pertaining to their obligations in responding. *Id.*

Moreover, attached to the Motion as **Exhibit 6** is the Declaration of Buck Dougherty ("Dougherty Decl."), counsel for Plaintiff. In advance of the Justices' scheduled depositions this week, Plaintiff's counsel tendered four $40 checks to the Justices' counsel (the applicable statutory amount for one day's attendance) for their attendance at the depositions. ECF No. 67, **Exhibit 6**, Dougherty Decl.

**E. Justices' Motion to Quash Subpoena Filed on Thanksgiving Eve**

On Thanksgiving Eve, November 22, 2023, at approximately 11:43 am CDT, the Justices filed their motion to quash their depositions. ECF No. 60. Accompanying their motion was a supporting memorandum of law (ECF No. 61), Plaintiff's Rule 26 Initial Disclosures served on May 19, 2023 (ECF No. 61-1), four Affidavits signed and dated by the Justices (ECF No. 61-2), Plaintiff's First Supplemental Response to Interrogatories (ECF No. 61-3), excerpts from Plaintiff's deposition (ECF No. 61-4), and excerpts from AOC Deputy Director Harmon's deposition (ECF No. 61-5).

In the memorandum in support of their motion to quash, they said, "Even in the pursuit of factual information (as opposed to judicial motivations), the subpoenaed depositions pose an undue burden weighed against the Justices' lack of factual

16

knowledge relevant to the underlying litigation." ECF No. 61, PageID # 1221-22. In their memorandum the Justices acknowledge that they were each issued the Subpoena specifically to "testify." The Justices said, "Plaintiff now subpoenas four non-party Tennessee Supreme Court Justices to testify at depositions." *Id.* at PageID #1221. One of their theories supporting why they should be shielded from giving deposition testimony is that Harmon testified that "Michelle Consiglio-Young is the AOC employee who has the most knowledge of what takes place at Advisory Commission meetings." *Id.* at PageID #1231.

### F. The Justices Did Not Obey the Subpoena and Said They Would Not Appear Until They Received a Decision From the Court on their Motion to Quash

On November 27, 2023, Plaintiff's counsel Dougherty and McQuaid appeared as scheduled for the remote deposition. Chief Justice Kirby and her counsel failed to appear, and statements were entered on the record at 9:22 am CDT. Attached to the Motion as **Exhibit 7** is a transcript of the Statement on the Record, along with two exhibits.[4] The exhibits include Chief Justice Kirby's subpoena, notice, Zoom instructions sent to counsel in advance of the deposition, including to the Justices' counsel Donna Green, Cody Brandon, and Liz Evan, and emails among counsel. Attorney Brandon emailed Plaintiff's counsel and said, "As we informed you on our call, none of the Justices will appear for deposition until we receive a decision on their Motion to Quash." ECF No. 67, **Exhibit 7**, Statement on the Record.

---

[4] The transcript further reflects that Bridget Conlan, Intern, was present at the remote deposition. Ms. Conlan is a 3L student at the University of Chicago and is a legal intern for Liberty Justice Center, counsel for Plaintiff McCaleb.

Under the Federal Rules of Civil Procedure governing subpoena enforcement, a "court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "In civil litigation, it would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena, and the order might not require all the compliance sought by the subpoena." *Id.* (Advisory Committee Notes on Rules — 2013 Amendment). Parties are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 45, Advisory Committee Notes (1970) (The scope of discovery through a subpoena is the same as the other discovery rules.).

It is well settled law that "the filing of a motion to quash does not automatically stay a deposition." *Stephen L. Lafrance Holdings, Inc. v. Sorensen*, 278 F.R.D. 429, 436 (W.D. Ark. Dec. 13, 2011). "The mere act of filing a motion [to quash or for a protective order] does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance." *Id.* and n. 40 (citing *Barnes v. Madison*, 79 Fed. Appx. 691, 707 (5th Cir. 2003)). *See also Batt v. Kimberly-Clark Corp.*, 438 F. Supp. 2d 1315, 1317-18 (N.D. Okla. Jul. 14, 2006) (holding that the filing of a motion to quash does not automatically stay a deposition.); *Sutherland v. Mesa Air Group, Inc.*, 2003 WL 21402549, at *5 and n.10

(S.D. Fla. Jun. 6, 2003) (holding that the filing of a motion for protective order alone would not have relieved counsel of obligation to attend the depositions; the obligation to comply dissipates only when court grants the motion.); *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) (holding that the court's inaction on plaintiff's motion for a protective order to postpone the taking of his deposition did not relieve plaintiff of the duty to appear for deposition.); *Goodwin v. City of Boston*, 118 F.R.D. 297, 298 (D. Mass. Feb. 4, 1988) (holding that filing a motion to quash does not automatically stay deposition.).

"Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999). In the Middle District of Tennessee, this "broad discretion and inherent power" the Sixth Circuit discussed has produced Local Rules and the practice of not staying discovery: "Discovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court." LR 16.01(g).

### ARGUMENT

**The Court should order the Justices to comply with the Subpoena because the act of filing a motion to quash was not an "adequate excuse" under Rule 45 for the Justices to then disobey the Subpoena and fail to appear at their depositions to give testimony when the Court had not ruled on their motion.**

The Court should grant Plaintiff McCaleb's Motion to Compel (ECF No. 67) and order the Justices to comply with the Subpoena that commands their deposition testimony. Merely filing a motion to quash is not an adequate excuse under Rule 45(g) for the Justices to disobey the Subpoena and not appear at their scheduled

19

depositions. The act of filing the motion to quash (1) did not automatically stay the depositions and did not relieve the Justices of their duty to attend; and (2) they have unique knowledge of Advisory Commission meetings.

### A. Merely filing a motion to quash did not automatically stay the depositions and did not relieve the Justices of their duty to attend.

Merely filing a motion to quash did not automatically stay the depositions and did not relieve the Justices of their duty to attend.

It is well settled law that "the filing of a motion to quash does not automatically stay a deposition." *Sorensen*, 278 F.R.D. at 436. "The mere act of filing a motion [to quash or for a protective order] does not relieve a party of the duty to appear; the party is obliged to appear until some order of the court excuses attendance." *Id*. and n. 40 (citing *Barnes*, 79 Fed. Appx. at 707). Local Rules provide that "[d]iscovery is not stayed, including during the pendency of dispositive motions, unless specifically authorized by Fed. R. Civ. P. 26(d) or by order of the Court." LR 16.01(g).

Here, the Justices failed to appear for their scheduled depositions this week. ECF No. 67, **Exhibit 7**, Statement on the Record. The Justices' counsel was clear why they would not be appearing for their depositions, and attorney Brandon, said, "As we informed you on our call, none of the Justices will appear for deposition until we receive a decision on their Motion to Quash." *Id*. Indeed, the Justices elected to simply rest on their motion to quash the Subpoena and did not file a parallel motion to stay discovery (and their depositions) pending resolution of their quash motion.

20

To be sure, the Local Rules disfavor parties staying discovery during the pendency of dispositive motions. But they also contemplate that a party may move for an "order of the Court" to stay discovery pending resolution of a motion, which would include a motion to quash like the Justices filed here. *See* LR 16.01(g). Moreover, while the Order governing discovery in this matter reflects the Local Rules' usual practice of not staying discovery during the pendency of motions, it also contemplates that a party may move for a Court order to stay discovery pending resolution of a motion. *See* Initial Case Mgt. Order, ECF No. 50, PageID #1149, ¶ G.

In other words, the Justices could have chosen a more measured and prudent litigation strategy and filed a motion to stay discovery pending resolution of their motion to quash, simultaneously with the filing of the quash motion. *See e.g.*, *Raymond James & Assocs. v. 50 N. Front St. TN, LLC.*, 2023 U.S. Dist. LEXIS 99271 (W.D. Tenn. Jun. 6, 2023). And they could have done so much earlier in the process after receiving service of the Subpoena on October 31. This would have allowed the Court adequate time to potentially rule on a motion to stay discovery before the Justices' scheduled depositions this week — even if the Court had not yet decided the quash motion. This approach would have provided the Justices — as well as their counsel — clear guidelines on whether they were to appear this week for their depositions and give testimony. However, that door — filing a discovery stay motion along with the quash motion — has now closed.

Instead, the Justices adopted a more aggressive litigation strategy and chose to file their quash motion on Thanksgiving Eve one business day before the

depositions were to begin. And then sit back and simply rest on their quash motion and not obey the Subpoena and not appear at their scheduled depositions. But filing a quash motion did not automatically stay the Justices' depositions. And filing a motion to quash the Subpoena did not relieve the Justices of the "duty to appear" at their scheduled depositions this week in accordance with well settled law, the Local Rules, and the Order governing discovery in this case. *See Sorensen*, 278 F.R.D. at 436; LR 16.01(g); Initial Case Mgt. Order, ECF No. 50, PageID #1149, ¶ G.

