# EXHIBIT 5

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                     NASHVILLE DIVISION
   _____

 3
   DAN McCALEB, Executive Editor
 4 of THE CENTER SQUARE,

 5          Plaintiff,
                                 Case No. 3:22-cv-00439
 6 vs.
                                 Judge Richardson
 7 MICHELLE LONG, in her
   official capacity as          Magistrate Judge
 8 DIRECTOR of the TENNESSEE     Frensley
   ADMINISTRATIVE OFFICE OF
 9 THE COURTS,

10          Defendant.
   _____

11

12

13

14          Videoconference Deposition of:

15          DAN McCALEB

16          Taken on behalf of the Defendants
            October 13, 2023
17
            Commencing at 11:57 a.m.
18

19

20

21
   _____
22
23     Deborah H. Honeycutt, LCR, Associate Reporter
                 Lexitas Legal TENNESSEE
24               1015 Avery Park Circle
                  Smyrna, TN 37167
25                  (615)595-0073
```

*Lexitas Legal TENNESSEE*
*(615)595-0073*

```
 1

 2                    A  P  P  E  A  R  A  N  C  E  S

 3

 4    For the Plaintiff:

 5              MR. M.E. BUCK DOUGHERTY III
                MR. JAMES McQUAID
 6              Attorneys at Law
                Liberty Justice Center
 7              440 N. Wells Street, Suite 200
                Chicago, Illinois 60654
 8              (312)637-2280
                bdougherty@libertyjusticecenter.org.
 9              jmcquaid@libertyjusticecenter.org

10

11    For the Defendants:

12
                MR. MICHAEL M. STAHL
13              Attorney at Law
                Senior Assistant Attorney General
14              P.O. Box 20207
                Nashville, Tennessee  37202-0207
15              (615)253-5463
                michael.stahl@ag.tn.gov
16

17    Also present:

18
                MS. BRIDGET CONLAN, Liberty Justice Center
19

20

21

22

23

24

25
```

```
 1

 2                    S  T  I  P  U  L  A  T  I  O  N  S

 3

 4              The videoconference deposition of

 5    DAN McCALEB was taken by counsel for the

 6    Defendants, by Notice, with all participants

 7    appearing at their respective locations, on

 8    October 13, 2023, for all purposes under the

 9    Tennessee Rules of Civil Procedure.

10              All objections, except as to the form of

11    the question, are reserved to the hearing, and said

12    deposition may be read and used in evidence in said

13    cause of action in any trial thereon or any

14    proceeding herein.

15              It is agreed that Deborah H. Honeycutt,

16    Notary Public and Licensed Court Reporter for the

17    State of Tennessee, may swear the witness remotely,

18    and that the reading and signing of the completed

19    deposition by the witness is waived.

20

21

22

23

24

25
```

```
1                      *   *   *

2

3          THE REPORTER:  Good morning.  My name is

4    Deborah Honeycutt.  I am a stenographic reporter

5    with Lexitas Legal TENNESSEE.  My license number is

6    472.

7               Today's date is October 13, 2023, and

8    the time is approximately 11:57 a.m. Central time.

9               This is the deposition of Dan McCaleb in

10   the matter of Dan McCaleb, Executive Editor of The

11   Center Square vs. Michelle Long, in her official

12   capacity as Director of the Tennessee Administrative

13   Office of the Courts, filed in the District Court

14   for the Middle District of Tennessee, Nashville

15   Division.  The Case Number is 3:22-cv-00439.

16               This deposition is being taken by

17   videoconference, and the oath will be administered

18   remotely by me.  Any digital exhibits marked during

19   this deposition will be deemed as "original" for

20   purposes of said deposition.

21               At this time, I will ask counsel to

22   identify yourselves and state whom you represent.

23   If you have any objections with the procedures I've

24   outlined, please state so when you introduce

25   yourself.  We will start with the noticing attorney.
```

```
 1                  MR. STAHL:  Michael Stahl, representing
 2    Michelle Long, the defendant.
 3                  MR. DOUGHERTY:  Buck Dougherty
 4    representing the plaintiff, Dan McCaleb.  And just
 5    one objection for the record.  I don't recall this
 6    being noticed as a video-recorded deposition which I
 7    believe is required under the Rules.  We're going to
 8    reserve the right to raise that if it's to be
 9    recorded, but I just want to get that for the
10    record.
11                  THE REPORTER:  I am recording that for
12    my purposes only, Mr. Dougherty.
13                  MR. DOUGHERTY:  Thank you.
14                  MR. McQUAID:  And James McQuaid also for
15    Plaintiff, Dan McCaleb.
16
17                           *    *    *
18                        DAN McCALEB
19    was called as a witness, and after having been duly
20    sworn, testified as follows:
21
22                        EXAMINATION
23    QUESTIONS BY MR. STAHL:
24    Q.    Okay.  Mr. McCaleb, we'll begin.  Can you
25    state your name for the record.
```

```
1    A.      Dan McCaleb.

2    Q.      And you understand that you're under oath

3    today, sir, right?

4    A.      I do, yes.

5    Q.      And are you represented by counsel?

6    A.      I am.

7    Q.      And who is that?

8    A.      Liberty Justice Center, Buck Dougherty,

9    Mr. Buck Dougherty, lead counsel.

10   Q.      Okay.  Thank you.  Have you ever given a

11   deposition or provided testimony in a court case

12   before?

13   A.      I gave one deposition many, many years ago,

14   18 or 19 years ago.

15   Q.      What was that case?  Do you remember?

16   A.      The case name or number I don't remember.  I

17   remember some very few details but no.

18   Q.      Well, let me just go over some procedures so

19   that we are on the same page since it's been a

20   while.  The first is that if you can't hear me or

21   you don't understand a question please let me know.

22   It's really important that you understand the

23   questions that I'm asking before you give your

24   answer.  So if that comes up, if there's technology

25   issues because we're remote or whatever, just feel
```

*LEXITAS* **TENNESSEE**
(615)595-0073

```
 1   free to let me know, please.  If you don't
 2   understand something or need clarification, I can
 3   definitely help you with that.  It's best if you let
 4   me finish my question before you start to give your
 5   answer for a couple of reasons.  One, so that you
 6   know the question that I'm asking and then, two, so
 7   that the court reporter can be sure to get down what
 8   everyone is saying because if people start talking
 9   over each other, the transcript just gets a little
10   bit messy.
11          In that vein, it's also important that you
12   give verbal responses.  So sometimes during
13   depositions people will shake their heads or give
14   uh-huh or huh-uh answers.  And, again, that's hard
15   for the transcript to reflect.  So please do your
16   best to give verbal responses.
17          If you need a break, that's perfectly fine.
18   Just let me know.  We can take a break.  I don't
19   think this will take all that long, but if at any
20   time you feel like you need a break, that's
21   perfectly fine.  You can let me know or let your
22   attorney know.  The only thing that I ask is that if
23   I have asked you a question already, that you answer
24   that question before we go on break.  Does that
25   sound good?
```

```
 1   A.     Yes.

 2   Q.     Great.  As far as your mental condition

 3   today, is there reason why you believe you can't

 4   give full and complete answers?

 5   A.     No.

 6   Q.     Are you under any medication or substances

 7   that would impair your ability to give honest

 8   testimony?

 9   A.     No.

10   Q.     Have you talked with anyone in preparation

11   for today's deposition?

12   A.     My attorney.

13   Q.     Anyone else?

14   A.     No.

15   Q.     Have you reviewed anything in preparation for

16   today's deposition?

17   A.     I have reviewed some of our filings, our

18   amended lawsuit, and my declarations.

19   Q.     And Buck mentioned before we went on the

20   record that you didn't have anything with you today

21   but I'll just ask again for the transcript.  Did you

22   bring anything with you today?

23   A.     I brought printouts of what I just mentioned

24   but I don't have them on me here, no.

25   Q.     Okay.  Let's just go through some
```

1  biographical information.  What's your address?

2  A.    My personal address is 726 Windsor Drive,

3  Crystal Lake, Illinois.

4  Q.    So you're a resident of Illinois then?

5  A.    Yes.

6  Q.    Do you have any other addresses in any other

7  states?

8  A.    No.

9  Q.    Are you a resident of any other state?

10 A.    No.

11 Q.    What is your occupation?

12 A.    Journalist.

13 Q.    How long have you been doing that?

14 A.    More than 30 years.

15 Q.    Are you an independent journalist, or do you

16 work for someone?

17 A.    I work for The Center Square.

18 Q.    Okay.  And how long have you worked for them?

19 A.    Since 2017, although we weren't known as The

20 Center Square in 2017.

21 Q.    What were you known as in 2017?

22 A.    Illinois News Network.

23 Q.    And when you say that you're now known as The

24 Center Square, was that because you changed your

25 business license or just the name or what

```
 1  precipitated the change from the Illinois News
 2  Network to Center Square?
 3  A.     Well, in 2017 when I joined, we were covering
 4  just Illinois only.  And then we expanded our
 5  coverage to across the country and Illinois News
 6  Network didn't work for Tennessee or Pennsylvania,
 7  for example.
 8  Q.     Okay.  Before you worked for Illinois News
 9  Network, where did you work?
10  A.     I worked for Shaw Media.
11  Q.     Was that also in Tennessee -- or in Illinois?
12  A.     Yes, Illinois.  I was in Illinois.  Illinois
13  and Iowa, yes.
14  Q.     All right.  Do you know why we are here
15  today?
16  A.     Yes.
17  Q.     What is your understanding of why we're here
18  today?
19  A.     I am giving a deposition in a lawsuit against
20  Defendant Michelle Long.
21  Q.     And what is the purpose of that lawsuit?
22  A.     To open up the Bench Bar Advisory Commission
23  in Tennessee to public scrutiny, essentially.
24  Q.     When you say public scrutiny, are you
25  limiting that to press or is it your understanding
```

