IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439 |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) | Judge Richardson  Magistrate Judge Frensley |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,
Executive Editor of The Center Square*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION .............................................................................................. 1

STATEMENT OF FACTS .................................................................................. 2

    A.  Plaintiff McCaleb is an experienced journalist who seeks access to
        Tennessee Advisory Commission state court rulemaking meetings
        so he can assign reporters to report on meetings ............................................... 2

    B.  Defendant Long is AOC Director, and the office she oversees
        provides administrative support to the Advisory Commission ......................... 3

    C.  Michelle Consiglio-Young is the AOC liaison to the Advisory Commission ...... 3

    D.  In the past the AOC posted public notice of Advisory Commission
        meetings until 2018 when a member of the public breached decorum by
        verbally disrupting a meeting ............................................................................. 4

    E.  After this meeting decorum breach, the AOC instituted a practice
        of no longer posting public notice of Advisory Commission meetings,
        and Defendant Long has continued this practice as Director ........................... 8

    F.  In contrast to the AOC's practice of restricting access to Tennessee
        Advisory Commission meetings, similar federal court rulemaking
        meetings have been open to the public for at least 35 years. .......................... 10

    G.  To comply with this Court's Preliminary Injunction, the AOC posted
        public notice in advance of the June and December 2023 meetings
        and provided virtual livestreaming access to these meetings. ....................... 12

LEGAL STANDARD......................................................................................... 13

ARGUMENT ..................................................................................................... 14

    I.     The Court should grant Plaintiff McCaleb's motion for summary
           judgment because there is no genuine dispute as to any material
           fact that the First Amendment attaches to Advisory Commission
           meetings, requiring the AOC to provide public access to meetings .......... 14

           A.  The Eleventh Amendment is not a bar under *Ex parte Young* ............ 15

B. The First Amendment attaches under *Richmond Newspapers*, and the AOC's practice of restricting access to meetings limits the stock of information on state court rulemaking from which members of the public may draw ............................................................ 16

    1. Under the "experience" prong, the public's right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to meetings .............. 18

    2. Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings. ................................................................ 20

II. The AOC's practice of restricting public access to Advisory Commission meetings in the interest of maintaining meeting decorum is not a compelling governmental interest that is narrowly tailored to overcome strict scrutiny. .......................................................... 24

CONCLUSION ................................................................................................ 25

Case 3:22-cv-00439  Document 76  Filed 12/15/23  Page 3 of 31 PageID #: 2784

# TABLE OF AUTHORITIES

**Cases**

*Allied Artists Picture Corp. v. Rhodes,*
679 F. 2d 656 (6th Cir. 1982) ................................................................................ 16

*Branzburg* v. *Hayes,*
408 U.S. 665 (1972) ............................................................................................ 17

*Detroit Free Press v. Ashcroft,*
303 F.3d 681 (6th Cir. 2002) ........................................................................ 17, 18

*Diaz v. Mich. Dep't of Corr.,*
703 F.3d 956 (6th Cir. 2013) ............................................................................... 15

*Ex parte Young,*
209 U.S. 123 (1908) ............................................................................................ 15

*First Nat'l Bank of Bos. v. Bellotti,*
435 U.S. 765 (1978) ............................................................................................ 17

*Globe Newspaper Co. v. Superior Court,*
457 U.S. 596 (1982) ................................................................................ 18, 23, 24

*Green v. Throckmorton,*
681 F.3d 853 (6th Cir. 2012 ............................................................................... 13

*In re Search of Fair Fin.,*
692 F.3d 424 (6th Cir. 2012) ........................................................................ 18, 23

*Press-Enterprise Co. v. Superior Court of Ca.,*
464 U.S. 501 (1984) ............................................................................................ 23

*Press-Enterprise Company v. Superior Court,*
478 U.S. 1 (1986) ......................................................................................... 18, 19

*Richmond Newspapers, Inc. v. Virginia,*
448 U.S. 555 (1980) ................................................................................ 17, 18, 22

*Russell v. Lundergan-Grimes,*
784 F.3d 1037 (6th Cir. 2015) ............................................................................. 15

*Sandmann v. N.Y. Times Co.,*
78 F.4th 319 (6th Cir. 2023) ......................................................................... 13, 20

