# IN THE UNITED STATES DISTRICT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| DAN McCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:22-cv-00439 |
| | ) | Judge Richardson |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) | Magistrate Judge Frensley |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Dan McCaleb, has moved for summary judgment, asserting that he has a First Amendment right of access to the meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure ("Advisory Commission"). (D.E. 74 at PageID## 2651-53.)[1] But as Defendant, Michelle Long, has shown in support of her own motion for summary judgment (D.E. 71 at PageID## 1929-30; D.E. 72 at PageID## 1936-47), Plaintiff's motion fails for at least three reasons.

*First*, Plaintiff ignores the general applicability of *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), which holds that the First Amendment does not require the government to provide the public a right of access to information within the government's control. *Second*, although

---

[1] Defendant notes that Plaintiff is not seeking summary judgment on his First Amendment claim relating to committee meetings of the Tennessee Judicial Conference. *See* Am. Complaint, D.E. 19 at PageID## 141-48.

*Richmond Newspapers v. Virginia*, 448 U.S. 555 (1980), and its progeny provide a narrow exception to *Houchins*' baseline principle, that exception applies only to adjudicatory or quasi-adjudicatory proceedings, and Advisory Commission meetings are neither. *Finally*, even if the "experience and logic" test from *Richmond Newspapers* were to apply, Plaintiff fails to satisfy either prong. For these reasons, as addressed more fully below, the Court should deny Plaintiff's motion for summary judgment.

## BACKGROUND

Defendant incorporates herein by reference the "Background" section in her Memorandum of Law in Support of Defendant's Motion for Summary Judgment. (D.E. 72 at PageID## 1933-35.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the supporting affidavits, show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). When deciding a summary-judgment motion, the Court must view all materials supplied, including all pleadings, in the light most favorable to the nonmoving party. *Chao*, 285 F.3d at 424. The moving party has the burden of informing the court of the basis for its motion and identifying the portions of the record that establish the absence of a genuine issue of material fact. *Id.* A fact is "material" if it might affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a reasonable juror might not return a verdict for the movant, the Court should deny summary judgment. *Id.* at 251-52.

2

**ARGUMENT**

**Plaintiff Has No Constitutional Right to Attend the Meetings of the Advisory Commission.**

Plaintiff is not entitled to judgment as a matter of law because he fails to demonstrate that a First Amendment right of access attaches to meetings of the Advisory Commission. *First*, Plaintiff's arguments ignore that the Advisory Commission's meetings fall within *Houchins*' "baseline principle" that "'[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.'" *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016) (quoting *Houchins*, 438 U.S. at 14-15). *See* D.E. 72 at PageID## 1937-38. *Second*, Plaintiff relies on disavowed Sixth Circuit dicta to support his assertion that the Advisory Commission's meetings fit within *Richmond Newspapers*' narrow exception to *Houchins*' general rule. *Finally*, even if *Richmond Newspapers*' "experience and logic" test were to apply, Plaintiff has not shown that he satisfies either prong of this test.

> A.    The Supreme Court's decision in *Houchins v. KQED, Inc.*—not *Richmond Newspapers*—governs Plaintiff's claim.

By its terms, the First Amendment, through the Fourteenth Amendment, prohibits States from "'abridging' oral expression . . . or written expression." *Lichtenstein v. Hargett*, 83 F.4th 575, 582 (6th Cir. 2023). The Supreme Court has noted that the First Amendment also provides "some protection" for newsgathering, including granting reporters the ability "to seek news from any source by means within the law." *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972). But while the First Amendment protects the right to gather information, it does not compel "governments to open up all ongoing proceedings to the public." *Hils v. Davis*, 52 F.4th 997, 1002 (6th Cir. 2022). That is, neither the First Amendment nor Fourteenth Amendment requires the government to provide a "right of access" to information within its control. *Houchins*, 438 U.S.

at 15. Thus, "the First Amendment right to gather information from the government usually extends as far as the government has opened its doors to the public and press." *Hils*, 52 F.4th at 1003; *see also Pell v. Procunier*, 417 U.S. 817, 834-35 (1974) (holding that the Constitution does not "impose[] upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally").

