IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAN McCALEB, Executive Editor of )
THE CENTER SQUARE, )
                                )
        Plaintiff, )
                                  )
v. )     Case No. 3:22-cv-00439
                                  )
MICHELLE LONG, in her official )     Judge Richardson
capacity as DIRECTOR of the )
TENNESSEE ADMINISTRATIVE )     Magistrate Judge Frensley
OFFICE OF THE COURTS, )
                                  )
        Defendant. )

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted,

M. E. Buck Dougherty III, TN BPR #022474
James McQuaid, *Pro Hac Vice*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280-telephone
312-263-7702-facsimile
bdougherty@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff, Dan McCaleb,*
*Executive Editor of The Center Square*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

    A. The Advisory Commission................................................................................ 2

        1. Plaintiff McCaleb is an experienced journalist who seeks
           contemporaneous public access to Advisory Commission court
           rulemaking meetings so he can assign reporters to report on meetings ....... 2

        2. Defendant Long is AOC Director, and the office she oversees
           provides administrative support to the Advisory Commission ..................... 3

        3. Michelle Consiglio-Young is the AOC liaison to the Advisory
           Commission.................................................................................................... 4

        4. In the past the AOC posted public notice of Advisory Commission
           meetings until 2018 when a member of the public breached decorum
           by verbally disrupting a meeting .................................................................... 4

        5. After this meeting decorum breach, the AOC instituted a practice
           of no longer posting public notice of Advisory Commission meetings,
           and Defendant Long has continued this practice as Director ....................... 8

        6. In contrast to the AOC's practice of restricting access to Tennessee
           Advisory Commission meetings, similar federal court rulemaking
           meetings have been open to the public for at least 35 years ....................... 10

        7. To comply with this Court's Preliminary Injunction, the AOC posted
           public notice in advance of the June and December 2023 meetings
           and provided virtual livestreaming access to these meetings ..................... 12

    B. The Tennessee Judicial Conference ................................................................ 13

PROCEDURAL HISTORY .................................................................................. 13

LEGAL STANDARD............................................................................................ 14

ARGUMENT ........................................................................................... 16

I.  The Court should deny Defendant Long's motion for summary judgment because there is a genuine issue for trial since the record shows sufficient evidence supporting Plaintiff McCaleb's First Amendment right of access claim to Advisory Commission meetings .................................................. 16

   A. The U.S. Supreme Court's decision in *Richmond Newspapers* governs Plaintiff's right of access claim, not *Houchins* ........................ 19

   B. The First Amendment attaches to Advisory Commission meetings under *Richmond Newspapers'* "experience and logic" test .................. 20

      1. Under the "experience" prong, the public's unbroken right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to meetings.............. 21

      2. Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings ................................................................... 24

II. Pursuant to counsel's Rule 56(d) Declaration, the Court should defer considering Defendant's Motion as it relates to Plaintiff's access claim to Tennessee Judicial Conference meetings until depositions of the Non-Party Tennessee Supreme Court Justices ................................................. 25

CONCLUSION......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Allied Artists Picture Corp. v. Rhodes,*
 679 F. 2d 656 (6th Cir. 1982) ................................................................. 17

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ..................................................................... 14, 15

*Bennett v. City of Eastpointe,*
 410 F.3d 810 (6th Cir. 2005) .............................................................. 17

*Branzburg* v. *Hayes,*
 408 U.S. 665 (1972) ............................................................................ 20

*Detroit Free Press v. Ashcroft,*
 303 F.3d 681, 694 (6th Cir. 2002) ............................................. 20, 21, 22

*Evans v. Vinson,*
 427 Fed. Appx. 437 (6th Cir. 2011) ...................................................... 17

*Ex parte Young,*
 209 U.S. 123 (1908) ............................................................................ 17

*Ferro Corp. v. Cookson Grp.,*
 PLC, 585 F.3d 946 (6th Cir. 2009) ....................................................... 16

*First Nat'l Bank of Bos. v. Bellotti,*
 435 U.S. 765 (1978) ............................................................................ 20

*Foster v. Mastec N. Am.,*
 2023 U.S. Dist. LEXIS 86407 (M.D. Tenn. May 17, 2023) ..................... 15

*Globe Newspaper Co. v. Superior Court,*
 457 U.S. 596 (1982) ............................................................................ 21

*Green v. Throckmorton,*
 681 F.3d 853 (6th Cir. 2012) .............................................................. 16

*Hostettler v. College of Wooster,*
 895 F.3d 844 (6th Cir. 2018) .............................................................. 15

*Houchins v. KQED, Inc.,*
 438 U.S. 1 (1978) ............................................................................... 19

*In re Search of Fair Fin.,*
 692 F.3d 424 (6th Cir. 2012) .............................................................. 21

*Knight v. Montgomery Cnty.,*
 592 F.3d Supp. 651 (M.D. Tenn. Mar. 21, 2022) ............................. 14, 15

*O'Donnell v. City of Cleveland,*
 838 F.3d 718 (6th Cir. 2016) .............................................................. 15

*Peeples v. City of Detroit,*
    891 F.3d 622 (6th Cir. 2018) .................................................................... 15

