# Exhibit

# 3

# IN THE UNITED STATES DISTRICT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DAN McCALEB, Executive Editor of ) 
THE CENTER SQUARE, ) 
                   ) 
      **Plaintiff,** ) 
                   ) 
**v.** )    **Case No. 3:22-cv-00439** 
                   )    **Judge Richardson** 
**MICHELLE LONG, in her official capacity** )    **Magistrate Judge Frensley** 
**as DIRECTOR of the TENNESSEE** ) 
**ADMINISTRATIVE OFFICE OF THE** ) 
**COURTS,** ) 
                   ) 
      **Defendant.** ) 

## DEFENDANT'S RULE 26(a)(2) EXPERT DISCLOSURE

Pursuant to Fed. R. Civ. P. 26(a)(2) and this Court's orders, Defendant discloses as a witness whom Defendant may use at trial to present evidence pursuant to Fed. R. Evid. 702, 703, or 705:

> Lang Wiseman,
> Shareholder, Baker Donelson,
> 1600 West End Avenue, Suite 2000,
> Nashville, TN 37203;
> (615) 726-5629.

In accordance with Fed. R. Civ. P. 26(a)(2)(B), Mr. Wiseman's declaration and written report is attached as Exhibit 1.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

s/ Andrew C. Coulam
ANDREW C. COULAM
Deputy Attorney General
Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202
615-741-1868
andrew.coulam@ag.tn.gov
B.P.R. No. 30731

s/ Michael Stahl
MICHAEL M. STAHL
Senior Assistant Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207
615-253-5463
michael.stahl@ag.tn.gov
B.P.R. No. 032381

s/ Robert W. Wilson
ROBERT W. WILSON
Senior Assistant Attorney General
40 South Main Street, Suite 1014
Memphis, Tennessee 38103
901-543-9031
robert.wilson@ag.tn.gov
B.P.R. No. 34492

*Counsel for Defendant Michelle Long*
*in her official capacity as Director of the*
*Tennessee Administrative Office of the Courts*

2

**CERTIFICATE OF SERVICE**

I, counsel for Defendant, hereby certify that true and correct copies of the foregoing document and the attached exhibit have been served on the following counsel of record via email on this 1st day of November, 2023:

M. E. Buck Dougherty III
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
bdougherty@libertyjusticecenter.org

James McQuaid
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
jmcquaid@libertyjusticecenter.org

s/ Andrew C. Coulam
ANDREW C. COULAM
Deputy Attorney General

3

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DAN McCALEB, Executive Editor of THE CENTER SQUARE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00439** |
| | ) | **Judge Richardson** |
| **MICHELLE LONG, in her official capacity** | ) | **Magistrate Judge Frensley** |
| **as DIRECTOR of the TENNESSEE** | ) | |
| **ADMINISTRATIVE OFFICE OF THE** | ) | |
| **COURTS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DECLARATION OF LANG WISEMAN AND WRITTEN REPORT PURSUANT TO
FED. R. CIV. P. 26(a)(2)(B)**

---

I, Lang Wiseman, hereby declare as follows:

### A. My Experience and Qualifications

1. I graduated summa cum laude from the University of Tennessee in 1993 with a Bachelor of Science in Business Administration.

2. I graduated cum laude from the Harvard Law School in 1996.

3. I served as a judicial clerk for the Honorable Harry W. Wellford on the United States Court of Appeals for the Sixth Circuit in 1996-97.

4. I served as Counsel to the United States Senate Governmental Affairs Committee in 1997-98.

5. In 1998, I returned home to Tennessee to begin the private practice of law at the Baker Donelson law firm, with a general civil practice concentrating in commercial and tort litigation.

1

6. I am admitted to practice in the State of Tennessee, the United States Courts of Appeal for the Third, Fifth, and Sixth Circuits, and the United States District Courts for the Eastern, Middle, and Western Districts of Tennessee, and the Eastern and Western Districts of Arkansas.

7. In 2002, I founded a law firm based in Memphis, Tennessee, which due to growth and movement of partners was variously named Ball Wiseman PLC, Wiseman Biggs Bray PLLC, and Wiseman Bray PLLC. The firm grew in size and stature into one of the more prominent small to mid-sized firms in Memphis with growth into the Nashville area with a satellite office in Brentwood. My personal practice areas continued to be focused primarily in commercial and tort litigation, along with public policy and governmental affairs.

