| | |
|---|---|
| DAN MCCALEB, Executive Editor of THE CENTER SQUARE, | ) ) ) |
| | ) NO. 3:22-cv-00439 |
| Plaintiff, | ) ) JUDGE RICHARDSON |
| v. | ) ) |
| MICHELLE LONG, in her official capacity as DIRECTOR of the TENNESSEE ADMINISTRATIVE OFFICE OF THE COURTS, | ) ) ) ) ) |
| Defendant. | |

## MEMORANDUM OPINION

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. No. 71, "Defendant's Motion") and Plaintiff's Motion for Summary Judgment (Doc. No. 74, "Plaintiff's Motion"). Defendant filed a memorandum in support of her Motion (Doc. No. 72, "Defendant's Memorandum"), and Plaintiff has done likewise (Doc. No. 76, "Plaintiff's Memorandum"). Plaintiff has filed a response in opposition to Defendant's Motion (Doc. No. 83, "Plaintiff's Opposition"), to which Defendant has filed a reply (Doc. No. 86, "Defendant's Reply"). Conversely, Defendant has filed a response in opposition to Plaintiff's Motion (Doc. No. 80, "Defendant's Opposition"), to which Plaintiff has filed a reply (Doc. No. 85, "Plaintiff's Reply").

For the reasons discussed herein, the Court will deny Plaintiff's Motion and grant Defendant's Motion.

## BACKGROUND[1]

Plaintiff Dan McCaleb is the executive editor of the online news organization, "The Center Square." (Doc. No. 76 at 2). Defendant Michelle Long is the Director of the Tennessee Administrative Office of the Courts ("AOC"). (*Id*. at 3; Doc. 81 at 1). As part of her duties, Defendant oversees the AOC.[2] (Doc. No. 76 at 2; Doc. 81 at 2). In relevant part, the AOC provides administrative support to the Advisory Commission on the Rules of Practice & Procedure

---

[1] The facts that are stated herein without qualification are undisputed—a term the Court will use to describe both facts that are not in dispute *at all* and facts that are not in *genuine* dispute—and are treated as such. Alleged facts that are qualified here in some way (as for example by being prefaced with "Plaintiff contends that") are in dispute and are treated as such.

Some of the facts herein come from Defendant's Responses to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 81, "Defendant's Responses"), wherein they are largely undisputed, except for Plaintiff's characterization of past Advisory Commission meetings and related notices as being public. (*See generally id.*). With respect to Defendant's Responses, the Court will overrule Defendant's sole objection, which describes Plaintiff's statement as impermissibly compound in violation of Local Rule 56.01(b), because Defendant's response remedies the compound nature of said statement. (*See id.* at 2).

Other facts herein come from Plaintiff's Responses to Defendant's Statement of Undisputed Material Facts (Doc. 84, "Plaintiff's Responses"). In his Responses, Plaintiff objects to the testimony of Lang Wiseman on the basis that he was not designated as a fact witness. (*Id.* at 2–4). The Court will overrule the objection because the testimony at issue appears to be within the scope of Mr. Wiseman's expert opinions. (*See* Doc. No. 83-3 at 4–8). Plaintiff also objects to the testimony of Chairman Bulso on the basis that "his counsel clarified on the record in his deposition that Bulso was testifying only in his individual capacity and not for the Advisory Commission." (Doc. No. 84 at 3). The Court will overrule this objection because the testimony at issue (in addition to being relevant) falls squarely within Chairman's Bulso's personal knowledge and thus is generally relevant even if Chairman Bulso is deemed to have testified "only in his individual capacity and not for the Advisory Commission."

Other facts contained herein come from record evidence (such as depositions) and are cited (as being accurate) by the opposing party in his or her briefing. Other facts (background, uncontroversial ones) are mutually stated in the parties' opposing briefing on their respective Motions (Doc. Nos. 71, 76, 80, 83, 85, 86). Finally, some of the facts contained herein come from uncontroverted portions of Plaintiff's Amended Complaint (Doc. No. 19), as well as this Court's Order and Preliminary Injunction (Doc. No. 40).

