**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 16, 2025

Mr. Jacob H. Huebert
Mr. Reilly Stephens
Liberty Justice Center
7500 Rialto Boulevard
Suite 1-250
Austin, TX 78735

Ms. Jennifer Safstrom
Vanderbilt Law School
131 21st Avenue, S.
Nashville, TN 37203-0000

Mr. Robert W. Wilson
Office of the Tennessee Attorney General
40 S. Main Street
Suite 1014
Memphis, TN 38103-1877

Re:  Case No. 24-6043, *Dan McCaleb v. Michelle Long*
Originating Case No. : 3:22-cv-00439

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Lynda M. Hill

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0258p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

DAN MCCALEB, Executive Editor of The Center Square,

　　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

MICHELLE LONG, in her official capacity as Director of the Tennessee Administrative Office of the Courts,

　　　　　　　　　*Defendant-Appellee*.

No. 24-6043

———————————

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cv-00439—Eli J. Richardson, District Judge.

Decided and Filed: September 16, 2025

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Jacob Huebert, Reilly Stephens, LIBERTY JUSTICE CENTER, Austin, Texas, for Appellant. Andrew C. Coulam, Robert W. Wilson, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. Jennifer Safstrom, VANDERBILT UNIVERSITY, Nashville, Tennessee, for Amici Curiae.

　　　BUSH, J., delivered the opinion of the court in which GIBBONS, J., concurred. COLE, J. (pp. 8–10), delivered a separate opinion concurring in the judgment.

———————————

## OPINION

———————————

　　　JOHN K. BUSH, Circuit Judge. Justice Louis Brandeis once wrote that "sunlight is said to be the best of disinfectants." *What Publicity Can Do*, Harper's Wkly., Dec. 20, 1913, at 10.

No. 24-6043                    *McCaleb v. Long*                                    Page 2

The Founders, though, recognized the benefits of sometimes keeping window curtains closed. Indeed, secrecy at the Constitutional Convention helped facilitate the forming of our nation. *See generally* John P. Kaminski, *Secrecy and the Constitutional Convention* (2005).  And the Supreme Court of the United States has never recognized a hard-and-fast constitutional rule requiring public access to all governmental proceedings. *McBurney v. Young*, 569 U.S. 221, 232 (2013).

Here, the Tennessee Judicial Advisory Commission, with no objection from the Tennessee legislature, has kept its meetings closed to the public since 2018.  Dan McCaleb, a journalist, claims that the Commission is violating the First Amendment, as applied to the State through the Fourteenth Amendment, by depriving him of access to the proceedings.  He sued Michelle Long, the official purportedly responsible for maintaining the Commission's closed meetings.  McCaleb's single basis for relief is that his request would satisfy the experience-and-logic test recognized in *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8–9 (1986), which we apply to requests for information tied to adjudicatory proceedings.  As explained below, the Commission's meetings are advisory, not adjudicatory, so the test does not govern here.  We therefore affirm the district court's grant of summary judgment to Long.

### I.

McCaleb is Executive Editor of The Center Square, an online news organization focused on local government news.  His complaint about the Commission's closed meetings calls upon us to consider Tennessee law, which recognizes that the Tennessee Supreme Court has the responsibility to promulgate rules on the practice and procedure of the state courts.  Tenn. Code Ann. § 16-3-402.  The Tennessee General Assembly created the Commission to "advise the supreme court from time to time respecting the rules of practice and procedure."  Tenn. Code Ann. § 16-3-601(a).  The Tennessee Supreme Court appoints the members of the Commission. *Id.*  The Commission can recommend changes to the state's rules of practice and procedure, but its role is purely advisory—the statute gives only the Tennessee Supreme Court power to prescribe rules.

For some period, the public could access the Commission's meetings.  McCaleb has produced evidence that the meetings were open as of at least 2012.  But in 2018, a member of the public disturbed one of the Commission's meetings, and the Commission has closed them to the public ever since.  Long, who is Director of the Tennessee Administrative Office of the Courts, claims that keeping the meetings closed makes sense because "discussions among Commission members can involve sensitive information, and confidential meetings allow members a certain level of candor that would be diminished if open to the public."  Appellee's Br. at 6–7.

McCaleb sued Long in her official capacity.  McCaleb asserted that his exclusion from the Commission's meetings violated the First Amendment, and he sought injunctive relief to allow for public access.  The district court granted McCaleb a preliminary injunction, but after discovery the court granted summary judgment to the Commission and dissolved the injunction. This court reviews this decision de novo.  *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022).

## II.

McCaleb grounds his claim in the experience-and-logic test adopted in *Press-Enterprise*. The Supreme Court of the United States has applied that test only to requests for access to criminal proceedings.  We have gone further, extending it to requests for information tied to other types of adjudicatory proceedings.  But, absent direction from the Supreme Court to do so, we find it inappropriate to extend application of the *Press Enterprise* test beyond the adjudicatory context.  Because McCaleb requests information unrelated to an adjudicatory proceeding, the experience-and-logic test, even as extended by our court, is inapplicable here. And because McCaleb proffers no other ground for relief, his First Amendment claim fails.