**B. They have unique knowledge of Advisory Commission meetings.**

The Justices have unique knowledge of Advisory Commission meetings. Even as non-parties to this case, the Justices are integral to this lawsuit and the Advisory Commission meetings, which has been confirmed by the depositions thus far.

Although the Justices contend, they do not possess relevant factual information, the record before this Court shows otherwise. Their argument that they should be shielded from giving their depositions because "Michelle Consiglio-Young is the AOC employee who has the most knowledge of what takes place at Advisory Commission meetings," is not actually supported by *Michelle Consiglio-Young's deposition testimony. See* ECF No. 61, PageID #1231; s*ee also* ECF No. 67, **Exhibit 3**, Consiglio-Young Depo., p. 40, Line 8 through p. 46, Line 12.

First, Consiglio-Young testified that, after the 2018 public Advisory Commission meeting when the gentleman became verbally combative and disruptive, the Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident. According to their bios on the AOC webpage, Chief

22

Justice Kirby, Justices Bivins and Page, and Special Justice Lee all served on the Tennessee Supreme Court in 2018 during the time of this incident.[5]

Second, Consiglio-Young testified that current Chief Justice Kirby was the Supreme Court liaison in 2018 and was at that specific public Advisory Commission meeting involving the verbally combative man and had "firsthand" knowledge of this incident. Chief Justice Kirby confirmed that she was in fact Supreme Court liaison to the Advisory Commission in 2018. ECF No. 61-2, PageID #1256.

Third, Consiglio-Young testified that Justice Bivins was the Chief Justice during the time of this incident in 2018 when the Supreme Court "took the matter up for discussion and then the meetings were closed after that incident."

Fourth, as one of her theories and defenses, Director Long has squarely injected into this case whether there is a "historically recognized right of access to the Tennessee Advisory Commission on the Rules of Practice & Procedure." Initial Case Mgt. Order, ECF No. 50, PageID #1147. But she also does not know about the historical nature of meetings and whether they were open or closed to the public because that predates her tenure as AOC Director according to her testimony. Moreover, under *Richmond Newspapers* and its progeny, once the First Amendment attaches to meetings, the government must come forward with a compelling governmental reason that is narrowly tailored why meetings should be closed. And

---

[5] (Chief Justice Kirby) https://tncourts.gov/courts/supreme-court/judges/holly-kirby (Justice Bivins) https://tncourts.gov/courts/supreme-court/judges/jeffrey-s-bivins (Justice Page) https://tncourts.gov/courts/supreme-court/judges/roger-page (Special Justice Lee) https://www.tncourts.gov/press/2022/11/15/justice-lee-announces-august-2023-retirement

from his excerpted testimony, Chairman Bulso likewise does not know if Advisory Commission meetings historically have been open or closed, and Chairman Wade did not make the decision in 2018 to close meetings according to Consiglio-Young.

Fifth, Consiglio-Young provided compelling testimony involving the 2018 incident, narrowing the issues in dispute over the historical nature of open and closed meetings. But she also pointed directly back at the Justices since they "took the matter up for discussion and then the meetings were closed after that incident."

Finally, perhaps Lang Wiseman — Director Long's retained expert witness — best summarized the current status of discovery in this case as to whether Advisory Commission meetings historically have been open or closed to the public. In response to a question asking him why meetings of other boards and commissions in Tennessee were open to the public but not Advisory Commission meetings, Mr. Wiseman said, "Well, I think you need to ask the Supreme Court that."

## CONCLUSION

For these reasons, Plaintiff McCaleb requests that the Court grant his Motion to Compel and enter an Order compelling the Justices' compliance with the Subpoena that commands their deposition testimony.

November 30, 2023                    Respectfully submitted,


*/s/ M. E. Buck Dougherty III*
M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,*
*Executive Editor of The Center Square*

25

**CERTIFICATE OF SERVICE**

I, counsel for Plaintiff, hereby certify that a true and correct copy of the foregoing document has been served on the following counsel of record, via the Court's ECF system by email on this 30th day of November 2023:

JONATHAN SKRMETTI

Office of the Attorney General & Reporter
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202-0207

Andrew C. Coulam
Michael M. Stahl
Robert W. Wison
andrew.coulam@ag.tn.gov
michael.stahl@ag.tn.gov
robert.wilson@ag.tn.gov

*Attorneys for Defendant*
*AOC Director Michelle Long*

Donna Green
Cody Brandon
Liz Evan
donna.green@ag.tn.gov
cody.brandon@ag.tn.gov
liz.evan@ag.tn.gov

*Attorneys for Non-Party*
*Tennessee Supreme Court Justices*

/s/ M.E. Buck Dougherty III