```
 1   that this lawsuit would apply to the entirety of the
 2   public?
 3   A.      The press and the public.
 4   Q.      Okay.  The caption in the lawsuit says that
 5   you are the plaintiff as executive editor of The
 6   Center Square.  So is it your understanding that you
 7   are filing this suit as a private citizen or as a
 8   member of the press?
 9   A.      As a member of the press.
10   Q.      Have you reviewed all the pleadings in this
11   case?
12   A.      Yes.
13   Q.      Do you agree with everything that's been
14   filed on your behalf?
15   A.      Yes.
16   Q.      Why did you initiate this lawsuit?
17   A.      As a 30-plus-year journalist I believe in
18   open government.  When I learned that this was
19   closed, I asked the question, what are they hiding,
20   as I would in any situation.  So I looked into it
21   further and thought it was appropriate to get the
22   meetings open.
23   Q.      When you say you learned that they were
24   closed, how did you learn that they were closed?
25   A.      I think my first information about it had to
```

*LexiTas* TENNESSEE
(615)595-0073

1  do with Ms. Long's statement or a policy position
2  that she put out that had to do with concerns about
3  safety and security and closing -- was it the
4  Tennessee Judicial Conference?  I started looking
5  into it after that.
6  Q.    So you believe that you saw a policy from
7  Michelle Long that indicated that the Tennessee
8  Rules Advisory Commission on Practice and Procedure
9  were closed to the public?
10          MR. DOUGHERTY:  Object to the form of
11  the question.
12  BY MR. STAHL:
13  Q.    You can answer.
14  A.    Okay.  No.  No.  Initially it was the
15  Tennessee Judicial Conference, I think is what the
16  name of it is.  I think it came from Michelle Long,
17  yes.
18  Q.    But that was a policy that you saw that
19  indicated that the Judicial Conference was closed to
20  members of the public?
21  A.    I don't know if you'd call it a policy or a
22  rule or whatever but the Judicial Conference was
23  closed.
24  Q.    Well, what would you call it?
25  A.    I guess if they're acting on the policy, I'd

| 1 | call it a rule that was put in place. |
| 2 | Q.    And where did you see this rule? |
| 3 | A.    On the Tennessee judicial website, |
| 4 | tncourts.gov, I believe it is. |
| 5 | Q.    When was the last time you saw this policy? |
| 6 | Or the rule? |
| 7 | A.    When I reviewed my filings, I believe. |
| 8 | Q.    When did you review those filings? |
| 9 | A.    Over the course of this week. |
| 10 | Q.    So within the past week you saw a policy or a |
| 11 | rule on the Tennessee Judicial website from Michelle |
| 12 | Long that said the Tennessee Judicial Conference was |
| 13 | closed to members of the public? |
| 14 |         MR. DOUGHERTY:  Object to the form of |
| 15 | the question. |
| 16 |         THE WITNESS:  I have reviewed a lot of |
| 17 | documents in the past week, so I guess I can't state |
| 18 | specifically.  I definitely read something related |
| 19 | to concerns over security and safety for members of |
| 20 | the Tennessee Judicial Conference. |
| 21 | BY MR. STAHL: |
| 22 | Q.    Was this lawsuit filed in the last week? |
| 23 | A.    No. |
| 24 | Q.    Do you remember when you filed this lawsuit? |
| 25 | A.    June of 2022. |

```
1    Q.    Okay.  So what caused you to believe prior to
2    June of 2022 that the Tennessee Commission on the
3    Rules of Practice and Procedure were closed to the
4    public?
5              MR. DOUGHERTY:  Object to the form of
6    the question.
7              THE WITNESS:  I want to say it started
8    with that, with -- with -- I'm sorry -- with the --
9    the policy or the rule from Ms. Long.
10   BY MR. STAHL:
11   Q.    So, just to be clear, prior to June of 2022,
12   you saw a policy or a rule on the Tennessee Judicial
13   website from Ms. Long saying that the Tennessee
14   Judicial Commission was closed to the public and you
15   assumed that the Tennessee Rules of Practice and
16   Procedure Commission was also closed to the public?
17   A.    No, I did not assume that.
18   Q.    So what made you file this lawsuit to open
19   the meetings of the Tennessee Advisory Commission on
20   the Rules of Practice and Procedure?
21   A.    I started looking into it further and one of
22   the things I recall saying is that this, semantics,
23   you call it the Advisory Commission, Bench Bar
24   Committee, that they were supposed to meet
25   periodically.  But I did not -- I couldn't find
```

1   anywhere on this judicial website any advisories of

2   any meetings and so that drew more suspicion from

3   me.

4   Q.    Okay.  So you said you looked into it further

5   and you said that you didn't see any notices

6   indicating that the Commission meetings were open to

7   the public; is that right?

8   A.    Correct.  Or -- yes, correct.  But if memory

9   serves, I didn't even see any -- not just open to

10  the public, but any schedules of meetings.

11  Q.    Okay.  And why does the lack of scheduled

12  meetings indicate that meetings aren't open to the

13  public?

14  A.    Well, experience in 30 years of journalism.

15  I have gone to a lot of government websites.  I have

16  attended a lot of government meetings.  And if

17  meetings are open to the public, there's generally

18  supposed to be public notice.

19  Q.    So you say generally.  Does that mean there

20  are instances when that's not the case?

21  A.    The public meetings I think there needs to be

22  public notice.

23  Q.    So when there wasn't public notice that you

24  could find about the Tennessee Commission on the

25  Rules of Practice and Procedure, did you do anything

1   else to confirm that those meetings weren't open to
2   the public?
3   A.     Did I do anything else?  I kept looking, kept
4   digging, I think, kept investigating.  In terms of
5   specifics, I don't recall exactly what I did.
6   Q.     Well, that's difficult for me to understand
7   that you think you did stuff but you can't tell me
8   what you did.  So I've got to keep asking some
9   questions about that.  So you said you kept digging.
10  What did that mean?
11              MR. DOUGHERTY:  Object to the form of
12  the question.
13              THE WITNESS:  I kept searching this
14  particular website, and I think I went to the State
15  of Tennessee's website, and I just kept looking,
16  what's going on.  I had the question what's going on
17  here?  Why are these meetings not -- why is there
18  not public notices for these meetings?  That's,
19  essentially, it.
20  Q.     Okay.  So when you didn't see the public
21  notice for the meetings, you continued to look for
22  the public notice meetings on that website you
23  visited and other state websites; is that fair?
24  A.     Yes.  Actually, I looked at the federal
25  judiciary website and I noticed something very

LexitasTENNESSEE
(615)595-0073

1  similar to the Tennessee Bench Bar Committee and

2  noticed that they were open as well.  Or that they

3  were open, excuse me, not as well.

4  Q.    Okay.  So after not finding a public notice

5  for the Tennessee Advisory Rule Commission meetings,

6  did you do anything else to confirm whether those

7  meetings were open to the public?

8  A.    I think I have answered the question.  I kept

9  looking.  But yes, that was the end of it.

10  Q.    Okay.  Well, thinking you answer my question

11  and answering my questions sometimes is different

12  for different people.  So I'm trying to get some

13  good clarity on this.

14       You looked online for public notices of the

15  Tennessee Advisory Commission meetings in multiple

16  places; you couldn't find the meeting notices; and

17  so you filed suit; is that right?

18  A.    Yes, eventually.

19  Q.    Did you ever call anyone and ask them, either

20  in the state government or the Tennessee judiciary,

21  about the public notice or lack thereof?

22            MR. DOUGHERTY:  Object to the form of

23  the question.

24            THE WITNESS:  Can you repeat it?

25  / /

```
 1   BY MR. STAHL:

 2   Q.      Did you ever call anyone in the Tennessee

 3   state government or the Tennessee judiciary to ask

 4   or confirm why you couldn't find a public notice for

 5   the Tennessee Commission meetings on Rules of

 6   Practice and Procedure?

 7   A.      Not that I recall, no.

 8   Q.      Did you email anyone asking that same

 9   question?

10   A.      Within Tennessee state government, not that I

11   recall, no.

12   Q.      Have you ever been a named plaintiff before?

13   A.      No.

14   Q.      Have you ever been a named defendant before?

15   A.      No.

16   Q.      Your pleadings in this case indicate that you

17   are the executive editor at The Center Square

18   organization; is that right?

19   A.      Yes.

20   Q.      I think The Center Square website has you

21   listed as vice president of news and content,

22   though.  Can you explain that discrepancy?

23   A.      I am vice president of news and content for

24   the Franklin News Foundation, which is the 501(c)(3)

25   non-profit that publishes The Center Square, and
```

LEXITAS TENNESSEE
(615)595-0073

```
 1   other things.

 2   Q.    So are you still an executive editor at

 3   Center Square?

 4   A.    Yes.

 5   Q.    And what does it mean to be an executive

 6   editor at The Center Square?

 7   A.    I am the top editor.  I make final decisions

 8   on editorial judgment issues.

 9   Q.    Do you have a particular area that you work

10   within for The Center Square in doing your editorial

11   comments, meaning sports, politics, anything like

12   that, or is it just general editorial purview?

13   A.    We're focused on government news.

14   Q.    Okay.  How many employees are there at The

15   Center Square?

16   A.    I think we are at about 27 or 28 right now.

17   Q.    Okay.  And is that organization online only,

18   or do they have a print or video arm?

19   A.    We -- we do do some video.  We are print

20   only -- or, excuse me -- online only.  We do not

21   have a print arm.

22   Q.    And you said that The Center Square was born

23   out of the Illinois News Network in 2017; is that

24   right?