*Scott v. Harris,*
550 U.S. 372 (2007) ............................................................................................ 13

*SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.,*
33 F.4th 872 (6th Cir. 2022) ............................................................................... 13

*Swint v. Chambers County Comm'n,*
514 U.S. 35 (1995) ............................................................................................. 20

*Top Flight Entm't, Ltd. v. Schuette,*
  729 F. 3d 623 (6th Cir. 2013) ................................................................................................ 16

**Statutes**

28 U.S.C. § 2073 ............................................................................................................... 11, 19

42 U.S.C. §1983 ..................................................................................................................... 14

Tenn. Code Ann. §16-3-601 ............................................................................................... 1, 3

Tenn. Code Ann. §16-3-803 ................................................................................................... 3

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................. 13

# INTRODUCTION

Plaintiff Dan McCaleb, Executive Editor of The Center Square, files this Memorandum of Law in support of his Motion for Summary Judgment against Defendant Michelle Long, in her official capacity as Director of the Tennessee Administrative Office of the Courts ("AOC"). The Court should grant Plaintiff's Motion and enter a permanent injunction, ordering Defendant Long to provide public access to meetings of the Advisory Commission on the Rules of Practice & Procedure ("Advisory Commission"), created by Tenn. Code Ann. §16-3-601.

Defendant Long oversees the AOC, which provides administrative support to the Advisory Commission. This support includes posting public notice of meetings on the AOC's website. In the past the AOC posted public notice on its website of upcoming Advisory Commission meetings. But a member of the public verbally disrupted a 2018 meeting. After this incident, the AOC instituted a practice of no longer posting public notice of Advisory Commission meetings, and Defendant Long has continued this practice during her tenure as Director of the AOC.

But the AOC's practice of not posting public notice to Advisory Commission meetings limits the stock of information on the state court rulemaking process from which members of the public may draw. And the First Amendment attaches to meetings under the *Richmond Newspapers*' "experience and logic" test.

**STATEMENT OF FACTS**

**A. Plaintiff McCaleb is an experienced journalist who seeks access to Tennessee Advisory Commission state court rulemaking meetings so he can assign reporters to report on meetings.**

Plaintiff McCaleb is an experienced journalist and the Executive Editor of The Center Square. *See* Deposition of Dan McCaleb ("McCaleb Depo."), ECF No. 74-1 at p. 11, Lines 4-22. In addition to his duties as Executive Editor, McCaleb also serves as Vice-President of News and Content for the Franklin News Foundation, a 501 (c)(3) nonprofit that publishes The Center Square. *Id.* at p. 18, Line 20 through p. 19, Line 4. The Center Square is an online news organization that focuses on government news and publishes "in the neighborhood of 70 stories a day." *Id.* at p. 22, Lines 6-13.

As an experienced journalist, McCaleb believes in open government. *Id.* at p. 11, Lines 16-18. During his 30-plus-year career, he has "attended a lot of government meetings." *Id.* at p. 15, Lines 11-18. And when he learned that Tennessee Advisory Commission meetings were closed to the public and press, he asked, "[W]hat are they hiding?" *Id.* at p. 11, Lines 16-22. McCaleb would assign reporters to report on Advisory Commission meetings if they were open to the public. *Id.* at p. 45, Lines 18-21.

**B. Defendant Long is AOC Director, and the office she oversees provides administrative support to the Advisory Commission.**

Defendant Long is the Director of the AOC. *See* Deposition of Michelle Long ("Long Depo."), ECF No. 74-2 at p. 8, Lines 20-24. Defendant Long "oversees the AOC."[1] As AOC Director, Defendant Long is "the chief administrative officer of the state court system." Tenn. Code Ann. §16-3-803(a).

The Advisory Commission was established to recommend rules of practice and procedure in Tennessee state courts. Tenn. Code Ann. §16-3-601(a). The AOC provides administrative support to the Advisory Commission. Long Depo., ECF No. 74-2 at p. 61, Lines 2-5. And according to Defendant Long, the Advisory Commission makes specific recommendations on court rules as follows:

Q. All right. What is your understanding of the function of the Advisory Commission?

A. To recommend rule changes for practice and procedure for the various courts, criminal, civil, juvenile, appellate court, and rules of evidence.