*Houchins* "sets the baseline principle for First Amendment claims seeking access to information held by the government." *Phillips*, 841 F.3d at 418. And in "case after case," the Supreme Court has concluded that the First Amendment "do[es] not override access restrictions to the White House . . ., or to Supreme Court conferences, grand jury investigations, official governmental meetings, or crime scenes." *Hils*, 52 F.4th at 1002-03 (citing *Branzburg*, 408 U.S. at 684-85; *Zemel v. Rusk*, 381 U.S. 1, 17 (1965)).

The Advisory Commission meetings fall under *Houchins*' baseline principle—*i.e.*, Plaintiff's right of access to meetings of the Advisory Commission depends on whether the State of Tennessee has "opened its doors to the public and press" to allow attendance. *Hils*, 52 F.4th at 1003. It has not—the State has closed meetings of the Advisory Commission to both the press and public. (D.E. 72-2 at PageID# 2111; D.E. 72-3 at PageID## 2160, 2162, 2211.) Consequently, Plaintiff has no First Amendment right of access to such meetings.

Plaintiff wholly ignores "the general applicability of *Houchins*." *Phillips*, 841 F.3d at 419-20. Instead, he argues that *Richmond Newspapers*' "experience and logic" test has "broad and general application" and "extend[s] to various non-adversarial proceedings." (D.E. 76 at PageID# 2803.) To be sure, *Richmond Newspapers* serves as "[a] modest exception" to *Houchins*' general rule. *Hils*, 52 F.4th at 1002. But the exception does not apply here; in arguing to the contrary, Plaintiff relies on disavowed dicta and fails to recognize that the exception applies only to "discrete

4

settings" involving adjudicatory or quasi-adjudicatory proceedings.  *See id.*; *Phillips*, 841 F.3d at 418.

Federal courts have disavowed statements supporting a broad application of *Richmond Newspapers*' "experience and logic" test.  Plaintiff seizes on the Sixth Circuit's pronouncement in *In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012), that courts have applied the test "in a wide variety of other contexts," including the Third Circuit's purported application of the test to "municipal plannings meetings."  692 F.3d at 429.  *See* D.E. 76 at PageID## 2803-04.[2]  But as Defendant has previously explained (D.E. 72 at PageID## 1940-41), the Sixth Circuit disavowed *Fair Fin.*'s "pronouncement [as] dicta" just four years later.  *Phillips*, 841 F.3d at 418.  And the Third Circuit also later renounced its statement regarding "municipal planning meetings."  In *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198 (3d Cir. 2002), the Third Circuit concluded that its statement in *Whiteland Woods L.P. v. Twp. of W. Whiteland*, 193 F.3d 177 (3d Cir. 1999) was "misleading" and "dicta," because the plaintiff was never denied "the *access* guaranteed by state law" to the township's meetings and that the issue in that case was whether the plaintiff had a right to videotape the meetings.  308 F.3d at 214; *see also id.* at 201 (noting that *Whiteland Woods* contained "far reaching" dicta).[3]

Furthermore*,* the *Richmond Newspapers* exception applies only in "limited settings" that are not implicated here.  *See Hils*, 52 F.4th at 1002.  Beginning with *Richmond Newspapers*, "the

---

[2] For this proposition, *Fair Fin.* cited *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002), which, in turn, cited *Whiteland Woods L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 180-81 (3d Cir. 1999).

[3]  Judge Joseph Scirica, who had written the opinion in *Whiteland Woods*, dissented in *N. Jersey Media Grp.*  Notably, however, while Judge Scirica disagreed with the majority's holding that the First Amendment right of access did not attach to deportation proceedings, he did not take issue with the majority's determination that *Whiteland Woods*' "municipal planning meetings" statement was dicta.  *See N. Jersey Media Grp.*, 308 F.3d at 221-29 (Scirica, J., dissenting).

Supreme Court has recognized a right of access to certain criminal proceedings and the documents filed in those proceedings." *Phillips*, 841 F.3d at 418. And the Sixth Circuit has extended this right, or applied the *Richmond Newspapers*' framework to, civil trials, plea agreements, university disciplinary proceedings, deportation proceedings, and documents related to the issuance and execution of a search warrant. *Id.* (collecting cases). The common thread from these cases is that the proceedings in question were adjudicatory or quasi-adjudicatory in nature. As the Sixth Circuit observed in *Hils*, this "modest exception exists" only in "discrete" and "limited" settings "when the government excludes the people from a space historically open to them, and that space has 'play[ed] a particularly significant role in the functioning of the *judicial process* and the government as a whole.'" 52 F.4th at 1002-03 (quoting *Globe Newspaper Co. v. Superior Court for Norfolk Cnty.*, 457 U.S. 596, 605-06 (1982)) (emphasis added).