*Pittman v. Experian Information Solutions, Inc.,*
    901 F.3d 619 (6th Cir. 2018) .................................................. 15, 18, 19, 22

*Press-Enterprise Company v. Superior Court,*
    478 U.S. 1 (1986) ........................................................................... 21, 22

*Richmond Newspapers, Inc. v. Virginia,*
    448 U.S. 555 (1980) ........................................................................ 20, 21

*Sandmann v. N.Y. Times Co.,*
    78 F.4th 319 (6th Cir. 2023) ............................................................. 16, 24

*Scott v. Harris,*
    550 U.S. 372 (2007) .............................................................................. 16

*SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.,*
    33 F.4th 872 (6th Cir. 2022) .................................................................. 16

*Swint v. Chambers County Comm'n,*
    514 U.S. 35 (1995) ................................................................................ 23

*Top Flight Entm't, Ltd. v. Schuette,*
    729 F. 3d 623 (6th Cir. 2013) ........................................................... 17, 18

**Statutes**

28 U.S.C. § 2073 .......................................................................... 11, 12, 22

42 U.S.C. §1983 .................................................................................. 16, 19

Tenn. Code Ann. § 17-3-101 ...................................................................... 13

Tenn. Code Ann. § 17-3-102 ...................................................................... 13

Tenn. Code Ann. § 17-3-104 ...................................................................... 13

Tenn. Code Ann. § 17-3-107 ...................................................................... 13

Tenn. Code Ann. §16-3-601 ..................................................................... 1, 3

Tenn. Code Ann. §16-3-803 .......................................................................... 3

**Other Authorities**

Peter G. McCabe, *Renewal of the Federal Rulemaking Process,*
    44 Am. U. L. Rev. 1655 (1995) ............................................................... 11

**Rules**

Fed. R. Civ. P. 56 .......................................................................... 14, 15, 16, 25

LR 56.01 ................................................................................................ 1

Case 3:22-cv-00439    Document 83    Filed 01/12/24    Page 5 of 32 PageID #: 2855

# INTRODUCTION

Plaintiff Dan McCaleb, Executive Editor of The Center Square, files this Response in opposition to Defendant Michelle Long's Motion for Summary Judgment. ECF No. 71. Accompanying this Response is a Rule 56.01 Statement filed in accordance with LR 56.01(c)(3). As discussed in this Response, the Court should deny Defendant Long's Motion because evidence in the record shows a genuine issue for trial, and she is not entitled to judgment as a matter of law.

McCaleb is an experienced journalist seeking public access under the First Amendment to meetings of the Advisory Commission on the Rules of Practice & Procedure ("Advisory Commission"), created by Tenn. Code Ann. §16-3-601. Defendant Long is Director of the Tennessee Administrative Office of the Courts ("AOC"). Defendant Long oversees the AOC, which provides administrative support to the Advisory Commission. This administrative support includes posting public notice of Advisory Commission meetings on the AOC's website.

Although past Advisory Commission meetings were open to the public, a member of the public verbally disrupted a 2018 meeting. After this incident, the AOC instituted a practice of no longer posting public notice of Advisory Commission meetings, and Defendant Long has continued this practice as Director. The AOC's practice violates the U.S. Constitution because the First Amendment attaches to meetings under the *Richmond Newspapers*' "experience and logic" test.

Moreover, pursuant to McCaleb's counsel's Rule 56(d) Declaration, the Court should defer ruling on his access claim to Tennessee Judicial Conference meetings.

1

## STATEMENT OF FACTS

### A. The Advisory Commission

**1. Plaintiff McCaleb is an experienced journalist who seeks contemporaneous public access to Advisory Commission court rulemaking meetings so he can assign reporters to report on meetings.**

Plaintiff McCaleb is an experienced journalist and the Executive Editor of The Center Square. *See* Deposition of Dan McCaleb ("McCaleb Dep."), ECF No. 74-1 at p. 11, Lines 4-22. McCaleb also serves as Vice-President of News and Content for the Franklin News Foundation, a 501 (c)(3) nonprofit that publishes The Center Square. *Id.* at p. 18, Line 20 through p. 19, Line 4. The Center Square is an online news organization that focuses on government news and publishes "in the neighborhood of 70 stories a day." *Id.* at p. 22, Lines 6-13.

McCaleb believes in open government. *Id.* at p. 11, Lines 16-18. During his 30-plus-year career, he has "attended a lot of government meetings." *Id.* at p. 15, Lines 11-18. And when he learned that Tennessee Advisory Commission rulemaking meetings were closed to the public and press, he asked, "[W]hat are they hiding?" *Id.* at p. 11, Lines 16-22.

McCaleb further testified as follows:

Q. Mr. McCaleb, there was a line of questioning that Mr. Stahl asked you about Advisory Commission being recorded versus live stream. Do you recall that line of questioning?

A. Yes.

2

Q. Would you assign any of your reporters to cover Advisory Commission meetings if they were open to the public?

A. Yes, particularly in this case.

Q. Is it important as part of your lawsuit that meetings be open contemporaneously to the public when they are actually occurring?