8. Beginning with the gubernatorial transition in late 2018, I entered full-time public service after agreeing to accept then Governor-Elect Lee's invitation to serve the State of Tennessee as Deputy Governor and Chief Counsel to the Governor. After formal appointment in January 2019, I acted as a liaison between Governor office, the legislature, and the various departments and agencies in state government. As Chief Counsel and the state's Chief Ethics Officer, I coordinated the legal and regulatory affairs of the executive branch and advised Governor Lee on legal, political, and legislative matters. I assisted in development, drafting, and implementation of legislation and worked closely with the judiciary, the Administrative Office of the Courts, and the attorney general and reporter. I was also responsible for assisting Governor Lee with judicial appointments, requests for executive clemency, and implementation of economic development programs at the state level.

9. I returned to the private practice of law in 2022, joining the Baker Donelson law firm focusing in the areas of public policy and government affairs, economic and real estate development, regulatory and administrative law, and commercial and tort litigation.

10. During my years in private practice, I have been involved in bar and civic activities, including two stints on the Memphis Bar Association (MBA) Board of Directors, Chair of the MBA Small-Solo Section, Chair of the Bench-Bar Committee, and membership in the American, Tennessee, Memphis, and Nashville Bar Associations, the Federalist Society, and previously a member of the American Association for Justice and the Tennessee Trial Lawyers Association. I am also a Fellow in the Tennessee and Memphis Bar Foundations.

11. Based on peer reviews, I have been consistently recognized and listed in The Best Lawyers in America, Mid-South Super Lawyers, and have an AV Preeminent rating from Martindale-Hubbell.

12. In addition to my experience in full-time state service, I have during my professional career been heavily involved in governmental public service and have extensive experience serving on governmental bodies, including serving as a Director and the Corporate Secretary of the Memphis-Shelby County Sports Authority (2012-2015), a member of Governor Haslam's Council for Judicial Appointments (2015-2018), Governor Lee's designee on the State Board of Equalization (2019-2021), and a member of the Tennessee State Board of Education (2017).

2

13.     Of particular note here, I also served on the Advisory Commission on the Rules of Practice and Procedure ("Advisory Commission") from 2015 until my resignation in late 2018 after agreeing to accept Governor Lee's appointment as Deputy Governor and Chief Counsel.  I served as Vice-Chair of the Advisory Commission beginning in 2017 at the start of my second term on the Commission, and I served as Vice-Chair until my resignation in late 2018. I obviously became intimately familiar with the structure, purpose, function, and operations of the Advisory Commission.

14.     I also presently serve as member of the University of Tennessee Board of Trustees, including a prior stint as Trustee from 2018-2019.  I also currently serve as Chairman of Governor Lee's Council for Judicial Appointments, and I am also a member of Governor Lee's Nuclear Energy Advisory Council.

15.     I have never held an academic position and have not published any academic articles.  I have at times authored articles for a bar magazine and in connection with continuing legal education courses, but I have no specific recollection or records that would help identify the time or subject matter or such items, nor would they in any event be relevant to the underlying subject matter of this lawsuit.  I did recently author an Op-ed published in May of 2023 by The Tennessean newspaper entitled "Liberals and conservatives must stop fighting and find solutions to gun violence." (https://www.tennessean.com/story/opinion/contributors/2023/05/08/gun-violence-liberals-and-conservatives-must-find-solutions-together/70183978007/).

**B.      Prior Expert Testimony**

I have not previously testified as an expert in any trial or deposition.

**C.      Compensation**

I am billing at my standard hourly rate of $720 per hour.  Through the drafting of this report and disclosure, I have worked approximately 20 hours.  That amount will be billed in due course in my firm's next regular billing cycle.

**D.      The Facts and Data Considered in Rendering My Opinions**

1.      The experience and body of work outlined in this report and disclosure.

2.      A review of the pleadings and exhibits filed in this case, including the disclosures related to the expert opinions expressed by Professor Benjamin H. Barton.

3.      A review of the deposition transcripts of the plaintiff and Professor Barton.

4.      A review of the Orders of the Tennessee Supreme Court Orders appointing me, and then also acknowledging my resignation from, the Advisory Commission.

5.      Various legal research on Westlaw, including the cases cited and relied upon by the plaintiff and Professor Barton, as well as the legal authorities referenced in my opinions herein.

3

### E.    The Opinions I Will Express and the Bases and Reasons for Them

1.    As a matter of common law and statutory law, the Tennessee Supreme Court is entrusted with power and authority over the manner and process by which proposed rules that govern practice and procedure in the courts of this State are created, prescribed, or modified, Tenn. Code Ann. § 16-3-401 & 402, provided that all rules proposed by the Court must first be approved by both the House and Senate in the General Assembly before they become effective. Tenn. Code Ann. § 16-3-403.[1]

2.    The Advisory Commission was created by statute to assist the Court regarding the rules of practice and procedure, Tenn. Code § 16-3-601; however, the statute conspicuously fails, in recognition of the Court's plenary power, to grant to the Commission any substantive or procedural power or authority. Indeed, the Advisory Commission has no authority to advance any objectives or proposals. It is entirely the Court's prerogative to adopt and move forward with a rule proposal in its complete discretion, and then also only after the Court puts forward any such proposal for public review and comment.