There are other purported facts that are disputed but are evidentially supported and are asserted by Plaintiff or Defendant, as the case may be with respect to a particular fact, to support the asserting party's view as to whether there is or is not a genuine issue of material fact as to a particular claim. The Court treats these purported facts as potentially but necessarily true and refers to them, and the evidence supporting them, in appropriate places in its analysis below.

[2] https://www.tncourts.gov/administration

("Advisory Commission"). (Doc. No. 72 at 2; Doc. No. 76 at 2; Doc. 81 at 2). The Advisory Commission was established to "advise the [Tennessee] supreme court from time to time respecting the rules of practice and procedure." Tenn. Code Ann. § 16-3-601(a). In practical terms, the Advisory Commission proposes changes to those rules. (Doc. 84 at 1–2). After considering a proposal by the AOC, the Advisory Commission takes a vote. If the Advisory Commission approves the proposal, the AOC sends the proposal to the Tennessee Supreme Court. (*Id.* at 2–3). The Tennessee Supreme Court then decides whether to move forward with the proposal. (*Id.* at 3). The Tennessee Supreme Court can also revise the proposal without consulting the Advisory Commission. (*Id.*). If it decides to move forward with a proposal, the Tennessee Supreme Court publishes the proposed rule for public comment for 60 days, takes received comments into consideration, and proposes the rule to the General Assembly. (*Id.*). According to Defendant, the proposed rule does not go into effect unless approved by the General Assembly. (*Id.* at 4).

Meetings of the federal counterpart to the Advisory Commission are open to the public. (Doc. No. 81 at 4). According to Plaintiff, meetings of the Advisory Commission used to be likewise open to the public. (Doc. No. 76 at 4–5; Doc. No. 83 at 4). Plaintiff also contends that, as part of its administrative support to the Advisory Commission, the AOC back then would post a notice on its website in advance of the meetings, inviting the public to attend. (Doc. No. 76 at 4–5; Doc. No. 81 at 2; Doc. No. 83 at 1, 4). Defendant, however, contends that members of the Advisory Commission understand meetings to be closed to the public. (Doc. No. 72 at 3; Doc. No. 84 at 4–5). Defendant further contends that the notices on AOC's website were merely indicative of the dates of Advisory Commission meetings, and not an invitation to the public to attend the meetings. (Doc. No, 81 at 3).

In 2018, a member of the public verbally disrupted a meeting. (*Id*. at 1, 4; Doc. No. 83 at 4). Since this incident, Plaintiff claims, the meetings have become closed to the public, and the AOC has stopped providing notice of the meetings on its website. (Doc. No. 76 at 2, 4–5, 8–9; Doc. No. 83 at 1, 5, 8). According to Defendant, Advisory Commission meetings are closed to the public to encourage honest and frank discussions at the meetings. (Doc. No. 72 at 3; Doc. No. 84 at 5).

Plaintiff filed a claim under 42 U.S.C. § 1983, alleging that Defendant deprived him of his purported First Amendment right to access the Advisory Commission meetings by closing them to the public. (Doc. No. 19 ¶¶ 72–74). Plaintiff also filed a motion (Doc. No. 20) requesting a preliminary injunction that would prohibit Defendant from closing future Advisory Commission meetings and would require her to grant him virtual and in-person access to the meetings. (*See* Doc. No. 40 at 2). The Court granted in part and denied in part Plaintiff's request, issuing a preliminary injunction that—while carving out certain exceptions not relevant here—ordered the AOC (under Defendant's direction) to open the meetings either by livestreaming or by allowing in-person attendance.[3] (*Id*.). Pursuant to the Court's preliminary injunction, meetings were livestreamed to the public on June 9, 2023, and December 8, 2023. (Doc. No. 81 at 5). Thereafter, the parties' cross-motions for summary judgment were filed.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

---

[3] The Court contemporaneously denied Defendant's motion to dismiss (Doc. No. 24) based on this Court's alleged lack of subject-matter jurisdiction. (Doc. No. 25).

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id*. at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id*.