We start with a "well established" proposition: the First Amendment does not confer a general right to access information in the government's possession.  *Zillow, Inc. v. Miller*, 126 F.4th 445, 457 (6th Cir. 2025).  The Supreme Court has affirmed that principle on at least two occasions.  *See Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 40 (1999); *McBurney*, 569 U.S. at 232.  And we have done so in at least six published opinions.  *See Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 840 (6th Cir. 2000); *United States v. Miami Univ.*, 294 F.3d 797, 820–21 (6th Cir. 2002); *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*,

499 F.3d 553, 560 (6th Cir. 2007); *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016); *Hils v. Davis*, 52 F.4th 997, 1002 (6th Cir. 2022); *Zillow*, 126 F.4th at 457. Consequently, when the government keeps information secret, the person seeking the information has the burden to show a violation of his or her constitutional rights. *Cf. Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022).

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Court recognized an exception to this general rule: when a court prohibits the public from accessing criminal trial proceedings. The Court recognized a right of access to criminal trials in large part because there was a history and tradition of keeping criminal trials open to the public. *Id.* at 565–69. Justice Brennan, writing for himself and Justice Marshall, penned a concurrence listing two factors he believed the Court should consider when someone asks for "access to a particular government process": "historical and current practice" and "the importance of public access to the . . . process itself." *Id.* at 589 (Brennan, J., concurring in the judgment). In *Press-Enterprise*, the Court adopted a version of these two factors to create the experience-and-logic test:

> In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First . . . we have considered whether the place and process have historically been open to the press and general public . . . . Second, in this setting the Court has traditionally considered whether public access plays a significant positive role of the functioning of the particular process in question. . . . If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches.

*Press-Enterprise*, 478 U.S. at 8–9.

It bears emphasis that, unlike Justice Brennan's *Richmond Newspapers* opinion, *Press-Enterprise* did not explicitly extend the experience-and-logic test to contexts beyond a request for access to criminal proceedings. Nine published opinions in this circuit refer to *Richmond Newspapers* or *Press-Enterprise* as creating a right of access to criminal proceedings.[1] And the

---

[1]*Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983); *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 343 (6th Cir. 1987); *Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 336 (6th Cir. 1987); *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 854 F.2d 900, 903 (6th Cir. 1988); *In re Memphis Pub. Co.*, 887 F.2d 646, 648 (6th Cir. 1989); *Miami Univ.*, 294 F.3d at 821; *In re Search of Fair Fin.*, 692 F.3d 424, 429

first Sixth Circuit case to use the experience-and-logic test outside the context of criminal proceedings explicitly acknowledged that it was doing so, finding that the Court's analysis in *Richmond Newspapers* applied equally to civil and criminal trials.  *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178–79 (6th Cir. 1983).

In *Detroit Free Press v. Ashcroft*, we extended the test's application to adjudicatory proceedings conducted by executive agencies.  303 F.3d 681, 696 (6th Cir. 2002) ("quasi-judicial government administrative proceedings"); *accord Phillips*, 841 F.3d at 418.  But the holding in *Detroit Free Press* did not go any further than that.  McCaleb incorrectly reads that case to require that we apply the experience-and-logic test to all requests for access to government proceedings.  True, *Detroit Free Press* said the experience-and-logic test "provide[s] a test of general applicability" for deciding whether the First Amendment protects a right of access to a given piece of information.  *Detroit Free Press*, 303 F.3d at 700.  But, read in context, this snippet is not as ambitious as McCaleb wants us to believe.

The question presented in *Detroit Free Press* was whether to apply the experience-and-logic test to deportation proceedings.  *See id.* at 699.  The government had argued that the test only applied to "judicial" proceedings and that deportation proceedings did not count because they were "administrative" proceedings conducted by the executive branch.  *See id.* at 694.  The court "reject[ed] the Government's assertion that a line has been drawn between judicial and administrative proceedings."  *Id.* at 695.  Noting that "[d]rawing sharp lines between administrative and judicial proceedings would allow the legislature to artfully craft information out of the public eye," *id.*, the court then embarked on a lengthy comparison between criminal judicial proceedings and deportation proceedings.  It concluded that "there are many similarities between judicial proceedings and deportation proceedings," emphasizing that deportation proceedings are "exceedingly formal and adversarial."  *Id.* at 699.  The government's citations to the contrary were inapplicable, according to the court, because they did not concern "access to information relating to a government *adjudicative* process."  *Id.*  Only after this discussion did the court say that the experience-and-logic test generally applies.  *Id.* at 700.