25   A.    I joined Illinois News Network in 2017.  We
```

LexiTas TENNESSEE
(615)595-0073

1 launched The Center Square in 2019.

2 Q. And was The Center Square a completely

3 separate organization when you launched it or was it

4 the same as the Illinois News Network under just a

5 new name?

6 A. We folded Illinois News Network into The

7 Center Square.

8 Q. Who hired you to The Center Square?

9 A. It's the same person who hired me to Illinois

10 News Network. Chris Krug.

11 Q. And who is he? Is he the founder of The

12 Center Square?

13 A. He is the president of the Franklin News

14 Foundation which publishes The Center Square.

15 Q. Is The Center Square registered as a business

16 in Tennessee?

17 A. I honestly don't know the answer to that

18 question. Well, I think we have tax status. I

19 think that's the best I can say.

20 Q. And what is the organizational structure

21 between The Center Square and Franklin News?

22 A. The organizational structure, Franklin News

23 is the 501(c)(3) nonprofit that publishes The Center

24 Square. I do report up to the president of the

25 Franklin News Foundation. We also have other

```
 1    separate websites that some of which that I'm
 2    directly involved in, that also go up to the
 3    Franklin News Foundation.
 4    Q.     Is the president of the Franklin News
 5    Foundation Chris Krug?
 6    A.     Correct, yes.
 7    Q.     Okay.  To the best of your knowledge, is
 8    Franklin News registered as a business in Tennessee?
 9    A.     I don't know.
10    Q.     Do you have the ability to hire and fire
11    people as executive editor of The Center Square?
12    A.     Yes.
13    Q.     Do you decide what gets reported on?
14    A.     Ultimately, if there is question about it,
15    yes.  But I don't get involved in every single daily
16    news coverage decision.
17    Q.     So maybe you can walk me through.  How does a
18    news article get published on The Center Square?  Is
19    it assigned by you to a reporter?  Does someone come
20    to you with an idea?  How does that the process
21    work?
22    A.     It's a combination.
23    Q.     A combination of what?
24    A.     A combination of me or other editors
25    assigning stories to reporters or reporters going up
```

LEXITAS TENNESSEE
(615)595-0073

```
1   to editors saying I think we should cover this
2   today.  We have a daily ongoing what we call a news
3   budget.  Not a financial budget.  A news budget.
4   Here's the stories that we can work on and we have
5   daily meetings to discuss the options.
6   Q.    And do you give final approval on what gets
7   approved for a story, meaning, what gets funded to
8   investigate that story, or do you only give final
9   approval for what gets printed on the website?  How
10  does that work?
11  A.    We have 27, 28 staff on The Center Square.
12  We publish, I don't know, anywhere in the
13  neighborhood of 70 stories a day.  I don't give
14  final approval on every single story.  More
15  controversial stories, I might.  If something comes
16  to my attention, I'll say we need to go get that,
17  but I do not give final approval on every single
18  story.  No, I couldn't possibly.
19  Q.    Do you assign stories to reporters?
20  A.    Yes.
21  Q.    Did you assign anyone or have you ever
22  assigned anyone to do a story or an article on the
23  Tennessee Commission on the Rules of Practice and
24  Procedure?
25  A.    Not directly assign.  I made staff aware of
```

*Lexitas TENNESSEE*
(615)595-0073

```
 1   the lawsuit.

 2   Q.     Can you explain to me what you mean when you

 3   say you made them aware of the lawsuit?

 4   A.     I let staff know that we -- not me

 5   personally -- as the executive of The Center Square,

 6   we're filing a lawsuit.

 7   Q.     Prior to filing the lawsuit, had you ever

 8   edited or wrote an article about the Tennessee

 9   Commission on Rules of Practice and Procedure?

10   A.     Me personally, no.

11   Q.     Had you ever prior to the lawsuit assigned

12   anyone to write an article or cover a story in some

13   way about the Tennessee Commission on Rules of

14   Practice and Procedure?

15   A.     No.

16   Q.     Have you written about this case online or

17   anywhere in print?

18   A.     Me personally?

19   Q.     Yes.

20   A.     No.

21   Q.     Have you commented about this case in any

22   video or audio platform?

23   A.     No.

24   Q.     Have you written any articles regarding

25   public access under the First Amendment?
```

```
 1   A.     Public access in general?  Not specific to

 2   this case, I guess is what I'm asking?

 3   Q.     That's right.

 4   A.     Yes.  I'm sure I have, plenty of times.

 5   Q.     Can you think of any of them?

 6   A.     Can I have a second or a moment to consider?

 7   Can you repeat the question first so I know what I'm

 8   considering?

 9   Q.     I am trying to figure out if you've ever

10   written about the First Amendment's right to public

11   access in any online forum or print forum or

12   anything like that in general?

13   A.     I'm sure I have.  I would have to get back to

14   you on that, though.  In the moment nothing is

15   immediately coming to mind.

16   Q.     Okay.  If the Advisory Commission on the

17   Rules of Practice and Procedure in Tennessee were

18   open to the public, would you attend those?

19   A.     Me personally, no.

20   Q.     Yes.

21   A.     No.  Me personally, I would not attend them

22   in person.  I'm in Chicago or the Chicago suburb.

23   I'm in Illinois.  I would not come attend them in

24   person.  I would certainly at least initially

25   observe them if they were available via Zoom or a
```

1    Zoom-like platform.

2    Q.    So would you be satisfied with an electronic

3    recording of the videos in terms of public access?

4              MR. DOUGHERTY:  Object to the form of

5    the question.

6              THE WITNESS:  No.

7    BY MR. STAHL:

8    Q.    So you wouldn't attend them but you would

9    expect them to be electronically recorded?

10             MR. DOUGHERTY:  Object to the form of

11   the question.

12             THE WITNESS:  Live webcast, plus open to

13   in-person observation.

14   BY MR. STAHL:

15   Q.    So you say recorded.

16   A.    I'm a little confused by when you use the

17   term "recorded".

18   Q.    What about the term "recording" is confusing

19   you?

20   A.    Well, you can live webcast a hearing and then

21   put up a recording of the live webcast of the

22   hearing at some point after the fact, or you can not

23   live webcast it and then you can just put up a

24   recording of it at some point after the fact.  So I

25   just want to differentiate between the two.  Live

LEXITAS TENNESSEE
(615)595-0073

```
 1  webcast is a term I'm using for actually seeing it
 2  as it's going on.
 3  Q.    Okay.  So you have no intention of ever
 4  physically attending a Tennessee Commission meeting
 5  on the Rules of Practice and Procedure?
 6  A.    Me personally?
 7  Q.    Yes.
 8  A.    No immediate intention, no.  I might happen
 9  to find myself needing to.
10  Q.    Would you expect to send someone to cover
11  those meetings if they were open to the public?
12         MR. DOUGHERTY:  Object to the form of
13  the question.
14         THE WITNESS:  Can you repeat the
15  question?
16  BY MR. STAHL:
17  Q.    If the meetings were open to the public,
18  would you as executive editor of The Center Square
19  expect to send a reporter or someone on behalf of
20  The Center Square to observe those meetings in
21  person?
22  A.    That's very possible, yes.
23  Q.    Have you ever tried to do that before?
24  A.    Specific to this case?  No.
25  Q.    Okay.  Not specific to this case, but in your
```

LexitasTENNESSEE
(615)595-0073

```
 1   time as editor of any organization, your 30 years of
 2   journalism as you put it, have you ever assigned
 3   anyone to attend the Tennessee Commission on Rules
 4   of Practice and Procedure in person?
 5   A.     Not that I recall.
 6   Q.     And, to be clear, you've never written
 7   anything about the Tennessee Rules of Practice and
 8   Procedure in your time as a journalist?
 9   A.     Me personally?
10   Q.     Yes.
11   A.     No.
12   Q.     Do you host or contribute regularly to any
13   podcasts?
14   A.     Yes.
15   Q.     What podcast is that?
16   A.     I'm on four podcasts.
17   Q.     Okay.  What are those?
18   A.     America in Focus.  Illinois in Focus.
19   Wisconsin in Focus.  And Education in Focus.
20   Q.     Have you ever discussed the Tennessee
21   Advisory Commission on Rules of Practice and
22   Procedure in any of those podcasts?
23   A.     No.
24   Q.     What is heartlandernews.com?
25   A.     I don't know.
```

```
1   Q.      When you decided to file suit in this case,
2   did you need anyone's permission to do that as
3   executive editor of The Center Square?
4               MR. DOUGHERTY:  Object to the form of
5   the question.
6               THE WITNESS:  No.  I alerted my
7   publisher that we were going to do it, just for
8   communication sake.
9   BY MR. STAHL:
10  Q.      When you say --
11  A.      Not permission.
12  Q.      -- your publisher, do you mean Chris Krug?
13  A.      Yes.
14  Q.      So you never spoke to him about the case
15  prior to deciding to file?
16  A.      I don't recall.
17  Q.      Have you ever been to Tennessee, Mr. McCaleb?
18  A.      Yes.
19  Q.      And what did you come to Tennessee for?
20  A.      The last time I was in Tennessee was actually
21  for a First Amendment conference.
22  Q.      When was that?
23  A.      2017 or 2018.
24  Q.      Have you ever attempted to attend any other
25  Tennessee State Commission meetings other than the
```

```
 1   Tennessee Commission on Rules of Practice and
 2   Procedure?
 3   A.      Me personally?
 4   Q.      Yes.
 5   A.      No.
 6   Q.      Have you ever sent any reporters on your
 7   behalf as an editor, either at The Center Square or
 8   as an editor at another journalistic platform, to
 9   Tennessee State Commission meetings other than the
10   Tennessee meeting on Rules of Practice and
11   Procedure?
12   A.      So I got the first part.  Tennessee
13   Commission meetings or like any kind of Tennessee
14   meetings, like legislative meetings, or be specific.
15   Are you talking about the judiciary?
16   Q.      I'm talking about Tennessee State Commission
17   meetings, so any commission representing the State
18   of Tennessee in any capacity.
19   A.      I guess I'm a little confused by what you
20   mean by commission.  Would that include
21   legislative-type of meetings or like committees of
22   legislature, et cetera?  I'm just trying to get a
23   better understanding of what you're asking.
24   Q.      Sure.  No.  I can appreciate that.  Well, let
25   me ask you this.
```

1          Are you aware of how many commissions there

2    are in Tennessee under the Tennessee Supreme Court?

3    A.     I know I have seen a number.  I want to say

4    it was between 15 and 20.

5    Q.     Okay.  So limiting my question to those 15 to

6    20 committees, have you sent anyone on your behalf

7    or as an editor either at The Center Square or any

8    other organization that you've ever worked for as a

9    journalist to any of those other commission meetings

10   except the Tennessee Commission on Rules of Practice

11   and Procedure?

12   A.     No.  It wasn't until I realized that these

13   meetings were closed that it piqued my curiosity.

14   Q.     What piqued your curiosity?

15   A.     When government to tries to close meetings,

16   from my 30-plus years of experience, it piques my

17   curiosity.  What are they trying to hide, I ask

18   myself.

19   Q.     So any time that your learn of a government

20   meeting that's not open to the public you file suit?

21             MR. DOUGHERTY:  Object to the form of

22   the question.

23             THE WITNESS:  No.  I think this was my

24   first lawsuit --

25   / /

```
 1   BY MR. STAHL:

 2   Q.      Okay.

 3   A.      -- on behalf of The Center Square.

 4   Q.      Well, now you just qualified it.  Your first

 5   lawsuit on behalf of The Center Square.  Does that

 6   mean --

 7   A.      No.  My first lawsuit, yes.

 8   Q.      Okay.

 9   A.      I'm saying it's not me personally.  But yeah.

10   I have not filed any other lawsuits, here or in

11   previous experiences.