*Id*. at p. 60, Line 21 through p. 61, Line 1.

**C. Michelle Consiglio-Young is the AOC liaison to the Advisory Commission.**

Michelle Consiglio-Young joined the AOC in 2015 and has been its liaison to the Advisory Commission since 2018. *See* Deposition of Michelle Consiglio-Young ("Consiglio-Young Depo."), ECF No. 74-3 at p. 7, Lines 18-20; p. 11, Line 25 through

---

[1] *See* https://www.tncourts.gov/administration (last visited Dec. 13, 2023).

3

p. 12, Line 7. The Advisory Commission's meeting cadence is quarterly. *Id.* at p. 34, Lines 4-10. The names of the appointed bench-bar individuals who comprise the current Advisory Commission may be found on the AOC's public website, and Consiglio-Young is listed as "AOC Staff Contact."[2]

**D. In the past the AOC posted public notice of Advisory Commission meetings until 2018 when a member of the public breached decorum by verbally disrupting a meeting.**

When a past Advisory Commission meeting was open to the public, the AOC posted on its website advance notice inviting the public to attend the meeting.[3] *See* May 20, 2016, Public Meeting Notice, ECF No. 74-4. A public meeting notice dating back over a decade to June of 2012, inviting the public to attend an Advisory Commission meeting, remains posted on the AOC's website.[4]

But in 2018, Consiglio-Young described an incident as follows:

Q. At what point did those Advisory Commission meetings become closed to the public?

A. I believe it was 2018.

Q. I'm sorry?

---

[2] *See* https://tncourts.gov/boards-commissions/boards-commissions/advisory-commission-rules-practice-procedure (last visited Dec. 12, 2023).

[3] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2016/05/20/advisory-commission-rules-practice-and-procedure (last visited Dec. 12, 2023).

[4] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2012/06/01/advisory-commission-rules-practice-and-procedure-meeting (last visited Dec. 12, 2023).

4

A. 2018. It was after I had taken over as liaison. There was -- meetings were open to the public, as far as I can recall. And there was a meeting that we had that there was a member of the public who had attended in person who was there and became unruly and combative with the Commission. And after that, the -- the Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident.

Q. And what -- where was this particular meeting in 2018?

A. I wish I could recall the exact date. I do believe it was 2018 and the meeting was at the Administrative Office of the Courts, it was in our conference room. And members of the public would come periodically, sometimes we didn't have any and sometimes some would request to come.

And that particular meeting there was a member of the public who attended, and he was interested in a topic that was being discussed by the Commission. And during that discussion, he was speaking kind of out of term [sic], you know, without being called on or outside of the public comment period that was allowed and essentially became very assertive with the members and -- and the meeting was stopped and he was asked to leave.

Q. Do you recall how many members of the public were at that particular meeting in 2018?

A. I believe it was just that gentleman and his son.

Q. Do you recall his name?

A. I don't. I'm sorry.

5

Q. When you say "combative," do you mean -- what do you mean? Was it verbal combativeness --

A. Yes.

Q. -- or physical?

A. It was verbal. He did leave his chair -- or, you know, get up from his chair while he was having this discussion, which kind of escalated the -- the tone that was going on in there in his interaction with the members. So it -- yeah, it just became more of an aggressive action on his part. Clearly he was upset with a topic that was being discussed.

Q. Do you recall the topic?

A. No.

Q. Do you recall who the chair was at that time at that meeting?

A. I believe the chair was Allen Wade then.

Q. Is Mr. Wade currently a member on the Advisory Commission?

A. Yes.

Q. Were there four quarterly meetings in 2018?

A. Yes. As far as I remember there were.

Q. And you were at this meeting in 2018?

A. I was at that meeting, yes.

Q. Who was the chief justice of the Supreme Court at that time in 2018?

A. It was Justice Jeff Bivins at that time.

6

Q. So did the Chairman Wade ask this person that was being verbal -- verbally combative to leave? Did he -- did the person leave?

A. I don't recall who exactly asked him to leave; however, he was asked to leave. We did have to have several people help escort him out. And I can't remember if security was called at that meeting or not. I -- I do believe that building security was made aware.