Advisory Commission meetings do not fit within the *Richmond Newspapers* exception because they are not adjudicatory or quasi-adjudicatory. (D.E. 72-1 at PageID## 2003-04.) *Cf. Detroit Free Press v. Ashcroft*, 303 F.3d 681, 696 (6th Cir. 2002) (concluding that a deportation proceeding was a "quasi-judicial" proceeding because it is "an adversarial, adjudicative process"). Rather, the purpose of the Advisory Commission is to discuss "court rule proposals and/or needs and make recommendations of possible changes" to the Tennessee Supreme Court. (D.E. 72-1 at PageID## 2003-04.) Because the exception does not apply, and Plaintiff has no First Amendment right of access to Advisory Commission meetings under *Houchins*' general rule, Plaintiff's First Amendment claim fails as a matter of law.

**B.      Plaintiff's claim fails under the *Richmond Newspapers* test.**

Plaintiff's claim would fare no better, though, even if *Richmond Newspapers*' "experience and logic" test *did* apply to Advisory Commission meetings.  Plaintiff fails to establish that he would satisfy either prong of that test.

**1.      Plaintiff fails to satisfy the "experience" prong of the test.**

The "experience" prong requires a plaintiff to demonstrate "whether the place and process ha[s] historically been open to the press and general public."  *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986).  In support of his argument that he satisfies this prong, Plaintiff relies solely on the public's right of access to "similar *federal court* rulemaking meetings."  (D.E. 76 at PageID# 2804 (emphasis added).)  But Plaintiff is wrong in asserting that the openness of these "similar" meetings is dispositive of the question; moreover, he fails to demonstrate that these meetings have historically been open to the public or that they are indeed "similar" to Advisory Commission meetings.

Plaintiff contends that a court "looks to *a* similar proceeding" to determine whether it has historically been open to the public.  (D.E. 76 at PageID# 2804 (emphasis added).)  That is incorrect.  The "experience" prong of the test "does not look to the particular practice of any one jurisdiction, but instead 'to the experience in that type or kind of hearing *throughout the United States.*'"  *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (quoting *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 323 (1st Cir. 1992) (original emphasis removed and emphasis added)).  For example, in *Press-Enterprise*, the Supreme Court concluded that preliminary hearings were historically open to the public after finding a "near uniform practice [among] state and federal courts."  478 U.S. at 10-11 & nn.3-4.

Plaintiff's sole reliance on comparisons to meetings of the federal government's rule advisory committee is therefore insufficient. (D.E. 76 at PageID## 2804-06.)[4] Plaintiff fails to demonstrate, as he must, that rules advisory commission meetings "throughout the United States" have historically been open to the press and the general public. *El Vocero de Puerto Rico*, 508 U.S. at 150.

Furthermore, even with respect to meetings of the federal rule advisory committee, Plaintiff fails to show an "unbroken, uncontradicted history" of openness. *Richmond Newspapers*, 448 U.S. at 573. Plaintiff stresses "the public's right of access for at least 35 years" to such meetings, as well as earlier efforts to "enhanc[e] public access." (D.E. 76 at PageID## 2804-05.) But before Congress enacted amendments to the Rules Enabling Act in 1988, "meetings of the [federal rule advisory committee] had generally been closed to the public" and were "secretive." Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U.L. Rev. 1655, 1670-71 & n.85 (1995); *see also* D.E. 72 at PageID# 1944 (providing additional articles regarding the federal rule advisory committee's closed-door meetings for its first 50 years)).

Plaintiff suggests that "'a brief historical tradition might be sufficient to establish a First Amendment right of access.'" (D.E. 76 at PageID# 2804 (quoting *Detroit Free Press*, 303 F.3d at 701).) But the facts of *Detroit Free Press* do not support Plaintiff's suggestion. The deportation proceedings at issue in that case could trace their roots to English criminal courts applying the Transportation Act of 1718, and those proceedings were historically open to the public. *See Detroit Free Press*, 303 F.3d at 701-02. Again, and unlike these deportation proceedings, meetings

---

[4] Not only is Plaintiff's sole reliance on the federal committee meetings legally insufficient, but as Defendant has discussed in support of her motion for summary judgment, relying on the federal government's openness policy for such meetings to impose a constitutional mandate on the States would be "fraught with federalism peril." (D.E. 72 at PageID## 1944-45.)

of the federal rule advisory committee were largely closed to the public for the first 50 years of the committee's existence. (D.E. 72 at PageID# 1944).