A. Yes.

*Id.* at p. 45, Lines 13-25.

### 2. Defendant Long is AOC Director, and the office she oversees provides administrative support to the Advisory Commission.

Defendant Long is the Director of the AOC. *See* Deposition of Michelle Long ("Long Dep."), ECF No. 74-2 at p. 8, Lines 20-24. Defendant Long "oversees the AOC."[1] As AOC Director, Defendant Long is "the chief administrative officer of the state court system." Tenn. Code Ann. §16-3-803(a).

The Advisory Commission was established to recommend rules of practice and procedure in Tennessee state courts. Tenn. Code Ann. §16-3-601(a). The AOC provides administrative support to the Advisory Commission. Long Depo., ECF No. 74-2 at p. 61, Lines 2-5. And according to Defendant Long, the Advisory Commission makes specific recommendations on court rules as follows:

Q. All right. What is your understanding of the function of the Advisory Commission?

---

[1] *See* https://www.tncourts.gov/administration (last visited Dec. 13, 2023).

A. To recommend rule changes for practice and procedure for the various courts, criminal, civil, juvenile, appellate court, and rules of evidence.

*Id*. at p. 60, Line 21 through p. 61, Line 1.

### 3. Michelle Consiglio-Young is AOC liaison to the Advisory Commission.

Michelle Consiglio-Young joined the AOC in 2015 and has been its liaison to the Advisory Commission since 2018. *See* Deposition of Michelle Consiglio-Young ("Consiglio-Young Dep."), ECF No. 74-3 at p. 7, Lines 18-20; p. 11, Line 25 through p. 12, Line 7. The Advisory Commission's meeting cadence is quarterly. *Id*. at p. 34, Lines 4-10. The names of the appointed bench-bar individuals who comprise the current Advisory Commission may be found on the AOC's public website, and Consiglio-Young is listed as "AOC Staff Contact."[2]

### 4. In the past the AOC posted public notice of Advisory Commission meetings until 2018 when a member of the public breached decorum by verbally disrupting a meeting.

When a past Advisory Commission meeting was open to the public, the AOC posted on its website advance notice inviting the public to attend the meeting.[3] *See* May 20, 2016, Public Meeting Notice, ECF No. 74-4. A public meeting notice dating

---

[2] *See* https://tncourts.gov/boards-commissions/boards-commissions/advisory-commission-rules-practice-procedure (last visited Dec. 12, 2023).

[3] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2016/05/20/advisory-commission-rules-practice-and-procedure (last visited Dec. 12, 2023).

4

back over a decade to June of 2012, inviting the public to attend an Advisory Commission meeting, remains posted on the AOC's website.[4]

But in 2018, Consiglio-Young described an incident as follows:

Q. At what point did those Advisory Commission meetings become closed to the public?

A. I believe it was 2018.

Q. I'm sorry?

A. 2018. It was after I had taken over as liaison. There was -- meetings were open to the public, as far as I can recall. And there was a meeting that we had that there was a member of the public who had attended in person who was there and became unruly and combative with the Commission. And after that, the -- the Tennessee Supreme Court took the matter up for discussion and then the meetings were closed after that incident.

Q. And what -- where was this particular meeting in 2018?

A. I wish I could recall the exact date. I do believe it was 2018 and the meeting was at the Administrative Office of the Courts, it was in our conference room. And members of the public would come periodically, sometimes we didn't have any and sometimes some would request to come.

And that particular meeting there was a member of the public who attended, and he was interested in a topic that was being discussed by the Commission. And

---

[4] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2012/06/01/advisory-commission-rules-practice-and-procedure-meeting (last visited Dec. 12, 2023).

during that discussion, he was speaking kind of out of term [sic], you know, without being called on or outside of the public comment period that was allowed and essentially became very assertive with the members and -- and the meeting was stopped and he was asked to leave.

Q. Do you recall how many members of the public were at that particular meeting in 2018?

A. I believe it was just that gentleman and his son.

Q. Do you recall his name?

A. I don't. I'm sorry.

Q. When you say "combative," do you mean -- what do you mean? Was it verbal combativeness --

A. Yes.

Q. -- or physical?

A. It was verbal. He did leave his chair -- or, you know, get up from his chair while he was having this discussion, which kind of escalated the -- the tone that was going on in there in his interaction with the members. So it -- yeah, it just became more of an aggressive action on his part. Clearly he was upset with a topic that was being discussed.

Q. Do you recall the topic?

A. No.

Q. Do you recall who the chair was at that time at that meeting?

A. I believe the chair was Allen Wade then.

Q. Is Mr. Wade currently a member on the Advisory Commission?

A. Yes.

Q. Were there four quarterly meetings in 2018?

A. Yes. As far as I remember there were.

Q. And you were at this meeting in 2018?

A. I was at that meeting, yes.

Q. Who was the chief justice of the Supreme Court at that time in 2018?

A. It was Justice Jeff Bivins at that time.

Q. So did the Chairman Wade ask this person that was being verbal -- verbally combative to leave? Did he -- did the person leave?

A. I don't recall who exactly asked him to leave; however, he was asked to leave. We did have to have several people help escort him out. And I can't remember if security was called at that meeting or not. I -- I do believe that building security was made aware.