3.    In further recognition of the Court's plenary power, the Tennessee statute, in stark contrast to its federal counterpart, also conspicuously fails to impose any operational or other requirements on the Court or the Commission.

4.    The statute giving rise to the Advisory Commission makes clear that its singular duty is, true to its moniker, simply to "advise" the Court. *Id.* Nothing more. And then also only to provide such advice "from time to time" as the Court may or may not see fit. *Id.* Consistent with that principle and structure, it is notable that under the statute, the Court itself appoints the members of the Commission, just as the Court appoints other staff and law clerks to serve and assist the Court and the Justices thereof.

5.    Based on my experience and service as a member of the Advisory Commission, including serving for a time as Vice-Chair, the Commission as whole understands its role to provide advice and counsel to the Court through active deliberation regarding rule proposals, acting ultimately in service to the Court. A Justice of the Court serves as a liaison to the Commission, and that Justice attends every Commission meeting and intimately participates in discussions and deliberations of the Commission. As might be expected, that Justice serves a crucial role in helping to guide the work of the Commission, providing feedback and insight into the mind of the Court regarding specific proposals or objectives or needs of the Court, which is critical given the relationship and shared deliberations between the Court and the Commission.

6.    Having also served in the executive branch working inside the Governor's office as Deputy Governor and Chief Counsel, the work of the Commission with respect to the rules of practice and procedure is not unlike the work of providing advice and counsel to the Governor,

---

[1] In 2019, the General Assembly neglected to ratify and approve various amendments and revisions to the rules of practice and procedure that had been submitted to the legislature by the Chief Justice of the Tennessee Supreme Court pursuant to Tenn. Code. § 16-3-404, requiring the Governor pursuant his authority in Article III, Section 9 of the Tennessee Constitution to call the General Assembly back into extraordinary session, in part, to ratify and approve amendments so that they could properly take effect in a timely fashion. *See* https://tnsos.net/publications/proclamations/files/1740.pdf

4

which is obviously protected by executive and deliberative process privilege, so that the Governor may not only receive the benefit of the candid deliberation of his executive leadership team but also create an environment where he may participate in frank and candid discussion himself in order to test competing ideas in confidence without fear of disclosure.

7. In my experience, the work of the Commission likewise benefited from frank and candid discussion, and I do not recall a single instance during my service on the Advisory Commission where non-members participated or observed or listened in on meetings, which I believe on balance was helpful to the work of the Commission. In my experience, proposals and discussion and deliberations at times arose out of dissatisfaction with certain rules or even rulings by certain courts, all of which would understandably be subject to a serious chilling effect if the meetings had been open to the public.

8. Further, I have found in my experience that a public forum is not always conducive to an uninhibited and free and open exchange of ideas. Freedom to brainstorm and to raise and deliberate bad ideas is often a key component to identifying and honing good ideas. To be sure, such confidentiality poses concomitant risks, particularly when it involves government action; however, such risks are mitigated if not eliminated when the body at issue has no governmental authority or power to act in an adjudicative capacity or otherwise take action that binds the public and citizenry, but is acting merely in an advisory capacity.

9. By useful comparison, other public boards and commissions on which I have served—including, for example, the State Board of Equalization, the State Board of Education, and the University of Tennessee Board of Trustees—exercise and wield distinct, independent, and binding power and authority, whether adjudicative, quasi-adjudicative, or quasi-legislative or administrative. For obvious reasons, these examples carry with them very different implications *vis a vis* the public's obvious right to access, and even at times to participate, in those proceedings.

10. Mindful of that distinction, our law has since the founding recognized deliberative process privileges that acknowledge and protect the need and right of high government officials in all branches of government the ability to participate in, and have the benefit of, candid and confidential deliberations, advice, and counsel.[2] The deliberative process privilege is perhaps most often cited in connection with the executive and legislative branches; however, as the United States District Court for the Eastern District of Kentucky observed in *Harris v. Goins* regarding judicial deliberative immunity, any "lack of express authority is undoubtedly because its existence and

---

[2] *See, e.g., United States v. Nixon*, 418 U.S. 683 (1974) ("The expectation of a President to the confidentiality of his conversations and correspondence, *like the claim of confidentiality of judicial deliberations*, for example, has all the values to which we accord deference for the privacy of all citizens and, added to those values, is the necessity for protection of the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking. A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately."); *Swift v. Campbell*, 159 S.W.3d 565 (Tenn. Ct. App. 2004) ("We have no doubt that there exists a valid need to protect the communications between high government officials and those who advise and assist them in the performance of their official duties.")("Protecting the confidentiality of conversations and deliberations among high government officials ensures frank and open discussion and, therefore, more efficient government operations.")("We have also held that the Constitution of Tennessee embodies a version of the privilege for the General Assembly when it decides to invoke it.")