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the Court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018);

*Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory comm. note to 2010 amend.).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 689 (M.D. Tenn. 2019) (citing *Ferro Corp. v. Cookson Grp., PLC*, 585 F.3d 946, 949 (6th Cir. 2009)). "[S]ummary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). In addition, "if the moving party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Timmer v. Mich. Dep't of Com.*, 104 F.3d 833, 843 (6th Cir. 1997) (citing *Celotex*, 477 U.S. at 322–23); *see also Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 849–50 (E.D. Mich. 2015) (explaining that, if the moving party bears the burden of proof at trial, that party "must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would be entitled to a directed verdict at trial." (citing William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 477–78 (1992))).

Below, the Court will address the legal framework applicable to Plaintiff's First Amendment right-of-access claim under Sixth Circuit law. Then, the Court will address the parties' respective motions, which are a mirror image of one another. Because the motions are based on the same arguments, and these arguments are repeated in the parties' respective responses, the

Court will address the motions together. (*See PNC Bank, Nat'l Ass'n v. Legal Advoc.,* 2019 WL 4746810 at *2 (E.D. Mich. Sept. 30, 2019) (addressing cross-motions based on the same arguments together); *Lusane v. Conn-Selmer, Inc.*, 2014 WL 12768814 at *4 (N.D. Ohio Aug. 12, 2014) (same); *see also Mitchell v. Mod. Woodmen of Am.*, 2014 WL 6983293 at *9 (N.D. Ala. Dec. 10, 2014) (same); *Gutierrez v. Metro. Life Ins. Co.*, 2007 WL 9814730 at *8 n.7 (N.D. Ill. Sept. 28, 2007) (same); *Banks v. Wells Fargo Bank, N.A.*, 2011 WL 5555728 at *3 (E.D. Pa. Aug. 17, 2011), *report and recommendation adopted*, 2011 WL 5555835 (E.D. Pa. Oct. 27, 2011) (addressing "intricately interrelated" cross-motions together).

DISCUSSION

For the reasons stated below, the Court concludes that as a matter of law, Plaintiff does not have a First Amendment right to access Advisory Commission meetings. Therefore, Plaintiff's Motion will be denied. Conversely, Defendant's Motion—a mirror image of Plaintiff's—will be granted.

A.  The Supreme Court's Decision in *Houchins* Governs

The crux of Defendant's argument is that the Supreme Court's decision in *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), governs this case. (*See* Doc. No. 72 at 6–10; Doc. No. 80 3–6; Doc. No. 86 at 1–2).[4] The Plaintiff counters that Defendant's reliance on *Houchins* is inapposite and that *Richmond Newspapers* provides the applicable rule. (*See* Doc. No. 83 at 19–20; Doc. No.

---

[4] In her filings relating to injunctive relief, Defendant did not argue that *Houchins* provided the applicable rule. Rather, Defendant embraced the applicability of *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and asked the Court to find in her favor based thereon. (*See generally* Doc. Nos. 10, 23). Therefore, the applicability of *Houchins* in this case is a new issue for the Court. Had Defendant asserted the applicability of *Houchins* in response to Plaintiff's motion for a preliminary injunction, it is easy to imagine that the Court would have denied that motion on the grounds that Plaintiff had not shown (and in light of *Houchins* likely could not have shown) a likelihood of success on the merits.

85 at 3–5). After a careful review of relevant Sixth Circuit precedent, the Court agrees with Defendant.

Cases about access to information are "rooted in First Amendment principles." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007). But that is not to say that these cases blend in with other kinds of cases that likewise are "rooted in First Amendment principles"; in fact, these represent a distinct area of First Amendment law. *See id.* (noting that "access cases . . . have developed along distinctly different lines than have freedom of expression cases").

There is a circuit split on the issue of whether *Houchins* or *Richmond Newspapers* provides the generally applicable rule in cases about access to information.[5] *See* Matthew L. Schafer, *Does Houchins v. KQED, Inc. Matter?*, 70 Buff. L. Rev. 1331, 1420–33 (2022). On one hand, the Third, Ninth, and Eleventh Circuits have held that *Richmond Newspapers* provides the general rule.[6] *See, e.g.*, *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 201 (3d Cir. 2002) ("While we believe that the notion that *Richmond Newspapers* applies is open to debate as a theoretical matter, we must yield to the prior precedent of this Court, and hence will apply it to the facts."); *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 830 n.8 (9th Cir. 2020) (while discussing the progeny of *Richmond Newspapers*, stating "by its terms the test is not limited

---

[5] The test articulated in *Richmond Newspapers* and its progeny is commonly referred to as the "experience and logic test." *See, e.g.*, *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016). For the sake of simplicity and ease of reference, herein the Court will refer to this test as the "*Richmond Newspapers*" test.