---

(6th Cir. 2012); *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir. 2016); *United States v. Kincaide*, 119 F.4th 1074, 1077 (6th Cir. 2024).

No. 24-6043 *McCaleb v. Long* Page 6

So, in context, the court meant "general" in the sense of both judicial and administrative adjudicatory proceedings. It did not mean to suggest that the test applies to any request for government information. Indeed, if the court had intended "general" to extend that far, there would have been no need to spend nearly five pages describing the similarities between administrative deportation proceedings and judicial criminal proceedings—the court could have applied the experience-and-logic test straightaway.

This interpretation of *Detroit Free Press* is consistent with our case law. Both before and after *Detroit Free Press*, we have not applied the experience-and-logic test to situations that, in McCaleb's view, would have required it.[2] In *S.H.A.R.K. v. Metro Parks Serving Summit County*, we noted that the "framework for analyzing access cases dealing with the special issue of access to judicial proceedings," i.e., the experience-and-logic test, "is based on unique issues that arise in that context" and is therefore inapplicable "outside of the judicial-proceeding context." 499 F.3d at 560 n.2. Likewise, in *Phillips v. DeWine*, we held that the experience-and-logic test did not apply to a request by death row inmates for "information related to Ohio executions" because that information was "neither information of the type filed in a government proceeding nor its functional equivalent." 841 F.3d at 419. *Phillips* also interpreted *Detroit Free Press* to extend the application of the experience-and-logic test only so far as adjudicative administrative proceedings. *Id.* at 418. It explicitly rejected the view that this Circuit has endorsed the views of other circuits who have applied the test generally. *Phillips* made clear that our circuit has applied the experience-and-logic test only in the context of adjudicatory proceedings.

Here, McCaleb does not seek information tied to an adjudicatory proceeding. For many reasons, the Commission's meetings are not adjudicatory in nature. To start, the Commission's meetings are not "adversarial" like the deportation proceedings in *Detroit Free Press*. *See* 303 F.3d at 699. Nor do the decisions reached in them have "real operative effect" like the decisions in court hearings or administrative adjudicatory proceedings. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160 & n.25 (1975). This is because the Tennessee Supreme Court retains plenary

---

[2]*See Putnam Pit*, 221 F.3d at 834 (electronic records of every parking ticket in a city); *S.H.A.R.K.*, 499 F.3d at 553 (press videotapes confiscated by park ranger); *Phillips*, 841 F.3d at 405 (information about state's death penalty procedures); *Hils*, 52 F.4th at 997 (recordings of interviews conducted during police department internal investigation).

power to prescribe the state's rules of practice and procedure.  Tenn. Code Ann. § 16-3-402.  The Commission only "advises" the Tennessee Supreme Court.  Tenn. Code Ann. § 16-3-601(a).  The advisory role of the Commission further supports that its meetings are not adjudicative proceedings because "advisory opinions, recommendations[,] and deliberations" are protected from disclosure under the common-law deliberative process privilege embedded in the Freedom of Information Act.  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (internal citation omitted).

### III.

The Constitution does not require government to open every door closed to the public.  In First Amendment right-of-access cases, we apply the experience-and-logic test to requests for information tied to adjudicatory proceedings and we do not apply it to requests for other types of information.  Because the Commission's meetings are not adjudicatory proceedings, we do not apply the experience-and-logic test to McCaleb's request for access.  McCaleb raises no alternative theory entitling him to access the Commission's meetings.

So the judgment of the district court is affirmed.

---

**CONCURRENCE**

---

COLE, Circuit Judge, concurring in judgment.  The Supreme Court recognizes no general right of access to governmental proceedings.  *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 8 (1986) ("*Press-Enterprise II*").  An exception "exists when the government excludes the people from a space historically open to them, and that space has played a particularly significant role in the functioning of the judicial process and the government as a whole."  *Hils v. Davis*, 52 F.4th 997, 1002 (6th Cir. 2022) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605–06 (1982) (citation modified).  We apply this analytical framework—the "experience-and-logic" test—to requests for access to judicial and quasi-judicial proceedings.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695–96 (6th Cir. 2002).  Since meetings of the Tennessee Judicial Advisory Commission are advisory and not adjudicatory, I agree with the majority that the experience-and-logic test is inapplicable, and that McCaleb's First Amendment claim fails.  I accordingly concur in the judgment.  I write separately to clarify my view of the experience-and-logic test's application outside the criminal context.

The experience-and-logic test is derived from *Richmond Newspapers Inc. v. Virginia*, 448 U.S. 555 (1980), where the Supreme Court recognized a constitutional right of access to criminal trials because of the long tradition of open trials and the value of openness to the proceedings themselves, including their "significant community therapeutic value," the appearance of fairness, and the "educative effect of public attendance."  *Id.* at 570–73 (citation modified).  The Court reasoned that, "to work effectively, it is important that society's criminal process satisfy the appearance of justice, and the appearance of justice can best be provided by allowing people to observe it."  *Id.* at 571–72 (citation modified).  Moreover, as the Court recognized in a later case, "public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government."  *Globe Newspaper*, 457 U.S. at 606.