12   Q.      There was a June 9th, 2023 meeting of the

13   Commission for the Tennessee Rules of Practice and

14   Procedure that was recorded and placed on YouTube.

15   Did you watch that?

16   A.      I did.

17   Q.      Have you ever served as member on any state

18   board or commission in Tennessee?

19   A.      No.

20   Q.      What about Chicago or, rather, Illinois?

21   A.      Like -- repeat the question specifically to

22   Chicago or Illinois.

23   Q.      Have you ever served as a member on any state

24   board or commission in Illinois?

25   A.      No.
```

LexStat TENNESSEE
(615)595-0073

```
1   Q.      Do you believe that there is an access to

2   justice crisis in Tennessee?

3   A.      Problem, yes.  Crisis, maybe so.  That's, you

4   know -- that's subjective, I guess.

5   Q.      It is subjective.  And I'm just asking for

6   your opinion.  What leads you to believe that there

7   is an access to justice problem and/or crisis in

8   your opinion?

9   A.      If you were -- I guess, in terms of the data,

10  there's plenty of people who don't have the means to

11  hire an attorney to represent them.  That would be

12  true in Tennessee and many states across the

13  country.  I can't unequivocally say every state but

14  certainly that is an issue.

15  Q.      Do you have any data that's Tennessee

16  specific to support that statement?

17  A.      No specific data, no.

18  Q.      Have you talked with anyone who is a

19  Tennessee resident who has expressed to you that

20  they have trouble hiring a lawyer in Tennessee?

21              MR. DOUGHERTY:  Object to the form of

22  the question.

23              THE WITNESS:  Who they personally had --

24  repeat the question.  I'm sorry.

25  / /
```

LexisTas TENNESSEE
(615)595-0073

BY MR. STAHL:

Q.    Have you ever talked with anyone who is a
Tennessee resident who has expressed their
difficulty in hiring a lawyer in Tennessee?

A.    No.

Q.    Do you know what a pro se litigant is,
Mr. McCaleb?

A.    Yes.

Q.    Are you a pro se litigant?

A.    No.

Q.    In your opinion, does this suit involve the
rights of pro se litigants?

            MR. DOUGHERTY:  Object to the form of
the question.

            THE WITNESS:  Go ahead and answer.

BY MR. STAHL:

Q.    Yes, you can answer.

A.    Yes.

Q.    In what way?

A.    Pro se litigants, more than maybe other
litigants who have representation, have a more
difficult time understanding, accessing, et cetera,
with the court system.  And by opening these
meetings up to the public and a journalist to cover
these meetings, they have a better opportunity to

1    understand the court system.

2    Q.    Have you ever spoken with any Tennessee

3    resident who has acted as a pro se litigant in a

4    lawsuit?

5    A.    No.

6    Q.    Have you ever talked to a Tennessee resident

7    who has expressed to you their desire to attend the

8    Tennessee Commission on Rules of Practice and

9    Procedure?

10   A.    No.

11   Q.    As a journalist and as someone who you

12   mentioned attended a conference on the First

13   Amendment, have you read the first amendment to the

14   Constitution?

15   A.    Yes.

16   Q.    Why do you think that particular amendment

17   requires the State of Tennessee to open its Advisory

18   Commission meetings to the public?

19   A.    Well, I'm not a lawyer.  I'm not a

20   constitutional lawyer.  But as a 30-year journalist,

21   you've learned some things here and there.  And when

22   policy decisions are being made that can affect a

23   certain body or can affect the taxpayers and voters

24   and general public, that general public should have

25   access to those meetings in my experience.

```
 1   Q.     Where is that found in the First Amendment?
 2   A.     Again, I'm not a lawyer.  I'm not a
 3   constitutional lawyer.
 4   Q.     I understand.  And I don't really want to go
 5   back and forth on this, but I'm going to keep
 6   asking.  You've read the First Amendment?
 7   A.     Yes.
 8   Q.     Right?
 9   A.     Yes.
10   Q.     What part of the First Amendment supports
11   your claim that the State of Tennessee is required
12   to open its Advisory Commission meeting to the
13   public?
14   A.     They have a right to petition the government
15   to access of the government.  Again, that's the best
16   I can do on that one.
17   Q.     Are you familiar with the Tennessee
18   Administrative Office of the Courts, otherwise
19   referred to in these pleadings as the AOC?
20             MR. DOUGHERTY:  Object to the form of
21   the question.
22             THE WITNESS:  Yes.  Yes.  I know it as
23   the TAOC but same thing I guess, yes.
24   BY MR. STAHL:
25   Q.     Yes.  That's what I'm talking about.  So I'm
```

Lexitas    TENNESSEE
(615)595-0073

1    just going to ask you have you ever talked to any

2    member of the TAOC?

3    A.      No.

4    Q.      We mentioned earlier that the TAOC website

5    lists and I think you numbered 15 to 20 different

6    commissions.  Do you remember talking about that?

7    A.      Yes.  And that was an educated guess but yes.

8    Q.      Sure.  And it doesn't have to be perfect.

9    A.      Yes.

10   Q.      Do you have an opinion as to whether or not

11   the Advisory Commission meetings are meaningfully

12   different from the work being done in any of those

13   other commissions?

14            MR. DOUGHERTY:  I object to the form of

15   the question.

16            THE WITNESS:  Well, I've watched one of

17   these Advisory Commission meetings.  I have not

18   watched any of the other ones, so I can't speak for

19   the other ones.

20   BY MR. STAHL:

21   Q.      If you learned that those other commission

22   meetings were not open to the public, would you

23   expect to file suit under the First Amendment to

24   have those meetings open as well?

25   A.      I guess it would depend on what the

LEXITAS TENNESSEE
(615)595-0073

1    committees are supposed to do.  If they are setting

2    policy or recommending policy for the courts to

3    follow or for potential legislation then yes.

4    Q.    How would you know if a committee was

5    creating or recommending policy?

6    A.    Well, I guess by digging into it, by asking

7    questions.  If memory serves, these committees in

8    Tennessee mirror or very closely mirror the same

9    committees in the federal judiciary.  And looking

10   into the -- I haven't done this so I can't speak to

11   it, but the mirrored committee meeting at the

12   federal level and its similar name at the state

13   level, I guess you could assume, we don't like to

14   assume, that it's doing something similar that the

15   Federal Judiciary Committee has done.

16   Q.    Okay.  So I think we walked through this a

17   little bit earlier.  But I asked you what you had

18   done to investigate the Tennessee Rules of Practice

19   and Procedure Commission prior to filing suit to

20   have those meetings open to the public.

21         And if I'm right, you hadn't attended any of

22   those; you hadn't watched any of those; so how did

23   you know that that committee was creating policy or

24   recommending policy that would require that

25   committee to be open to the public?

```
 1              MR. DOUGHERTY:  Object to the form of

 2   the question.

 3              THE WITNESS:  The Advisory Commission,

 4   the Bench Bar Commission, is what you're referring

 5   to?

 6   BY MR. STAHL:

 7   Q.     Yes.

 8   A.     I know what commission you're talking about.

 9   Please ask me the question again.

10   Q.     Well, I'm trying to understand your earlier

11   statement that you wouldn't necessarily file suit if

12   you learn that a commission was not open to the

13   public unless that commission was creating policy or

14   recommending policy.  And I'm trying to understand

15   how you learned or what led you to believe that the

16   Tennessee Commission on Rules of Practice and

17   Procedure satisfied those terms, that it created

18   policy or advised on policy.

19   A.     I think just by this committee's name itself.

20   Q.     So if a committee has a name that you think

21   indicates it creates policy or recommends policy,

22   you automatically believe that that meeting should

23   be open to the public under the First Amendment?