Q. Do you recall if any formal charges, criminal charges were brought against this person?

A. I -- I do not believe that there were formal criminal charges.

Q. So the person that was verbally combative was never prosecuted to the best of your recollection?

A. Correct, I do not believe that he was.

Q. And so, I guess, was there a member of the Tennessee Supreme Court that was attending that particular meeting?

A. Yes.

Q. And who was that?

A. It was Justice Holly Kirby.

Q. So Justice Kirby was the Supreme Court liaison on the Commission in 2018?

A. She was.

Q. Justice Kirby is now the Chief Justice of the Supreme Court?

A. Yes, she is.

Consiglio-Young Depo., ECF No. 74-3, at p. 40, Line 15 through p. 44, Line 13.

**E. After this meeting decorum breach, the AOC instituted a practice of no longer posting public notice of Advisory Commission meetings, and Defendant Long has continued this practice as Director.**

And Consiglio-Young further testified as follows:

Q. So you said something about the -- the justices at that point, they made the call, they made the decision to close meetings. Explain what -- explain what happened after that.

A. After the meeting where the person got combative -- and Justice Kirby was in attendance in that meeting, so she had seen it firsthand, the -- as far as I am aware, she took that matter back to the Supreme Court for discussion, and we at the AOC were told that the meetings would no longer be open after that. And that was really my interaction with that. They were -- I was informed that they would be closed.

Q. How were you told? How were the members of the Commission told that from now on they were going to be closed, the meetings?

A. I don't recall exactly. I do know that if our General Counsel Rachel Harmon at the time had told me that there was no need to put public notice out because they were going to be closed the next meeting after that incident. And I cannot recall if Justice Kirby told the members directly or if a member of our office told them that we -- that they would be closed. I just don't remember exactly.

Q. But that decision would have come from either the justices or the AOC office to the Advisory Commission?

8

A. One of the two, yes, would have told either the Commission as a whole or the chair and the chair would have relayed that to the Commission.

Q. So the Chair, Mr. Wade, didn't make that decision?

A. No.

*Id*. at p. 44, Line 14 through p. 45, Line 25.

Defendant Long was aware of the AOC's practice instituted in or around 2018 of no longer posting public notice of Advisory Commission meetings, and she has continued this practice during her tenure as AOC Director, testifying as follows:

Q. And so are meetings -- is it your understanding that Advisory Commission meetings are open or closed?

A. For this particular commission, I understand the history has been that at one point they were open and at one point they were closed.

Q. And at what point is it your understanding on the history were they open?

A. It predates me. I want to say maybe 2017, 2018, but I am not certain.

Q. What is your understanding of history wise when they became closed?

A. I don't know why they became closed.

Q. I didn't say "why," I said what is your understanding of the process of getting closed and why they became closed?

A. I don't know.

Long Depo., ECF No. 74-2, p. 106, Lines 8-25.

9

**F. In contrast to the AOC's practice of restricting access to Tennessee Advisory Commission meetings, similar federal court rulemaking meetings have been open to the public for at least 35 years.**

The federal Judicial Conference's Committee on Rules of Practice and Procedure, ("Standing Committee") and its five Advisory Committees "carry on a continuous study of the operation and effect" of the federal rules as directed by the Rules Enabling Act.[5] These Advisory Committees on Criminal, Civil, Bankruptcy, Appellate, and Evidence Rules meet and evaluate proposed recommendations to the federal rules of practice and procedure.[6]

"Each meeting must be preceded by notice of the time and place, published in the Federal Register and on the judiciary's rulemaking website, sufficiently in advance to permit interested persons to attend."[7] The Standing Committee and each of the Advisory Committees typically meet twice per year.[8] Committee meetings are open to the public, except when a committee — in open session and with a majority present — determines that it is in the public interest to have all or part of the meeting closed and states the reason.[9] A calendar of upcoming scheduled meetings

---

[5] *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/how-rulemaking-process-works (last visited Dec. 13, 2023).

[6] *Id.*

[7] *Id.*

[8] *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/open-meetings-and-hearings-rules-committee (last visited Dec. 13, 2023).