Plaintiff also fails to show that federal rule committee meetings are "similar" to Advisory Commission meetings. While Plaintiff contends that the meetings are similar in "form" and "substance" (D.E. 76 at PageID# 2805-06), there is one significant and material difference: Advisory Commission recommendations—if they are adopted by the Tennessee Supreme Court after a significant public-comment period—must be approved by the Tennessee General Assembly before going into effect. After the Tennessee Supreme Court considers the Advisory Commission's recommendations, submits its own proposals for public comment, and forwards its post-public-comment proposals to the General Assembly, the rule proposals do not go into effect unless and until they are "affirmatively approve[d]" by the legislature. (D.E. 72-2 at PageID## 2098-99.) By contrast, the federal committee's proposals become effective following transmission to Congress so long as "Congress does not enact positive legislation to reject, modify, or defer the rules or amendments." McCabe, *Renewal of the Federal Rulemaking Process*, at 1673; *see* D.E. 72-2 at PageID# 2099; *cf. Detroit Free Press*, 303 F.3d at 702 (noting that courts "look to other proceedings that have the same effect"). Plaintiff therefore fails to satisfy the "experience" prong of the test for this reason as well.

### 2. Plaintiff fails to satisfy the "logic" prong of the test.

Again assuming, *arguendo*, that the "experience and logic" test even applies, Plaintiff's failure to satisfy the "experience" prong "alone requires a rejection of [his] contention that there is a First Amendment right of access" to Advisory Commission meetings. *See In re Search of Fair Finance*, 692 F.3d at 431. But that rejection is further supported by Plaintiff's failure to

9

demonstrate that "public access plays a significant positive role in the functioning of" Advisory Commission meetings. *Press-Enterprise*, 478 U.S. at 8.

In support of his argument on this prong, Plaintiff points to the recorded, post-preliminary-injunction meetings of the Advisory Commission in June and December 2023; he contends that "as depicted by [the videos of these two meetings], public access plays a significant positive role in the functioning of Tennessee's Advisory Commission meetings." (D.E. 76 at PageID# 2808.) Scrutiny of Plaintiff's several points in support of this assertion, however, reveals that the assertion is merely conclusory.

Plaintiff says that allowing public access to Advisory Commission meetings provides a "check" on the actions of the State judiciary. (D.E. 76 at PageID# 2808.) But the "logic" prong is "measured in specifics," *In re Search of Fair Finance*, 692 F.3d at 433 (internal quotation marks omitted), and Plaintiff fails to show, or even explain, *how* access to Advisory Commission meetings serves as a "check" on court proceedings. Further, the Tennessee Supreme Court is not required to consider *any* of the Advisory Commission's recommendations. (D.E. 72-2 at PageID# 2098.) And any proposal the Tennessee Supreme Court *does* accept from the Advisory Commission—or any proposal the Court submits on its own—is subject to a period of public comment before submission to the General Assembly. (D.E. 72-1 at PageID## 2006-07; D.E. 72-2 at PageID# 2098; D.E. 72-4 at PageID# 2333.) So Tennessee's existing rulemaking process already provides the purported benefits of a "check" on the "promulgation of better and more enlightened court rules." (D.E. 76 at PageID# 2808.)

Plaintiff next says that access to Advisory Commission meetings would "help[] inform the public of the affairs of state government including its judiciary and the state court rulemaking process." (D.E. 76 at PageID# 2809.) The "logic" prong, however, considers whether public

10

access "plays a particularly significant positive role in the *actual functioning* of the process." *Press-Enterprise*, 478 U.S. at 11 (emphasis added). Plaintiff again provides no showing or explanation as to *how* public access to Advisory Commission meetings plays any positive role— let alone a significant one—in the Commission's *functions*. Indeed, the evidence shows that public access would play a *negative* role in the Commission's functions. *See* D.E. 72-2 at PageID# 2093 (stating that closed-door meetings offer Commission members a "level of candor" that would be "diminished" if they were open to the public).