Q. Do you recall if any formal charges, criminal charges were brought against this person?

A. I -- I do not believe that there were formal criminal charges.

Q. So the person that was verbally combative was never prosecuted to the best of your recollection?

A. Correct, I do not believe that he was.

Q. And so, I guess, was there a member of the Tennessee Supreme Court that was attending that particular meeting?

A. Yes.

Q. And who was that?

A. It was Justice Holly Kirby.

Q. So Justice Kirby was the Supreme Court liaison on the Commission in 2018?

A. She was.

Q. Justice Kirby is now the Chief Justice of the Supreme Court?

A. Yes, she is.

Consiglio-Young Dep., ECF No. 74-3, at p. 40, Line 15 through p. 44, Line 13.

**5. After this meeting decorum breach, the AOC instituted a practice of no longer posting public notice of Advisory Commission meetings, and Defendant Long has continued this practice as Director.**

And Consiglio-Young further testified as follows:

Q. So you said something about the -- the justices at that point, they made the call, they made the decision to close meetings. Explain what -- explain what happened after that.

A. After the meeting where the person got combative -- and Justice Kirby was in attendance in that meeting, so she had seen it firsthand, the -- as far as I am aware, she took that matter back to the Supreme Court for discussion, and we at the AOC were told that the meetings would no longer be open after that. And that was really my interaction with that. They were -- I was informed that they would be closed.

Q. How were you told? How were the members of the Commission told that from now on they were going to be closed, the meetings?

8

A. I don't recall exactly. I do know that if our General Counsel Rachel Harmon at the time had told me that there was no need to put public notice out because they were going to be closed the next meeting after that incident. And I cannot recall if Justice Kirby told the members directly or if a member of our office told them that we -- that they would be closed. I just don't remember exactly.

Q. But that decision would have come from either the justices or the AOC office to the Advisory Commission?

A. One of the two, yes, would have told either the Commission as a whole or the chair and the chair would have relayed that to the Commission.

Q. So the Chair, Mr. Wade, didn't make that decision?

A. No.

*Id*. at p. 44, Line 14 through p. 45, Line 25.

Defendant Long was aware of the AOC's practice instituted in or around 2018 of no longer posting public notice of Advisory Commission meetings, and she has continued this practice during her tenure as AOC Director, testifying as follows:

Q. And so are meetings -- is it your understanding that Advisory Commission meetings are open or closed?

A. For this particular commission, I understand the history has been that at one point they were open and at one point they were closed.

Q. And at what point is it your understanding on the history were they open?

A. It predates me. I want to say maybe 2017, 2018, but I am not certain.

Q. What is your understanding of history wise when they became closed?

9

A. I don't know why they became closed.

Q. I didn't say "why," I said what is your understanding of the process of getting closed and why they became closed?

A. I don't know.

Long Dep., ECF No. 74-2, p. 106, Lines 8-25.

### 6. In contrast to the AOC's practice of restricting access to Tennessee Advisory Commission meetings, similar federal court rulemaking meetings have been open to the public for at least 35 years.

The federal Judicial Conference's Committee on Rules of Practice and Procedure, ("Standing Committee") and its five Advisory Committees "carry on a continuous study of the operation and effect" of the federal rules as directed by the Rules Enabling Act.[5] These Advisory Committees on Criminal, Civil, Bankruptcy, Appellate, and Evidence Rules meet and evaluate proposed recommendations to the federal rules of practice and procedure.[6]

"Each meeting must be preceded by notice of the time and place, published in the Federal Register and on the judiciary's rulemaking website, sufficiently in advance to permit interested persons to attend."[7] The Standing Committee and each of the Advisory Committees typically meet twice per year.[8] Committee meetings are

---

[5] *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/how-rulemaking-process-works (last visited Dec. 13, 2023).

[6] *Id.*

[7] *Id.*

[8] *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/open-meetings-and-hearings-rules-committee (last visited Dec. 13, 2023).

open to the public, except when a committee — in open session and with a majority present — determines that it is in the public interest to have all or part of the meeting closed and states the reason.[9] A calendar of upcoming scheduled meetings through November of 2024 are posted on a public website.[10] Rules Committee meetings and hearings are open to the public and held in a hybrid format "with remote attendance options whenever possible."[11]

The federal court rulemaking meetings have been open to the public for at least 35 years when Congress enacted a reform statute known as the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073 (c)(1).[12] And five years prior to the enactment of the statute, the Standing Committee instituted a number of internal changes in 1983 including making the records of the rules Committees available to the public, documenting all changes made by the Committees at various stages of the process, and conducting public hearings on proposed amendments.[13] The statute requires that "[e]ach meeting for the

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] The effective date of the reform statute was December 1, 1988. *See* Judicial Improvements and Access to Justice Act of 1988, § 407, *available at* https://www.govinfo.gov/content/pkg/STATUTE-102/pdf/STATUTE-102-Pg4642.pdf.