5

validity has been so universally recognized." 2016 WL 4501466, *1 (quotation omitted). The court went on to quote the Supreme Judicial Court of Massachusetts which held: "[T]he need to protect judicial deliberations has been implicit in our view of the nature of the judicial enterprise since the founding. Consequently, we join other courts, State and Federal, that, when faced with attempts by third parties to extract from judges their deliberative thought processes, have uniformly recognized a judicial deliberative privilege." *Id.* (quotation omitted).

11.     To be sure, no serious argument might be advanced, for example, that absent allegations of malfeasance or other wrongdoing, the public has a right to access the deliberations, communications, or confidential exchanges between a judge and her law clerk or staff, or between governor and her executive team, or between a legislator and her staff. And under the circumstances here, the Advisory Commission is functionally no different.

12.     Here, the work of the Commission is deliberative and merely advisory, with no binding effect whatsoever. Further, the ultimate work product of the Court with regard to rules or revisions, whether emanating out of the Advisory Commission or not, are put out for public review and comment before the Court actually adopts and submits any final proposal to the General Assembly for approval. And then after that, as noted above, any rule proposal adopted by the Court is ultimately subject to further review and approval *by the public* by and through their elected representatives in the General Assembly. *See supra*.

13.     In short, the rights of the public are at all times protected because they have an opportunity not only to review and comment on every actual rule proposal, but also because they retain, by and through their elected representatives, ultimate authority over the consideration or adoption of any rule of practice or procedure.[3]

14.     This feature of state law in Tennessee is, of critical import here, meaningfully different from the federal rule making process. Under the federal system, all rule proposals arising out of the federal advisory commission(s) and the judicial conference process automatically go into effect unless the Congress springs into action to block them. 28 U.S. Code § 2074; *see also* Unites States Courts: How the Rulemaking Process Works, https://www.uscourts.gov/rules-policies/about-rulemaking-process/how-rulemaking-process-works (last visited Oct. 31, 2023). In Tennessee, it is just the opposite. No rule goes into effect unless it is affirmatively approved by the people's representatives in both houses of the General Assembly.

15.     With due respect, neither the holding in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), nor *Detroit Free Press. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), nor the legal tests cited therein, shed much helpful or applicable light here. The precise holdings of those cases and their progeny technically apply only to judicial, quasi-judicial, or administrative cases where a court or governmental entity is exercising authority in an adjudicative or otherwise binding capacity. And while there is admittedly language in at least one Sixth Circuit case suggesting that

---

[3] It should also be noted that the public, by and through their elected representatives in the General Assembly, also has the authority and ability to create, revise, modify, or overrule existing rules of practice and procedure *via* statute, as with, for example, the legislature's historically recent codification of a revised legal standard for summary judgment in Tennessee state courts. *See* Tenn. Code. § 20-16-101. In fact, the entirety of Title 20 in the Tennessee Code is devoted to procedural and other court rules imposed by the General Assembly.

6

such rights many also carry over, for example, into contexts such as municipal planning cases, *Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012), that language is non-binding dicta.  Indeed, as the Sixth Circuit later observed and clarified in *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016):

> To be sure, this court has stated that the *Richmond Newspapers* standard could be used "to determine whether a First Amendment right of access exists in a wide variety of other contexts," *Fair Fin.*, 692 F.3d at 429, but this pronouncement was dicta. And, while *Detroit Free Press* "question[ed] the vitality of the standard articulated in *Houchins*," it only did so "with respect to cases such as the one presently before [the court]"—a request for public access to deportation proceedings."

Further, careful review of that dicta reveals that the underlying out-of-circuit source for the citation is itself not particularly helpful or germane comparison to the specific facts here, either.[4]

16.     In short, none of the cited cases contemplate, much less hold, that the public has a right of access to a commission or body providing mere non-binding advice and counsel to state officials, much less a right of access specifically as to a commission or body providing non-binding advice and counsel to the highest court of a state over matters which are entrusted by statute and common law to the sound discretion of that court.  And my research has likewise revealed none. Further, I am not aware of any case that has expressly contemplated, much less overcome, a right of access under circumstances like here that would involve invading confidential deliberative matters potentially protected by judicial privilege.