[6] The forementioned law review article also places the Sixth and Eighth Circuits in this category. *See* Schafer, 70 BUFF. L. REV. at 1423. The Court, however, was unable to find an Eighth Circuit case that would sufficiently support this proposition. As for the Sixth Circuit, the Court disagrees as detailed below.

to any particular type of plaintiff or any particular type of forum")[7]; *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1266 (11th Cir. 2014) (implying that the experience and logic test derived from the *Richmond Newspapers* line of cases is generally applicable).[8] On the other hand, the First, Fourth, Fifth, Seventh, Tenth, and D.C. Circuits have held that *Houchins* is the general rule. *See, e.g.*, *Flynt v. Rumsfeld*, 355 F.3d 697, 704 (D.C. Cir. 2004) (stating that *Houchins* is the general rule and *Richmond Newspapers* the exception); *Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 935 (D.C. Cir. 2003) (same); *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992) ("we seriously question whether *Richmond Newspapers* and its progeny carry positive implications favoring rights of access outside the criminal justice system"); *Fusaro v. Cogan*, 930 F.3d 241, 250 (4th Cir. 2019) (applying *Houchins* and stating that *Richmond Newspapers* is a "narrow exception"); *Am. C.L. Union of Mississippi, Inc. v. State of Miss.*, 911 F.2d 1066, 1071 (5th Cir. 1990) (stating that *Richmond Newspapers* is the exception); *Calder v. I.R.S.*, 890 F.2d 781, 783 (5th Cir. 1989) ("the cases in the *Richmond* line establish and define the scope of the first amendment [sic] right of access [only] to criminal trials and certain criminal proceedings"); *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998) (describing *Houchins* as the rule and *Richmond Newspapers* as the exception); *Lanphere & Urbaniak v. State of Colo.*, 21 F.3d 1508, 1511 (10th Cir. 1994) (noting that *Houchins* is the general rule and mentioning *Richmond Newspapers* as part

---

[7] *But see Boardman v. Inslee*, 978 F.3d 1092, 1104 (9th Cir. 2020) (in a civil lawsuit, applying *Houchins* to government-controlled information without mentioning *Richmond Newspapers*).

[8] The Court notes that district courts within those Circuits have occasionally taken a different approach. *See, e.g.*, *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 448–49 (D. Del. 2006) (opining that the *Richmond Newspapers* line of cases merely applies to criminal and trial-like administrative proceedings); *Parmelee v. McKenna*, No. C08-5633RBL, 2009 WL 1756812 at *2 (W.D. Wash. June 19, 2009) (finding *Houchins* applicable because "[w]hen dealing with a non-criminal proceeding it is more appropriate for Courts to use the general rule prescribed by *Houchins*").

of a line of cases in which the "[Supreme] Court has held that in certain circumstances the First Amendment is implicated in relation to the Sixth Amendment right to a fair and public trial").

As for the Sixth Circuit, it has held that *Richmond Newspapers*, rather than *Houchins*, applies to deportation hearings because the latter are "exceedingly formal and adversarial," "adjudicative," and "a demonstrably quasi-judicial government administrative proceeding normally open to the public." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 696–99 (6th Cir. 2002). In the same opinion, the Sixth Circuit also stated that *Richmond Newspapers* is a test of general applicability. *See id.* at 694–96; *see also In re Search of Fair Fin.*, 692 F.3d 424, 429–30 (6th Cir. 2012) (highlighting the "breadth of the application of" the *Richmond Newspapers* test). In *Phillips*, 841 F.3d 405, however, the Sixth Circuit, sitting en banc, explained that the portion of *Detroit Free Press* stating that *Richmond Newspapers* is generally applicable was merely dictum. *Id.* at 418–20. The Court further explained that *Houchins* is the general rule and that *Richmond Newspapers* is the exception, applicable only in specific circumstances and/or to specific information, such as "certain criminal proceedings and the documents filed in those proceedings," "civil trials," "plea agreements," "university disciplinary proceedings," "documents related to the issuance and execution of a search warrant," and "deportation proceedings."[9] *Id.* (collecting cases); *accord* S.*H.A.R.K.*, 499 F.3d at 560 n.2 (distinguishing *Houchins* from "access cases dealing with the special issue of access to judicial proceedings"). Thus, as a district court within the Sixth Circuit, this Court must apply *Houchins* unless an exception applies.