Applying this logic, the Supreme Court recognized a right of access to other criminal proceedings, including jury selection, *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508–09 (1984) ("*Press-Enterprise I*"), and preliminary hearings, *Press-Enterprise II*, 478 U.S. at 10. To do so outside the context of the trial itself, the Court emphasized the importance of both proceedings to the wider criminal process. *See Press-Enterprise I*, 464 U.S. at 507; *Press-Enterprise II*, 478 U.S. at 12. In *Press-Enterprise II*, for example, the Court recognized that a preliminary hearing is "often the final and most important step in the criminal proceeding" because its outcome often impacts a defendant's plea. 478 U.S. at 12. Therefore, even if a preliminary hearing cannot result in a conviction and is adjudicated without a jury, "these features . . . do not make public access any less essential to the proper functioning of the proceedings in the overall criminal justice process." *Id.*

A tradition of public participation and the value of public access, not the criminal nature of the proceedings, were the Court's key considerations. *Id.* at 9 ("If the particular proceeding in question passes [the] tests of experience and logic, a qualified First Amendment right of public access attaches."). While Supreme Court has not explicitly extended the experience-and-logic test beyond a request for access to criminal proceedings, it has also not cabined the test to criminal proceedings. Nor has the Court taken issue with the application of the test to various proceedings outside of the criminal context in our circuit and others. Any language describing the experience-and-logic test as applicable to criminal proceedings is, in my view, not a limiting principle, but a function of discussing the specific legal issues presented by the case under review. *See, e.g.*, *Richmond Newspapers*, 448 U.S. at 580 n.17 (plurality op.) ("Whether the public has a right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open.").

Consistent with this understanding, we have joined other circuits in applying the experience-and-logic test to adjudicative proceedings beyond the criminal context, "[n]otwithstanding its origin in criminal proceedings[.]" *In re Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (collecting cases); *see also Detroit Free Press*, 303 F.3d at 695 (collecting cases). True, we have described the test as applicable to criminal proceedings. But simply describing the test's application to criminal proceedings does not imply that it is less relevant to other

adjudicatory proceedings.  *See, e.g.*, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983) (describing the test's past application to criminal proceedings but applying the test to assess access to civil trials); *United States v. Miami Univ.*, 294 F.3d 797, 820–21 (6th Cir. 2002) (describing the test's past application to criminal proceedings but applying the test to assess access to student disciplinary records).  Rather, in accordance with Supreme Court precedent, we have discussed the relevant proceeding's tradition of public participation and the value of public access, often analogizing to criminal proceedings to do so.  *See, e.g.*, *Brown*, 710 F.2d at 1178–79; *Miami Univ.*, 294 F.3d at 821–22; *Detroit Free Press*, 303 F.3d at 698, 701.

As relevant to this case, the meetings of the Tennessee Judicial Advisory Commission are only advisory.  Tenn. Code Ann. § 16-3-601(a).  The Tennessee Supreme Court ultimately prescribes the state's rules of practice and procedure.  *Id.* § 16-3-402.  The judicial subject of the Commission's meetings does not make the meetings judicial in nature.  And since the meetings are not judicial or quasi-judicial proceedings, they do not implicate the "unique issues that arise in that context."  *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 560 n.2 (6th Cir. 2007).  Of course, the Commission's meetings may, as McCaleb asserts, benefit from public access and foster public education.  After all, "many governmental processes operate best under public scrutiny[.]"  *Press-Enterprise II*, 478 U.S. at 8.  But those interests alone do not create a constitutional right of access.  *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978).  Instead, the Tennessee legislature may choose to open the meetings to the public, as the federal government and other states have done.  *See* 28 U.S.C. § 2073(c)(1); Zachary D. Clopton, *Making State Civil Procedure*, 104 Cornell L. Rev. 1, 35 (2018).

Secrecy is, sometimes, required for government to function properly.  But it is not an overriding virtue.  Indeed, as the experience-and-logic test recognizes, openness plays "a significant positive role" in governmental proceedings, *Press-Enterprise II*, 478 U.S. at 8, because "the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known[,]" *Press-Enterprise I*, 464 U.S. at 508.  "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-6043

DAN MCCALEB, Executive Editor of The Center Square,

Plaintiff - Appellant,

v.

MICHELLE LONG, in her official capacity as Director of the
Tennessee Administrative Office of the Courts,

Defendant - Appellee.

> **FILED**
> Sep 16, 2025
> KELLY L. STEPHENS, Clerk

Before:  COLE, GIBBONS, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____

Kelly L. Stephens, Clerk