24   A.     Yes.

25   Q.     Do you know if the federal analog to the
```

1    Tennessee Rules of Practice and Procedure, the

2    Federal Rules Advisory Commission, live stream their

3    meetings?

4    A.     If you look under the federal version of the

5    Tennessee Commission.

6    Q.     Yes.

7    A.     I guess I honestly, I'm not positive, but I

8    think they do.  But that's -- I have not watched

9    one, a live committee meeting of the Federal Policy

10   Committee.

11   Q.     Have you ever attempted to watch one, done a

12   search for it on the YouTube or on the federal

13   websites?

14   A.     I did do searches on the federal websites.

15   And I seem to recall -- I can't say specifically

16   that they were live webcasts but I do recall seeing

17   some either YouTube video or some video of the

18   conference meetings.

19   Q.     If you were to learn that the Federal

20   Advisory Commission doesn't live stream their

21   meetings but records them and puts them on a

22   platform such as YouTube after the fact, would that

23   change your opinion as to whether the Tennessee

24   Commission on Rules of Practice and Procedure could

25   do the same?

*Lexitas TENNESSEE*
*(615)595-0073*

1      MR. DOUGHERTY:  Object to the form of
2  the question.
3           THE WITNESS:  No.
4  BY MR. STAHL:
5  Q.    So if the Federal Advisory Commission were
6  electronically recording their meetings and putting
7  them on a platform after the fact, not live
8  streaming them, would you file suit under the First
9  Amendment to have them open their meeting to the
10  public?
11         MR. DOUGHERTY:  Object to the form of
12  the question.
13         THE WITNESS:  I'd think long and hard
14  about it, yes.
15  BY MR. STAHL:
16  Q.    Did you review your expert's opinion in this
17  case, Mr. Barton?
18  A.    I was on the live stream of his deposition.
19  I did get distracted at times, so I can't say I
20  heard every single word from start to finish, but I
21  heard large chunks of it.
22  Q.    There was a portion, a statement made in that
23  opinion, that said the Tennessee Rules of Procedure
24  have a direct effect on every citizen in the state
25  of Tennessee.  Do you agree with that statement?

1   A.    I'm sorry, I'm going to have to ask you to

2   repeat it one more time.

3   Q.    Mr. Barton's opinion made a statement that

4   the Tennessee Rules of Procedure have a direct

5   effect on every citizen in the state of Tennessee

6   and I was just wondering if you agree with that

7   statement?

8   A.    I can't say one way or the other.  I think it

9   has a direct effect on many people in the state of

10  Tennessee.  I would need to probably hear arguments

11  for and against to say whether or not I agreed with

12  that 100 percent.

13  Q.    Do you believe that the Tennessee Rules of

14  Procedure affect you as a citizen of Illinois?

15  A.    Only insomuch as governments close meetings,

16  if no one challenge that, more governments will

17  close meetings.  And so it could yes, indirectly,

18  yes.

19  Q.    Well, I don't mean the meetings.  I mean the

20  actual Tennessee Rules of Procedure for filing a

21  suit, if you're a citizen of Tennessee and you're

22  involved in the court system, the Tennessee Rules of

23  Procedure would apply to you.

24        But would they apply to you, Mr. McCaleb, as

25  a citizen of Illinois?

```
 1   A.     Not that I'm aware of.

 2   Q.     Who is John Styf?  And I may not be saying

 3   that last name right, S-t-y-f.

 4   A.     Styf.

 5   Q.     Styf.  Who is Mr. John Styf?

 6   A.     He is a reporter for The Center Square.

 7   Q.     How do you know him?

 8   A.     He is an employee of mine.

 9   Q.     Does he report to you?

10   A.     Up through the chain.  I'm not his direct

11   supervisor.

12   Q.     Have you ever had conversations with him?

13   A.     Yes.  I'm in meetings every day with him and

14   the whole staff, yes.

15   Q.     Have you ever discussed this case with him?

16   A.     I made him aware of the case, and I made him

17   aware of the court's ruling back in March.

18   Q.     So to your best recollection, has he written

19   anything about this case?

20   A.     Yes.

21   Q.     Did you provide any editorial comment about

22   that?

23              MR. DOUGHERTY:  Object to the form of

24   the question.

25              THE WITNESS:  I provided a statement
```

1  through -- I think it was through Liberty Justice
2  Center.
3  BY MR. STAHL:
4  Q.     So prior to his publishing anything about
5  this case, you wouldn't have edited anything that he
6  would have written?
7  A.     About this case?
8  Q.     Yes.
9  A.     No.  I stepped aside.  I need -- because I am
10 part of the case, I needed to recuse myself from the
11 editing process.
12 Q.     Okay.  Do you know if Mr. Styf lives in
13 Tennessee?
14 A.     He does not.
15 Q.     Who is J.D. Davidson?
16 A.     J.D. Davidson is John Styf's direct
17 supervisor.
18 Q.     Does he live in Tennessee?
19 A.     No.
20 Q.     Are you aware of anything that Mr. Davidson
21 might have written about this case?
22 A.     Not aware.  I don't think he has, but I can't
23 say that for sure.
24 Q.     Who is Steve Wilson?
25 A.     Steve Wilson was John Styf's previous

*Lexitas TENNESSEE*
(615)595-0073

```
 1  supervisor.

 2  Q.     So am I to assume that Mr. Wilson doesn't

 3  work at The Center Square anymore?

 4  A.     No.  He does.  We went through a restructure.

 5  We went through a restructure.

 6  Q.     Okay.  Have you ever talked to Steve Wilson

 7  about this case?

 8  A.     Only to confirm that he was, in fact, John

 9  Styf's supervisor when the lawsuit was filed.

10  Q.     Okay.  Is he a Tennessee citizen?

11  A.     No.

12  Q.     Has Mr. Wilson written about the case that

13  you're aware of?

14  A.     Not that I'm aware of.  I don't think so.

15  Q.     Does Mr. Styf at your direction -- has he

16  ever traveled to Tennessee to write or research a

17  story?

18         MR. DOUGHERTY:  Object to the form of

19  the question.

20         THE WITNESS:  I don't know the answer to

21  that question.

22  BY MR. STAHL:

23  Q.     So is it possible that you would have

24  directed him --

25  A.     I'm sorry.  I didn't -- no.  No, I have not.
```

*LexitasTENNESSEE*
(615)595-0073

```
 1   I did not direct him.

 2   Q.    Okay.  Just one more question I think,

 3   Mr. McCaleb.

 4         Have you ever been convicted of a felony?

 5   A.    No.

 6         MR. STAHL:  Okay.  Buck, why don't you

 7   go ahead and if I've got anything else I'll do it at

 8   the end, but I think I'm done for now.

 9         MR. DOUGHERTY:  Okay.  Thank you, Mike.

10

11                  EXAMINATION

12   QUESTIONS BY MR. DOUGHERTY:

13   Q.    Mr. McCaleb, there was a line of questioning

14   that Mr. Stahl asked you about Advisory Commission

15   being recorded versus live stream.  Do you recall

16   that line of questioning?

17   A.    Yes.

18   Q.    Would you assign any of your reporters to

19   cover Advisory Commission meetings if they were open

20   to the public?

21   A.    Yes, particularly in this case.

22   Q.    Is it important as part of your lawsuit that

23   meetings be open contemporaneously to the public

24   when they are actually occurring?

25   A.    Yes.
```

*Lexitas* TENNESSEE
(615)595-0073

```
 1   Q.     And then just to follow up, you talked about
 2   at the end there on some of the questioning when
 3   Mr. Styf wrote about this case.  Do you recall that?
 4   A.     Yes, this case, this lawsuit.  Yes.
 5   Q.     Mr. Stahl asked you some questions.  And so
 6   the comments that you did give to Mr. Styf about
 7   this case, were they in your capacity as the
 8   plaintiff?
 9   A.     Yes.
10   Q.     And when you say you felt you needed to
11   recuse yourself, by that did you mean you didn't
12   then give a comment and then have editorial control
13   over the story itself; is that correct?
14   A.     I did not.  It was the reporters and the
15   reporters' editors' decision whether to include the
16   statement, the full statement, partial statement,
17   not include it at all.
18   Q.     Is that kind of part of the normal
19   journalistic code of ethics --
20   A.     Yes.
21   Q.     -- since you're pretty involved in the story
22   that your news agency is reporting on, you kind of
23   stay out of the editorial process?
24   A.     Yes.
25                MR. DOUGHERTY:  I don't have anything
```

*Lexitas* TENNESSEE
(615)595-0073

```
 1   further, Mike.

 2

 3                       EXAMINATION

 4   QUESTIONS BY MR. STAHL:

 5   Q.     Just one more question, Mr. McCaleb.

 6          Have you ever been hired to give an expert

 7   opinion for any reason in any lawsuit?

 8   A.     No.

 9              MR. STAHL:  Well, that's all I have.

10              MR. DOUGHERTY:  All right.  I guess we

11   can go off the record.  We'll take a copy of the

12   transcript whenever you can get it.  And really

13   appreciate you-all's help for covering these.

14                      *   *   *

15              THE REPORTER:  Mr. Stahl, you are

16   ordering this transcript?