[9] *Id.*

through November of 2024 are posted on a public website.[10] Rules Committee meetings and hearings are open to the public and held in a hybrid format "with remote attendance options whenever possible."[11]

The federal court rulemaking meetings have been open to the public for at least 35 years when Congress enacted a reform statute known as the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073 (c)(1).[12] And five years prior to the enactment of the statute, the Standing Committee instituted a number of internal changes in 1983 including making the records of the rules Committees available to the public, documenting all changes made by the Committees at various stages of the process, and conducting public hearings on proposed amendments.[13] The statute requires that "[e]ach meeting for the transaction of business under this chapter by any committee appointed under this section shall be open to the public." U.S.C. § 2073 (c)(1).

---

[10] *Id.*

[11] *Id.*

[12] The effective date of the reform statute was December 1, 1988. *See* Judicial Improvements and Access to Justice Act of 1988, § 407, *available at* https://www.govinfo.gov/content/pkg/STATUTE-102/pdf/STATUTE-102-Pg4642.pdf.

[13] Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U. L. Rev. 1655, n.43 (1995), *available at* https://www.uscourts.gov/sites/default/files/mccabearticle_1.pdf.

11

**G. To comply with this Court's Preliminary Injunction, the AOC posted public notice in advance of the June and December 2023 meetings and provided virtual livestreaming access to these meetings.**

In compliance with this Court's Preliminary Injunction (ECF No. 40), the AOC posted a public meeting notice on its website in advance of the June 2023 meeting and provided virtual livestreaming access to the public.[14] A video of the June 9, 2023, meeting is on the TN Courts' YouTube channel.[15] Approximately six months after this meeting was livestreamed, there were 95 views of the video.[16] And the AOC posted a public meeting notice on its website in advance of the December 2023 meeting and provided virtual livestreaming access to the public.[17] A video of the December 8, 2023, meeting is on the TN Courts' YouTube channel. Approximately five days after livestreaming the meeting, there were 62 views of the video.[18]

---

[14] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2023/06/09/advisory-commission-rules-practice-procedure (last visited Dec. 13, 2023).

[15] *See* https://www.youtube.com/watch?v=TCCkGHybsxg (last visited Dec. 13, 2023).

[16] *See id.*

[17] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2023/12/08/advisory-commission-rules-practice-and-procedure (last visited Dec. 13, 2023).

[18] *See* https://www.youtube.com/watch?v=XHY3DFF3V2E (last visited Dec. 13, 2023).

12

## LEGAL STANDARD

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To properly support a motion, the party must cite to the record, which includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In analyzing the motion, a court must draw all reasonable inferences in favor of the nonmoving party. *SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 878 (6th Cir. 2022).

"[W]here, as here, there is 'a videotape capturing the events in question,' the court must 'view[ ] the facts in the light depicted by the videotape.'" *Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 328-29 (6th Cir. 2023) (quoting *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 381 (2007)) (second alteration in *Green*).

# ARGUMENT

**I. The Court should grant Plaintiff McCaleb's motion for summary judgment because there is no genuine dispute as to any material fact that the First Amendment attaches to Advisory Commission meetings, requiring the AOC to provide public access to meetings.**

The Court should grant Plaintiff McCaleb's motion for summary judgment because there is no genuine dispute as to any material fact that the First Amendment attaches to Advisory Commission meetings, requiring the AOC to provide public access to meetings. McCaleb is entitled to a permanent injunction ordering Defendant Long to provide access to Advisory Commission meetings.

Defendant Long oversees the AOC. The AOC provides administrative support to the Advisory Commission. This includes responsibility for posting on the AOC's website public notice of Advisory Commission meetings. Moreover, Consiglio-Young testified that the AOC instituted a practice of *not* posting public notice of Advisory Commission meetings after the 2018 incident. Defendant Long has continued this practice during her tenure as AOC Director. This practice of restricting access to meetings limits the stock of information on the state court rulemaking process from which members of the public may draw. The First Amendment attaches to meetings under *Richmond Newspapers'* "experience and logic" test. *See* 42 U.S.C. §1983.

*First*, under the "experience" prong, the public's right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to Tennessee Advisory Commission meetings.

*Second*, under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings.