Plaintiff similarly asserts that open Advisory Commission meetings would increase "[c]onfidence in the state court system" to ensure that established procedures are followed and that deviations will become known. (D.E. 76 at PageID# 2809.) But as discussed above, the Advisory Commission's purpose is to provide rule recommendations to the Tennessee Supreme Court. (D.E. 72-1 at PageID## 2003-04.) Plaintiff has not put forth any evidence showing a connection between public access to Advisory Commission meetings and the State judiciary's implementation of court rules of procedure.

Plaintiff argues that Advisory Commission meetings do not involve sensitive information and that there are "no potential harms" from opening them to the public, because "court rules of practice and procedure are contained within the public domain." (D.E. 76 at PageID# 2809.) Plaintiff has not demonstrated, however, that Commission meetings do not involve sensitive information.[5] In any event, and again, the Advisory Commission generates rule *recommendations*—not the rules themselves—and those recommendations must undergo multiple

---

[5] Unrebutted evidence in the record shows Advisory Commission meetings *do* involve issues that are sensitive. (D.E. 72-2 at PageID# 2112.)

periods of public comment and approval.  (D.E. 72-1 at PageID## 2003-04, 2006-07; D.E. 72-2 at PageID# 2098; D.E. 72-4 at PageID# 2333.)

Finally, Plaintiff asserts that videos of the June and December 2023 meetings "reflect members engaging in candid and open dialogue."  (D.E. 76 at PageID# 2809.)  Defendant does not dispute that the Court may view "facts in the light depicted by" a videotape when it is available and captures "the events in question," *see Sandmann v. N.Y. Times Co.*, 78 F.4th 319, 328-29 (6th Cir. 2023) (cleaned up), but neither video recording captures "the events in question" because neither involved a closed-door meeting of the Advisory Commission.  "[C]onfidential meetings" of the Advisory Commission provide "a certain level of candor to the meeting that is . . . diminished by having meetings be public."  (D.E. 72-2 at PageID# 2093.)  Recordings of meetings that were open to the public (by virtue of this Court's preliminary injunction) provide no insight regarding the level of candor in members' discussions when meetings are closed.

The question under the "logic" prong is not whether allowing public access to Advisory Commission meetings would do no harm or even provide some benefit—the question is whether public access "plays a significant positive role in the functioning of" the Advisory Commission meetings.  *Press-Enterprise*, 478 U.S. at 8.  None of Plaintiff's arguments demonstrate that it does.

In sum, Plaintiff fails to satisfy either the "experience" or the "logic" prong of the *Richmond Newspapers* exception.  Even if that exception applied, therefore, Plaintiff would have no First Amendment right of access to Advisory Commission meetings, and his First Amendment claim would fail as a matter of law.

**CONCLUSION**

For the reasons stated, the Court should deny Plaintiff's motion for summary judgment.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

s/ Andrew C. Coulam
ANDREW C. COULAM
Deputy Attorney General
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202
615-741-1868
andrew.coulam@ag.tn.gov
B.P.R. No. 30731


s/ Michael Stahl
MICHAEL M. STAHL
Senior Assistant Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
615-253-5463
michael.stahl@ag.tn.gov
B.P.R. No. 032381

s/ Robert W. Wilson
ROBERT W. WILSON
Senior Assistant Attorney General
40 South Main Street, Suite 1014
Memphis, Tennessee 38103
901-543-9031
robert.wilson@ag.tn.gov
B.P.R. No. 34492

*Counsel for Defendant Michelle Long*
*in her official capacity as Director of the*
*Tennessee Administrative Office of the Courts*

13

**CERTIFICATE OF SERVICE**

I, Robert W. Wilson, counsel for Defendant Michelle Long, hereby certify that a copy of this response is being served electronically via the Court's ECF/ECM service on January 5, 2024, upon the following:

| | |
|---|---|
| M.E. Buck Dougherty, III (a/k/a Buck Dougherty) bdougherty@libertyjusticecenter.org *Counsel for Plaintiff Dan McCaleb* | James J. McQuaid jmcquaid@libertyjusticecenter.org *Counsel for Plaintiff Dan McCaleb* |
| Michael Matthew Stahl Michael.Stahl@ag.tn.gov *Counsel for Defendant Michelle Long* | Andrew Craig Coulam Andrew.Coulam@ag.tn.gov *Counsel for Defendant Michelle Long* |
| Donna L. Green Donna.Green@ag.tn.gov *Counsel for the Tennessee Supreme Court* | |

s/ Robert W. Wilson
Robert W. Wilson
Senior Assistant Attorney General
*Counsel for Defendant Michelle Long*

14