[13] Peter G. McCabe, *Renewal of the Federal Rulemaking Process*, 44 Am. U. L. Rev. 1655, n.43 (1995), *available at* https://www.uscourts.gov/sites/default/files/mccabearticle_1.pdf.

transaction of business under this chapter by any committee appointed under this section shall be open to the public." 28 U.S.C. § 2073 (c)(1).

**7. To comply with this Court's Preliminary Injunction, the AOC posted public notice in advance of the June and December 2023 meetings and provided virtual livestreaming access to these meetings.**

In compliance with this Court's Preliminary Injunction (ECF No. 40), the AOC posted a public meeting notice on its website in advance of the June 2023 meeting and provided virtual livestreaming access to the public.[14] A video of the June 9, 2023, meeting is on the TN Courts' YouTube channel. ECF No. 79.[15] Approximately six months after this meeting was livestreamed, there were 95 views of the video.[16] And the AOC posted a public meeting notice on its website in advance of the December 2023 meeting and provided virtual livestreaming access to the public.[17] A video of the December 8, 2023, meeting is on the TN Courts' YouTube channel. ECF No. 79. Approximately five days after livestreaming the meeting, there were 62 views of the video.[18]

---

[14] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2023/06/09/advisory-commission-rules-practice-procedure (last visited Dec. 13, 2023).

[15] *See* https://www.youtube.com/watch?v=TCCkGHybsxg (last visited Dec. 13, 2023).

[16] *See id.*

[17] *See* https://www.tncourts.gov/calendar/public-meeting-notices/2023/12/08/advisory-commission-rules-practice-and-procedure (last visited Dec. 13, 2023).

[18] *See* https://www.youtube.com/watch?v=XHY3DFF3V2E (last visited Dec. 13, 2023).

12

## B. The Tennessee Judicial Conference

The Tennessee Judicial Conference includes active and retired state court judges and the state Attorney General. Tenn. Code Ann. § 17-3-101(a); Tenn. Code Ann. § 17-3-101(b); Tenn. Code Ann. § 17-3-102. They meet and consider criminal "rules of procedure." Tenn. Code Ann. § 17-3-104(a); Tenn. Code Ann. § 17-3-107.

## PROCEDURAL HISTORY

On June 30, 2022, McCaleb filed his First Amended Complaint ("Compl.") and sought declaratory and prospective injunctive relief, which included a Section 1983 and First Amendment right of access claim to future Advisory Commission rulemaking meetings. ECF No. 19. McCaleb also sought access to rulemaking meetings of the Tennessee Judicial Conference, created by Tenn. Code Ann. § 17-3-101, et seq. *Id*. He named Long as a defendant in her official capacity as AOC Director. *Id*., Page ID #134, at ¶ 14. Defendant Long filed an Answer. ECF No. 48.

After McCaleb moved on his right of access claim to Advisory Commission meetings, on March 22, 2023, the Court issued a Memorandum Opinion (ECF No. 39) and entered an Order And Preliminary Injunction (ECF No. 40). The Court determined that McCaleb had shown a likelihood of success on the merits of his First Amendment right of access claim to Advisory Commission meetings, entered a Preliminary Injunction, and ordered Defendant Long and the AOC to provide public access to meetings. *See* ECF No. 40.

Both Defendant and Plaintiff each filed Motions for Summary Judgment on December 15, 2023. ECF No. 71 and ECF No. 74. Plaintiff McCaleb moved for

13

summary judgment only on his First Amendment right of access claim to Advisory Commission meetings. *See* ECF No. 74. In accordance with the Case Management Order ("CMO"), responses to these dispositive Motions were due "28 days" later or on today's date, January 12, 2023. ECF No. 50, Page ID #1150, at ¶ K.[19]  Moreover, the CMO provides that optional replies may be filed within "14 days" after a party files a response. *Id*.

## LEGAL STANDARD

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The U.S. Supreme Court explained Rule 56's "standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment." *Knight v. Montgomery Cnty.*, 592 F.3d Supp. 651, 657 (M.D. Tenn. Mar. 21, 2022) (Richardson, J.) (citing *Anderson*, 477 U.S. at 248). But "where there is a genuine dispute as to any material fact,

---

[19] Plaintiff notes that Defendant elected to file her response 7 days early on January 5, 2023. ECF No. 80.

14

summary judgment is not appropriate." *Knight*, 592 F.3d Supp. at 657 (citing

*Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018)).

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it

might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City*

*of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A

dispute is "genuine" "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th

Cir. 2018).

To properly support a motion for summary judgment, the movant must cite to

"depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party has the initial burden of identifying portions of the record that

show the absence of a genuine dispute over material facts. *Pittman v. Experian*

*Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the movant

meets this burden, the non-moving party must set forth specific facts showing that

there is a genuine issue for trial. *Id.* at 628. And by simply presenting "facts that, if

proven, would establish the elements of his *prima facie* case," a plaintiff easily

avoids summary judgment in favor of the defendant. *Foster v. Mastec N. Am.*, 2023

U.S. Dist. LEXIS 86407, *29 (M.D. Tenn. May 17, 2023) (Trauger, J.).

"[W]here, as here, there is 'a videotape capturing the events in question,' the

court must 'view[ ] the facts in the light depicted by the videotape.'" *Sandmann v.*

*N.Y. Times Co.*, 78 F.4th 319, 328-29 (6th Cir. 2023) (quoting *Green v.*

*Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S.