17.     All of these issues are particularly thorny, and have grave implications for, judicial comity and federalism where, as here, a federal court is being asked to render judgment with respect to an Administrative Office of the Courts that provides nothing more than logistical support for meetings that are functionally and substantively an extension of, and in service to, the highest court of last resort of the State of Tennessee.  Stated differently, the plaintiff here is effectively asking this court to dictate to the Tennessee Supreme Court how it may utilize the benefits of its own Advisory Commission, consisting of members the Tennessee Supreme Court appointed, to give the Tennessee Supreme Court advice and counsel, despite not being able to point to any case law directly on point divesting the Tennessee Supreme Court of the ability to exercise its own reasonable judgment and sound discretion.

18.     The contentions put forward by the plaintiff and Professor Barton arguing for public access are effectively policy proposals, the consideration of which fall within the sound discretion of the Tennessee Supreme Court and/or Advisory Commission.  And they are perhaps fine policy proposals.  Based on my experience serving on the Advisory Commission relative to other boards and commissions, I might even agree that public access may be a good and helpful thing from time to time.  However, policy choices are not a substitute for constitutional analysis, and it is another thing altogether to suggest that a public right of access to the deliberations of a mere advisory commission that exercises no independent power or authority is, or should be, enshrined in the

---

[4] The case cited in *Fair Fin.* was a Third Circuit case involving a municipal planning commission that, based on policy considerations codified in state law, was already required to have open meetings that at times even involved taking witness testimony.  The only legal issue actually presented for decision was whether the constitution conferred a right to videotape the meetings, which the court denied.  *Whiteland Woods, L.P.*, 193 F.3d 177 (3rd Cir. 1999).

7

Constitution at the expense of the discretion of a state's highest court, despite longstanding notions judicial privilege, and despite grave implications for judicial comity and federalism.

19. Further, constitutionalizing a right of access to Advisory Commission meetings invites a host of potential additional complications and unintended consequences that are not clearly susceptible to any meaningful limit. Would email communications among members of the Advisory Commission be considered public records? Would discussions between two members of the Commission working offline to hone a potential rule proposal require prior public notice and access? Could those same members pick up the phone and call one another without affording the public the right to listen in? Would notes taken by members during the Commission meeting constitute public records?

20. Even if the *Richmond Newspapers* and *Detroit Free Press* framework applies, as advanced by the plaintiff, the arguments put forward by the plaintiff and Professor Barton still fail, for all of the reasons noted throughout. There is no consistent historical evidence of Advisory Commission meetings being open to the public, and, in fact, the identification and citation to but a handful of public meeting notices over the course of years and years of Advisory Commission meetings cuts the other way, actually demonstrating quite clearly that such decisions have historically been left to the discretion of the Tennessee Supreme Court by and through the Advisory Commission, to be exercised based on reasoned judgment in light of the attendant needs and circumstances. And while the experience of the federal rule making process may be a fine basis for a comparative policy argument, it is not particularly relevant or helpful to the constitutional issue raised here because the federal statutory framework is so materially different, most notably because it lacks the comparatively robust legislative check that exists under Tennessee state law guaranteeing that the public by and through their representatives at all times retain ultimate authority over the process.

21. Further, under the logic prong of *Richmond Newspapers* and *Detroit Free Press*, the logic undergirding the rationale for the centuries-old deliberative process privileges is the same logic that supports leaving to the Tennessee Supreme Court by and through the Advisory Commission the discretion to keep meetings closed. As noted above, a public forum can have a serious chilling effect, whereas the uninhibited free exchange of ideas in a confidential and deliberative environment can have tremendous advantages. And in balancing those competing concerns under all the circumstances here, logic dictates that, for all the same reasons outlined above, the decision should be Tennessee Supreme Court and its Commission, particularly since the Advisory Commission only acts in advisory capacity with no governmental authority or power to bind the public in any way whatsoever.

22. In my experience having served on the Advisory Commission, and having participated in the work of the Commission and its interaction with the Court, it is clear to me that logic dictates preserving the discretion of the Tennessee Supreme Court and/or the Advisory Commission to exercise the power and authority afforded to it under applicable state law. Indeed, under all of the circumstances, this case is not a case that rises to the level of constitutional imperative or import. Rather, it is a case about a competing policy argument that should better and more appropriately be made to the General Assembly and/or the Tennessee Supreme Court and its Advisory Commission.

8

Pursuant to 28 U.S. § 1746, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, understanding, and belief.

Lang Wiseman

Date: November 1, 2023

9