---

[9] Judge Stranch authored a sharp dissent, opining that the *Richmond Newspapers* test was applicable because (i) in her view, the *Houchins* test applies only to cases in which the press claims access "over and above that of other persons" (*see id.* at 427 (Stranch, J., dissenting)); (ii) *Houchins* was a case about the Press Clause, not the Free Speech Clause (*id.*); (iii) *Houchins* was a plurality decision, the Supreme Court subsequently moved away from its position in *Houchins*, and the *Richmond Newspapers* test "sufficiently addresses all of the *Houchins* Courts' concerns" (*id.* (internal quotations omitted)); and (iv) the regulation at issue in *Houchins* did not have the effect of completely restricting access to the information sought, insofar as other avenues to access that information remained available (*see id.* at 427–28).

Defendant argues that *Houchins* rather than *Richmond Newspapers* is applicable because Advisory Commission meetings "are not adjudicatory or quasi-adjudicatory." (Doc. No. 72 at 8–9; Doc. No. 80 at 4–6; Doc. No. 86 at 2). Relying on *Detroit Free Press*, Plaintiff counters that *Houchins* is inapposite because he is not claiming access "over and above that of other persons." (Doc. No. 83 at 19–20 (internal quotation marks removed); Doc. No. 85 at 3–5).

Plaintiff's argument fails for two reasons. First, Plaintiff's argument mimics Judge Stranch's dissent in *Phillips*. *See Phillips*, 841 F.3d at 426–27 (Stranch, J., dissenting) (arguing that *Houchins* was inapplicable because the plaintiffs did not claim a privilege of access above that of the public). And the majority in *Phillips* clearly rejected this argument. *See id.* at 417–20. Second, *Detroit Free Press* distinguished cases in which *Houchins* was found applicable on the basis that they did not pertain to adversarial, quasi-judicial, or otherwise adjudicative proceedings. *Detroit Free Press v. Ashcroft*, 303 F.3d at 696–700. Here, it is undisputed that the meetings at issue are part of a rulemaking process (or, at least, a preliminary step thereof), as opposed to an adjudicative process. (*See* Doc. No. 84 at 1–4 (describing the role of the Advisory Commission as proponent of rules for the Tennessee Supreme Court)); *see also State v. Best*, 614 S.W.2d 791, 793 (Tenn. 1981) ("The statutory scheme of *rule making* contemplates that the Supreme Court will make appropriate use of the advisory commissions authorized by [Tenn. Code Ann. §] 16-3-601.") (emphasis added). Indeed, regardless of what branch of government undertakes it, rulemaking is generally not adversarial, quasi-judicial, or adjudicative. *See VanWulfen v. Montmorency Cnty.*, 345 F. Supp. 2d 730, 739 (E.D. Mich. 2004) ("A matter is 'adjudicatory' when it serves to resolve an existing dispute between identifiable parties or allocates responsibility for past acts. Actions or decrees that establish standards for future conduct, prescribe rules, or fix guidelines or limits are not adjudicatory; rather they are legislative in nature."); *Morrison v. Lipscomb*, 877 F.2d 463, 466

(6th Cir. 1989) ("[S]imply because rule making and administrative authority has been delegated to the judiciary does not mean that acts pursuant to that authority are judicial. This proposition is equally true if the authority has been traditionally given to the courts."). Therefore, the instant case is distinguishable from *Detroit Free Press* and falls outside the purview of *Richmond Newspapers* and its progeny.[10]

Plaintiff's Motion is entirely premised upon *Detroit Free Press* and does not make an argument (as to why Plaintiff is entitled to judgment as a matter of law) under *Houchins*. (*See generally* Doc. No. 76). Therefore, it must be denied for failure to explain why, under *applicable* law, Plaintiff is entitled to judgment as a matter of law. Alternatively, Plaintiff's Motion must be denied because as explained below, actually *Defendant* is entitled to summary judgment —i.e., entitled to judgment as a matter of law under applicable law (i.e., *Houchins* and cases interpreting it) as applied to undisputed facts.