17              MR. STAHL:  Yes, please.

18              THE REPORTER:  Reading and signing?

19              MR. DOUGHERTY:  We'll waive the signing.

20   You have an opportunity to look through your

21   transcript and then sign if everything is fine, but

22   I think it's fine to waive.

23              THE WITNESS:  I'm okay with waiving.

24              FURTHER DEPONENT SAITH NOT

25          (Proceedings concluded at 1:01 p.m.)
```

Lexitas TENNESSEE
(615)595-0073

<pre>
 1                    REPORTER'S CERTIFICATE

 2
     STATE OF TENNESSEE
 3
     COUNTY OF DAVIDSON
 4

 5

 6               I, Deborah H. Honeycutt, Licensed Court

 7    Reporter, with offices in Hermitage, Tennessee,

 8    hereby certify that I reported the foregoing

 9    videoconference deposition of DAN McCALEB by

10    machine shorthand to the best of my skills and

11    abilities, and thereafter the same was reduced to

12    typewritten form by me.  I am not related to any of

13    the parties named herein, nor their counsel, and

14    have no interest, financial or otherwise, in the

15    outcome of the proceedings.

16               I further certify that in order for this
      document to be considered a true and correct copy,
17    it must bear my original signature, and that any
      unauthorized reproduction in whole or in part
18    and/or transfer of this document is not authorized,
      will not be considered authentic, and will be in
19    violation of Tennessee Code Annotated 39-14-104,
      Theft of Services.
20

21

22    _____
      Deborah H. Honeycutt, LCR
23    Licensed Court Reporter
      Notary Public State of Tennessee
24
      My Notary Public Commission Expires: 07/09/24
25    LCR # 472 - Expires: June 30, 2024
</pre>

**1**

**100** 41:12

**11:57** 4:8

**13** 4:7

**15** 30:4,5 36:5

**18** 6:14

**19** 6:14

**1:01** 47:25

**2**

**20** 30:4,6 36:5

**2017** 9:19,20,21
10:3 19:23,25
28:23

**2018** 28:23

**2019** 20:1

**2022** 13:25 14:2,
11

**2023** 4:7 31:12

**27** 19:16 22:11

**28** 19:16 22:11

**3**

**30** 9:14 15:14 27:1

**30-plus** 30:16

**30-plus-year**
11:17

**30-year** 34:20

**3:22-cv-00439**
4:15

**4**

**472** 4:6

**5**

**501(c)(3)** 18:24
20:23

**7**

**70** 22:13

**726** 9:2

**9**

**9th** 31:12

**A**

**a.m.** 4:8

**ability** 8:7 21:10

**access** 23:25
24:1,11 25:3 32:1,
7 34:25 35:15

**accessing** 33:22

**acted** 34:3

**acting** 12:25

**actual** 41:20

**address** 9:1,2

**addresses** 9:6

**administered**
4:17

**Administrative**
4:12 35:18

**advised** 38:18

**advisories** 15:1

**Advisory** 10:22
12:8 14:19,23
17:5,15 24:16
27:21 34:17 35:12
36:11,17 38:3
39:2,20 40:5
45:14,19

**affect** 34:22,23
41:14

**agency** 46:22

**agree** 11:13 40:25
41:6

**agreed** 41:11

**ahead** 33:15 45:7

**alerted** 28:6

**amended** 8:18

**amendment**
23:25 28:21
34:13,16 35:1,6,
10 36:23 38:23
40:9

**Amendment's**
24:10

**America** 27:18

**analog** 38:25

**and/or** 32:7

**answering** 17:11

**answers** 7:14 8:4

**anymore** 44:3

**anyone's** 28:2

**AOC** 35:19

**apply** 11:1 41:23,
24

**approval** 22:6,9,
14,17

**approved** 22:7

**approximately**
4:8

**area** 19:9

**arguments** 41:10

**arm** 19:18,21

**article** 21:18
22:22 23:8,12

**articles** 23:24

**assign** 22:19,21,
25 45:18

**assigned** 21:19
22:22 23:11 27:2

**assigning** 21:25

**assume** 14:17
37:13,14 44:2

**assumed** 14:15

**attempted** 28:24
39:11

**attend** 24:18,21,
23 25:8 27:3
28:24 34:7

**attended** 15:16
34:12 37:21

**attending** 26:4

**attention** 22:16

**attorney** 4:25
7:22 8:12 32:11

**audio** 23:22

**automatically**
38:22

**aware** 22:25 23:3
30:1 42:1,16,17
43:20,22 44:13,14

**B**

**back** 24:13 35:5
42:17

**Bar** 10:22 14:23
17:1 38:4

**Barton** 40:17

**Barton's** 41:3

**begin** 5:24

**behalf** 11:14
26:19 29:7 30:6
31:3,5

**Bench** 10:22
14:23 17:1 38:4

**biographical** 9:1

**bit** 7:10 37:17

**board** 31:18,24

**body** 34:23

**born** 19:22

**break** 7:17,18,20,
24

**bring** 8:22

**brought** 8:23

**Buck** 5:3 6:8,9
8:19 45:6

**budget** 22:3

**business** 9:25
20:15 21:8

---

**C**

---

**call** 12:21,24 13:1
14:23 17:19 18:2
22:2

**called** 5:19

**capacity** 4:12
29:18 46:7

**caption** 11:4

**case** 4:15 6:11,15,
16 11:11 15:20
18:16 23:16,21
24:2 26:24,25
28:1,14 40:17
42:15,16,19 43:5,
7,10,21 44:7,12
45:21 46:3,4,7

**caused** 14:1

**Center** 4:11 6:8
9:17,20,24 10:2
11:6 18:17,20,25
19:3,6,10,15,22
20:1,2,7,8,12,14,
15,21,23 21:11,18
22:11 23:5 26:18,
20 28:3 29:7 30:7
31:3,5 42:6 43:2
44:3

**Central** 4:8

**cetera** 29:22
33:22

**chain** 42:10

**challenge** 41:16

**change** 10:1
39:23

**changed** 9:24

**Chicago** 24:22
31:20,22

**Chris** 20:10 21:5
28:12

**chunks** 40:21

**citizen** 11:7 40:24
41:5,14,21,25
44:10

**claim** 35:11

**clarification** 7:2

**clarity** 17:13

**clear** 14:11 27:6

**close** 30:15 41:15,
17

**closed** 11:19,24
12:9,19,23 13:13
14:3,14,16 30:13

**closely** 37:8

**closing** 12:3

**code** 46:19

**combination**
21:22,23,24

**comment** 42:21
46:12

**commented**
23:21

**comments** 19:11
46:6

**commission**
10:22 12:8 14:2,
14,16,19,23 15:6,
24 17:5,15 18:5
22:23 23:9,13
24:16 26:4 27:3,
21 28:25 29:1,9,
13,16,17,20 30:9,
10 31:13,18,24
34:8,18 35:12
36:11,17,21 37:19
38:3,4,8,12,13,16
39:2,5,20,24 40:5
45:14,19

**commissions**
30:1 36:6,13

**committee** 14:24
17:1 37:4,11,15,
23,25 38:20 39:9,
10

**committee's**
38:19

**committees**
29:21 30:6 37:1,7,
9

**communication**
28:8

**clarification** 7:2

**complete** 8:4

**completely** 20:2

**concerns** 12:2
13:19

**concluded** 47:25

**condition** 8:2

**conference** 12:4,
15,19,22 13:12,20
28:21 34:12 39:18

**confirm** 16:1 17:6
18:4 44:8

**confused** 25:16
29:19

**confusing** 25:18

**Constitution**
34:14

**constitutional**
34:20 35:3

**contemporaneo
usly** 45:23

**content** 18:21,23

**continued** 16:21

**contribute** 27:12

**control** 46:12

**controversial**
22:15

**conversations**
42:12

**convicted** 45:4

**copy** 47:11

**correct** 15:8 21:6
46:13

**counsel** 4:21 6:5,
9

**country** 10:5
32:13

**couple** 7:5

**court** 4:13 6:11
7:7 30:2 33:23
34:1 41:22

**court's** 42:17

**courts** 4:13 35:18
37:2

**cover** 22:1 23:12
26:10 33:24 45:19

**coverage** 10:5
21:16

**covering** 10:3
47:13

**created** 38:17

**creates** 38:21

**creating** 37:5,23
38:13

**crisis** 32:2,3,7

**Crystal** 9:3

**curiosity** 30:13,
14,17

---

**D**

---

**daily** 21:15 22:2,5

**Dan** 4:9,10 5:4,15,
18 6:1

**data** 32:9,15,17

**date** 4:7

**Davidson** 43:15,
16,20

**day** 22:13 42:13

**Deborah** 4:4

**decide** 21:13

**decided** 28:1

**deciding** 28:15

**decision** 21:16
46:15

**decisions** 19:7
34:22

**declarations**
8:18

**deemed** 4:19

**defendant** 5:2
10:20 18:14

**depend** 36:25

**DEPONENT**
47:24

**deposition** 4:9,

16,19,20 5:6 6:11,
13 8:11,16 10:19
40:18

**depositions** 7:13

**desire** 34:7

**details** 6:17

**differentiate**
25:25

**difficult** 16:6
33:22

**difficulty** 33:4

**digging** 16:4,9
37:6

**digital** 4:18

**direct** 40:24 41:4,
9 42:10 43:16
45:1

**directed** 44:24

**direction** 44:15

**directly** 21:2
22:25

**Director** 4:12

**discrepancy**
18:22

**discuss** 22:5

**discussed** 27:20
42:15

**distracted** 40:19

**District** 4:13,14

**Division** 4:15

**documents**
13:17

**Dougherty** 5:3,
12,13 6:8,9 12:10