14

### A. The Eleventh Amendment is not a bar under *Ex parte Young.*

The Eleventh Amendment does not bar McCaleb's First Amendment right of access claim under the *Ex parte Young* doctrine and thus does not strip the Court of subject-matter jurisdiction.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. And a suit against an official in her official capacity "is a suit against the State itself." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). But under the exception in *Ex parte Young*, 209 U.S. 123 (1908), Eleventh Amendment immunity does not bar claims for injunctive relief against an individual state official in her official capacity. "In order to fall within the *Ex parte Young* exception, a claim must seek prospective relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (internal citations omitted).

It is appropriate under *Young* to enjoin a particular state official "when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015). The *Ex parte Young* doctrine does not require a causal connection between the deprivation and some specific action that a defendant took. Rather, "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.

15

3d 623, 634 (6th Cir. 2013). This requirement is satisfied where a state official has "some connection" to the unconstitutional legislation or other challenged action. *Allied Artists Picture Corp. v. Rhodes*, 679 F. 2d 656, 665 n.5 (6th Cir. 1982).

Here, *Ex parte Young* applies, and the Eleventh Amendment does not bar McCaleb's First Amendment right of access claim. McCaleb is seeking access to Advisory Commission meetings so he can assign reporters to report on meetings. As discussed above, Defendant Long oversees the AOC as its Director, and the AOC provides administrative support to the Advisory Commission. This support includes responsibility for posting public notice of Advisory Commission meetings.

Indeed, at times in the past, the AOC posted on its website public notice of meetings. The AOC hosted meetings in one of its conference rooms at its headquarters in Nashville, inviting the public to attend. Then the AOC stopped posting public notice of meetings after the 2018 meeting decorum breach that Consiglio-Young described.

There is no dispute that the AOC is the governmental body responsible for posting notice of Advisory Commission meetings and providing the public with virtual livestreaming access as evidenced by the fact that *the AOC did precisely that* to comply with this Court's Preliminary Injunction.

> **B. The First Amendment attaches under *Richmond Newspapers*, and the AOC's practice of restricting access to meetings limits the stock of information on state court rulemaking from which members of the public may draw.**

The First Amendment right of access attaches to Tennessee Advisory Commission meetings under *Richmond Newspapers* and its progeny, and the AOC's

16

practice of restricting access limits the stock of information on the state court rulemaking process from which members of the public may draw.

The U.S. Supreme Court said, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). And it emphasized a core purpose of the First Amendment relates "to the functioning of government." *Id. at* 575. It has further recognized that, "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg* v. *Hayes*, 408 U.S. 665, 681 (1972). Moreover, the Supreme Court held that the First Amendment "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978).

To determine whether the First Amendment right of access attaches to a proceeding in question — in this case Advisory Commission meetings — courts apply the two-part "experience and logic" test discussed in the concurrence in *Richmond Newspapers*. *See* 448 U.S. at 589; *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). The Sixth Circuit explained that the "experience and logic" test has broad and general application and has been extended to various non-adversarial proceedings. For example, the test has been applied "to determine whether there is a right of access to civil trials, administrative hearings,

17

deportation proceedings, and *municipal planning meetings*." *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (emphasis added).

First, a court looks to a similar proceeding to see if it historically has been open to the public because "a tradition of accessibility implies the favorable judgment of experience." *Richmond Newspapers*, 448 U.S. at 589. Second, a court determines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Company v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enter. II*"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *see also Richmond Newspapers* 448 U.S. at 589.

> **1. Under the "experience" prong, the public's right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to meetings.**

Under the "experience" prong, the public's right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to meetings.

The Sixth Circuit is not rigid or formulaic in determining an adequate passage of time to confer tradition under the "experience" prong and has noted that "a brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted." *Detroit Free Press*, 303 F.3d at 701. In looking at similar proceedings, courts "should look to proceedings that are similar in *form and substance*." *Id*. at 702. (emphasis added). "Substantively, [courts] look to other proceedings that have the same effect" when deciding if the First Amendment

attaches to the proceeding in question. *Id*. As the Sixth Circuit explained in paraphrasing the Supreme Court, it's the "walk, talk, and squawk" approach when making a comparative analysis. *Id*.