372, 378, 381 (2007) (Scalia, J.)) (second alteration in *Green*).

A court must draw all reasonable inferences in favor of the non-moving

party. *SunAmerica Hous. Fund 1050 v. Pathway of Pontiac, Inc.*, 33 F.4th 872, 878

(6th Cir. 2022). The standard of review for cross-motions for summary judgment

filed by both parties does not differ from the standard applied when only one party

files a motion. *Ferro Corp. v. Cookson Grp., PLC*, 585 F.3d 946, 949 (6th Cir. 2009).

If a non-movant shows by affidavit or declaration that, for specified reasons, it

cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations

or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d).

## ARGUMENT

### I. The Court should deny Defendant Long's motion for summary judgment because there is a genuine issue for trial since the record shows sufficient evidence supporting Plaintiff McCaleb's First Amendment right of access claim to Advisory Commission meetings.

The Court should deny Defendant Long's motion for summary judgment because

there is a genuine issue for trial, and she is not entitled to judgment as a matter of

law. Indeed, the record before the Court provides sufficient — and actually robust

— evidence supporting Plaintiff McCaleb's First Amendment right of access claim to

Advisory Commission meetings.

To prevail on a claim under 42 U.S.C. §1983, a plaintiff must demonstrate that a

person acting under color of state law "deprived [him] of rights, privileges or

16

immunities secured by the Constitution or the laws of the United States." *Evans v. Vinson*, 427 Fed. Appx. 437, 441 (6th Cir. 2011) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). When suing an official for future injunctive relief under the exception in *Ex parte Young*, 209 U.S. 123 (1908), "[a] plaintiff must allege facts showing how a state official is connected to, or has responsibility for, the alleged constitutional violations." *Top Flight Entm't, Ltd. v. Schuette*, 729 F. 3d 623, 634 (6th Cir. 2013). This requirement is satisfied where an official has "some connection" to the unconstitutional legislation or other challenged action. *Allied Artists Picture Corp. v. Rhodes*, 679 F. 2d 656, 665 n.5 (6th Cir. 1982).

Here, as discussed in the Statement of Facts above, sufficient evidence in the record reflects that Defendant Long oversees the AOC as its Director, and the AOC provides administrative support to the Advisory Commission. This administrative support includes responsibility for posting on the AOC's website public notice of Advisory Commission meetings. Meetings were open to the public in the past, and the AOC hosted public meetings in a conference room at its office in Nashville. Advisory Commission members understood their meetings were open to the public in the past because of the man's "tone that was going on in there in his interaction with the members" during the 2018 meeting according to Consiglio-Young's testimony. Moreover, then Supreme Court liaison to the Advisory Commission "Justice Kirby was in attendance in that meeting, so she had seen it firsthand." After this 2018 incident, the AOC instituted a practice of *not* posting public notice of Advisory Commission meetings when then General Counsel Harmon told Consiglio-

17

Young "there was no need to put public notice out" because meetings were going to be closed after that incident. Defendant Long has continued this practice of the AOC not posting public notice of meetings during her tenure as Director.

In support of her Motion, Defendant Long raises two main issues — neither of which directs the Court to the absence of a genuine dispute as to any material fact — supporting her contention she is entitled to judgment as a matter of law. First, Defendant Long contends that the *Richmond Newspapers*' "experience and logic" test "does not apply to meetings of judicial commissions or judicial conferences." ECF No. 72, Page ID #1936. Second, she claims that "application of the *Richmond Newspapers* test would in any event weigh against finding a constitutional right of access to meetings of the Advisory Commission and Judicial Conference." *Id.*

Thus, on the first element of Plaintiff McCaleb's Section 1983 claim — whether Defendant Long acted under color of state law as AOC Director in restricting access to meetings — she fails to meet her burden and does not identify portions of the record that show the absence of a genuine dispute over material facts. *See Pittman*, 901 F.3d at 627-28; *see also* 42 U.S.C. §1983. Even if the Court determines she met her initial burden, Plaintiff McCaleb has produced sufficient evidence that establishes Defendant Long oversees the AOC as its Director; the AOC provides administrative support to the Advisory Commission; and this administrative support includes responsibility for posting on the AOC's website public notice of Advisory Commission meetings. *See Top Flight*, 729 F. 3d at 634.

18

With regard to the second element of McCaleb's claim — whether the First Amendment attaches to Advisory Commission meetings — under *Richmond Newspapers* as further discussed below, the AOC's practice of not posting public notice of upcoming Advisory Commission meetings violates the First Amendment. *See* 42 U.S.C. §1983.

### A. The U.S. Supreme Court's decision in *Richmond Newspapers* governs Plaintiff's right of access claim, not *Houchins*.

Contrary to Defendant Long's misguided argument in which she unnecessarily spills much ink (ECF No. 72, Page ID ##1937-41), *Richmond Newspapers* governs Plaintiff McCaleb's First Amendment right of access claim, not *Houchins*.