B.  Plaintiff Has No First Amendment Right to Access the Meetings

In *Houchins*, the Supreme Court noted that "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy. The public's interest in knowing about its government is protected by the quarantee [sic] of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an

---

[10] The parties' briefing does not mention a case entirely analogous to the instant case, and the Court was unable to find one on its own. Nonetheless, *Manogg v. Stickle*, No. 98-3394, 1999 WL 266348 (6th Cir. 1999), an unpublished Sixth Circuit opinion, provides some guidance. There, the plaintiffs brought First Amendment claims against, *inter alia*, trustees and officials of a township, alleging that the trustee and officials "in effect 'closed' the board meetings by speaking in whispers and passing notes among themselves in order to deprive those members of the public in attendance of the opportunity to observe the business being conducted." *Id.* at *1. The Sixth Circuit applied *Houchins* and found that the plaintiffs did not have a First Amendment right to access the meetings in the first place. *Id.* On that basis, the Sixth Circuit affirmed summary judgment for the defendants. *Id.* at *2. The Advisory Commission meetings here are somewhat analogous to the township board meetings in *Manogg*. Therefore, the Court finds in *Manogg* some (non-binding) support for its finding that *Houchins* applies to the present case.

Official Secrets Act." *Houchins*, 438 U.S. at 14 (internal citations and quotations omitted). The High Court further concluded that "neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.* at 15. Similarly, in *Hils v. Davis*, 52 F.4th 997 (6th Cir. 2022), the Sixth Circuit found that "the First Amendment right to gather information from the government usually extends as far as the government has opened its doors to the public and press. It thus includes a right to collect information within government control that is *currently* public or, perhaps in discrete settings not shown here, that the government has made public historically." *Id.* at 1003 (emphasis added). Stated simply, "[t]he question is whether the plaintiffs had a lawful right of access to the information. If the plaintiffs did have a lawful right of access, then the government violates the First Amendment when it blockades access." *S.H.A.R.K.*, 499 F.3d at 560. In sum, there is generally no First Amendment right to access information that the government has decided not to make public.

Here, the parties agree that the Advisory Commission meetings were closed to the public—at least after 2018—until livestreamed pursuant to the Court's injunction. (*See* Doc. No 81 at 2–3). Therefore, it is undisputed that the information Plaintiff seeks access to is not currently public. As discussed above, the meetings are also not an adjudicatory or quasi-adjudicatory proceeding. Therefore, the Court finds that Plaintiff has failed to establish a First Amendment right to access the meetings. *See Manogg*, 1999 WL 266348 at *1–2 (affirming summary judgment because, under *Houchins*, the plaintiffs never had a First Amendment right to access the meetings at issue); *Phillips*, 841 F.3d at 419 (plaintiffs had no First Amendment right to access Ohio's execution-related information because such information was "neither information of the type filed in a

government proceeding [as recognized by *Richmond Newspapers* and its progeny] nor its functional equivalent.")

In short, there are facts that are not in genuine dispute that enable the Court to decide whether, as Defendant claims, Plaintiff's First Amendment claim fails as a matter of law. And the Court answers that question in the affirmative. Accordingly, Defendant's Motion will be granted.[11]

## CONCLUSION

For the reasons discussed herein, Defendant's Motion (Doc. No. 71) will be granted. Conversely, Plaintiff's Motion (Doc. No. 74) will be denied. The Order and Preliminary Injunction (Doc. No. 40) will be vacated.

An appropriate accompanying order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] Because it finds under *Houchins* and its progeny that Plaintiff has no First Amendment right to access the meetings, the Court need not analyze the parties' remaining arguments, which are all based upon *Richmond Newspapers*. (*See generally* Doc. Nos. 72, 76, 80, 83, 85, 86).