13:14 14:5 16:11
17:22 25:4,10
26:12 28:4 30:21
32:21 33:13 35:20
36:14 38:1 40:1,
11 42:23 44:18
45:9,12 46:25
47:10,19

**drew** 15:2

**Drive** 9:2

**duly** 5:19

---

**E**

**earlier** 36:4 37:17
38:10

**edited** 23:8 43:5

**editing** 43:11

**editor** 4:10 11:5
18:17 19:2,6,7
21:11 26:18 27:1
28:3 29:7,8 30:7

**editorial** 19:8,10,
12 42:21 46:12,23

**editors** 21:24
22:1

**editors'** 46:15

**educated** 36:7

**Education** 27:19

**effect** 40:24 41:5,
9

**electronic** 25:2

**electronically**
25:9 40:6

**email** 18:8

**employee** 42:8

**employees** 19:14

**end** 17:9 45:8 46:2

**entirety** 11:1

**essentially** 10:23
16:19

**ethics** 46:19

**eventually** 17:18

**EXAMINATION**
5:22 45:11 47:3

**excuse** 17:3
19:20

**executive** 4:10
11:5 18:17 19:2,5
21:11 23:5 26:18
28:3

**exhibits** 4:18

**expanded** 10:4

**expect** 25:9
26:10,19 36:23

**experience** 15:14
30:16 34:25

**experiences**
31:11

**expert** 47:6

**expert's** 40:16

**explain** 18:22
23:2

**expressed** 32:19
33:3 34:7

---

**F**

**fact** 25:22,24
39:22 40:7 44:8

**fair** 16:23

**familiar** 35:17

**federal** 16:24
37:9,12,15 38:25
39:2,4,9,12,14,19
40:5

**feel** 6:25 7:20

**felony** 45:4

**felt** 46:10

**figure** 24:9

**file** 14:18 28:1,15
30:20 36:23 38:11
40:8

**filed** 4:13 11:14
13:22,24 17:17
31:10 44:9

**filing** 11:7 23:6,7
37:19 41:20

**filings** 8:17 13:7,8

**final** 19:7 22:6,8,
14,17

**financial** 22:3

**find** 14:25 15:24
17:16 18:4 26:9

**finding** 17:4

**fine** 7:17,21 47:21,
22

**finish** 7:4 40:20

**fire** 21:10

**Focus** 27:18,19

**focused** 19:13

**folded** 20:6

**follow** 37:3 46:1

**form** 12:10 13:14
14:5 16:11 17:22
25:4,10 26:12
28:4 30:21 32:21
33:13 35:20 36:14
38:1 40:1,11
42:23 44:18

**forum** 24:11

**found** 35:1

**Foundation**
18:24 20:14,25
21:3,5

**founder** 20:11

**Franklin** 18:24
20:13,21,22,25
21:3,4,8

**free** 7:1

**full** 8:4 46:16

**funded** 22:7

---

**G**

**gave** 6:13

**general** 19:12
24:1,12 34:24

**generally** 15:17,
19

**give** 6:23 7:4,12,
13,16 8:4,7 22:6,
8,13,17 46:6,12
47:6

**giving** 10:19

**good** 4:3 7:25
17:13

**government**
11:18 15:15,16
17:20 18:3,10
19:13 30:15,19
35:14,15

**governments** 41:15,16

**Great** 8:2

**guess** 12:25 13:17 24:2 29:19 32:4,9 35:23 36:7, 25 37:6,13 39:7 47:10

---

**H**

**happen** 26:8

**hard** 7:14 40:13

**heads** 7:13

**hear** 6:20 41:10

**heard** 40:20,21

**hearing** 25:20,22

**heartlandernews.com** 27:24

**hide** 30:17

**hiding** 11:19

**hire** 21:10 32:11

**hired** 20:8,9 47:6

**hiring** 32:20 33:4

**honest** 8:7

**honestly** 20:17 39:7

**Honeycutt** 4:4

**host** 27:12

**huh-uh** 7:14

---

**I**

**idea** 21:20

**identify** 4:22

**Illinois** 9:3,4,22 10:1,4,5,8,11,12 19:23,25 20:4,6,9 24:23 27:18 31:20,22,24 41:14,25

**immediately** 24:15

**impair** 8:7

**important** 6:22 7:11 45:22

**in-person** 25:13

**include** 29:20 46:15,17

**independent** 9:15

**indicating** 15:6

**indirectly** 41:17

**information** 9:1 11:25

**initially** 12:14 24:24

**initiate** 11:16

**insomuch** 41:15

**instances** 15:20

**intention** 26:3,8

**introduce** 4:24

**investigate** 22:8 37:18

**investigating** 16:4

**involve** 33:11

**involved** 21:2,15 41:22 46:21

**Iowa** 10:13

**issue** 32:14

**issues** 6:25 19:8

---

**J**

**J.D.** 43:15,16

**James** 5:14

**John** 42:2,5 43:16,25 44:8

**joined** 10:3 19:25

**journalism** 15:14 27:2

**journalist** 9:12,15 11:17 27:8 30:9 33:24 34:11,20

**journalistic** 29:8 46:19

**judgment** 19:8

**judicial** 12:4,15, 19,22 13:3,11,12, 20 14:12,14 15:1

**judiciary** 16:25 17:20 18:3 29:15 37:9,15

**June** 13:25 14:2, 11 31:12

**justice** 6:8 32:2,7 43:1

---

**K**

**kind** 29:13 46:18, 22

**knowledge** 21:7

**Krug** 20:10 21:5 28:12

---

**L**

**lack** 15:11 17:21

**Lake** 9:3

**large** 40:21

**launched** 20:1,3

**lawsuit** 8:18 10:19,21 11:1,4, 16 13:22,24 14:18 23:1,3,6,7,11 30:24 31:5,7 34:4 44:9 45:22 46:4 47:7

**lawsuits** 31:10

**lawyer** 32:20 33:4 34:19,20 35:2,3

**lead** 6:9

**leads** 32:6

**learn** 11:24 30:19 38:12 39:19

**learned** 11:18,23 34:21 36:21 38:15

**led** 38:15

**Legal** 4:5

**legislation** 37:3

**legislative** 29:14

**legislative-type** 29:21

**legislature** 29:22

**level** 37:12,13

**Lexitas** 4:5

**Liberty** 6:8 43:1

**license** 4:5 9:25

**limiting** 10:25 30:5

**listed** 18:21

**lists** 36:5

**litigant** 33:6,9 34:3

**litigants** 33:12, 20,21

**live** 25:12,20,21, 23,25 39:2,9,16, 20 40:7,18 43:18 45:15

**lives** 43:12

**long** 4:11 5:2 7:19 9:13,18 10:20 12:7,16 13:12 14:9,13 40:13

**Long's** 12:1

**looked** 11:20 15:4 16:24 17:14

**lot** 13:16 15:15,16

---

**M**

**made** 14:18 22:25 23:3 34:22 40:22 41:3 42:16

**make** 19:7

**March** 42:17

**marked** 4:18

**matter** 4:10

**Mccaleb** 4:9,10 5:4,15,18,24 6:1

28:17 33:7 41:24
45:3,13 47:5

**Mcquaid** 5:14

**meaning** 19:11
22:7

**meaningfully**
36:11

**means** 32:10

**Media** 10:10

**medication** 8:6

**meet** 14:24

**meeting** 17:16
26:4 29:10 30:20
31:12 35:12 37:11
38:22 39:9 40:9

**meetings** 11:22
14:19 15:2,6,10,
12,16,17,21 16:1,
17,18,21,22 17:5,
7,15 18:5 22:5
26:11,17,20 28:25
29:9,13,14,17,21
30:9,13,15 33:24,
25 34:18,25
36:11,17,22,24
37:20 39:3,18,21
40:6 41:15,17,19
42:13 45:19,23

**member** 11:8,9
31:17,23 36:2

**members** 12:20
13:13,19

**memory** 15:8
37:7

**mental** 8:2

**mentioned** 8:19,
23 34:12 36:4

**messy** 7:10

**Michael** 5:1

**Michelle** 4:11 5:2
10:20 12:7,16
13:11

**Middle** 4:14

**Mike** 45:9 47:1

**mind** 24:15

**mine** 42:8

**mirror** 37:8

**mirrored** 37:11

**moment** 24:6,14

**morning** 4:3

**multiple** 17:15

___

**N**

**named** 18:12,14

**Nashville** 4:14

**necessarily**
38:11

**needed** 43:10
46:10

**needing** 26:9

**neighborhood**
22:13

**Network** 9:22
10:2,6,9 19:23,25
20:4,6,10

**news** 9:22 10:1,5,
8 18:21,23,24
19:13,23,25 20:4,
6,10,13,21,22,25
21:3,4,8,16,18
22:2,3 46:22

**non-profit** 18:25

**nonprofit** 20:23

**normal** 46:18

**notice** 15:18,22,
23 16:21,22 17:4,
21 18:4

**noticed** 5:6 16:25
17:2

**notices** 15:5
16:18 17:14,16

**noticing** 4:25

**number** 4:5,15
6:16 30:3

**numbered** 36:5

___

**O**

**oath** 4:17 6:2

**object** 12:10
13:14 14:5 16:11
17:22 25:4,10
26:12 28:4 30:21
32:21 33:13 35:20
36:14 38:1 40:1,
11 42:23 44:18

**objection** 5:5

**objections** 4:23

**observation**
25:13

**observe** 24:25
26:20

**occupation** 9:11

**occurring** 45:24

**October** 4:7

**Office** 4:13 35:18

**official** 4:11

**ongoing** 22:2

**online** 17:14
19:17,20 23:16
24:11

**open** 10:22 11:18,
22 14:18 15:6,9,
12,17 16:1 17:2,3,
7 24:18 25:12
26:11,17 30:20
34:17 35:12
36:22,24 37:20,25
38:12,23 40:9
45:19,23

**opening** 33:23

**opinion** 32:6,8
33:11 36:10 39:23
40:16,23 41:3
47:7

**opportunity**
33:25 47:20

**options** 22:5

**ordering** 47:16

**organization**
18:18 19:17 20:3

27:1 30:8

**organizational**
20:20,22

**original** 4:19

**outlined** 4:24

___

**P**

**p.m.** 47:25

**part** 29:12 35:10
43:10 45:22 46:18

**partial** 46:16

**past** 13:10,17

**Pennsylvania**
10:6

**people** 7:8,13
17:12 21:11 32:10
41:9

**percent** 41:12

**perfect** 36:8

**perfectly** 7:17,21

**periodically**
14:25

**permission** 28:2,
11

**person** 20:9
24:22,24 26:21
27:4

**personal** 9:2

**personally** 23:5,
10,18 24:19,21