*History*. In terms of history, as discussed 35 years ago Congress enacted the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073(c)(1). The relevant provision of the statute provided public access to various Advisory Committee meetings, the federal analogue to Tennessee's Advisory Commission. In other words, federal court rulemaking meetings have been open to the public pursuant to statute for at least 35 years. And as further discussed, before Congress formally enacted the Access to Justice statute, in 1983 the Standing Committee instituted several internal changes that had the effect of enhancing public access to federal court rulemaking. Those internal changes adopted in 1983 include making the records of the federal rules Committees available to the public, documenting all changes made by the Committees at various stages of the process, and conducting public hearings on proposed amendments. Thus, Standing Committee hearings on proposed federal court rule changes have been open to the public for 40 years.

*Form*. In terms of form, the Advisory Committees are comprised of members of both the bench and bar, just like Tennessee's Advisory Commission. The Supreme Court has noted this particular "bench-bar" distinction in one case explaining that its "rulemaking authority is constrained by §§ 2073 and 2074, which require, among other things, that meetings of bench-bar committees established to recommend

rules ordinarily be open to the public, § 2073(c)(1), and that any proposed rule be submitted to Congress before the rule takes effect, § 2074(a)." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995).

*Substance*. In terms of substance, the federal Advisory Committees are also virtually identical to Tennessee's Advisory Commission in the areas of court rules considered. For example, both the Advisory Committees and Tennessee's Advisory Commission meet to make recommendations on proposed changes to the practice and procedure of Criminal, Civil, Appellate, and Evidence Rules. The only difference is the federal Advisory Committees also consider proposed changes to the Bankruptcy Rules because that practice area is governed by federal law, and the Tennessee Advisory Commission makes recommendations regarding Juvenile Rules because that practice area is governed by state law.

### 2. Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings.

Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings.

The Sixth Circuit recently granted summary judgment in favor of news organizations in a high-profile defamation case that had First Amendment implications by viewing the facts in the light depicted by video. *See generally Sandmann*, 78 F.4th 319. And this Court should do so here as well under the "logic" prong of *Richmond Newspapers* by analyzing video on the TN Courts' YouTube channel of the June and December 2023 Advisory Commission meetings.

20

*June 9, 2023, Advisory Commission Meeting*.[19] All of the members participated via Zoom and the meeting was approximately 52 minutes in length. Chairman Bulso began the meeting by welcoming and recognizing new members recently appointed by the Tennessee Supreme Court to the Advisory Commission.[20] This included a new member from the bench, Judge Jennifer Smith of Davidson County, and at least one new member from the bar, Donald Capparella of Nashville.[21] Chairman Bulso then turned to Supreme Court Justice Sharon Lee, who gave some remarks.[22] Roll was called, and Chairman Bulso determined there was a quorum.[23]

The first order of business was for the members to approve the minutes of the previous two meetings. A vote was taken, and the minutes were approved.[24] The first action item was regarding discussion on proposed amendments to Rule 43.01 of the Tennessee Rules of Civil Procedure.[25]

The members engaged in thoughtful, open, and candid discussion on the work the various subcommittees had been involved in, and the meeting overall was conducted in a professional manner and proper decorum was displayed at all times.

---

[19] *See* https://www.youtube.com/watch?v=TCCkGHybsxg.

[20] *See id.* beginning at :23.

[21] *Id.*

[22] *See id.* beginning at 1:05.

[23] *See id.* beginning at 2:10.

[24] *See id.* beginning at 3:01.

[25] *See id.* beginning at 3:51.

*December 8, 2023, Advisory Commission Meeting*.[26] All of the members participated via Zoom, and the meeting was approximately 1 hour and 17 minutes in length. Chairman Bulso conducted the meeting in similar professional fashion as the June meeting. The first action item was a proposal to amend Rule 22 of the Tennessee Appellate Rules of Procedure, and a spirited discussion ensued, with various members weighing in with frank, candid, and thoughtful comments.[27]

Here, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of Tennessee's Advisory Commission meetings.

First, public access acts as a check on the actions of the state judiciary by assuring citizens that state court proceedings will be conducted fairly and properly. *See Richmond Newspapers*, 448 U.S. at 569 (noting that public access assures that proceedings are conducted fairly and discourages decisions based on secret bias or partiality). In an area such as making recommendations on state court rules, the public and press serve as perhaps the only check on abusive government practices regarding proposed court rules of practice and procedure. For example, the criminal rules of procedure are of significant consequence in the administration of justice. And this check encourages the promulgation of better and more enlightened court rules.