None of the cases cited by Defendant Long are applicable to the facts in the record before this Court, and her reliance on the plurality opinion in *Houchins v. KQED, Inc*. is misplaced. 438 U.S. 1 (1978). In that case decided by the Supreme Court two years before *Richmond Newspapers*, the question presented was "whether the news media have a constitutional right of access to a county jail, ***over and above that of other persons***, to interview inmates and make sound recordings, films, and photographs for publication and broadcasting by newspapers, radio, and television." *Id*. at 3. (emphasis added).

More importantly and critical to her pending Motion for Summary Judgment, Director Long failed to even identify portions of the record that show where Plaintiff McCaleb claimed a First Amendment right of access to Advisory Commission meetings "over and above that of other persons" such that *Houchins* is applicable. *Id*.; s*ee Pittman*, 901 F.3d at 627-28. Because no such evidence exists.

19

Like the newspaper plaintiffs in *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), McCaleb is *not* claiming a special privilege of access because he confirmed in his testimony that it was "important as part of [his] lawsuit that meetings be open contemporaneously to the ***public*** when they are actually occurring." McCaleb Dep., ECF No. 74-1 at p. 45, Lines 13-25. (emphasis added).

### B. The First Amendment attaches to Advisory Commission meetings under *Richmond Newspapers*' "experience and logic" test.

The First Amendment attaches to Advisory Commission meetings under *Richmond Newspapers*' "experience and logic" test. And the AOC's practice of restricting access to Advisory Commission meetings limits the stock of information on the court rulemaking process from which members of the public may draw.

The U.S. Supreme Court said, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). And it emphasized a core purpose of the First Amendment relates "to the functioning of government." *Id. at* 575. It has further recognized that, "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg* v. *Hayes*, 408 U.S. 665, 681 (1972). Moreover, the Supreme Court held that the First Amendment "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978).

20

To determine whether the First Amendment right of access attaches to a proceeding in question — in this case Advisory Commission meetings — courts apply the two-part "experience and logic" test discussed in the concurrence in *Richmond Newspapers*. *See* 448 U.S. at 589; *see also Detroit Free Press*, 303 F.3d at 683. The Sixth Circuit explained that the "experience and logic" test has broad and general application and has been extended to various non-adversarial proceedings. For example, the test has been applied "to determine whether there is a right of access to civil trials, administrative hearings, deportation proceedings, and *municipal planning meetings.*" *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (emphasis added).

First, a court looks to a similar proceeding to see if it historically has been open to the public because "a tradition of accessibility implies the favorable judgment of experience." *Richmond Newspapers*, 448 U.S. at 589. Second, a court determines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Company v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enter. II*"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982); *see also Richmond Newspapers* 448 U.S. at 589.

      **1. Under the "experience" prong, the public's unbroken right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to meetings.**

Under the *Richmond Newspapers*' "experience" prong, the public's unbroken right of access for at least 35 years to similar federal court rulemaking meetings counsels that the First Amendment attaches to Advisory Commission meetings. In

support of her Motion, Defendant Long failed to even identify portions of the record in her Rule 56.01 Statement that mention or reference the federal analogue to Tennessee's Advisory Commission. ECF No. 73; *see Pittman*, 901 F.3d at 627-28.

The Sixth Circuit is not rigid or formulaic in determining an adequate passage of time to confer tradition under the "experience" prong and has noted that "a brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted." *Detroit Free Press*, 303 F.3d at 701. In looking at similar proceedings, courts "should look to proceedings that are similar in *form and substance*." *Id*. at 702. (emphasis added). "Substantively, [courts] look to other proceedings that have the same effect" when deciding if the First Amendment attaches to the proceeding in question. *Id*. As the Sixth Circuit explained in paraphrasing the Supreme Court, it's the "walk, talk, and squawk" approach when making a comparative analysis. *Id*.

*History*. In terms of history, as discussed in the Statement of Facts, 35 years ago Congress enacted the Judicial Improvements and Access to Justice Act of 1988, § 401(a), 28 U.S.C. § 2073(c)(1). The relevant provision of the statute provided public access to various Advisory Committee meetings, the federal analogue to Tennessee's Advisory Commission. In other words, federal court rulemaking meetings have an unbroken tradition of open access for 35 years pursuant to statute. And as further discussed, before Congress formally enacted the Access to Justice statute, in 1983 the Standing Committee instituted several internal changes that had the effect of

enhancing public access to federal court rulemaking. Those internal changes adopted in 1983 include making the records of the federal rules Committees available to the public, documenting all changes made by the Committees at various stages of the process, and conducting public hearings on proposed amendments. Thus, Standing Committee hearings on proposed federal court rule changes have been open to the public for 40 years.

*Form*. In terms of form, the Advisory Committees are comprised of members of both the bench and bar, just like Tennessee's Advisory Commission. The Supreme Court has noted this particular "bench-bar" distinction in one case explaining that its "rulemaking authority is constrained by §§ 2073 and 2074, which require, among other things, that meetings of bench-bar committees established to recommend rules ordinarily be open to the public, § 2073(c)(1), and that any proposed rule be submitted to Congress before the rule takes effect, § 2074(a)." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 48 (1995).