26:6 27:9 29:3
31:9 32:23

**petition** 35:14

**physically** 26:4

**piqued** 30:13,14

**piques** 30:16

**place** 13:1

**places** 17:16

**plaintiff** 5:4,15
11:5 18:12 46:8

**platform** 23:22
25:1 29:8 39:22

40:7

**pleadings** 11:10
18:16 35:19

**plenty** 24:4 32:10

**podcast** 27:15

**podcasts** 27:13,
16,22

**point** 25:22,24

**policy** 12:1,6,18,
21,25 13:5,10
14:9,12 34:22
37:2,5,23,24
38:13,14,18,21
39:9

**politics** 19:11

**portion** 40:22

**position** 12:1

**positive** 39:7

**possibly** 22:18

**potential** 37:3

**Practice** 12:8
14:3,15,20 15:25
18:6 22:23 23:9,
14 24:17 26:5
27:4,7,21 29:1,10
30:10 31:13 34:8
37:18 38:16 39:1,
24

**precipitated** 10:1

**preparation** 8:10,
15

**president** 18:21,
23 20:13,24 21:4

**press** 10:25 11:3,
8,9

**pretty** 46:21

**previous** 31:11
43:25

**print** 19:18,19,21
23:17 24:11

**printed** 22:9

**printouts** 8:23

**prior** 14:1,11 23:7,
11 28:15 37:19

**private** 11:7

**pro** 33:6,9,12,20
34:3

**problem** 32:3,7

**Procedure** 12:8
14:3,16,20 15:25
18:6 22:24 23:9,
14 24:17 26:5
27:4,8,22 29:2,11
30:11 31:14 34:9
37:19 38:17 39:1,
24 40:23 41:4,14,
20,23

**procedures** 4:23
6:18

**proceedings**
47:25

**process** 21:20
43:11 46:23

**provide** 42:21

**provided** 6:11
42:25

**public** 10:23,24
11:2,3 12:9,20
13:13 14:4,14,16
15:7,10,13,17,18,
21,22,23 16:2,18,
20,22 17:4,7,14,
21 18:4 23:25
24:1,10,18 25:3
26:11,17 30:20
33:24 34:18,24
35:13 36:22
37:20,25 38:13,23
40:10 45:20,23

**publish** 22:12

**published** 21:18

**publisher** 28:7,12

**publishes** 18:25
20:14,23

**publishing** 43:4

**purpose** 10:21

**purposes** 4:20
5:12

**purview** 19:12

**put** 12:2 13:1
25:21,23 27:2

**puts** 39:21

**putting** 40:6

_____

**Q**

**qualified** 31:4

**question** 6:21
7:4,6,23,24 11:19
12:11 13:15 14:6
16:12,16 17:8,10,
23 18:9 20:18
21:14 24:7 25:5,
11 26:13,15 28:5
30:5,22 31:21
32:22,24 33:14
35:21 36:15 38:2,
9 40:2,12 42:24
44:19,21 45:2
47:5

**questioning**
45:13,16 46:2

**questions** 5:23
6:23 16:9 17:11
37:7 45:12 46:5
47:4

_____

**R**

**raise** 5:8

**read** 13:18 34:13
35:6

**Reading** 47:18

**realized** 30:12

**reason** 8:3 47:7

**reasons** 7:5

**recall** 5:5 14:22
16:5 18:7,11 27:5
28:16 39:15,16
45:15 46:3

**recollection**
42:18

**recommending**
37:2,5,24 38:14

**recommends**
38:21

**record** 5:5,10,25
8:20 47:11

**recorded** 5:9
25:9,15,17 31:14
45:15

**recording** 5:11
25:3,18,21,24
40:6

**records** 39:21

**recuse** 43:10
46:11

**referred** 35:19

**referring** 38:4

**reflect** 7:15

**registered** 20:15
21:8

**regularly** 27:12

**related** 13:18

**remember** 6:15,
16,17 13:24 36:6

**remote** 6:25

**remotely** 4:18

**repeat** 17:24 24:7
26:14 31:21 32:24
41:2

**report** 20:24 42:9

**reported** 21:13

**reporter** 4:3,4
5:11 7:7 21:19
26:19 42:6 47:15,
18

**reporters** 21:25
22:19 29:6 45:18
46:14

**reporters'** 46:15

**reporting** 46:22

**represent** 4:22
32:11

**representation**
33:21

**represented** 6:5

**representing** 5:1,
4 29:17

require 37:24

required 5:7
35:11

requires 34:17

research 44:16

reserve 5:8

resident 9:4,9
32:19 33:3 34:3,6

responses 7:12,
16

restructure 44:4,
5

review 13:8 40:16

reviewed 8:15,17
11:10 13:7,16

rights 33:12

rule 12:22 13:1,2,
6,11 14:9,12 17:5

Rules 5:7 12:8
14:3,15,20 15:25
18:5 22:23 23:9,
13 24:17 26:5
27:3,7,21 29:1,10
30:10 31:13 34:8
37:18 38:16 39:1,
2,24 40:23 41:4,
13,20,22

ruling 42:17

**S**

S-T-Y-F 42:3

safety 12:3 13:19

SAITH 47:24

sake 28:8

satisfied 25:2
38:17

scheduled 15:11

schedules 15:10

scrutiny 10:23,24

search 39:12

searches 39:14

searching 16:13

security 12:3
13:19

semantics 14:22

send 26:10,19

separate 20:3
21:1

served 31:17,23

serves 15:9 37:7

setting 37:1

shake 7:13

Shaw 10:10

sign 47:21

signing 47:18,19

similar 17:1
37:12,14

single 21:15
22:14,17 40:20

sir 6:3

situation 11:20

sound 7:25

speak 36:18
37:10

specific 24:1
26:24,25 29:14
32:16,17

specifically
13:18 31:21 39:15

specifics 16:5

spoke 28:14

spoken 34:2

sports 19:11

Square 4:11 9:17,
20,24 10:2 11:6
18:17,20,25 19:3,
6,10,15,22 20:1,2,
7,8,12,14,15,21,
24 21:11,18 22:11
23:5 26:18,20
28:3 29:7 30:7
31:3,5 42:6 44:3

staff 22:11,25
23:4 42:14

Stahl 5:1,23 12:12

13:21 14:10 18:1
25:7,14 26:16
28:9 31:1 33:1,16
35:24 36:20 38:6
40:4,15 43:3
44:22 45:6,14
46:5 47:4,9,15,17

start 4:25 7:4,8
40:20

started 12:4 14:7,
21

state 4:22,24 5:25
9:9 13:17 16:14,
23 17:20 18:3,10
28:25 29:9,16,17
31:17,23 32:13
34:17 35:11 37:12
40:24 41:5,9

statement 12:1
32:16 38:11
40:22,25 41:3,7
42:25 46:16

states 9:7 32:12

status 20:18

stay 46:23

stenographic 4:4

stepped 43:9

Steve 43:24,25
44:6

stories 21:25
22:4,13,15,19

story 22:7,8,14,
18,22 23:12 44:17
46:13,21

stream 39:2,20
40:18 45:15

streaming 40:8

structure 20:20,
22

stuff 16:7

Styf 42:2,4,5
43:12 44:15 46:3,
6

Styf's 43:16,25
44:9

subjective 32:4,5

substances 8:6

suburb 24:22

suit 11:7 17:17
28:1 30:20 33:11
36:23 37:19 38:11
40:8 41:21

supervisor 42:11
43:17 44:1,9

support 32:16

supports 35:10

supposed 14:24
15:18 37:1

Supreme 30:2

suspicion 15:2

sworn 5:20

system 33:23
34:1 41:22

**T**

talked 8:10 32:18
33:2 34:6 36:1
44:6 46:1

talking 7:8 29:15,
16 35:25 36:6
38:8

TAOC 35:23 36:2,
4

tax 20:18

taxpayers 34:23

technology 6:24

Tennessee 4:5,
12,14 10:6,11,23
12:4,7,15 13:3,11,
12,20 14:2,12,13,
15,19 15:24 17:1,
5,15,20 18:2,3,5,
10 20:16 21:8
22:23 23:8,13
24:17 26:4 27:3,7,
20 28:17,19,20,25
29:1,9,10,12,13,
16,18 30:2,10
31:13,18 32:2,12,
15,19,20 33:3,4
34:2,6,8,17 35:11,
17 37:8,18 38:16

39:1,5,23 40:23,
25 41:4,5,10,13,
20,21,22 43:13,18
44:10,16

**Tennessee's**
16:15

**term** 25:17,18
26:1

**terms** 16:4 25:3
32:9 38:17

**testified** 5:20

**testimony** 6:11
8:8

**thereof** 17:21

**thing** 7:22 35:23

**things** 14:22 19:1
34:21

**thinking** 17:10

**thought** 11:21

**time** 4:8,21 7:20
13:5 27:1,8 28:20
30:19 33:22 41:2

**times** 24:4 40:19

**tncourts.gov**
13:4

**today** 6:3 8:3,20,
22 10:15,18 22:2

**today's** 4:7 8:11,
16

**top** 19:7

**transcript** 7:9,15
8:21 47:12,16,21

**traveled** 44:16

**trouble** 32:20

**true** 32:12

───────────

**U**

**uh-huh** 7:14

**Ultimately** 21:14

**understand** 6:2,
21,22 7:2 16:6
34:1 35:4 38:10,
14

**understanding**
10:17,25 11:6
29:23 33:22

**unequivocally**
32:13

───────────

**V**

**vein** 7:11

**verbal** 7:12,16

**version** 39:4

**versus** 45:15

**vice** 18:21,23

**video** 19:18,19
23:22 39:17

**video-recorded**
5:6

**videoconference**
4:17

**videos** 25:3

**visited** 16:23

**voters** 34:23

───────────

**W**

**waive** 47:19,22

**waiving** 47:23

**walk** 21:17

**walked** 37:16

**watch** 31:15
39:11

**watched** 36:16,18
37:22 39:8

**webcast** 25:12,
20,21,23 26:1

**webcasts** 39:16

**website** 13:3,11
14:13 15:1 16:14,
15,22,25 18:20
22:9 36:4

**websites** 15:15
16:23 21:1 39:13,
14

**week** 13:9,10,17,
22

**Wilson** 43:24,25
44:2,6,12

**Windsor** 9:2

**Wisconsin** 27:19

**wondering** 41:6

**word** 40:20

**work** 9:16,17
10:6,9 19:9 21:21
22:4,10 36:12
44:3

**worked** 9:18 10:8,
10 30:8

**write** 23:12 44:16

**written** 23:16,24
24:10 27:6 42:18
43:6,21 44:12

**wrote** 23:8 46:3

───────────

**Y**

**years** 6:13,14
9:14 15:14 27:1
30:16

**you-all's** 47:13

**Youtube** 31:14
39:12,17,22

───────────

**Z**

**Zoom** 24:25

**Zoom-like** 25:1