---

[26] *See* https://www.youtube.com/watch?v=XHY3DFF3V2E.

[27] *See id*. beginning at 6:44.

22

Second, public access helps ensure that "the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper*, 457 U.S. at 604. "[A] major purpose of [the First Amendment] was to protect the free discussion of governmental affairs." *Id.* Public access to Advisory Commission meetings helps inform the public of the affairs of state government including its judiciary and the state court rulemaking process.

Third, openness enhances transparency and the public's perception of integrity and fairness. Confidence in the state court system increases with open access to meetings because the perception is "that established procedures are being followed and that deviations will become known." *See Press-Enterprise Co. v. Superior Court of Ca.*, 464 U.S. 501, 508 (1984).

Fourth, unlike a situation involving sensitive information like in *In re Search of Fair Finance*, 692 F.3d at 433, there are no potential harms from opening Advisory Commission meetings because state court rules of practice and procedure are contained within the public domain.

Finally, videos of the two Advisory Commission meetings that were livestreamed to the public in June and December reflect members engaging in candid and open dialogue in their attempt to fashion better state court rules. Just like members in open federal court rulemaking meetings have been doing for nearly 40 years.

23

## II. The AOC's practice of restricting public access to Advisory Commission meetings in the interest of maintaining meeting decorum is not a compelling governmental interest that is narrowly tailored to overcome strict scrutiny.

The AOC's practice of restricting public access to Advisory Commission meetings in the interest of maintaining meeting decorum is not a compelling governmental interest that is narrowly tailored to overcome strict scrutiny.

Under *Globe Newspaper*, strict scrutiny applies to a government action that curtails a First Amendment right of access, and it must be supported by a showing "that denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." 457 U.S. at 606-07.

To be sure, proper etiquette and decorum are important when it comes to the public observing a government function such as an Advisory Commission meeting. But maintaining proper meeting decorum is not a compelling governmental interest here, particularly since Consiglio-Young testified that the 2018 incident did not involve any physical acts toward members. Instead, that meeting decorum breach by a member of the public was entirely "verbal."

Moreover, while removing the individual from the AOC's conference room in 2018 may have been appropriate, completely closing meetings to the public was not a narrowly tailored response. And now with the AOC's utilization of Zoom and livestreaming, which allows the public to observe *virtually*, a potential meeting decorum breach is not even an issue.

24

**CONCLUSION**

For these reasons, Plaintiff McCaleb requests that the Court grant his Motion for Summary Judgment and enter a permanent injunction, ordering Defendant Long and the AOC to provide public access to meetings of the Advisory Commission.

December 15, 2023                    Respectfully submitted,


                                     */s/ M. E. Buck Dougherty III*
                                     M. E. Buck Dougherty III, TN BPR #022474
                                     James McQuaid, *Pro Hac Vice*
                                     LIBERTY JUSTICE CENTER
                                     440 N. Wells Street, Suite 200
                                     Chicago, Illinois 60654
                                     312-637-2280-telephone
                                     312-263-7702-facsimile
                                     bdougherty@libertyjusticecenter.org
                                     jmcquaid@libertyjusticecenter.org

                                     *Attorneys for Plaintiff, Dan McCaleb,*
                                     *Executive Editor of The Center Square*

# CERTIFICATE OF SERVICE

I, counsel for Plaintiff Dan McCaleb, hereby certify that a true and correct copy

of the foregoing document has been served on the following counsel of record, via the

Court's ECF system by email on this 15th day of December 2023:

JONATHAN SKRMETTI

Office of the Attorney General & Reporter
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202-0207

Andrew C. Coulam
Michael M. Stahl
Robert W. Wison
andrew.coulam@ag.tn.gov
michael.stahl@ag.tn.gov
robert.wilson@ag.tn.gov

*Attorneys for Defendant*
*AOC Director Michelle Long*

Donna Green
Cody Brandon
Liz Evan
donna.green@ag.tn.gov
cody.brandon@ag.tn.gov
liz.evan@ag.tn.gov

*Attorneys for Non-Party*
*Tennessee Supreme Court Justices*

/s/ M.E. Buck Dougherty III