*Substance*. In terms of substance, the federal Advisory Committees are also virtually identical to the Advisory Commission in the practice areas of court rules considered. For example, they both meet to make recommendations on proposed changes to the practice and procedure of Criminal, Civil, Appellate, and Evidence Rules. The only difference is the federal Advisory Committees also consider proposed changes to the Bankruptcy Rules because that practice area is governed by federal law, and the Tennessee Advisory Commission makes recommendations regarding Juvenile Rules because that practice area is governed by state law.

23

## 2. Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings.

Under the "logic" prong, as depicted by the June and December 2023 videos, public access plays a significant positive role in the functioning of meetings.

The Sixth Circuit granted summary judgment in favor of news organizations in a high-profile defamation case that had First Amendment implications by viewing the facts in the light depicted by video. *See generally Sandmann*, 78 F.4th 319. Moreover, in her Rule 56.01 Response Statement for purposes of McCaleb's Motion for Summary Judgment, Defendant Long does not dispute the two videos posted on the TN Courts' YouTube channel. ECF No. 81, Page ID #2848 at ¶¶8, 9.

*June 9, 2023, Advisory Commission Meeting*. ECF No. 79.[20] All of the members participated via Zoom, and the meeting was approximately 52 minutes in length. *Id*. The video of the June 2023 Advisory Commission meeting that was open to the public depicts discussions between members that do not involve sensitive information in seeking to propose a rule change. *Id*. Further, video of the June 2023 Advisory Commission meeting that was open to the public depicts members' candor enhanced by opening meetings to the public. *Id*.

*December 8, 2023, Advisory Commission Meeting*. ECF No. 79.[21] All of the members participated via Zoom, and the meeting was approximately 1 hour and 17

---

[20] *See* https://www.youtube.com/watch?v=TCCkGHybsxg.

[21] *See* https://www.youtube.com/watch?v=XHY3DFF3V2E.

minutes in length. *Id.* The video of the December 2023 Advisory Commission meeting that was open to the public depicts discussions between members that do not involve sensitive information in seeking to propose a rule change. *Id.* Further, video of the December 2023 Advisory Commission meeting that was open to the public depicts members' candor enhanced by opening meetings to the public. *Id.*

Additionally, Plaintiff McCaleb objects to testimony by Chairman Bulso on behalf of the Advisory Commission because his counsel clarified on the record in his deposition that Bulso was testifying only in his individual capacity and not for the Advisory Commission. *See* Deposition of Gino Bulso ("Bulso Dep."), **Exhibit 1**, p. 17, Lines 6-24. And Plaintiff McCaleb further objects to testimony by Lang Wiseman on behalf of the Advisory Commission because he was never disclosed to Plaintiff as a fact witness in Director Long's Rule 26 Initial Disclosures. **Exhibit 2**. Rather, Wiseman was disclosed to Plaintiff McCaleb on November 1, 2023, as an expert witness to present evidence pursuant to Fed. R. Evid. 702, 703, or 705. **Exhibit 3**.

## II. Pursuant to counsel's Rule 56(d) Declaration, the Court should defer considering Defendant's Motion as it relates to Plaintiff's access claim to Tennessee Judicial Conference meetings until depositions of the Non-Party Tennessee Supreme Court Justices.

As set forth fully in counsel's Rule 56(d) Declaration attached as **Exhibit 4**, the Court should defer considering part of Defendant's Motion. *See* Fed. R. Civ. P. 56(d).

## CONCLUSION

For these reasons, the Court should deny Defendant Long's Motion for Summary Judgment because there is a genuine issue for trial, and she is not entitled to judgment as a matter of law.

January 12, 2024                    Respectfully submitted,


                                    */s/ M. E. Buck Dougherty III*
                                    M. E. Buck Dougherty III, TN BPR #022474
                                    James McQuaid, *Pro Hac Vice*
                                    LIBERTY JUSTICE CENTER
                                    440 N. Wells Street, Suite 200
                                    Chicago, Illinois 60654
                                    312-637-2280-telephone
                                    312-263-7702-facsimile
                                    bdougherty@libertyjusticecenter.org
                                    jmcquaid@libertyjusticecenter.org

                                    *Attorneys for Plaintiff, Dan McCaleb,*
                                    *Executive Editor of The Center Square*

# CERTIFICATE OF SERVICE

I, counsel for Plaintiff Dan McCaleb, hereby certify that a true and correct copy

of the foregoing document has been served on the following counsel of record, via the

Court's ECF system by email on this 12th day of January 2024:

JONATHAN SKRMETTI

Office of the Attorney General & Reporter
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202-0207

Andrew C. Coulam
Michael M. Stahl
Robert W. Wison
andrew.coulam@ag.tn.gov
michael.stahl@ag.tn.gov
robert.wilson@ag.tn.gov

*Attorneys for Defendant*
*AOC Director Michelle Long*

Donna Green
Cody Brandon
Liz Evan
donna.green@ag.tn.gov
cody.brandon@ag.tn.gov
liz.evan@ag.tn.gov

*Attorneys for Non-Party*
*Tennessee Supreme Court Justices*

/s/ M.E. Buck Dougherty III

27